**SANDRA D. LYNCH, ESQ., P.C.**
C&A BUILDING, SUITE 101
251 MARTYR STREET
HAGÅTÑA, GUAM 96910
Telephone: (671) 472-6848
Fax: (671) 477-5790
E-Mail: sdl@cbblaw.net

*Attorneys for Michelle D. Ramos,*
*Ricardo G. "Gino" Perez, and Nona Perez*

FILED
DISTRICT COURT OF GUAM
OCT 1 7 2003
MARY L. M. MORAN
CLERK OF COURT

# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF GUAM

| | |
|---|---|
| MICHELLE  D. RAMOS,<br>RICARDO G. "GINO" PEREZ,<br>and NONA A. PEREZ,<br><br>      Plaintiffs,<br><br>      vs.<br><br>LSG Lufthansa Service Holding AG,<br>LSG Lufthansa Service [LSG] Guam, Inc.,<br>LSG Catering Guam, Inc.,<br>LSG Lufthansa Service USA Corporation,<br>LSG Lufthansa Service [LSG] Asia, Ltd.,<br>LSG Lufthansa Service [LSG]Saipan, Inc.,<br>LSG Catering Saipan, Inc.<br>LSG Sky Chefs, Hyung K. Cheung,<br>Fritz Pandalitschka, Kelvin Chan,<br> and DOES 1 through 20,<br><br>      Defendants. | CIVIL CASE NO. 03-00028<br><br><br>**OPPOSITION TO<br>DEFENDANT'S MOTION<br>TO DISMISS** |

Come now Plaintiffs and herein Oppose Defendant's Motion to Dismiss their Complaint.

This Opposition is more fully supported in the attached Memorandum of Points and Authorities.

# MEMORANDUM OF POINTS and AUTHORITIES

Background:

Plaintiffs filed a Complaint under Title VII of the Civil Rights Act, 42 USC §2000e et seq., as amended, against their employer, alleged to be LSG Guam and Saipan, said entities alleged to be owned, operated and controlled by Lufthansa AG in Germany, a holding company, and its various subsidiaries, LSG USA and LSG Asia. Plaintiffs alleged various acts of discrimination and hostile work environment against all defendants, particularly the supervisory personnel on Guam and in Hong Kong.

## ARGUMENT

In their Answer, defendants admit that:

1)      LSG Lufthansa Service USA owns LSG Catering Guam, Inc.;

2)      LSG Lufthansa Holding Company AG owns, directly or indirectly, each of the other corporate entities named as defendants; and

3)      LSG Lufthansa Service Guam, LSG Catering Guam, and LSG Lufthansa Service Asia sometimes employs the trade name "LSG Sky Chefs."

In their Motion to Dismiss, Defendants allege that LSG Lufthansa Services Holding AG, LSG Lufthansa Service USA, LSG Lufthansa Service Asia, Ltd, LSG Lufthansa Service Saipan, Inc., and LSG Catering Saipan, Inc. are "not licensed to do business in Guam" and "do not provide and services directly to the public in Guam."

**A.      The Plaintiffs Require Discovery In Order For The Court To Properly Determine The Question of Personal Jurisdiction.  Regardless, Plaintiffs Have Demonstrated Facts Which Establish A Prima Facie Showing Of Jurisdiction.**

Fed.R.Civ.P. 12(b)(2) governs dismissal for lack of personal jurisdiction.   In order to exercise personal jurisdiction over a nonresident defendant in a case presenting a federal question, the district court must first determine that "a rule or statute potentially confers jurisdiction over the defendant and then conclude that asserting jurisdiction does not offend the

*Michelle D. Ramos, et al. v. LSG Lufthansa Service Holding AG, et al.*
*Civil Case No. 03-00028*
*PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS*
-2-

1    principles of Fifth Amendment due process." *Go-Video, Inc. v. Akai Electric Co., Ltd.,* 885 F.2d

2    1406, 1413 (9th Cir.1989).

3         It is the plaintiff's burden to establish the court's personal jurisdiction over a defendant.

4    *Cubbage v. Merchent,* 744 F.2d 665, 667 (9th Cir.1984), *cert. denied,* 470 U.S. 1005, 105 S.Ct.

5    1359, 84 L.Ed.2d 380 (1985).   The court may consider evidence presented in affidavits to assist

6    it in its determination and may order discovery on the jurisdictional issues. *Data Disc, Inc. v.*

7    *Systems Technology Assoc., Inc.,* 557 F.2d 1280, 1285 (9th Cir.1977).   However,

8         [w]hen a district court acts on a defendant's motion to dismiss without holding
         an evidentiary hearing, the plaintiff need make only a prima facie showing of
9         jurisdictional facts to withstand the motion to dismiss.  [ ] That is, the plaintiff
         need only demonstrate facts that if true would support jurisdiction over the
10        defendant.

11   *Ballard v. Savage,* 65 F.3d 1495, 1498 (9th Cir.1995) (citations omitted); *see also AT & T v.*

12   *Compagnie Bruxelles Lambert,* 94 F.3d 586, 588 (9th Cir.1996) (where trial court rules on

13   jurisdictional issue based on affidavits and discovery materials without holding evidentiary

14   hearing, plaintiff need only make prima facie showing).   Where not directly controverted,

15   plaintiff's version of the facts is taken as true for the purposes of a 12(b)(2) motion to dismiss.

16   *AT & T,* 94 F.3d at 588.   Likewise, "conflicts between the facts contained in the parties'

17   affidavits must be resolved in [plaintiffs'] favor for purposes of deciding whether a prima facie

18   case for personal jurisdiction exists." *Id.* (citations omitted).

19         LSG's motion to dismiss for lack of personal jurisdiction raises questions regarding

20   when a "national contacts" test is available under Fed.R.Civ.P. 4(k)(2) ... and whether, with

21   respect to general and specific personal jurisdiction under the forum state's long-arm statute,

22   the alter ego and agency doctrines require the Court to attribute to a foreign national the

23   contacts of its subsidiaries in the United States. *Doe v. Unocal Corp., et al.,* 248 F.3d 915 (9th

24   Cir. 2001).

25         In this case, the plaintiffs outlined the different entities in their complaint, from the

26

27   *Michelle D. Ramos, et al. v. LSG Lufthansa Service Holding AG, et al.*
     *Civil Case No. 03-00028*
     *PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS*
28                                                    -3-

Case 1:03-cv-00028    Document 33    Filed 10/17/2003    Page 3 of 168

German holding company to the Guam office. Plaintiffs granted an extension of time for defendants to answer the complaint. The parties are just finalizing their Scheduling Order with cut off dates for motions and discovery. Formal discovery has not yet commenced. Attached hereto are some documents which indicate a relationship between LSG Guam and the LSG Holding company in Germany, and LSG USA, with definitive relationships between LSG Asia and Guam. As discovery proceeds, the extent of these relationships will become more defined.

At this juncture, however, the evidence is sufficient to establish a prima facie case for personal jurisdiction.

**B.      The Motion To Dismiss Is A De Facto Motion For Summary Judgment. The Standard Is Therefore Whether Genuine Issues of Material Fact Preclude Judgment.**

Defendants provide the declarations of various corporate officers to support their motion and allegations. Although styled as a Motion to Dismiss, the defendants' motion actually goes to the factual bases which underlie the Complaint, and not to the quality of the pleading. As such, the Motion is a de facto motion for summary judgment under Fed.R.Civ. P. 56 because the Court is required to look beyond the allegations of the complaint. See, e.g., *Sargent v. McGrath,* 685 F.Supp. 1087 (E.D. Wis. 1988); *Wood v. Southern Bell Tel. & Tel. Co.,* 725 F. Supp. 1244, 1247 (N.D. Ga. 1989).

Summary judgment shall be granted,

> If the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

*See also, Cellotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d, 265 (1986). There is only a genuine issue of material fact "if the evidence is such that a reasonable jury could return a verdict for the non moving party". *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct., 2505, 2510, 91 L.Ed. 2d. 202 (1986).

1    The party moving for summary judgment has the burden of clearly establishing the

2    lack of triable issue of fact by the record properly before the court. *Cellotex Corp.* 477 U.S.

3    at 320, 106 S.Ct. at 2553.  If the court discovers a factual issue, the court must not

4    attempt to resolve the factual dispute.  *Hughes v. American Jawa, Ltd.*, 529 F.2d 22, 25

5    (9th Cir. 1976). party opposing the summary judgment must show the existence of a genuine

6    issue of material fact, a fact that might affect the outcome of the suit under the governing law,

7    and that the dispute is genuine thus the evidence is such that a reasonable jury could return a

8    verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248-249; 106

9    S.Ct. at 2510.

10    **C.    There Remains An Issue Of Fact Whether The "Non-Guam" Defendants Are
           Liable For The Actions of Their Subsidiaries, Based On The Actual Relationships**
11         **of The Defendants.**

12         The question is whether there is a genuine issue of material fact whether the

13    corporations may be liable as "employers" of the named Plaintiffs in a discrimination action

14    under Title VII. *Id.*  The defendants have not simply argued that the complaint is deficient on

15    its face.   They also have argued that, as a matter of undisputed material fact, the plaintiffs

16    cannot show that "non-Guam LSG defendants" can be held liable for discrimination by their

17    subsidiaries. *Richard v. Bell Atlantic Corp.*, 946 F.Supp. 54 (D.D.C. 1996).

18         Title VII defines the term "employer" to mean "a person engaged in an industry

19    affecting commerce who has fifteen or more employees for each working day in each of twenty

20    or more calendar weeks in the current or preceding calendar year, and any agent of such a

21    person ..."  42 U.S.C. § 2000e(b) (1994).   As in *Richard v. Bell Atlantic*, the "non-Guam"

22    defendants appear to argue that the plaintiffs can have only one employer for purposes of their

23    discrimination claims, that is, if the plaintiffs are or were all employees of LSG Guam, they

24    cannot be and could not have been employees of LSG Holding AG, or LSG USA, or LSG Asia

25    at the same time.   Such an assertion is wrong as a matter of law.  *See, e.g., Sibley Memorial*

26
      *Michelle D. Ramos, et al. v. LSG Lufthansa Service Holding AG, et al.*
27    *Civil Case No. 03-00028*
      *PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS*
28                                              -5-

1    *Hospital v. Wilson,* 488 F.2d 1338, 1341 (D.C.Cir.1973) ("[Title VII] defines 'employee' as 'an

2    individual employed by an employer,' but nowhere are there words of limitation that restrict

3    references in [Title VII] to 'any individual' as comprehending only an employee of an

4    employer."); *Spirt v. Teachers Ins. & Annuity Ass'n,* 691 F.2d 1054, 1063 (2nd Cir.1982)

5    (holding that the term "employer" under Title VII is "sufficiently broad to encompass any party

6    who significantly affects access of any individual to employment opportunities, regardless of

7    whether the party may technically be described as an 'employer' ... at common law."), *vacated*

8    *and remanded on other grounds,* 463 U.S. 1223, 103 S.Ct. 3565, 3566, 77 L.Ed.2d 1406

9    (1983); *Alie v. NYNEX Corp.,* 158 F.R.D. 239, 245 n. 3 (E.D.N.Y.1994) ("The law is clear that

10   an individual may be the employee of more than one 'employer' for Title VII purposes ...").

11        In the parent-subsidiary context, the question of whether a parent is an "employer" turns

12   "upon whether [the parent] is *liable* for the acts of its subsidiary ..." *Frank v. U.S. West, Inc.,* 3

13   F.3d 1357, 1361 (10th Cir.1993) (emphasis added); *see also E.E.O.C. v. St. Francis Xavier*

14   *Parochial School,* 928 F.Supp. 29, 33 (D.D.C.1996) .

15        The courts have applied four different tests to determine whether a parent corporation is

16   liable for the acts of its subsidiary." *Frank,* 3 F.3d at 1362. These tests are: (1) the "agency"

17   test under which the plaintiffs must establish that the parent exercised a significant degree of

18   control over the subsidiary's decisionmaking; (2) the "alter ego" test which is founded in equity

19   and permits the court to pierce the corporate veil when the court must prevent fraud, illegality

20   or injustice, or when recognition of the corporate entity would defeat public policy or shield

21   someone from liability from a crime; (3) the "instrumentality" test under which the plaintiff

22   must establish that the parent exercises extensive control over the acts of the subsidiary giving

23   rise to the claim of wrongdoing; and (4) the "integrated enterprise" test under which the court

24   considers (a) interrelation of operations, (b) centralized control of labor relations, (c) common

25   management, and (d) common ownership or financial control. *Id.* at 1362 n. 2 (citations

26

27   *Michelle D. Ramos, et al. v. LSG Lufthansa Service Holding AG, et al.*
     *Civil Case No. 03-00028*
     *PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS*
28                                                    -6-

omitted).

Courts have fashioned different tests within the tests, and have culled out distinctions for each. For example, one feature of "integrated enterprise" is the parent corporation exercises more than general oversight of the subsidiary's operations by supervising the subsidiary's daily operations such as production, distribution, purchasing, marketing, advertising, and accounts receivables. *Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235, 1241 (2nd Cir. 1995).

A domestic corporation and its foreign parent corporation could be regarded as one entity for purposes of action under Title VII provided the activities between the corporation and the subsidiary were so closely related as to constitute an integrated enterprise or to cause the subsidiary to be merely the agent or instrumentality of the parent. It is a question of fact to be determined by the fact finder as to integration. *Linskey v. Heidelberg Eastern, Inc.*, 470 F.Supp. 1181, 19 Fair Empl. Prac. Cas.(BNA) 1183 (D.C. N.Y. 1979).

Where a defendant deliberately engages in significant activities within a state, purposely availing itself of the privilege of conducting business there, it is presumptively reasonable to require that defendant "submit to the burdens of litigation in that forum as well." *Burger King v. Rudzewicz,* 471 U.S. 462, 475-76, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). In such instances, "defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Id.* at 474, 105 S.Ct. 2174 (citing *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 295, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)).

**D.  Defendants Have Availed Themselves of Jurisdiction Through Their Contacts With Guam.**

The Ninth Circuit has established a three-part test to evaluate the nature and quality of a defendant's contacts so as to determine the availability of specific jurisdiction:

(1) The nonresident defendant must do some act or consummate some transaction

*Michelle D. Ramos, et al. v. LSG Lufthansa Service Holding AG, et al.*
*Civil Case No. 03-00028*
*PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS*
-7-

within the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws.

(2) The claim must be one which arises out of or results from the defendant's forum-related activities.

(3) Exercise of jurisdiction must be reasonable.

*Gordy v. Daily News, L.P.,* 95 F.3d 829, 831-32 (9th Cir.1996). Incorporating the standards set forth in *Burger King,* the Ninth Circuit has expounded upon the requirements for purposeful availment, noting that purposeful direction of some act having effect in the forum constitutes sufficient contact to exert jurisdiction, and that a lesser showing of contacts with the forum may be sufficient if considerations of reasonableness so require.

Purposeful availment, which satisfies the first part of the Ninth Circuit test, requires a finding that the defendant "[has] performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state." *Sher v. Johnson,* 911 F.2d 1357, 1362 (9th Cir.1990) (quoting *Sinatra v. National Enquirer, Inc.,* 854 F.2d 1191, 1195 (9th Cir.1988)). However, " 'an individual's contract with an out-of-state party alone [cannot] automatically establish sufficient minimum contacts' to support personal jurisdiction." *McGlinchy v. Shell Chemical Co.,* 845 F.2d 802, 816 n. 9 (9th Cir.1988) (quoting *Burger King,* 471 U.S. at 478, 105 S.Ct. 2174). In *Burger King,* the Supreme Court explained:

> [W]e have emphasized the need for a "highly realistic" approach that recognizes that "contract" is "ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction." [ ] It is these factors- prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing-that must be evaluated in determining whether the defendant purposefully established minimum contacts with the forum..

*Burger King,* 471 U.S. at 478-79, 105 S.Ct. 2174 (citations omitted). The requirement of purposeful availment "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts or of the unilateral activity of another party

*Michelle D. Ramos, et al. v. LSG Lufthansa Service Holding AG, et al.*
*Civil Case No. 03-00028*
*PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS*
-8-

1   of a third person." *Id.*

2          Keeping in mind the requirements of *McGlinchy*, 845 F.2d at 816, the "non-Guam

3   Defendants" negotiations and control over collective bargaining agreements is controlled by

4   LSG Holding AG in Germany as shown in Exhibit "1;" LSG Holding AG in Germany controls

5   the LSG advertising logo for Guam and the Asia offices, as shown by Exhibit "2;" LSG

6   Holding AG must approve any new investments for Guam and the Asia offices, and Hong

7   Kong controls much of the budget items otherwise for Guam, as shown in Exhibit "3;" the

8   Guam/Saipan General Manager's contract was prepared and negotiated in Germany as shown

9   in Exhibit "4;" pricing for all airline customers for LSG worldwide is required to be consistent,

10  therefore controlled by the parent corporation, as indicated in Exhibit "5;" LSG's resident GM

11  in Guam and Saipan reviews and approves correspondence to Hong Kong and Germany from

12  local department managers as shown in Exhibit "6;" Germany directs the manner in which

13  "special reports to the board" were styled according to the foreign memo of April 14, 1999,

14  which is Exhibit "7;" LSG USA, which owns LSG Catering Guam, Inc., controls the audits and

15  approves payments to affiliates per the consolidated balance sheet which is Exhibit "8;"capital

16  expenditures and budgets are reviewed and approved by LSG Holding AG, in Texas as shown

17  in Exhibit "9;"the title given to the Guam manager was directed by Germany according to

18  Exhibit "10" contract negotiations between Northwest airlines and the LSG subsidiaries,

19  including Guam, are consistent throughout the corporations and subsidiaries as shown in

20  Exhibit "11."   The other Exhibits contain references to meetings for Germany, Asia/Pacific,

21  USA, consistent hardware for communications of budgetary and financial information between

22  Guam, Germany, and other offices, marketing directives controlled by LSG Holding AG and

23  USA, and other indicia that show forum related contacts and activities by Defendants.

24          The reason is obvious.  The LSG defendants established a local office for purposes of

25  doing business in this jurisdiction, albeit under subsidiary companies.  The offices are

26

1    intertwined, between Guam, Saipan, Hong Kong, Texas, Delaware and Germany. There are

2    prongs of control delegated to each entity, with ultimate control held in Germany and the

3    United States.

4         The third step of the Ninth Circuit test requires a finding that assertion of jurisdiction is

5    reasonable. In other words, once the court concludes that a defendant purposefully established

6    minimum contacts with a forum state, and that the claims at issue arise from those contacts, the

7    court must determine whether the assertion of personal jurisdiction would comport with traditional

8    notions of "fair play and substantial justice." *International Shoe,* 326 U.S. at 326, 66 S.Ct. 154.

9         "If the parent and subsidiary are not really separate entities, or one acts as an agent of the

10   other, the local subsidiary's contacts with the forum may be imputed to the foreign parent

11   corporation." *El-Fadl v. Central Bank of Jordan,* 75 F.3d 668, 676 (D.C.Cir.1996). An alter ego

12   or agency relationship is typified by parental control of the subsidiary's internal affairs or daily

13   operations. *See Kramer Motors, Inc. v. British Leyland, Ltd.,* 628 F.2d 1175, 1177 (9th Cir.1980).

14   To demonstrate that the parent and subsidiary are "not really separate entities" and satisfy the alter

15   ego exception to the general rule that a subsidiary and the parent are separate entities, the plaintiff

16   must make out a prima facie case "(1) that there is such unity of interest and ownership that the

17   separate personalities [of the two entities] no longer exist and (2) that failure to disregard [their

18   separate identities] would result in fraud or injustice." *American Telephone & Telegraph Co. v.*

19   *Compagnie Bruxelles Lambert,* 94 F.3d 586, 591 (9th Cir.1996) (citations omitted). For example,

20   where a parent corporation uses its subsidiary "as a marketing conduit" and attempts to shield itself

21   from liability based on its subsidiaries' activities, piercing the corporate veil is appropriate and the

22   alter-ego test is satisfied. *United States v. Toyota Motor Corp.,* 561 F.Supp. 354, 359

23   (C.D.Cal.1983). That test is also satisfied where the record indicates that the parent dictates

24   "[e]very facet [of the subsidiary's] business-from broad policy decisions to routine matters of

25   day-to-day operation [.]" *Rollins Burdick Hunter of Southern California, Inc. v. Alexander &*

26

27   *Michelle D. Ramos, et al. v. LSG Lufthansa Service Holding AG, et al.*
     *Civil Case No. 03-00028*
     *PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS*

28                                    -10-

*Alexander Services, Inc.,* 206 Cal.App.3d 1, 11, 253 Cal.Rptr. 338 (2d Dist.1988). Plaintiffs have provided sufficient information upon which to satisfy this prong of the test, and must be permitted to go forward with formal discovery in order to provide more definitive information.

The agency test is satisfied by a showing that the subsidiary functions as the parent corporation's representative in that it performs services that are "sufficiently important to the foreign corporation that if it did not have a representative to perform them, the corporation's own officials would undertake to perform substantially similar services." *Chan v. Society Expeditions, Inc.,* 39 F.3d 1398, 1405 (9th Cir.1994) (quoting *Wells Fargo,* 556 F.2d at 423). In *Chan,* the Ninth Circuit approved the decision of a Pennsylvania district court and found it appropriate to attribute the subsidiary's contacts to the parent. 39 F.3d at 1405 n. 9 (following *Gallagher v. Mazda Motor of America, Inc.,* 781 F.Supp. 1079, 1083-84 (E.D.Pa.1992)). Rejecting the German corporate defendant's argument that "courts cannot look to the activities of an affiliated corporation for purposes of determining whether its parent corporation was 'doing business' in a state [,]" the *Chan* court explained that "courts have permitted the imputation of contacts where the subsidiary was 'either established for, or is engaged in, activities that, but for the existence of the subsidiary, the parent would have to undertake itself.' " *Id.* (quoting *Gallagher,* 781 F.Supp. at 1083).

As the *Gallagher* court articulated this rule, if a subsidiary performs functions that the parent would otherwise have to perform, the subsidiary then functions as "merely the incorporated department of its parent." 781 F.Supp. at 1084. Consequently, "[t]he question to ask is not whether the American subsidiaries can formally accept orders for their parent, but rather whether, in the truest sense, the subsidiaries' presence substitutes for the presence of the parent." *Id.* (quoting *Bulova Watch Co., Inc. v. K. Hattori & Co., Ltd.,* 508 F.Supp. 1322, 1342 (E.D.N.Y.1981)).

General personal jurisdiction can exist based solely on maintenance of Internet contacts with forum state, if defendant clearly does business in state, i.e. conducts knowing and repeated

1  transmission of computer files over Internet with state residents, and business contacts with forum
2  state are substantial, or continuous and systematic.  *Gator Com Corp., v LL Bean, Inc.*,341 F.3d
3  1072 (9th Cir. 2003).

4         The questions raised by the jurisdictional challenge here, are factual, and defendants have
5  not shown, through their affidavits, that the standards for their dismissal have been met.  For these
6  reasons, Plaintiffs respectfully request that the Motion to Dismiss be denied.

7  **E.     The Individual Defendants May Be Held Liable Under Title VII.**

8         Defendants Cheung, Pandalitschka, and Chan claim that they must be dismissed because
9  they are not subject to personal liability under Title VII.  The 1993 case does not comport with
10  current employment situations.  The term employer under Title VII includes any agent of the
11  employer.  42 USC §2000e(b).  Some courts have reasoned that supervisory personnel and other
12  agents of the employer are themselves employers for purposes of liability.  *See, e.g., Hamilton v.*
13  *Rogers,* 791 F.2d 439 (5th Cir. 1986).  Individuals may be held liable in their official capacities as
14  well as their individual capacities.

15         Further, as an employee, agent, or supervisor of LSG, LSG defendants may be held liable
16  for the individual defendants' discriminatory acts if they provided no reasonable avenue for the
17  complaints or knew of the actions but did nothing to stop or correct them.  *O'Gorman v. Holland,*
18  2000 WL 134514 (S.D.N.Y 2000) [copy attached].

19         These questions must be determined through factual analysis and in keeping with the
20  definitions of the Title VII statutes themselves.  For these reasons, the individual defendants
21  motion must be denied.

22  **F.     The Plaintiffs' Claims Are Sufficient To Have Satisfied The Administrative Remedies.**

23         Finally, the defendants claim that the complaint must be dismissed for failure to exhaust
24  administrative remedies.  Defendants claim that they had no reasonable notice that they were being
25  charged with discriminatory actions.  To the contrary, Mr. Pandalitschka and Mr. Chan report

26  *Michelle D. Ramos, et al. v. LSG Lufthansa Service Holding AG, et al.*
27  *Civil Case No. 03-00028*
   *PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS*
28                                              -12-

1  directly to Mr. Cheung, who reports to Germany. Ms. Ramos complained directly to Mr. Cheung,

2  as noted in her charging statement. Ms. Perez indicated on her charging statement that she was

3  being treated differently than other employees, and that she was encountering a hostile work

4  environment related to the disparate treatment. Despite the "box" that she might have checked

5  when she submitted a form, her written statement to EEOC goes into detail about a Filipino who

6  was treated better than she, and that once she complained, she was retaliated against. These

7  concepts satisfy the administrative requirements, along with the timeliness of her complaints.

8      The defendants named in the complaint, the corporate defendants, were those allegedly in

9  charge of the operations of the employer against whom the Plaintiffs complained. Ms. Ramos, the

10  Manager of Finance and Administration, and Mr. Perez, were administrators themselves, who had

11  contact with corporate headquarters in Hong Kong and Germany. As such, each successive entity

12  was made aware of the complaints. The defendants named in the suit were involved, and should

13  have anticipated that they would be named in the complaint. *Ortez v. Washington County*, 88 F.3d

14  804 (9th Cir. 1996).

15                                    **CONCLUSION**

16      For the aforementioned reasons, Plaintiffs respectfully request that the Motion to Dismiss

17  be denied in its entirety.

18      Submitted this 17th day of October, 2003.

19                                    Law Office of Sandra D. Lynch, P.C.

20

21                          By:    _Sandra D. Lynch_

22                                 Sandra D. Lynch, Esq.
                                   Attorney for Plaintiffs

23

24

25

26
    *Michelle D. Ramos, et al. v. LSG Lufthansa Service Holding AG, et al.*
27  *Civil Case No. 03-00028*
    *PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS*
28                                    -13-

HK

_____

From: FRAZA0SEK@DLH.DE[SMTP:FRAZA0SEK@DLH.DE]
Sent: Thursday, 21 June 2001 15:37
To: HKCheung@lsgskychefs.com.hk
Cc: philip.thow@lsgskychefs.com.hk; ssmith@lsgskychefsguam.com;
mwoodward@netpci.com; SIGRID.CREMER@DLH.DE
Importance: High

Dear HK

Thank you very much for your e-mail.

There is no doubt that without approval of LSG Asia a collective bargaining
agreement for the units Guam und Saipan with H.E.R.E. International Union cannot be concluded.

I would like to take the opportunity to make some explanations concerning
the different areas of responsibility of LSG Holding, LSG Asia and the local

management.

Collective bargaining for the unit is principally being effected by the
local management. In this case however the local management has at first to co-ordinate the negotiation strategy with the competent persons in the region as well as with LSG Holding. Representatives of the regional management and LSG Holding will only take part in the negotiations, if the situation itself requires their respective participation.

However there is one particularity in the collective bargaing for the units
Guam and Saipan. On one hand it is the first time that a collective bargaining agreement is agreed upon. It is not the case that negotiations are made on an existing collective bargaining agreement. On the other hand there is the "political" particularity that HERE International Union during the negotiations with Sky Chefs as regards the Master Agreement for 15,000 employees has brought on the negotiation table the Guam/Saipan issue. As a consequence thereof an agreement with the President of H.E,R.E. International Union has been concluded in Washington on November 30, 2001 setting forth provisions concerning the issues mentioned therein. As this matter was of worldwide strategically importance, I was asked by the Executive Board of LSG Holding to take care of the collective bargaining on Guam and Saipan taking into consideration this very specific political circumstances. Therefore Sigrid Cremer and myself are involved in the negotiations for the units Guam and Saipan.

As mentioned in your mail, the restructuring of the LSG group after the Sky
Chefs integration will most likely lead to changes in the management for the

region Asia changes. Needless to say that the persons taking over responsibility for the Asian region, have to be involved in the decision

7/4/01

# Price Actions

Price actions will be measured as all marketing initiated revenue changes in the kitchen, based on STATIC customer specific revenue (e.g., budget revenue) as determined by each geographic region. Thus, price action can be achieved as follows:

1) Change in any element, other than food cost pass through, in a pricing formula. This includes, but is not limited to:
   a) Systemic Formula
      i) Labor and overhead billing rates are increased.
      ii) Pricing man-minutes.are increased without any change in specifications or workload.
      iii) An unplanned food cost update is negotiated, agreed to by the customer, and implemented.
   b) Food Markup Formula
      i) If food cost were updated, a price action would be achieved in the amount of the mark-up multiplied by the dollar change in cost minus the change in cost. (e.g., 2.2 x $25 = $55 - $25 = $30)
      ii) Change in the mark-up value. (E.g., food cost x 2 changes to food cost x 2.5).
   c) Prep Charges/Per PAX/Per Flight Charges
      i) Prep or handling charges, per PAX charges, and/or per flight charges is increased without any change to work content.
   d) Contribution Margin Formula
      i) Contribution margin is increased or decreased
      ii) Labor billing rates are increased
      iii) The change in pricing product cost is greater or less than the actual change in product cost
2) Changes in pricing formula (e.g., converting from a mark-up formula to a systemic formula) that are not revenue neutral (e.g., were revenue neutral during the base conversion period but formula optimized to take advantage of the current operating environment.
3) Eliminating existing discounts.
4) Negotiated increases due to extraordinary operational issues (e.g., ORD International trash handling, hoof and mouth cost recovery)

making of the collective bargaining agreements for Guam and Saipan as soon as possible.

Due to the circumstance that last time we have been able to postpone the collective bargaining by 6 1/2 months, I think there is now no possibility that we can again postpone the negotiations, being scheduled for the last week of the month of August. Please consider that all the travel arrangements have been made and the respective persons, who are involved in the negotiation have blocked the whole week in August for these negotiations.

Taking into consideration the circumstance that we will provide the union with a draft agreement before the negotiations will be initiated, I propose that we will meet on August 13, 2000, 09.00 a.m. taking into account your availability as well as the availability of the other parties involved. We will then have the whole day and the morning of August 14 at our disposal in

order to discuss the draft being prepared by Marty as well as to discuss the

further strategy for the negotiations.

I would like to ask you to co-ordinate this date with Marty, Shane and the other persons, which shall also participate according to your opinion. Afterwards please inform me, whether August 13, 2001 is convenient for all participants.

I will send copy of the Sky Chefs Collective Agreement to Marty in the course of this week.


Ernst-Martin Hoffmann-Keining
Senior Vice President Labor Law


LSG Lufthansa Service Holding AG
FRA ZA 5
Am Holzweg 26
D-65830 Kriftel

phone:  +49 (0) 61 92-9 74-9 50
fax:    +49 (0) 61 92-9 74-9 59
e-mail:  Ernst-Martin.Hoffmann-Keining@dlh.de

# Marketing Initiated Margin Improvements (MIMI)

MIMI will be measured based on individual analysis as agreed with identified affected parties (e.g., operations)

1) Strategic menu design **(DO NOT INCLUDE IN HISTORICAL OR PROPOSED PRICE ACTION FIGURES)**

2) Changes in pricing formula that preserve margins in the event of customer cost reduction efforts, determined by an analysis of new formula versus old formula profitability

3) Improvements, incrementally, from rationalizing unprofitable accounts, based on profit performance, as agreed to between marketing and operations

4) All marketing involved service negotiations that result in margin improvement in the kitchen (e.g., but not all inclusive)

   a) Meal ordering procedures

   b) Bank meal/last minute upcount procedures

   c) Inventory management

   d) Reduction in trucks/people on board

   e) Elimination of tasks that don't add value

   f) Reimbursement for services performed or workload change for which we had not been getting paid or customer had refused to pay

5) Marketing interventions with customers which retain announced KEBITDA losses, (e.g. SR-BOS)

| To | **All Unit Managers** | | |
|---|---|---|---|
| | HKGZF 1 | cc. HKGZF/H | for info: BJS   Larry Zhang |
| | BKKZF 1 | HKGZF/L | SHA   Wilson Lee |
| | GUMZF 1 | | Xian   Ken Lam |
| | SPNZF 1 | | |
| | RGNZF 1 | | |

| From | HKG ZF02/AA | Initial   AA | Date   03/25/98 | ☎ 27675336 |
|---|---|---|---|---|

**Subject**

### Change of our Corporate Logo  /  NEW  Logo

I would like to inform you that a NEW Logo has been designed and shall be implemented in due time. Please relate this information to all your department heads and staff concearned. As soon as I have received all detailes from Germany, I will inform you regarding the time-frame and procedure.

I will be co-ordinating the NEW Logo implementation for Asia. Therefore if you have any quiries, let me know.

In order to prepare yourself for the Logo change, I suggest that you should at this time list all relevant items and fields which contain the LSG Logo, like name cards, letterheads, building signs trucks incl. measurements and flags etc.

Thank you very much for your co-operation and assistance!

*A. Arnal*

A. Arnal
HKG ZF02/AA

*Robert,*
*No new orders w/*
*current logo w/out*
*approval. tx.*
*3/25/98*

Date/Time
Local ID
Local name
Company logo

03-25-98;02:28PM
+671 646 0673
LSG Guam Admin

Total pages scanned : 1  Total pages confirmed : 1

| No. | Doc | Remote station | Start time | Duration | Pages | Mode | Comments | Results |
|-----|-----|----------------|------------|----------|-------|------|----------|---------|
| 1 | 036 | 6466793 | 03-25-98;02:27PM | 38" | 1/ 1 | EC | | CP 9600 |

Note
EC: Error Correct
BC: Broadcast
CP: Completed
LS: Local Scan
PI: Power Interruption

RE: Resend
MP: Multi Polling
RM: Receive to Memory
LP: Local Print

RV: Remote Service
PG: Polling a Remote
DR: Document Removed
FO: Forced Output

MB: Mailbox
RI: Relay Initiate
TM: Terminated
WT: Waiting Transfer

## This document was confirmed.
### (reduced sample below — see details above)
### Document size   Letter-S



LSG Lufthansa Service
SKY Chefs
Inter Office Memo

To
All Unit Managers

HKGZF I
BKKZF I
GUMZF I
SPNZF I
RONZF I

cc. HKGZF/M
HKGZB/L

for info: B/S  Larry Zhang
S/IA  Wilson Lao
Xian  Ken Lam

From  HKG ZF02/AA    Initial  AA    Date  03/25/98    ☎ 27675336
Subject  Change of our Corporate Logo  /  NEW Logo

I would like to inform you that a NEW Logo has been designed and shall be implemented in due time. Please relate this information to all your department heads and staff concerned. As soon as I have received all details from Germany, I will inform you regarding the time-frame and procedure.

I will be co-ordinating the NEW Logo implementation for Asia. Therefore if you have any quiries, let me know.

In order to prepare yourself for the Logo change, I suggest that you should at this time list all relevant items and fields which contain the LSG Logo, liko name cards, letterheads, building signs trucks incl. measurements and flags etc.

Thank you very much for your co-operation and assistance!

A. Arael
HKG ZF02/AA

FROM LSG LUFTHANSA SERVICE  TO:GUAM - ADMIN 09/12  MAR 25, 1998  12:28PM  P.01

# Transmission Report

Date/Time     03-25-98;02:32PM
Local ID        +671 646 0673
Local name     LSG Guam Admin
Company logo

Total pages scanned : 1    Total pages confirmed : 1

| No. | Doc | Remote station | Start time | Duration | Pages | Mode | Comments | Results |
|-----|-----|----------------|------------|----------|-------|------|----------|---------|
| 1 | 038 | 16702348202 | 03-25-98;02:28PM | 3'14" | 1/ 1 | G3 | | CP 2400 |

Note
EC: Error Correct     RE: Resend      RV: Remote Service     MB: Mailbox
BC: Broadcast        MP: Multi Polling   PG: Polling a Remote   RI: Relay Initiate
CP: Completed        RM: Receive to Memory   DR: Document Removed   TM: Terminated
LS: Local Scan       LP: Local Print      FO: Forced Output      WT: Waiting Transfer
PI: Power Interruption

This document was confirmed.

(reduced sample below – see details above)

Document size   Letter-S



LSG Lufthansa Service
SKY Chefs
Inter Office Memo

To: All Unit Managers

HKGZF I
BKKZF I
GUMZF I
SPNZF I
RGNZF I

cc. HKGZF/H    for info: HJS   Larry Zhang
   HKGZF/L           SHA   Wilson Lee
                     Xien   Ken Lam

From: HKG ZF02/AA    Initial AA    Date 03/25/98    ☎ 27675336

Subject: Change of our Corporate Logo / NEW Logo

I would like to inform you that a NEW Logo has been designed and shall be implemented in due time. Please relate this information to all your department heads and staff concerned. As soon as I have received all details from Germany, I will inform you regarding the time-frame and procedure.

I will be co-ordinating the NEW Logo implementation for Asia. Therefore if you have any quires, let me know.

In order to prepare yourself for the Logo change, I suggest that you should at this time list all relevant items and folds which contain the LSG Logo, like name cards, letterheads, building signs trucks incl. measurements and flags etc.

Thank you very much for your co-operation and assistance!

A. Araul
HKG ZF02/AA

HK$
FA = FINAL APPROVAL
AP = APPROVAL

| | LSG FRA | HKG ZB & HKG ZC | HKG ZC | HKG ZB | HKG ZC/IC HKG ZF BKK ZF1 | HKG ZB X or HKG ZC X | REMARKS |
|---|---|---|---|---|---|---|---|
| **APPROVAL ANNUAL BUDGET** | FA | AP | | | | | FOR LSG LUFTHANSA SERVICE HK LTD AND SIAM FLIGHT SERVICES LTD LOCAL BOARD APPROVAL REQUIRED |
| **SALES** | | | | | | | |
| NEW TENDERS - ACC | | | FA | | AP | AP | HKG ZC 1 |
| NEW TENDERS - G/C | | | FA | | AP | | |
| PRICE INCREASES - ACC | | | FA | | AP | AP | HKG ZC 1 |
| PRICE INCREASES - GC | | | FA | | AP | | |
| PRICE ADJUSTMENTS - ACC | | | FA | | AP | AP | HKG ZC 1 |
| PRICE ADJUSTMENTS - GC | | | FA | | AP | | |
| CREDIT FACILITIES - ACC | | | | | FA | AP | HKG ZB 1 |
| CREDIT FACILITIES - GC | | | | | FA | AP | HKG ZB 1 |
| CONTRACTS - ACC | | | FA | | AP | | |
| CONTRACTS - GC | | | FA | | AP | | |
| CREDIT NOTES - ACC | | | | | FA | | |
| CREDIT NOTES - GC | | | | | FA | | |
| **PURCHASING** | | | | | | | |
| SUPPLIER CONTRACTS | | | | | FA | AP | HKG ZB 2 |
| SELECTION OF VENDORS | | | | | | FA | HKG ZB 2 |
| STOCK WRITE-OFF | | >100,000 | 100,000 | 100,000 | 5,000 | | |
| **CAPITAL EXPENDITURE** | | | | | | | |
| ITEMS (BUDGET) | >250,000 | ≤250,000 | ≤100,000 | ≤100,000 | AP | AP | Note 1 |
| ITEMS (NON/EXCEED BUDGET) | >250,000 | ≤250,000 | ≤50,000 | ≤50,000 | AP | AP | |
| SALE OF ASSETS | >100,000 | ≤100,000 | 50,000 | 50,000 | | | |
| ASSETS WRITE-OFF/TRANSFER | | >100,000 | ≤100,000 | ≤100,000 | 5,000 | | BOOK VALUE |
| NEW INVESTMENT/PROJECTS | FA | AP | | | | | BOOK VALUE SUBJECT TO THE APPROVAL PROCESS OF LSG HOLDING AG |
| **EXPENSES** | | | | | | | |
| CONTROLLABLES (BUDGET) | | | | | FA | FA | HKG ZB 1 FOR HOME OFFICE |
| CASH ADVANCES | | | 50,000 | 50,000 | 5,000 | 5,000 | HKG ZB 1 & HKG ZC 3 |
| PETTY CASH PAYMENTS | | | 50,000 | 50,000 | 5,000 | 5,000 | |
| DUTY TRAVEL | | | FA | FA | | | |
| AIR TICKETS | | | FA | FA | | | |
| ENTERTAINMENT | | | FA | FA | | | |
| MEMBERSHIP FEES | | | FA | FA | | | |
| SUBSCR FEES | | | | | | | |
| LEASING | | | | | FA | FA | HKG ZC 3 FOR HEAD OFFICE |
| INSURANCE | >250,000 | ≤250,000 | | | | | EXCEPT WITHIN GROUP COMPANIES |
| DONATIONS | | | | | FA | FA | HKG ZC 3 FOR HKG |
| TAX PAYMENTS | | >50,000 | ≤50,000 | ≤50,000 | 5,000 | 5,000 | |
| LICENCES | | | | | FA | | |
| LEGAL FEES | | | | | | AP | HKG ZB 1 |
| AUDIT FEES | | | | | FA | FA | HKG ZC 3 FOR HKG ZF XXX |
| BAD DEBT WRITE-OFF | | | | | | FA | HKG ZC 3 FOR HKG ZF XXX |
| EXPENSES OVER BUDGET | | >50,000 | ≤50,000 | | FA | FA | HKG ZB 1 FOR HKG ZF XXX |
| | | | | | 10,000 | | |
| | | | FA | FA | | | |

CONT

Approved by:

Dieter Remus

Hans-Peter Hilgardt

HK$
FA = FINAL APPROVAL
AP = APPROVAL

| | LSG FRA | HKG ZB & HKG ZC | HKG ZC | HKG ZB | HKG ZC/IC HKG ZF BKK ZF1 | HKG ZB X or HKG ZC X | REMARKS |
|---|---|---|---|---|---|---|---|
| **PAYROLL** | | | | | | | |
| ADD OPERATIONAL STAFF | | | | | | | |
| ADD ADMINISTRATION STAFF | | | | | FA | | UP TO BUDGET RATIO |
| REPLACEMENT STAFF | | | FA | FA | | | |
| SR. EXE CONTRACTS | | | FA | FA | FA | | |
| EXE & JR EXE CONTRACTS | | FA | | | | | |
| ANNUAL SALARY INCREASE | | | FA | FA | | | |
| PROMOTIONS | | FA | | | AP | | |
| EXP UNDER EMPLOY CONTRACT | | | FA | FA | FA | | |
| TERMINATION - SR EXE | | FA | | | | FA | HKG ZB 4 FOR HOME OFFICE |
| TERMINATION - EXE & JR EXE | | | FA | FA | | | |
| TERMINATION - NON EXECUTIVE | | | | | | | |
| OVERTIME | | | | | FA | FA | |
| PENSION PAYMENT - EXECUTIVE | | | | | FA | FA | |
| PENSION PAYMENT - NON EXE | | | | | | FA | HKG ZC 3 |
| NON-CONTRACTUAL BONUS | | | | | | FA | HKG ZB 4 |
| REVIEW STARTING SALARY | | FA | | | | | |
| REVIEW OVERTIME RATE | | FA | | | | | |
| FINAL PAYMENT - EXECUTIVE | | | | | | | |
| FINAL PAYMENT - NON EXE | | | FA | FA | | | |
| MONTHLY PAYROLL | | | | | FA | FA | HKG ZB 4 FOR HOME OFFICE |
| RENTAL CEILING - APARTMENT | | FA | | | FA | FA | HKG ZB 1 FOR HOME OFFICE |
| | | | | | | | |
| **OTHERS** | | | | | | | |
| FORMATION OF CO, ACQUISITION | FA | | | | | | |
| NEW BUSINESS | FA | | | | | | |
| BORROWING UP TO 1 YEAR | >2.5 M | <2.5 M | | | | | |
| BORROWING OVER 1 YEAR | >1 M | <1 M | | | | | EXCEPT BORROWINGS FROM LSG HOLDING OR LH |
| ACQUISITION, SALE & ENCUMB OF PROPERTY & LEASE HOLD INT | FA | | | | | | EXCEPT APARTMENT FOR STAFF |
| GRANTING OF LOANS OR CREDIT | >250,000 | <250,000 | | | | | EXCEPT TRADE CREDIT AND GRANTING OF LOAN TO LSG HOLDING OR LH |
| NEGOTIATION OF SETTLEMENT | >250,000 | <250,000 | | | | | |
| WAIVER OF CLAIMS | >250,000 | <250,000 | | | | | |
| TAKING OF LEGAL ACTION - CLAIM AMOUNT | >250,000 | <250,000 | | | | | |
| ASSUMPTION OF FINANCIAL GUARANTEES | >100,000 | <100,000 | | | | | |
| CONTRACTUAL LIAB OUTSIDE CURRENT BUSINESS | >500,000 | <500,000 | | | | | EXCEPT WITH LSG HOLDING OR LH |
| CONTRACTUAL LIAB OUTSIDE CURRENT BUSINESS IF ACCRUES ANNUALLY | >250,000 | <250,000 | | | | | EXCEPT WITH LSG HOLDING OR LH |
| APPOINTMENT OR DISMISSAL OF BOARD MEMBERS | FA | | | | | | |
| APPOINTMENT OF POWER OF ATTORNEY | FA | | | | | | |

Note 1   Over HKS 250,000 for LSG Lufthansa Service Hong Kong Ltd needs board approval

Approved by:

FAX



Sky Chefs

Unit 4-6,
17/F Island Place Tower
510 King's Road
North Point
HONG KONG
Tel: (852) 2963 6304
Fax: (852) 2774 1424
Sita: HKGZFLH
Email: Ciiidylee@hk.skychefs.com.hk

Our Ref

*Michelle Ramos*
*GUM2F 10*

From

March 17, 1999

Date

Telefax No.

transmittal has    2    page(s)

Marks           1999 Price Action Plan

to provide TRA with a price action plan for 1999 for our Top 35 LSG entry
customers in all stations worldwide. Please find attached copy of the format required, which
is self-explanatory

The stations concerned under your coverage are as follows –
          GUM
          BKK, GUM, SPN          /

We would appreciate if you can forward the details to us by next Wednesday (24th) and
should you have any concerns, please let me know

Regards

# Price

Due to the
situation out
here no price
increase for
any Customer
as per budget as
well $\checkmark$ neg.
C. P. I.

LSG Lufthansa Service
SKY Chefs

| Annual Sales 1998 | Price increase in % and absolute for 1999 | | Date agreed |
|---|---|---|---|
| | | | |



**LSG Lufthansa Service
SKY Chefs**

# INTEROFFICE MEMORANDUM

TO:      All Department Managers

FROM:     GUM ZF 1

Date:     April 6, 1999

Subject:    **Outgoing Correspondence**

I would like to thank each of you for helping to make my initial introduction to LSG Sky Chefs, Guam smooth and uneventful. With your support, we will be able to work together to provide our customers with the highest customer service possible.

As I begin to get acquainted with the customers and the current situations involving the Guam and Saipan offices, I am requesting that all correspondence to government agencies, Hong Kong/Germany Offices or any present/future customers be reviewed/signed by me prior to being sent to the respective individuals. This would include email, facsimile and written letters, but would not include correspondence pertaining to the day to day operations within the dispatch office. In addition, this would include any correspondence dealing with personnel matters.

Again, I appreciate the support that has been shown to me, and while I understand that this will take some pre-planning measures on all our parts, I thank you for your cooperation.

Regards,

Frank Fischer

GUM ZF 1 S/iomemo

ZF1/No. 1

| An | Siehe Verteilerdeckblatt |

| Von | FRA ZI 01 | Diktatzeichen | am | Datum | 13.04.99 | Telefon | 06192 974 | -210 |
|-----|-----------|--------------|-----|-------|---------|---------|-----------|------|
| | | | | | | Telefax | | -141 |

**Thema** **Vorgabe der Vorlaufzeiten für Tagesordnungen und Sitzungsunterlagen von Beteiligungsgesellschaften**

Sehr geehrte Damen und Herren,

Bezug nehmend auf das Protokoll des EM/VS vom 22.03.1999 soll wie nachfolgend dargestellt bei der Vorlage von Tagesordnung und Sitzungsunterlagen von Beteiligungsgesellschaften vorgegangen werden :

*weeks*

1.  Tagesordnungen sind mindestens 6 Wochen vor der Sitzung bei ZI 01 eingehend einzureichen.

*weeks*

2.  Sitzungsunterlagen sind vier Wochen vor der jeweiligen Sitzung bei ZI 01 einzureichen.

3.  Die kommentierten Sitzungsunterlagen werden den jeweiligen Mitgliedern der Aufsichtsgremien acht Arbeitstage vor der jeweiligen Sitzung zur Verfügung gestellt, in Ausnahmefällen fünf Arbeitstage.

4.  Bei Nichteinhaltung der Vorlauffristen wird ZI 01 dem Vorstand empfehlen die jeweilige Sitzung abzusagen.

5.  Vorgenannte Fristen können nur für Mehrheitsbeteiligungen der LSG gelten. Die jeweiligen Mitglieder der Aufsichtsgremien sind angehalten gleichwohl auf die Einhaltung der vorgenannten Fristen hinzuwirken.

**LSG Lufthansa Service**
**SKY Chefs**

Mit freundlichen Grüßen

gez. Klaus-Jörg Ames

*Special requests
to the board
must be submitted
according to the
above time frame.*

*4.14.99*

**Subject:**
**Date:** Fri, 05 Mar 1999 02:00:53 PST
**From:** "reinhard guth" <reinhardguth@hotmail.com>
**To:** gumzf10@ite.net
**CC:** mramos2@ite.net

Hi, Michelle I hope you are well and the February result is good and
up to our expectation.In Italy Spring is in the Air and it is quite
pleasant, the Units and the way everything works is a different Story,
more, when I`m back.
The Agenda points are fine and no change is needed.
Julia has been buzzy to find a Place,so far she found a few places
which are kind of ok,however the ideal she is still looking for. I will
spend Saturday morning with her to hopefully finalize
that situation,late afternoon we continue to Rom to see the Kitchen
there and on Tuesday we are on the way via FRA NRT back to Guam iff
everything goes as planned. Take care and best regards to you and
Mell, R. Guth

---

Get Your Private, Free Email at http://www.hotmail.com

LSG Catering Guam, Inc. and Subsidiary
(A Wholly Owned Subsidiary of LSG Lufthansa Service USA Corporation)

**DRAFT**

Consolidated Balance Sheets

**Subject to Change**

| | December 31 | |
| | 1998 | 1997 |
|---|---|---|
| **Assets** | | |
| Current assets: | | |
| Cash *(Note 3)* | $ 7,004,880 | $ 3,762,699 |
| Restricted cash *(Notes 3 and 8)* | 626,563 | --- |
| Accounts receivable, net of allowance for doubtful accounts of $200,000 ($105,987 in 1997) *(Note 3)* | 2,196,281 | 3,226,508 |
| Inventories *(Note 5)* | 376,565 | 430,398 |
| Prepaid expenses and other | 94,133 | 234,587 |
| Deferred tax assets | 99,000 | 59,000 |
| Prepaid Guam income tax | --- | 225,000 |
| Total current assets | 10,397,422 | 7,938,192 |
| Due from affiliates *(Note 5)* | 485,281 | 61,939 |
| Property, plant and equipment at cost, less accumulated depreciation and amortization *(Notes 4 and 5)* | 4,012,274 | 4,414,971 |
| Goodwill, less accumulated amortization of $35,914 ($33,349 in 1997) | 66,698 | 69,263 |
| Deferred tax assets | 506,000 | 199,000 |
| Total assets | $15,467,675 | $12,683,365 |
| **Liabilities and shareholder's equity** | | |
| Current liabilities: | | |
| Accounts payable | $ 431,102 | $ 461,287 |
| Accrued expenses and other | 1,601,363 | 1,429,708 |
| Guam income tax payable | 121,000 | --- |
| Total current liabilities | 2,153,465 | 1,890,995 |
| Due to affiliates *(Note 5)* | 2,843,658 | 3,321,157 |
| Total liabilities | 4,997,123 | 5,212,152 |
| Commitments and contingencies *(Note 8)* | | |
| Shareholder's equity: | | |
| Common stock of $1 par value. Authorized 4,000 shares, issued and outstanding 1,000 shares | 1,000 | 1,000 |
| Retained earnings- appropriated *(Note 8)* | 610,000 | --- |
| Retained earnings- unappropriated | 10,449,552 | 8,060,213 |
| | 11,059,552 | 8,060,213 |
| Treasury stock, 99 shares at cost | ( 590,000) | ( 590,000) |
| Total shareholder's equity | 10,470,552 | 7,471,213 |
| Total liabilities and shareholder's equity | $15,467,675 | $12,683,365 |

*See accompanying notes.*

2

**Subject: Agenda - Saipan**
   **Date:** Fri, 05 Mar 1999 02:37:39 +1000
   **From:** "Michelle D. Ramos" <gumzf10@ite.net>
      **To:** "R. Guth" <reinguth@usa.net>

Dear Mr. Guth:

Attached is the Saipan Agenda for your review and comment.

Michelle

| | |
|---|---|
| 📄Sbod.doc | **Name:** Sbod.doc<br>   **Type:** Winword File (application/msword)<br>**Encoding:** base64 |

Case 1:03-cv-00028     Document 33     Filed 10/17/2003     Page 30 of 168

## LSG Catering Saipan, Inc. and Subsidiary
### (A Wholly Owned Subsidiary of LSG Lufthansa Service Asia, Ltd.)

### Consolidated Financial Statements
### and Other Financial Information

Years ended December 31, 1998 and 1997

**DRAFT**

Subject to Change

## Contents

Report of Independent Auditors .................................................................................1

Audited Consolidated Financial Statements

Consolidated Balance Sheets ...................................................................................2
Consolidated Statements of Earnings and Retained Earnings ............................................3
Consolidated Statements of Cash Flows ......................................................................4
Notes to Consolidated Financial Statements.................................................................5

Other Financial Information

Consolidating Balance Sheet ..................................................................................11
Consolidating Statement of Earnings and Retained Earnings ...........................................12

**Subject: Agenda-Guam**
   **Date:** Fri, 05 Mar 1999 01:13:01 +1000
   **From:** "Michelle D. Ramos" <gumzf10@ite.net>
   **To:** "R. Guth" <reinguth@usa.net>

Dear Mr. Guth:

Attached, please find the agenda for the Board Meeting scheduled for the 18th for your review & comment. Please let me know if any changes so I can send off to get approval.

I'm still working on Saipan's but will send as soon as done.

Have a safe trip.

Michelle

| | |
|---|---|
| 🗋 031899ag.doc | **Name:** 031899ag.doc <br> **Type:** Winword File (application/msword) <br> **Encoding:** base64 |

# DRAFT

## Subject to Change

### Report of Independent Auditors

The Board of Directors
LSG Catering Saipan, Inc.

We have audited the accompanying consolidated balance sheets of LSG Catering Saipan, Inc. (a wholly owned subsidiary of LSG Lufthansa Service Asia, Ltd.) and subsidiary as of December 31, 1998 and 1997, and the related consolidated statements of earnings and retained earnings, and cash flows for the years then ended. These financial statements are the responsibility of the Company's management. Our responsibility is to express an opinion on these financial statements based on our audits.

We conducted our audits in accordance with generally accepted auditing standards. Those standards require that we plan and perform the audit to obtain reasonable assurance about whether the financial statements are free of material misstatement. An audit includes examining, on a test basis, evidence supporting the amounts and disclosures in the financial statements. An audit also includes assessing the accounting principles used and significant estimates made by management, as well as evaluating the overall financial statement presentation. We believe that our audits provide a reasonable basis for our opinion.

In our opinion, the financial statements referred to above present fairly, in all material respects, the consolidated financial position of LSG Catering Saipan, Inc. and subsidiary at December 31, 1998 and 1997, and the consolidated results of their operations and their cash flows for the years then ended in conformity with generally accepted accounting principles.

Our audits were conducted for the purpose of forming an opinion on the consolidated financial statements taken as a whole. The accompanying consolidating balance sheet at December 31, 1998 and consolidating statement of earnings and retained earnings for the year then ended, are presented for purposes of additional analysis and are not a required part of the consolidated financial statements. Such information has been subjected to the auditing procedures applied in our audit of the consolidated financial statements and, in our opinion, is fairly stated in all material respects in relation to the consolidated financial statements taken as a whole.

January 19, 1999

1

# Michelle D. Ramos - Finance & Administration Manager

**From:**     "Michelle D. Ramos - Finance & Administration Manager"
**To:**       "MICHAEL LUK" <MICHAEL.LUK@LSGSKYCHEFS.COM.HK>
**Cc:**       "Shane Smith" <gumzf1@ite.net>
**Sent:**     Wednesday, February 28, 2001 5:41 PM
**Subject:**  Re: Bank details

Dear Michael:

No, we terminated our accounts with Hong Kong Bank back in 1997. Because HKSB was considered "foreign" we had to establish credit facilities first before setting up operating accounts. With that setup, we were being charged interest on our own money.

Anything else...let me know.

Best regards...Michelle

----- Original Message -----
**From:** MICHAEL LUK
**To:** Michelle D. Ramos - Finance & Administration Manager
**Sent:** Wednesday, February 28, 2001 5:12 PM
**Subject:** RE: Bank details

Dear Michelle,

Thanks for your quick response. Do we have a offshore deposit accounts with Hong Kong Bank in Guam/Saipan?

Regards,

ML

-----Original Message-----
**From:**  Michelle D. Ramos - Finance & Administration Manager [SMTP:MDRamos@LSGSkyChefsGuam.com]
**Sent:**  Wednesday, February 28, 2001 9:29 AM
**To:**  MICHAEL LUK
**Cc:**  Shane Smith
**Subject:**  Re: Bank details

Dear Michael:

Per your request:

BANK:   Bank of Guam (Guam/Saipan)

BUSINESS FACILITIES:   Business Checking (General Operating, Payroll, & any other High Volume Transaction Accounts), Time Deposits & Time Deposit On Accounts, Commercial Lending (Commercial Term Loans, Corporate Lines of Credit, Commercial Real Estate Loans, Small Business SBA Loans, Letters of Credit, Corporate Mastercard), Merchant & POS Services (Credit and Debit Cards processing, International Access via Cirrus), Cash Management (Business Online Banking), Total Relationship

Packages (Employer/Employee Packages), Primevest Investment Services (401k Retirement Fund)

ACCOUNT NATURE:
- General Operating Account (interest bearing at 2%, capped at $250,000) attached to a Time Deposit On Account (interest bearing at 4.5%, excess of $250,000)

- Payroll Disbursement Account
- 401(k) Retirement Fund

OTHERS:
- Merchant & POS services accepting VISA, Mastercard, JCB, Diner's & BOG debit cards
- Corporate credit cards
- Total Relationship Package - LSG employees enjoy $0 balance requirement to establish account, minimum fees & charges, interest bearing checking accounts

- Soon to establish Cash Management System

If any further information needed, please do not hesitate to call me.

Best regards...Michelle


----- Original Message -----
**From:** MICHAEL LUK <mailto:MICHAEL.LUK@LSGSKYCHEFS.COM.HK>
**To:** PORNNEE KANTIPAKORN <mailto:PORNNEE.K@SIAMFLIGHT.COM> ;
MS. MICHELLE RAMOS <mailto:MDRamos@LSGSkychefsGuam.com>
**Sent:** Tuesday, February 27, 2001 8:33 PM
**Subject:** Bank details


Dear Michelle & Pornnee,

I would like to have detailed information of all bankers for our units in Guam/Saipan & Bangkok (end of this week):

Guam/Saipan/Bangkok

Bankers' name:
Banking Facilities offered: O/D facility, Loan facility, Bank guarantee etc.
Account Nature: Normal disbursement accounts/Loan accounts/Deposit accounts
Terms: Interest /commission rate, loan period, repayment mode etc.
Others: if any

I need such information for preparing presentation foils for the visit of SVP-Finance from LSG Holding AG next week.

Thanks a lot,

**Michael Luk**

## Michelle D. Ramos - Finance & Administration Manager

**From:** "MICHAEL LUK" <MICHAEL.LUK@LSGSKYCHEFS.COM.HK>
**To:** "EDDY YUNG" <EDDY.YUNG@LSGSKYCHEFS.COM.HK>; "KELLY LAU"
<KELLY.LAU@LSGSKYCHEFS.COM.HK>; "STEPHEN YAU"
<STEPHEN.YAU@LSGSKYCHEFS.COM.HK>; "GASTROPRIMO - KENNY LAW"
<KENNY.LAW@LSGSKYCHEFS.COM.HK>; "PORNNEE KANTIPAKORN"
<PORNNEE.K@SIAMFLIGHT.COM>; <cy@SIAMFLIGHT.COM>;
<mdramos@lsgskychefsguam.com>
**Cc:** "NORBERT MOOG" <NORBERT.MOOG@LSGSKYCHEFS.COM.HK>; "MICHAEL
MALCHARTZECK" <MICHAEL.M@SIAMFLIGHT.COM>; "FRITZ PANDALITSCHKA"
<Fritz.Pandalitschka@LSGSKYCHEFS.COM.HK>
**Sent:** Friday, September 28, 2001 11:15 AM
**Attach:** CAPEX.xls
**Subject:** FW: Additional Information Needed for Budget Re-Work 2002 - 2004
Dear all,


Please fill in the additional information for Capital Expd. (re: 3 budget scenarios) requested from headquarter.


Deadline: next Thursday (4/10/2001)


Best Regards,


Michael Luk


-----Original Message-----
**From:** DENNIS.BRICE@DLH.DE [SMTP:DENNIS.BRICE@DLH.DE]

**Sent:** Friday, September 28, 2001 1:08 AM

**To:** REINHARD.LIESER@DLH.DE; LARS.SCHMID@DLH.DE; HANS.JUTZ@DLH.DE; MICHAEL.BLEDOW@DLH.DE; FRANK.BORST@DLH.DE;
michaelluk@lsgskychefs.com.hk; RAMZY.RUNGE@DLH.DE; CORNELIA.MOCHE@DLH.DE; MICHAEL.BAUER.LSF@DLH.DE; gumzf10@ite.net;
FRAZFQADMIN@DLH.DE; ANNEGRET.PETERS@DLH.DE; anders.wallsten@topflight.se; george.diamondis@lsgza.co.za; smaybury@aol.com;
scope@horlsgskychefs.co.uk; joaquin.fincias@lsgskychefs-bcn.com; psalzenstein@lsgskychefs.fr; ralf.pospisil@lsgzrh.com; athies@lsg-demontis.it;
anders.blomkvist@lsg-skychefs.com; jreynold@lsg-usa.com; tlee@skychefs.com; deubanks@skychefs.com; mmoyer@skychefs.com


**Cc:** HANNS.RECH@DLH.DE; PTolbert@Skychefs.com; ULRICH.BROESCHER@DLH.DE; HORST.BUELTMANN@DLH.DE;
ROLAND.LABITZKE@DLH.DE; NORBERT.SCHMITT@DLH.DE; FRANZ-BERND.SCHRAGE@DLH.DE; HKCheung@lsgskychefs.com.hk;
MAX.PADBERG@DLH.DE; ROLAND.WAGNER@DLH.DE; FRANK.ALTMANN@DLH.DE; Morten.andreasen@topflight.se; PTolbert@Skychefs.com;
PATRICIA.VIVANCO@DLH.DE; RAMZY.RUNGE@DLH.DE; jreynold@lsg-usa.com; ZL1.DFW@DLH.DE; REINHARD.LIESER@DLH.DE;
RAINER.BAUER@DLH.DE; DENNIS.BRICE@DLH.DE; MATTHEW.FAIRBROOK@DLH.DE; CLEMENS.KUECHLER@DLH.DE;
KERSTIN.WAGNER@DLH.DE

**Subject:** Additional Information Needed for Budget Re-Work 2002 - 2004
**Importance:** High


Ladies and Gentlemen,


We have been asked to provide some additional information about the planned
capital expenditures. Please find attached a spreadsheet for this. This
spreadsheet has three pages to it. One of them for each of the scenarios.
Fill out each page of this spreadsheet according to the assumptions in the
first three spreadsheets I sent you on Monday the 24th. There are a few
things to keep in mind while filling out this sheet.


1) Only fill in the BLUE cells

10/5/01

# LSG Lufthansa Service

## PROFIT & LOSS PLAN

| US DOLLARS (000'S) | ACTUAL 2000 | INDEX | FORECAST 2001 | INDEX | BUDGET 2002 | INDEX | MRP 2003 | INDEX | MRP 2004 | INDEX | MRP 2005 | INDEX | MRP 2006 | INDEX |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **REVENUES:** | | | | | | | | | | | | | | |
| • SALES (DLH) | 4,721 | 0.0% | 4,028 | 0.0% | 3,134 | 0.0% | 3,344 | 0.0% | 3,568 | 0.0% | | 0.0% | | 0.0% |
| • SALES (CUSTOMER) | | 100.0% | | 85.3% | | 66.3% | | 68.9% | | 70.9% | | 75.5% | 3,815 | 80.8% |
| • SALES (CUSTOMER INC) | | 100.0% | | 0.0% | | 0.0% | | 0.0% | | 0.0% | | 198.4% | 1,693 | 234.1% |
| • OTHER SALES | 711 | 100.0% | 661 | 92.9% | 464 | 64.4% | 980 | 137.5% | 1,178 | 165.3% | 1,411 | 198.4% | 1,693 | 234.1% |
| • NET SALES | 5,432 | 100.0% | 4,687 | 86.3% | 3,619 | 66.6% | 4,118 | 75.8% | 4,520 | 83.2% | 4,979 | 91.6% | 5,508 | 101.4% |
| • RENTAL INCOME | | 0.0% | | 0.0% | | 0.0% | | 0.0% | | 0.0% | | 0.0% | | 0.0% |
| • OTHER OPERATING INC | 38 | 100.0% | 28 | 84.6% | 28 | 73.3% | | 0.0% | | 0.0% | | 0.0% | | 0.0% |
| • COST OF SALES | 718 | 100.0% | 935 | 130.2% | 940 | 130.2% | 841 | 117.1% | 927 | 129.0% | 1,023 | 142.7% | 1,139 | 158.5% |
| **A. GROSS PROFIT** | 4,752 | 100.0% | 3,744 | 79.6% | 2,701 | 54.1% | 3,276 | 68.6% | 3,543 | 74.6% | 3,903 | 82.2% | 4,369 | 91.9% |
| **COSTS:** | | | | | | | | | | | | | | |
| • PERSONNEL EXP-OP. | 482 | 100.0% | 498 | 103.3% | 444 | 93.0% | 502 | 104.2% | 559 | 116.0% | 583 | 121.0% | 625 | 129.5% |
| • -ADMIN. | 96 | 100.0% | 76 | 78.6% | 79 | 82.0% | 81 | 84.4% | 83 | 86.0% | 84 | 88.1% | 86 | 89.4% |
| • -AIRPORT FEE | | 100.0% | | 0.0% | | 0.0% | | 0.0% | | 0.0% | | 0.0% | | 0.0% |
| • TRAVEL/INDIRECT PERS EXP | 177 | 100.0% | 184 | 103.7% | 79 | 42.4% | 83 | 45.9% | 80 | 45.2% | 82 | 45.6% | 85 | 48.4% |
| • ADVERTISING | 4 | 100.0% | 3 | 69.1% | 2 | 51.7% | 2 | 61.7% | 2 | 61.7% | 2 | 61.7% | 2 | 61.7% |
| • RENTAL | 676 | 100.0% | 542 | 80.2% | 444 | 66.0% | 647 | 100.0% | 679 | 100.0% | 641 | 94.8% | 713 | 105.1% |
| • MAINTENANCE | 68 | 100.0% | 62 | 92.7% | 68 | 103.0% | 69 | 103.0% | 74 | 109.3% | 74 | 109.3% | 77 | 122.7% |
| • SERVICES | 1 | 100.0% | 4 | 2000.0% | 43 | 2000.0% | 43 | 3300.5% | 43 | 3333.3% | 43 | 3325.5% | 43 | 3333.3% |
| • EDP | 28 | 100.0% | 4 | 77.2% | 24 | 98.4% | 29 | 101.8% | 28 | 106.3% | 28 | 106.3% | 29 | 117.0% |
| • CONSULT/AUDIT/LEGAL FEE | 25 | 100.0% | 4 | 88.9% | 43 | 56.4% | 43 | 87.8% | 43 | 73.8% | 43 | 81.3% | 43 | 80.6% |
| • OTHER CURRENT EXP | 1,026 | 100.0% | 912 | 88.9% | 579 | 56.4% | 696 | 67.8% | 734 | 73.8% | 833 | 81.3% | 926 | 80.6% |
| **B. EBITDOST** | 2,200 | 100.0% | 1,437 | 65.3% | 966 | 43.2% | 1,227 | 55.8% | 1,344 | 62.9% | 1,575 | 71.6% | 1,781 | 81.0% |
| **C. EBIDST** | 744 | 100.0% | 234 | 85.9% | 225 | 82.5% | 224 | 91.7% | 214 | 87.4% | 144 | 58.9% | 130 | 53.3% |
| DEPRECIATION | 1,956 | 100.0% | 1,203 | 61.5% | 789 | 39.3% | 1,003 | 51.3% | 1,170 | 59.8% | 1,431 | 73.2% | 1,651 | 84.4% |
| **D. (EBIDST/OPERATIONS)** | | | | | | | | | | | | | | |
| • INTEREST & DIVIDEND | | 0.0% | | 0.0% | | 0.0% | | 0.0% | | 0.0% | | 0.0% | | 0.0% |
| • DIVIDEND FROM AT EQUITY | | 0.0% | | 0.0% | | 0.0% | | 0.0% | | 0.0% | | 0.0% | | 0.0% |
| • DIVIDEND/OTHER PART. | 392 | 100.0% | 392 | 84.1% | 392 | 98.1% | 392 | 84.1% | 392 | 84.1% | 392 | 84.1% | 392 | 84.1% |
| • INTEREST & DIVIDEND | | 0.0% | | 0.0% | | 0.0% | | 0.0% | | 0.0% | | 0.0% | | 0.0% |
| **D. (REALLY ORD.OPERATIONS)** | 2,355 | 100.0% | 1,594 | 67.7% | 1,161 | 49.3% | 1,395 | 59.2% | 1,562 | 66.3% | 1,923 | 77.4% | 2,043 | 86.7% |
| • EXTRA ORDINARY INCOME | 35 | 100.0% | 40 | 115.4% | 35 | 25.9% | 35 | 25.9% | 35 | 25.9% | 35 | 25.9% | 35 | 25.9% |
| • EXTRA ORDINARY EXP | | 100.0% | | 0.0% | | 0.0% | | 0.0% | | 0.0% | | 0.0% | | 0.0% |
| **E. PROFIT BEFORE TAX** | 2,390 | 100.0% | 1,635 | 64.4% | 1,170 | 48.9% | 1,404 | 58.7% | 1,571 | 65.7% | 1,832 | 76.7% | 2,052 | 85.8% |
| TAXATION | 326 | 100.0% | 240 | 73.5% | 217 | 66.5% | 249 | 76.5% | 277 | 84.9% | 321 | 98.5% | 356 | 109.3% |
| **PROFIT AFTER TAX** | 2,064 | 100.0% | 1,395 | 67.6% | 953 | 46.2% | 1,154 | 55.9% | 1,294 | 62.7% | 1,511 | 73.2% | 1,695 | 82.1% |
| **LSG SHARE OF PROFIT AFTER TAX** | 2,390 | 100.0% | 1,635 | 64.4% | 1,170 | 44.9% | 1,404 | 59.2% | 1,571 | 66.7% | 1,832 | 78.7% | 2,052 | 85.9% |
| PROFIT AFTER TAX — RATIO | 44.0% | | 34.9% | | 34.2% | | 34.1% | | 34.8% | | 36.8% | | 37.2% | |
| OPERATION PROFIT BEF.TAX — RATIO | 40.5% | | 30.7% | | 28.1% | | 30.6% | | 31.6% | | 31.6% | | 32.3% | |
| LABOR COST — RATIO | 10.6% | | 12.2% | | 15.6% | | 14.2% | | 14.2% | | 13.4% | | 12.6% | |
| COST OF SALES — RATIO | 13.2% | | 20.0% | | 20.1% | | 20.4% | | 20.5% | | 20.6% | | 20.7% | |

2) Please describe each project in detail under the Description column

3) Always classify each project according to the table at the bottom of the spreadsheet. If you use 6 Other, Please explain in detail at the bottom of the spreadsheet, what the expenditure is for.

4) Feel free to add any comments needed to the bottom of the spreadsheet to further explain the expenditure

5) Add rows if you need more

6) Make sure you put your company name in the top left corner

This sheet is also due on October 8, 2001 along with the files I previously sent. Please contact me should you have any questions.

Thank you very much for your cooperation,

Best regards,



Rainer Franz Bauer
Senior Vice President
Corporate Controlling

_____
LSG Lufthansa Service Holding AG
DFW ZL1
5605 N. MacArthur Blvd.
Suite 340
Irving TX 75038
USA
Phone 001 972 582-3030
Fax     001 972 582-3029
Mobile 001 469 371-4100
          +49 172 611 6431
E-mail: rainer.bauer@dlh.de

 <<CAPEX.xls>>
<<CAPEX.xls>>

10/5/01

| PERIOD | JAN FLASH | FEB FLASH | MAR FLASH | APR FLASH | MAY FLASH | JUN FLASH | JUL FLASH | AUG FLASH | SEP FCST | OCT FCST | NOV FCST | DEC FCST | FORECAST 2001 | INDEX % | BUDGET 2001 | INDEX % | ACTUAL 2000 | INDEX % |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **TOTAL OPERATIONS** | | | | | | | | | | | | | | | | | | |
| TOTAL MEALS SERVED | 37,457 | 40,441 | 34,422 | 34,462 | 30,060 | 30,723 | 31,752 | 37,429 | 25,196 | 16,734 | 17,838 | 16,828 | 358,304 | 80.62% | 439,812 | 100.00% | 364,351 | 100.00% |
| TOTAL FLIGHTS SERVICED | 157 | 133 | 131 | 129 | 121 | 111 | 116 | 130 | 113 | 124 | 120 | 124 | 1,509 | 88.30% | 1,709 | 100.00% | 1,707 | 99.88% |
| **SALES:** | | | | | | | | | | | | | | | | | | |
| CONTINENTAL MICRONESIA | 502 | 0 | (502) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% | 15,502 | 100.00% | 13,427 | 86.69% |
| JAPAN AIRLINES | 197,025 | 197,665 | 219,043 | 206,694 | 205,310 | 208,138 | 195,352 | 209,729 | 180,659 | 130,918 | 130,616 | 125,217 | 2,197,366 | 101.37% | 2,167,523 | 100.00% | 2,564,454 | 118.33% |
| NORTHWEST AIRLINES | 97,513 | 92,638 | 90,820 | 85,519 | 80,403 | 84,157 | 98,738 | 98,689 | 60,393 | 54,540 | 54,417 | 54,777 | 952,603 | 91.37% | 1,042,577 | 100.00% | 1,009,148 | 114.33% |
| ASIANA | 109,908 | 90,388 | 66,388 | 69,508 | 75,973 | 55,269 | 91,599 | 91,599 | 52,606 | 51,778 | 49,162 | 48,288 | 835,976 | 69.22% | 1,207,748 | 100.00% | 1,023,377 | 76.37% |
| MANDARIN AIRLINES | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% | 0 | 100.00% | 0 | 0.00% |
| OTHERS | 8,296 | 9,532 | 7,869 | 5,024 | 65,661 | 98,081 | 98,081 | 91,599 | 52,606 | 49,437 | 50,233 | 50,132 | 30,711 | 26.12% | 117,578 | 100.00% | 93,083 | 79.17% |
| TOTAL AIRLINE SALES | 413,233 | 383,700 | 383,618 | 373,216 | 361,696 | 347,564 | 369,215 | 400,217 | 293,680 | 227,235 | 234,195 | 228,282 | 4,025,821 | 81.10% | 4,546,196 | 100.00% | 4,720,989 | 103.84% |
| RESTAURANT SALES | 65,540 | 64,680 | 74,277 | 81,207 | 63,274 | 68,584 | 70,535 | 76,900 | 29,380 | 21,046 | 20,42 | 24,875 | 660,082 | 71.61% | 925,218 | 100.00% | 711,121 | 76.88% |
| PARTY SERVICE | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | #DIV/0! | 0 | 100.00% | 0 | #DIV/0! |
| MANAGEMENT INCOME | 3,335 | 3,068 | 3,350 | 3,404 | 4,075 | 2,653 | 2,934 | 3,159 | 2,000 | 1,500 | 1,500 | 1,500 | 32,473 | 85.66% | 37,903 | 100.00% | 38,393 | 101.29% |
| REVENUES | 482,108 | 461,388 | 461,245 | 457,827 | 430,031 | 418,802 | 442,984 | 480,275 | 328,060 | 248,783 | 256,115 | 254,657 | 4,718,975 | 85.66% | 5,509,217 | 100.00% | 5,470,503 | 96.30% |
| COST OF GOODS SOLD | 95,524 | 93,058 | 91,578 | 80,018 | 84,758 | 82,850 | 95,714 | 95,345 | 49,000 | 50,233 | 50,132 | 50,132 | 935,453 | 87.61% | 1,067,731 | 100.00% | 718,701 | 67.31% |
| PERSONNEL COSTS | 96,247 | 94,931 | 92,760 | 72,000 | 65,661 | 94,199 | 98,081 | 97,577 | 65,345 | 49,437 | 50,233 | 50,132 | 884,290 | 85.70% | 824,380 | 100.00% | 755,381 | 91.63% |
| CONTRIBUTION 1 | 294,349 | 280,722 | 273,941 | 274,091 | 250,940 | 264,412 | 268,130 | 268,130 | 183,806 | 138,902 | 142,903 | 141,526 | 2,787,532 | 85.00% | 3,263,380 | 100.00% | 3,724,678 | 113.44% |
| BUILDING COST | 79,161 | 75,943 | 76,066 | 75,713 | 67,936 | 66,698 | 70,277 | 76,011 | 53,062 | 42,010 | 42,885 | 43,010 | 768,792 | 82.20% | 935,255 | 100.00% | 893,423 | 95.53% |
| MAINTENANCE | 6,918 | 6,530 | 6,482 | 6,329 | 4,545 | 4,362 | 4,587 | 4,909 | 4,800 | 4,269 | 4,377 | 4,285 | 62,463 | 81.00% | 77,151 | 100.00% | 62,451 | 80.95% |
| SERVICES | 2,981 | 2,581 | 2,581 | 2,581 | 2,423 | 2,423 | 2,423 | 2,423 | 2,423 | 2,423 | 2,423 | 2,425 | 29,978 | 83.50% | 35,903 | 100.00% | 58,312 | 71.11% |
| MISCELLANEOUS SUPPLIES | 5,734 | 5,675 | 5,845 | 5,614 | 5,096 | 5,074 | 5,107 | 4,993 | 3,394 | 3,594 | 3,404 | 3,395 | 58,285 | 77.70% | 75,013 | 100.00% | 58,312 | 71.11% |
| OTHER CONTROLLABLES | 17,608 | 17,778 | 18,756 | 15,677 | 15,677 | 16,937 | 16,320 | 14,170 | 14,170 | 13,787 | 13,863 | 13,699 | 191,946 | 93.33% | 205,602 | 100.00% | 187,065 | 90.88% |
| FIX COST | 112,001 | 108,608 | 109,550 | 108,461 | 95,944 | 94,495 | 98,520 | 104,817 | 79,446 | 65,983 | 66,953 | 66,813 | 1,111,463 | 83.53% | 1,328,884 | 100.00% | 1,824,629 | 82.10% |
| CONTRIBUTION 2 | 182,367 | 172,185 | 164,441 | 165,619 | 154,451 | 166,682 | 164,817 | 104,448 | 73,019 | 73,787 | 75,860 | 74,713 | 1,679,639 | 85.90% | 1,964,396 | 100.00% | 2,499,847 | 127.61% |
| DEPRECIATION/AMORTIZATION | 20,636 | 20,632 | 20,631 | 20,744 | 20,493 | 20,493 | 20,231 | 18,745 | 18,141 | 17,778 | 17,775 | 17,770 | 234,291 | 82.72% | 252,700 | 100.00% | 244,278 | 96.67% |
| **GROSS OPERATING PROFIT** | 161,751 | 151,553 | 143,560 | 144,875 | 140,928 | 145,668 | 144,587 | 84,307 | 54,241 | 55,241 | 58,174 | 56,942 | 1,445,348 | 84.95% | 1,701,696 | 100.00% | 2,285,570 | 132.55% |
| GAIN/(LOSS) ON DISPOSITIONS | | | | | | | | | | | | | | #DIV/0! | | 100.00% | | #DIV/0! |
| NET INTEREST INC(EXP) | 26,658 | 31,101 | 34,455 | 34,311 | 35,659 | 43,176 | 29,830 | 29,159 | 26,658 | 27,958 | 50,055 | 30,855 | 391,367 | 105.91% | 369,722 | 100.00% | 399,273 | 107.99% |
| OTHER NON-OP INCOME(LOSS) | 3,000 | 3,000 | 3,289 | 18 | 11,065 | 3,300 | 3,300 | 3,300 | 3,300 | 3,300 | 3,300 | 3,300 | 40,201 | 111.67% | 36,000 | 100.00% | 34,522 | 98.74% |
| **PRE-TAX PROFIT** | 191,409 | 185,654 | 174,204 | 179,204 | 187,646 | 192,229 | 187,916 | 116,746 | 85,199 | 85,199 | 90,400 | 90,899 | 1,877,316 | 91.38% | 2,107,419 | 100.00% | 2,683,362 | 128.33% |
| INCOME TAX EXPENSE | 24,499 | 23,723 | 22,907 | 22,256 | 24,553 | 24,553 | 25,674 | 14,937 | 10,275 | 10,275 | 10,901 | 11,138 | 238,527 | 91.38% | 282,177 | 100.00% | 328,000 | 124.58% |
| **AFTER TAX PROFIT** | 24,355 | 23,847 | 23,752 | 23,559 | 22,992 | 22,151 | 24,423 | 24,423 | 12,739 | 12,739 | 13,156 | 13,158 | 242,777 | 81.30% | 281,442 | 100.00% | 299,016 | 104.52% |
| **AFTER TAX PROFIT** | 142,364 | 138,284 | 135,674 | 131,610 | 144,228 | 140,366 | 147,366 | 87,148 | 62,164 | 62,168 | 65,378 | 66,580 | 1,395,012 | 89.21% | 1,563,799 | 100.00% | 2,056,351 | 131.99% |
| **RATIOS** | | | | | | | | | | | | | | | | | | |
| COST OF SALES | 19.95% | 20.30% | 20.00% | 19.50% | 19.94% | 20.06% | 20.06% | 20.23% | 19.75% | 19.73% | 19.73% | 19.90% | #DIV/0! | | 18.51% | 100.00% | 13.23% | |
| LABOR COST | 14.25% | 14.10% | 15.68% | 15.68% | 15.45% | 15.48% | 15.21% | 16.47% | 19.11% | 20.65% | 22.65% | 18.84% | 18.17% | | 18.19% | 100.00% | 13.91% | |
| GROSS OPERATING PROFIT | 33.73% | 33.07% | 31.56% | 31.68% | 33.18% | 32.57% | 34.49% | 26.72% | 25.25% | 22.25% | 22.65% | 22.49% | 30.84% | | 31.10% | 100.00% | 41.52% | |
| PRE-TAX PROFIT | 39.93% | 40.51% | 39.82% | 39.44% | 41.55% | 42.73% | 41.44% | 36.76% | 34.32% | 34.32% | 35.12% | 35.91% | 40.00% | | 38.52% | 100.00% | 48.61% | |

LSG CHEFS
LSG Lufthansa Service Saipan, Inc.

z:\saipan\fc\saipan\MW
GUM 2x-10

# Michelle D. Ramos - Finance & Administration Manager

**From:** "Michelle D. Ramos - Finance & Administration Manager"
**To:** "MICHAEL LUK" <MICHAEL.LUK@LSGSKYCHEFS.COM.HK>
**Cc:** "Fritz Pandelitschka" <FPandalitschka@LSgSkyChefsGuam.com>
**Sent:** Monday, September 17, 2001 5:54 PM
**Attach:** opn-excellence.xls
**Subject:** Re: Operational Excellence Data Request
Dear Michael:

Attached is the worksheet requested. Both GUM & SPN are on 1 file, separate worksheets.

Unfortunately, the GUM YTD 1999 payroll register could not be located before deadline. The worksheet was filled out with information available.

Brgds......Michelle


----- Original Message -----
**From:** MICHAEL LUK
**To:** mdramos@lsgskychefsguam.com
**Sent:** Thursday, September 13, 2001 9:17 PM
**Subject:** Operational Excellence Data Request

Dear all,

As requested by the Operational Excellence Team, we need to provide our productivity data (1999-2002) to them by next Monday. Attached please find the captioned file for your data input (in yellow box).

Should you have further queries, please call me.

Thanks a lot,
<<opn-excellence.xls>>
**P.S. (Units required: Guam, Saipan, HKG, BKK)**

**Michael Luk**
**Director of Controlling & Finance**

_____
**LSG Lufthansa Service Asia Ltd.**
**HKG ZB1**
**1704-1706 Island Place Tower**
**510 King's Road, North Point**
**Hong Kong**
**Phone +852 29636336**
**Fax +852 27742874**
**E-mail : michael.luk@lsgskychefs.com.hk**


*************************************************************************************
CONFIDENTIALITY NOTICE: This transmission and the information it contains, including any attachment, is intended solely for the named addressee(s). It is confidential and may contain legally privileged information. The unauthorised use, disclosure or copying of this transmission or such information is strictly prohibited. If you are not the intended recipient, and are in possession of this transmission (or any copy) without the consent of any named addressee, please immediately notify us by reply e-mail and destroy the original transmission and

10/5/01

LSG SKY CHEFS
LSG Lufthansa Service Saipan, Inc.



| PERIOD COMBINED | MRP 2004 | MRP 2005 | MRP 2006 |
|---|---|---|---|
| PERSONNEL COSTS | | | |
| OPERATIONS | | | |
| REGULAR | 498,448 | 520,004 | 557,256 |
| OVERTIME | 0 | 0 | 0 |
| KITCHEN - REGULAR | 0 | 0 | 0 |
| KITCHEN - OVERTIME | 0 | 0 | 0 |
| BONUS | 7,143 | 7,250 | 7,359 |
| TRAVEL BENEFIT | 4,100 | 4,100 | 4,100 |
| PENSION/PROVIDENT | 14,953 | 15,600 | 16,718 |
| PAYROLL TAXES | 38,678 | 40,335 | 43,193 |
| STAFF MEALS | 21,165 | 21,755 | 22,935 |
| UNIFORMS | 4,245 | 4,457 | 4,806 |
| MEDICAL | 20,489 | 22,080 | 24,373 |
| TRAINING/RECRUITMENT | 6,100 | 6,200 | 6,400 |
| EMPLOYEES WELFARE FUND | 12,000 | 12,000 | 12,000 |
| CONTRACT LABOR | (20,000) | (20,000) | (20,000) |
| SUB-TOTAL | 607,321 | 633,781 | 679,139 |
| ADMINISTRATION | | | |
| SALARY | 70,877 | 71,909 | 72,956 |
| BONUS | 4,464 | 4,531 | 4,599 |
| PENSION/PROVIDENT | 2,126 | 2,157 | 2,189 |
| MEDICAL | 2,028 | 2,129 | 2,236 |
| STAFF RESIDENCE | 30,000 | 30,000 | 30,000 |
| PAYROLL TAXES | 5,764 | 5,848 | 5,933 |
| | 0 | 0 | 0 |
| SUB-TOTAL | 115,259 | 116,574 | 117,913 |
| TOTAL PERSONNEL COSTS | 722,580 | 750,355 | 797,052 |
| BUILDING COST | | | |
| ELECTRICITY | 109,204 | 123,059 | 138,967 |
| WATER | 13,060 | 14,601 | 16,383 |
| COOKING GAS | 33,013 | 36,145 | 39,592 |
| PEST CONTROL | 3,428 | 3,550 | 3,762 |
| PROPERTY TAX | 0 | 0 | 0 |
| REFUSE (GARBAGE DISPOSAL) | 16,357 | 17,167 | 18,018 |
| CONCESSION FEE (AIRPORT) | 176,357 | 211,629 | 253,954 |
| RENT | 402,518 | 429,339 | 459,024 |
| TOTAL BUILDING COSTS | 753,934 | 835,529 | 929,670 |
| MAINTENANCE | | | |
| MOTOR MAINTENANCE | 15,296 | 15,974 | 16,706 |
| MOTOR FUEL | 13,712 | 14,383 | 15,102 |
| REPAIRS & MAINTENANCE | 42,179 | 43,761 | 45,469 |
| | 0 | 0 | 0 |
| TOTAL MAINTENANCE COSTS | 71,187 | 74,118 | 77,278 |

Z:\kepyan/Fastserv/COMBINED
G&M 2F 10



Page 14

10:50:01
12:24 PM

**LSG Sky Chefs**　　　　SPN
**Unsurpassed Operational Excellence**
**Productivity Data - Process Improvement**

| | 1999 | 2000 | % chg | 2001 proj | % chg | 2002 pln | % chg |
|---|---|---|---|---|---|---|---|
| Meals (annual) | 404365 | 364351 | -9.9% | 407525 | 11.8% | 398621 | -2.2% |
| Flights (annual) | 1492 | 1707 | 14.4% | 1516 | -11.2% | 1460 | -3.7% |
| **KITCHEN** | | | | | | | |
| Avg headcounts-kitchen | 15 | 16 | 6.7% | 14 | -12.5% | 14 | 0.0% |
| Ttl working hrs-kitchen (incl. O/T) | 30686 | 32817 | 6.9% | 26492 | -19.3% | 26432 | -0.2% |
| Total labor costs-kitchen ($'000) | 145 | 173 | 19.3% | 155 | -10.6% | 157 | 1.3% |
| Meals per headcount | 73.9 | 62.4 | -15.5% | 79.8 | 27.8% | 78.0 | -2.2% |
| Meals per working hrs | 13.2 | 11.1 | -15.7% | 15.4 | 38.6% | 15.1 | -2.0% |
| Labor costs per meal ($) | 0.36 | 0.48 | 32.4% | 0.38 | -20.1% | 0.39 | 3.6% |
| **OPERATION** | | | | | | | |
| Avg headcounts-opn | 7 | 9 | 28.6% | 8 | -11.1% | 8 | 0.0% |
| Ttl working hrs-opn. (incl. O/T) | 14220 | 16995 | 19.5% | 15370 | -9.6% | 15104 | -1.7% |
| Total labor costs-opn. ($'000) | 61 | 94 | 53.6% | 82 | -12.7% | 82 | 0.0% |
| Headcounts per flight | 1.7 | 1.9 | 12.4% | 1.9 | 0.1% | 2.0 | 8.8% |
| Working hrs per flight | 9.5 | 10.0 | 4.5% | 10.1 | 1.8% | 10.3 | 2.0% |
| Labor costs per flts ($) | 40.97 | 55.02 | 34.3% | 54.09 | -1.7% | 56.16 | 3.8% |
| **FOOD COSTS REDUCTION** | | | | | | | |
| Ttl food costs ($'000) | 986 | 1080 | 9.6% | 1050 | -2.8% | 1028 | -2.1% |
| Food costs per meal | 2.44 | 2.97 | 21.6% | 2.58 | -13.1% | 2.58 | 0.1% |
| **INVENTORY REDUCTION** | | | | | | | |
| Avg. Inventory costs ($'000) | 60 | 22 | -63.3% | 25 | 13.6% | 25 | 0.0% |
| Inventory Turnover (days) | 22 | 7 | -66.5% | 9 | 16.9% | 9 | 2.1% |

LSG LUFTHANSA SERVICE SAIPAN, INC
Company Number: 211
Currency: US$

| | 2001 MAR Flash | 2001 JUN Flash | 2001 JUL Flash | 2001 SEP Flash | 2001 DEC Forecast |
|---|---|---|---|---|---|
| **Buildings on Third Party Real E** | | | | | |
| Bal as 1/1 | 3,643,857 | 3,643,857 | 3,643,857 | 3,643,857 | 3,643,857 |
| Add | . | . | . | . | . |
| Disposal | . | . | . | . | . |
| Transfer | . | 99,747 | 99,747 | 99,747 | 99,747 |
| Bal as end | 3,643,857 | 3,743,604 | 3,743,604 | 3,743,604 | 3,743,604 |
| **Depreciation** | | | | | |
| Bal as 1/1 | 840,566 | 840,566 | 840,566 | 840,566 | 840,566 |
| Add | 26,576 | 54,442 | 62,236 | 82,758 | 103,823 |
| Disposal | . | . | . | . | . |
| transfer | . | . | . | . | . |
| Bal as end | 867,142 | 895,009 | 902,803 | 923,324 | 944,389 |
| Net book value | 2,776,715 | 2,848,596 | 2,840,802 | 2,820,280 | 2,799,215 |
| | | | | | |
| **Technical Plants & Machinery** | | | | | |
| Bal as 1/1 | 572,120 | 572,120 | 572,120 | 572,120 | 572,120 |
| Add | 2,734 | 4,431 | 4,431 | 4,431 | 4,431 |
| Disposal | . | 20,319 | 20,319 | 20,319 | 20,319 |
| Transfer | . | 31,511 | 31,511 | 31,511 | 31,511 |
| Bal as end | 574,854 | 587,743 | 587,743 | 587,743 | 587,743 |
| **Depreciation** | | | | | |
| Bal as 1/1 | 260,688 | 260,688 | 260,688 | 260,688 | 260,688 |
| Add | 21,810 | 44,244 | 50,578 | 66,732 | 83,718 |
| Disposal | . | 9,434 | 9,434 | 9,434 | 9,434 |
| transfer | . | . | . | . | . |
| Bal as end | 282,498 | 295,498 | 301,832 | 317,986 | 334,972 |
| Net book value | 292,357 | 292,246 | 285,912 | 269,757 | 252,771 |
| | | | | | |
| **Factory & Office Equipment** | | | | | |
| Bal as 1/1 | 85,489 | 85,489 | 85,489 | 85,489 | 85,489 |
| Add | 1,350 | 4,893 | 4,893 | 6,015 | 6,015 |
| Disposal | 1,197 | 1,197 | 1,197 | 1,197 | 1,197 |
| Transfer | . | . | . | . | . |
| Bal as end | 85,642 | 89,185 | 89,185 | 90,307 | 90,307 |
| **Depreciation** | | | | | |
| Bal as 1/1 | 45,171 | 45,171 | 45,171 | 45,171 | 45,171 |
| Add | 4,290 | 8,664 | 9,904 | 13,123 | 16,463 |
| Disposal | 1,197 | 1,197 | 1,197 | 1,197 | 1,197 |
| transfer | . | . | . | . | . |
| Bal as end | 48,264 | 52,638 | 53,878 | 57,097 | 60,437 |
| Net book value | 37,378 | 36,547 | 35,306 | 33,211 | 29,871 |
| | | | | | |
| **Catering Trucks for Aircraft Loa** | | | | | |
| Bal as 1/1 | 377,082 | 377,082 | 377,082 | 377,082 | 377,082 |
| Add | . | . | . | . | . |
| Disposal | . | . | . | . | . |
| Transfer | . | . | . | . | . |
| Bal as end | 377,082 | 377,082 | 377,082 | 377,082 | 377,082 |
| **Depreciation** | | | | | |
| Bal as 1/1 | 293,283 | 293,283 | 293,283 | 293,283 | 293,283 |
| Add | 9,444 | 18,687 | 21,362 | 24,142 | 30,286 |
| Disposal | . | . | . | . | . |
| transfer | . | . | . | . | . |
| Bal as end | 302,727 | 311,970 | 314,645 | 317,425 | 323,569 |
| Net book value | 74,355 | 65,112 | 62,437 | 59,657 | 53,512 |
| | | | | | |
| **Assets under Construction** | | | | | |
| Bal as 1/1 | 28,939 | 28,939 | 28,939 | 28,939 | 28,939 |
| Add | 73,605 | 102,320 | 102,320 | 90,754 | 90,754 |
| Disposal | . | . | . | . | . |
| Transfer | . | 131,258 | 131,258 | 119,692 | 119,692 |
| Net book value | 102,543 | . | . | . | . |
| | | | | | |
| **FIXED ASSETS @ NBV** | 3,283,348 | 3,242,500 | 3,224,456 | 3,182,905 | 3,135,369 |
| | | | | | |
| C. I  Stocks | 27,474 | 24,855 | 26,461 | 26,138 | 20,053 |
| II.  Trade Receivables | 402,799 | 364,943 | 387,675 | 367,074 | 285,352 |
| III.  Receivables from group comp. (< | | | | | |
| - CAT SPN (210) | 3,676,060 | 3,674,857 | 3,674,528 | 3,577,135 | 3,703,607 |
| - LSG AG (199) | . | . | . | . | . |
| Receivables from group comp. (< | | | | | |
| - CAT SPN (210) | | | | | |
| IV.  Other receivables, other assets | 50,000 | 41,595 | 41,595 | 41,595 | 41,595 |
| VI.  Liquid Assets | 3,766,882 | 4134361 | 4235232 | 4504142 | 4793282 |
| D  Prepaid Expenses | 10,000 | 57,079 | 57,079 | 57,079 | 57,079 |
| Sum Assets | 11,216,563 | 11,540,189 | 11,647,026 | 11,856,069 | 12,036,337 |
| | | | | | |
| Checking Balance | 0 | 0 | 0 | 0 | 0 |

LSG Sky Chefs             GUM
**Unsurpassed Operational Excellence**
**Productivity Data - Process Improvement**

|  | 1999 | 2000 | % chg | 2001 proj | % chg | 2002 pln | % chg |
|---|---|---|---|---|---|---|---|
| Meals (annual) | 1911064 | 2028272 | 6.1% | 1962738 | -3.2% | 1846759 | -5.9% |
| Flights (annual) | 8581 | 9635 | 12.3% | 9556 | -0.8% | 8639 | -9.6% |

**KITCHEN**

|  | 1999 | 2000 | % chg | 2001 proj | % chg | 2002 pln | % chg |
|---|---|---|---|---|---|---|---|
| Avg headcounts-kitchen | 72 | 78 | 8.3% | 76 | -2.6% | 72 | -5.3% |
| Ttl working hrs-kitchen (incl. O/T) |  | 161934 | #DIV/0! | 143488 | -11.4% | 135936 | -5.3% |
| Total labor costs-kitchen ($'000) |  | 1408 | #DIV/0! | 1213 | -13.8% | 1149 | -5.3% |
| Meals per headcount | 72.7 | 71.2 | -2.0% | 70.8 | -0.7% | 70.3 | -0.7% |
| Meals per working hrs | #DIV/0! | 12.5 | #DIV/0! | 13.7 | 9.2% | 13.6 | -0.7% |
| Labor costs per meal ($) | 0.00 | 0.69 | #DIV/0! | 0.62 | -11.0% | 0.62 | 0.7% |

**OPERATION**

|  | 1999 | 2000 | % chg | 2001 proj | % chg | 2002 pln | % chg |
|---|---|---|---|---|---|---|---|
| Avg headcounts-opn | 52 | 49 | -5.8% | 46 | -6.1% | 42 | -8.7% |
| Ttl working hrs-opn. (incl. O/T) |  | 97415 | #DIV/0! | 86848 | -10.8% | 79296 | -8.7% |
| Total labor costs-opn. ($'000) |  | 993 | #DIV/0! | 872 | -12.2% | 793 | -9.1% |
| Headcounts per flight | 2.2 | 1.9 | -16.1% | 1.8 | -5.3% | 1.8 | 1.0% |
| Working hrs per flight | 0.0 | 10.1 | #DIV/0! | 9.1 | -10.1% | 9.2 | 1.0% |
| Labor costs per flts ($) | 0.00 | 103.07 | #DIV/0! | 91.25 | -11.5% | 91.79 | 0.6% |

**FOOD COSTS REDUCTION**

|  | 1999 | 2000 | % chg | 2001 proj | % chg | 2002 pln | % chg |
|---|---|---|---|---|---|---|---|
| Ttl food costs ($'000) | 4041 | 4136 | 2.4% | 3881 | -6.2% | 3689 | -4.9% |
| Food costs per meal | 2.11 | 2.04 | -3.6% | 1.98 | -3.0% | 2.00 | 1.0% |

**INVENTORY REDUCTION**

|  | 1999 | 2000 | % chg | 2001 proj | % chg | 2002 pln | % chg |
|---|---|---|---|---|---|---|---|
| Avg. Inventory costs ($'000) | 339 | 318 | -6.2% | 258 | -18.9% | 246 | -4.7% |
| Inventory Turnover (days) | 31 | 28 | -8.3% | 24 | -13.5% | 24 | 0.3% |

CUTOFF DATE      10/3/01

ASSUMPTIONS:     - BASED ON REVISED Y2002 "REALISTIC" BUDGET'S MEAL COUNTS & FLIGHT SCHEDULE
                 - ORDER OF LAYOFFS BASED ON DEPARTMENT, THEN JOB FUNCTION, THEN SENIORITY.

| EMPLOYEE NAME | DEPT | POSITION TITLE | EMP NO. | DOH | CUR. RATE | DOB | (A) SENIORITY | |
|---|---|---|---|---|---|---|---|---|
| DELA CRUZ, WENDELL | DO | DUTY OFFICER | 4077 | 10/27/94 | 11.90 | 06/14/72 | 6.94 | |
| RIATE, JOSEPH | DO | DUTY OFFICER | 3990 | 1/26/94 | 12.18 | 03/23/71 | 7.69 | |
| DATUIN, FELIPE | DO | DUTY OFFICER | 3891 | 2/15/93 | 13.07 | 01/12/62 | 8.64 | |
| GALLARDES, ELENA | DO | DUTY OFFICER | 1223 | 1/14/87 | 13.14 | 08/16/50 | 14.73 | |
| CAMACHO, RICARDO C. JR. | DO | SHIFT MANAGER | 726 | 5/24/82 | 17.27 | 02/10/57 | 19.38 | EARLY OUT |
| PACIENTE, CHARLIE | DO | SHIFT MANAGER | 83 | 5/02/77 | 18.70 | 08/12/56 | 24.44 | EARLY OUT |
| EAY, RUFINA | DO | DUTY OFFICER | 57 | 12/16/75 | 14.07 | 06/14/42 | 25.82 | EARLY OUT |

CURRENT HEADCOUNT    7.00
HEADCOUNT TO MEET    7.00
LAYOFF/RETIRE/RESIGN    0.00

| EMPLOYEE NAME | DEPT | POSITION TITLE | EMP NO. | DOH | CUR. RATE | DOB | (A) SENIORITY |
|---|---|---|---|---|---|---|---|
| GARRIDO, GARRICK | OPS | DELIVERY DRIVER | | 08/15/01 | 7.00 | | 0.13 |
| CRUZ, RONALD S. | OPS | DELIVERY DRIVER | 4739 | 07/18/01 | 7.50 | 07/30/66 | 0.21 |
| DUENAS, ROY | OPS | DELIVERY DRIVER | 4734 | 06/28/01 | 7.00 | 06/21/73 | 0.27 |
| SANTOS, JOSHUA L. | OPS | DELIVERY DRIVER | 4722 | 01/15/01 | 7.75 | 03/11/76 | 0.72 |
| PEREDO, MICHAEL A. | OPS | DELIVERY HELPER | 4720 | 01/10/01 | 7.00 | 12/28/81 | 0.73 |
| MUNOZ, MATTHEW D. | OPS | DELIVERY DRIVER | 4711 | 10/24/00 | 7.75 | 10/05/79 | 0.94 |
| LIBERATO, JOSE S. | OPS | DELIVERY DRIVER | 4710 | 10/24/00 | 7.75 | 06/19/47 | 0.94 |
| MALALIS, SANDY | OPS | DELIVERY DRIVER | 4691 | 08/05/00 | 7.75 | 07/12/72 | 1.16 |
| TAIJERON, JOAQUIN D. | OPS | DELIVERY DRIVER | 4681 | 07/21/00 | 8.00 | 12/21/76 | 1.20 |
| CRUZ, JAMES | OPS | DELIVERY DRIVER | 4669 | 07/12/00 | 8.00 | 02/13/70 | 1.23 |
| DEBIBAR, JAMES | OPS | DELIVERY DRIVER | 4645 | 5/16/00 | 8.00 | 05/23/79 | 1.38 |
| FRANCISCO, ANTHONY R. | OPS | DELIVERY DRIVER | 4647 | 05/15/00 | 8.00 | 09/15/63 | 1.39 |
| SANTOS, BRUCE J. | OPS | DELIVERY DRIVER | 4626 | 4/26/00 | 8.00 | 10/25/74 | 1.44 |
| PEREZ, MICHAEL S. | OPS | DELIVERY DRIVER | 4623 | 4/24/00 | 8.00 | 01/15/73 | 1.44 |
| ROBERT, DUANE R. | OPS | DELIVERY DRIVER | 4625 | 4/20/00 | 8.00 | 01/6/72 | 1.44 |
| GUMATAOTAO, JEFFORD G. | OPS | FLIGHT SERVICE SUPERVISOR | 4620 | 4/20/00 | 8.00 | 07/29/79 | 1.45 |
| MACAREG, MELVIN | OPS | DELIVERY DRIVER | 4613 | 3/30/00 | 8.00 | 11/24/70 | 1.45 |
| RAVELA, REYNALDO | OPS | DELIVERY DRIVER | 4608 | 03/20/00 | 7.75 | 01/30/67 | 1.51 |
| MENDIOLA, FRANKLIN P. | OPS | DELIVERY DRIVER | 4579 | 10/30/99 | 7.75 | 05/19/73 | 1.54 |
| AGUON, HEINZ P. | OPS | DELIVERY DRIVER | 4615 | 06/24/98 | 7.75 | 11/21/77 | 1.93 |
| DOAN, DUNG T. | OPS | DELIVERY DRIVER | 4542 | 04/23/98 | 8.00 | 12/21/67 | 3.28 |
| GUERRERO, RICHARD | OPS | DELIVERY HELPER | 4470 | 07/22/97 | 7.25 | 03/28/75 | 3.45 |
| GAMBOA, NOEL S. | OPS | FLIGHT SERVICE SUPERVISOR | 4345 | 4/17/96 | 9.57 | 11/06/61 | 4.20 |
| OKIYAMA, FRANK | OPS | FLIGHT SERVICE SUPERVISOR | 4333 | 4/8/96 | 9.50 | 04/12/69 | 5.47 |
| MENDIOLA, THOMAS | OPS | FLIGHT SERVICE SUPERVISOR | 4325 | 4/3/96 | 9.50 | 01/22/65 | 5.49 |
| AQUININGOC, LESTER | OPS | FLIGHT SERVICE SUPERVISOR | 4058 | 9/19/94 | 9.75 | 07/24/73 | 5.50 |
| LAGRIMAS, JONATHAN | OPS | DELIVERY DRIVER | 3766 | 9/24/92 | 8.67 | 03/17/74 | 7.04 |
| ESTEBAT, CRISPIN Z. | OPS | FLIGHT SERVICE SUPERVISOR | 3565 | 1/14/92 | 9.90 | 10/26/63 | 9.03 |
| CIPRIANO, OSCAR | OPS | DELIVERY DRIVER | 2092 | 4/26/91 | 10.61 | 06/27/61 | 9.73 |
| LIFFANG, MIOSY | OPS | DELIVERY DRIVER | 1469 | 3/10/88 | 9.18 | 03/24/62 | 10.45 |
| CONORA, ARMANDO | OPS | DELIVERY DRIVER | 1352 | 7/3/87 | 10.97 | 02/17/54 | 13.58 |
| LIFFANG, ELIAS | OPS | DELIVERY DRIVER | 1305 | 4/15/87 | 8.63 | 02/16/60 | 14.26 |
| CARLOS, NEMENCIO | OPS | DELIVERY HELPER | 39 | 1/2/76 | 12.44 | 12/20/53 | 14.48 |
| | | | | | | | 25.77 |

CURRENT HEADCOUNT    33.00
HEADCOUNT TO MEET    30.00
LAYOFF/RETIRE/RESIGN    -3.00


Case 1:03-cv-00028   Document 33   Filed 10/17/2003   Page 45 of 168




# Michelle D. Ramos - Finance & Administration Manager

**From:** "Michelle D. Ramos - Finance & Administration Manager"
**To:** "MICHAEL LUK" <MICHAEL.LUK@LSGSKYCHEFS.COM.HK>
**Sent:** Wednesday, September 19, 2001 7:02 PM
**Subject:** Re: Revised 2001 & 2002-2006
Dear Michael:

It's too soon to tell what the impact will be. Aside from cancellation of charter flights for this month from ANA, we haven't received any official notification from any of the airlines regarding flight changes. We are currently monitoring this daily and expect CMI's by early next week.

I believe its too optimistic to assume there won't be changes because the counts are so low (10-20%). I would hate to use this as a basis for the rest of the year without knowing the flight schedule. Realistically, we believe there may be flight consolidations by the Asian carriers between Guam and Saipan and for CMI, no news yet.

We're crossing our fingers......Michelle

---- Original Message ----
**From:** MICHAEL LUK
**To:** KELLY LAU ; GASTROPRIMO - KENNY LAW ; STEPHEN YAU ; LORETTA YU ; cy@siamflight.com ; mdramos@lsgskychefsguam.com
**Cc:** HK CHEUNG
**Sent:** Friday, September 14, 2001 5:25 PM
**Subject:** Revised 2001 & 2002-2006

Dear all,

We need to review our proj 2001 and MRP 2002-2006 due to the US crisis and the expected economic slowdown worldwide. Please complete the attached file with your latest change in market assumptions. We expect to receive the revised projection 2001 and MRP 2002-2006 by next Wednesday for further evaluation and budget presentation.

Thanks a lot,

<<Revised plan 2002.xls>>

**Michael Luk**
**Director of Controlling & Finance**

---
**LSG Lufthansa Service Asia Ltd.**
**HKG ZB1**
**1704-1706 Island Place Tower**
**510 King's Road, North Point**
**Hong Kong**
**Phone +852 29636336**
**Fax +852 27742874**
**E-mail : michael.luk@lsgskychefs.com.hk**

***************************************************************************************************
CONFIDENTIALITY NOTICE: This transmission and the information it contains, including any attachment, is intended solely for the named addressee(s). It is confidential and may contain legally privileged information. The unauthorised use, disclosure or copying of this transmission or such information is strictly prohibited. If you are not the intended recipient, and are in possession of this transmission (or any copy) without the consent of

10/5/01

**LSG LUFTHANSA SERVICE GUAM**
Company Number: 208
Currency: USD

| | 2001 JAN Flash | 2001 FEB Flash | 2001 MAR Flash | 2001 APR Flash | 2001 MAY Flash | 2001 JUN Flash | 2001 JUL Flash | 2001 AUG Flash | 2001 SEP Flash | 2001 OCT Forecast | 2001 NOV Forecast | 2001 DEC Forecast |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| a) Airline-catering Airline-catering-LH other operating exp-others | 1,466,677 | 2,999,138 | 4,617,132 | 5,994,700 | 7,369,713 | 8,798,576 | 10,147,964 | 11,650,918 | 12,590,361 | 13,199,609 | 13,810,091 | 14,420,321 |
| 1) a) Other sales - third party | 62,781 | 126,633 | 204,033 | 270,458 | 337,524 | 401,127 | 466,500 | 537,606 | 580,788 | 602,976 | 622,329 | 641,625 |
| 4) a) Other Operating Income - third party | 14,911 | 30,317 | 49,549 | 66,663 | 63,590 | 106,684 | 117,057 | 135,293 | 146,728 | 154,036 | 161,491 | 168,895 |
| 5) b) Cost of Materials - third party | 348,620 | 698,803 | 1,073,987 | 1,385,558 | 1,702,771 | 2,015,143 | 2,336,413 | 2,693,860 | 2,922,851 | 3,060,854 | 3,205,631 | 3,347,846 |
| other operating exp-foreign exc | | | | | | | | | | | | |
| 6) Personnel Expenses-OP | 334,251 | 666,697 | 1,079,710 | 1,412,742 | 1,752,550 | 2,106,070 | 2,484,886 | 2,693,982 | 3,182,007 | 3,369,366 | 3,560,431 | 3,750,214 |
| Personnel Expenses-ADMIN | 44,337 | 88,726 | 154,239 | 217,518 | 277,543 | 337,980 | 395,888 | 451,706 | 517,658 | 576,399 | 636,901 | 695,801 |
| Emp Share-leg | 1,330 | 2,662 | 4,747 | 6,526 | 8,528 | 10,139 | 11,677 | 13,815 | 15,794 | 17,558 | 19,353 | 21,138 |
| Emp Share-leg, Pure cont Other | 6,981 | 13,981 | 22,550 | 29,430 | 36,437 | 43,634 | 51,700 | 60,430 | 66,029 | 70,131 | 74,131 | 78,104 |
| Other Social Security Costs | 28,962 | 56,019 | 94,703 | 124,715 | 155,242 | 187,199 | 220,300 | 257,402 | 283,698 | 302,524 | 321,723 | 340,763 |
| LSG ING (212) | | | | | | | 8,800 | 8,800 | 8,800 | 8,800 | 8,800 | 8,800 |
| LSG 4G (199) | | | | | | | | | | | | |
| 7) Depreciation | 36,982 | 73,620 | 108,360 | 143,087 | 177,732 | 193,783 | 228,330 | 262,897 | 303,031 | 337,590 | 371,912 | 418,798 |
| 8) Airport fee Other Expenses | | | | | | | | | | | | |
| c) Indirect Personnel Expenses third party LSG DEUT GMBH (200) | 34,437 | 68,935 | 108,990 | 143,273 | 172,740 | 202,485 | 231,603 | 292,340 | 287,165 | 304,998 | 322,921 | 340,812 |
| d) Advertising/Marketing third party | 1,500 | 3,000 | 4,500 | 6,000 | 7,500 | 9,000 | 10,500 | 12,000 | 13,500 | 15,000 | 16,500 | 18,000 |
| Communications third party | 2,651 | 5,303 | 7,954 | 10,505 | 13,056 | 15,608 | 18,159 | 20,710 | 23,261 | 25,813 | 28,364 | 30,915 |
| h CONSULT, AUDIT, LEG. FEE - Third parties - CATG GUAM (207) - LSG Hygiene (207) | 19,957 / 115,846 | 39,295 / 232,343 / 618 | 59,230 / 356,233 / 640 | 78,502 / 465,397 / 1,324 | 99,748 / 573,929 / 853 | 120,099 / 683,538 / 1,277 | 139,953 / 788,520 / 2,198 | 159,806 / 905,450 / 3,118 | 179,662 / 978,771 / 4,039 | 196,517 / 1,024,558 / 4,969 | 213,371 / 1,071,267 / 5,860 | 230,226 / 1,117,656 / 6,800 |
| q EDP - third party | 573 | 1,146 | 1,719 | 2,292 | 2,492 | 2,692 | 2,892 | 3,092 | 3,292 | 3,492 | 3,692 | 3,892 |
| j Rentals - third party | 14,730 | 30,196 | 46,667 | 62,029 | 77,471 | 92,977 | 108,208 | 124,148 | 137,500 | 147,319 | 157,154 | 166,984 |
| e) Maintenance Buildings & fixed - third party | 8,473 | 16,945 | 23,418 | 29,890 | 32,363 | 34,835 | 37,308 | 39,780 | 42,253 | 44,453 | 46,653 | 48,853 |
| Maintenance Miscellaneous - third party | 14,274 | 38,202 | 52,811 | 66,302 | 73,540 | 80,955 | 88,408 | 96,162 | 103,121 | 110,186 | 117,201 | 124,311 |
| i Other Expenses - third party - CATG GUAM (207) | 96,654 | 203,996 | 309,712 | 400,435 | 489,660 | 584,147 | 675,950 | 773,533 | 852,154 | 918,204 | 984,818 | 1,050,821 |
| Sum Other Expenses | 309,334 | 639,977 | 973,662 | 1,265,969 | 1,543,359 | 1,827,812 | 2,103,698 | 2,400,441 | 2,624,719 | 2,795,497 | 2,967,820 | 3,139,760 |
| Total personnel exp (Adm+oper) | 378,588 | 758,423 | 1,237,949 | 1,600,260 | 2,030,093 | 2,447,050 | 2,860,789 | 3,355,508 | 3,699,665 | 3,945,764 | 4,196,723 | 4,446,015 |
| Total personnel cost | 415,990 | 833,085 | 1,359,800 | 1,790,301 | 2,230,205 | 2,668,260 | 3,164,755 | 3,596,388 | 4,074,198 | 3,945,764 | 4,620,740 | 4,894,850 |
| Total consult audit leg fee | 135,042 | 272,256 | 418,092 | 545,223 | 674,530 | 804,914 | 930,671 | 1,066,278 | 1,162,472 | 1,228,054 | 1,290,518 | 1,354,682 |



c:\mybook\forms\208\neu208\C3
GUß Z5-10

| | |
|---|---|
| **From:** | "MICHAEL LUK" <MICHAEL.LUK@LSGSKYCHEFS.COM.HK> |
| **To:** | "KELLY LAU" <KELLY.LAU@LSGSKYCHEFS.COM.HK>; "STEPHEN YAU" <STEPHEN.YAU@LSGSKYCHEFS.COM.HK>; "GASTROPRIMO - KENNY LAW" <KENNY.LAW@LSGSKYCHEFS.COM.HK>; <cy@siamflight.com>; <mdramos@lsgskychefsguam.com>; "PORNNEE KANTIPAKORN" <PORNNEE.K@siamflight.com> |
| **Cc:** | "FRITZ PANDALITSCHKA" <Fritz.Pandalitschka@LSGSKYCHEFS.COM.HK>; "NORBERT MOOG" <NORBERT.MOOG@LSGSKYCHEFS.COM.HK>; "MICHAEL MALCHARTZECK" <MICHAEL.M@siamflight.com>; "HK CHEUNG" <HKCheung@LSGSKYCHEFS.COM.HK> |
| **Sent:** | Wednesday, September 26, 2001 3:13 PM |
| **Attach:** | Revised Forecast (02-04).xls; Best Case Budget Package.XLS; Realistic Case Budget Package.XLS; Worst Case Budget Package.XLS |
| **Subject:** | Budget Re-Work 2002 - 2004 |

Dear all,

We have to prepare the 3 scenarios of the revised budget 2002-04 for Headquarter.

I need to have the realistic (base) version by this Friday (28/9) since HK has promised Pat. to finish it next Tuesday. I need some times for my consolidation.

The other two versions have to be submitted by next Thursday.

You need to discuss with Cindy for the revised sales forecast before you could fix your spendings.

Please link up the Revised Forecast file (02-04) with the C-sheet budget packages from USA attached.

Hope you understand the existing critical situation.

Best regards,

Michael

<<Revised Forecast (02-04).xls>>

**Message from Mr. Bauer**

Ladies and Gentlemen,

Again, due to the current political situation, it has become necessary to re-evaluate our company's position. I have attached three different spreadsheets to this e-mail. The first one is a 'Best Case' scenario, which is meant to capture the most optimistic estimations. The next one is a 'Realistic Case' scenario, which is met to capture all current information available and known effects on business. The third is a 'Worst Case' scenario which should take into account all situations which would negatively effect our business.

The format of these spreadsheets has been simplified for speed and accuracy. Please keep the following points in mind as you fill these sheets out.

1) Only fill in the cells with BLUE input. The others are formulas

9/28/01

2) Input your numbers in your local currency

3) Please DO NOT change the format. If your feel you need to add something or need clarification on where to input something, please call or write an e-mail

4) There is a check formula in the Asset worksheet which will say 'OK' if your balance sheet is completed correctly. If not 'Out of Balance' will be displayed

5) Please input your company name and local currency in the top right corner of the P&L worksheet

6) Please make sure your P&L ties to the balance sheet

On the bottom of each P&L there is a box for comments. Please enter your detailed assumptions for each scenario. And, for comparison purposes, describe what the major differences between the scenarios are. Also, the budget your have already submitted will be used as a baseline. Describe the movements between each scenario and the baseline.

These sheets need to be filled out and submitted back to Roland Zeh, Dennis Brice or Matt Fairbrook by Monday, October 8, 2001 08:00 AM Dallas time. (UTC/GMT -5)

Thank you in advance for your cooperation.

Best regards,

Rainer Franz Bauer
Senior Vice President
Corporate Controlling

_____

LSG Lufthansa Service Holding AG
DFW ZL1
5605 N. MacArthur Blvd.
Suite 340
Irving TX 75038
USA
Phone 001 972 582-3030
Fax     001 972 582-3029
Mobile 001 469 371-4100
        +49 172 611 6431
E-mail: rainer.bauer@dlh.de


 <<Best Case Budget Package.XLS>>  <<Realistic Case Budget Package.XLS>>
<<Worst Case Budget Package.XLS>>
<<Best Case Budget Package.XLS>> <<Realistic Case Budget Package.XLS>> <<Worst Case Budget Package.XLS>>

**Subject: Re: ¦^ÂÐ : Managing Director**
**Date:** Mon, 05 Feb 2001 11:54:02 +1000
**From:** "Michelle D. Ramos" <gumzf10@ite.net>
**Organization:** LSG Sky Chefs - Guam
**To:** DOROTHY KWOK <DOROTHY@lsgskychefs.com.hk>

Dear Dorothy:

Thank you!!!

Best regards...Michelle

DOROTHY KWOK wrote:

Dear Michelle,

As there is no formalappointment of Managing Directors for LSG Service GUN / SPN, I will amend the title from Managing Director to Director which isstated on relevant minutes and resolutions at my side.  Will send the signed documents to you at the end of this week as Phil will be back to office on 7 Feb 2001.

Have a nice week!

Brgds - Dorothy

——-¡©¶¶¥ó-----
±H¥ó'¡:Michelle D. Ramos
¶Ç°e®Ê¶¡:    2001¦~2¤ë1¤é PM 05:40
¦¬¥ó'¡:DOROTHY KWOK
¥D¦®: Re: Managing Director

Dear Dorothy:

The Managing Director title was supposedly granted Mr. Guth from Germany and was passed on to his successors.  Please advise if there is anything I need to do on my end to adjust or correct.

Sorry for not getting back to you sooner...this time of the year is really busy for me.

Best regards...Michelle

DOROTHY KWOK wrote:

Dear Michelle,

HK has an inquriy that when we have a Managing Director for LSG Lufthansa Service Guam & Saipan?  Have checked our files on hand and I found out we have Managing Director for these

companies starting from Mr Guth.  Please advise.

Best regards - Dorothy

## Deidra K. Rivera

**From:** "Michelle D. Ramos - Finance & Administration Manager" <MDRamos@LSGSkyChefsGuam.com>
**To:** "Deidra Rivera" <DKRivera@LSGSkyChefsGuam.com>
**Sent:** Monday, August 20, 2001 7:53 PM
**Attach:** ATT00012.htm; Notebook.jpg
**Subject:** Fw: NWA contract renewal

Dee - Also this, please print for me. Thanks.....mdr

----- Original Message -----
**From:** Tanya B. Damian - Manager Customer Service
**To:** Michelle D. Ramos (E-mail)
**Sent:** Friday, August 17, 2001 5:38 PM
**Subject:** FW: NWA contract renewal

FYI and comments.

td

-----Original Message-----
From: CINDY LAW [SMTP:CINDY.LAW@LSGSKYCHEFS.COM.HK]
Sent: Friday, August 17, 2001 5:29 PM
To: TANYA DAMIAN
Cc: PHILIP THOW
Subject: FW: NWA contract renewal

Dear Tanya, Please let us know how GUM will stand with the contract terms
mentioned below. brgds - Cindy

> -----Original Message-----
> From: Ekvern, Linn [SMTP:LEkvern@Skychefs.com]
> Sent: Friday, August 17, 2001 12:52 AM
> To: Huvet,J.C.; Schubert,Andreas; Law,Cindy; Thow,Philip
> Cc: Anderson, Tim; Geier, Ed
> Subject: NWA contract renewal
>
> Dear all,
>
> Our current contract with NWA will expire Dec 31, 2001 for all spokes
> cities
> in North America. We are therefore currently in contract negotiations with
> NWA.
> I would like to see your interest level in bringing Asia, Guam/Saipan and
> Frankfurt in under this agreement as well. Please call me with any
> questions
> or if you would like more details and let me know as soon as possible
> whether you would be interested in this or not.
>
>
> Highlights of the contract is as follows:
> * 5 year agreement effective Jan 2002
> * Annual 100%CPI or actual wage rate increase with benefit ( to be

8/21/01

> negotiated)
> * no volume discount
> * no global discount
> * 2% quick pay discount (10 days/ net 15)
> * NWA can bid two cities a year to "test the market" if we are within 3.5%
> we retain the business
> *Measurement system
>
> Highlights of measurement system:
> ( this system will be a little different than the North American one and
> we
> do not know the full details as of yet but these are the main highlights)
> Regardless this system is punitive and needs to be managed in each CSC. It
> is divided into two parts
> 1 The Operational score 136 points Max
> * no tolerance for delays ( 1 delay for 1-14 minutes handling and service
> is
> free/ 15 + minutes entire flight free) Plus one delay will fail you in the
> measurement system for that month.
> * Inventories needs to be kept up in ICBM ( issues/ receipts etc.)
> * No A/C hits allowed
> * Kitchen inspection scores. Average score is 95% which gives you 20
> points,
> Lowest passing is 90% =0 points, highest is 100 = 40 points
> * Credits - you receive a negative 1 or 2 per credit issue ( sever failure
> to provide service such as missing entrees, TSU, cutlery etc) This is also
> where you will be required to pay either just cost of the meal or cost of
> the meal + $15 per pax inconvenienced.
>
> Flight attendant comments
> * flight attendant comments are  measured on a bell curve, where 20% will
> always fail, 60% will fall in the acceptable quadrant and 20% in the
> exceptional quadrant
> * Failure of the FA comments will result in failing that month's
> measurement
> system
>
> Failure of the measurement system for 6 consecutive or 8 out of 12 months
> could results in termination of the contract.
> All information is routed through the CST and you will get weekly updates
> on
> performance in both areas as well as monthly measurement close out
> information.
>
>
> Please contact us for further clarifications
>
> Best regards
>
> Linn
>

8/21/01

From: "MAGGIE CHAN"
To: "Jesse R. Rivo'" <JRRivo@LSGSkyChefsGuam.com>
Cc: "Michelle D Ramos'" <MDRamos@LSGSkyChefsGuam.com>
Sent: Tuesday, July 24, 2001 7:48 PM
Subject: RE: OFA & FILC

Hi Jesse and Michelle,

Sorry for my late response.

(1) OFA - Recently, the Main server is being relocated from Germany to USA and the German Team is busy with the re-location... I beleive that the remote connection is possible in the future. Please include the ISDN line For your budget 2002.

(2) Desktop for OFA, this machine will be orgainized by Germany. As far as I remember, they will be charge the cost on us.

(3) Desktop for FILC, this system is running with MS Access and no specific hardware requirement defined. We did once in last year to replace a new desktop for our user and success without problem hitted. Our new desktop is PIII, 64MBRam, NT4.0.

(4) Future plan for IT systems - I will reply you in a separate email in regards the progress on the Global IT Systems.


B. Rgds
Maggie
> -----Original Message-----
> From: Jesse R. Rivo [SMTP:JRRivo@LSGSkyChefsGuam.com]
> Sent: Friday, July 20, 2001 8:57 AM
> To: MAGGIE.CHAN@LSGSKYCHEFS.COM.HK
> Cc: Michelle D. Ramos - Finance & Administration
> Subject: OFA & FILC
>
> Hi Maggie,
>
> This is just a follow up.
>
> Thanks,
> Jesse
>
>
> ----- Original Message -----
> From: Jesse R. Rivo <mailto:JRRivo@LSGSkyChefsGuam.com>
> To: maggie.chan@lsgskychefs.com.hk <mailto:maggie.chan@lsgskychefs.com.hk>
>
> Cc: Michelle D. Ramos - Finance & Administration
> <mailto:MDRamos@LSGSkyChefsGuam.com>
> Sent: Saturday, July 14, 2001 2:55 PM

7/25/01

> Subject: Re: OFA & FILC
>
> Dear Maggie,
>
> We would like to get your insight on the Oracle Financial Analyzer (OFA)
> and FILC Module to incorporate in our Budget for 2002. As your are aware
> the installation of the OFA on Guam was not successful due to Analog modem
> and ISDN modem communications problem with Germany. Has there been any
> workaround regarding this matter? As for the FILC Module it's currently
> install on a laptop, which we believe should be installed on one of the
> workstation. To better prepare us for the year 2002 could you please
> provide us a list of hardware and program application requirements needed
> to run the OFA and FILC modules. Also, are there any other future plans
> in the IT Department that we need to consider? Please advise so the we
> can incorporate them in our Budget. Thank you.....
>
> Regards,
> Jesse R. Rivo
> Systems Administrator
> LSG Sky Chefs - Guam/Saipan
>
> *****************************************************************************
> *****************************************************************************
> ****
> CONFIDENTIALITY NOTICE: E-mail may contain confidential information that
> is legally privileged. Do not read this email if you are not the intended
> recipient. This e-mail transmission, and any documents, files or previous
> e-mail messages attached to it may contain confidential information that
> is legally privileged. If you are not the intended recipient, or a person
> responsible for delivering it to the intended recipient, you are hereby
> notified that any disclosure, copying, distribution or use of any of the
> information contained in or attached to this transmission is STRICTLY
> PROHIBITED. If you have received this transmission in error, please
> immediately notify us by reply e-mail and destroy the original
> transmission and its attachments without reading or saving in any manner.
> Thank you.
>
>
>

7/25/01

**From:** "Michelle D. Ramos - Finance & Administration Manager"
**To:** "Shane Smith" <gumzf1@ite.net>
**Sent:** Thursday, July 19, 2001 2:56 PM
**Attach:** Data Request.zip
**Subject:** Fw: LSG Global Financial Project

More FYI......mdr


----- Original Message -----
From: "Findlay, Melaine" <MFindlay@Skychefs.com>
To: "Brown, David" <DBrown2@Skychefs.com>; "Lee, Tom" <TLee@Skychefs.com>;
<michael.bauer.lsf@dlh.de>; <michael.bledow@dlh.de>;
<chandonnay.eas-lsg@yalla.com>; <scope@lhrisgskychefs.co.uk>;
<george.diamondis@lsgza.co.za>; <jfincias@lsgskychefs-bcn.com>;
<volker.kellner@dlh.de>; <klaus.kurz@dlh.de>; <roland.labitzke@dlh.de>;
<brigitta.lehmkoester@dlh.de>; <reinhard.lieser@dlh.de>;
<michaelluk@lsgskychefs.com.hk>; <lsgjnb@cybertrade.co.za>;
<smaybury@aol.com>; <cornelia.moche@dlh.de>; <ulf.mode@lsg-skychefs.com>;
<annette>; <muench@dlh.de>; <waldemar.pakos@dlh.de>;
<annegret.peters@dlh.de>; <eva.popescu-pfeiffer@dlh.de>;
<ralf.pospisil@lsgzrh.com>; <mdramos@lsgskychefsguam.com>;
<jreynolds@lsg-usa.com>; <psalzenstein@lsgskychefs.fr>;
<ramzy.runge@dlh.de>; <juergen.schoener@dlh.de>; <cy@siamflight.com>;
<ernst.stockhammer@airest.com>; <athies@lsg-demontis.it>;
<patricia.vivanco@dlh.de>; <lutzvon.stengel@tank.rast.de>;
<anders.wallsten@topflight.se>; <whitney@aeromar.ru>;
<stephen.yau@lsgskychefs.com.hk>; <mesteves@lsgskychefs.fr>; "Anderson,
Jill" <JAnders2@SCISFood.com>; "Couture, David" <DCouture@Skychefs.com>;
"Beverly Ambrose" <BAmbrose@Skychefs.com>; "Brandon Kirby"
<BKirby@Skychefs.com>; "Bruce Becker" <BBecker@Skychefs.com>; "Charisse
Tyler" <CTyler@Skychefs.com>; "Cissy Baker" <CBaker@Skychefs.com>; "Dave
Gavin" <DGavin@Skychefs.com>; "David Brown" <DBrown2@Skychefs.com>; "Doug
Reid" <DReid@Skychefs.com>; "Douglas Bell" <DBell1@Skychefs.com>;
"FieldFinMgmt" <FieldFinMgmtGRP2@Skychefs.com>; "Frank Sanchez"
<FSanchez@Skychefs.com>; "Gemma Custodio" <GCustodi@Skychefs.com>; "Jerrianh
Groves" <JGroves@Skychefs.com>; "Jill Anderson" <JAnders2@Skychefs.com>;
"Jill Comeau" <JComeau@Skychefs.com>; "Karl Ellis" <KEllis@Skychefs.com>;
"Kate Smith" <KSmith@Skychefs.com>; "Kevin Kerber" <KKerber@Skychefs.com>;
"Larry Webb" <LWebb@Skychefs.com>; "Leah Ward-Lee" <LWardLee@Skychefs.com>;
"Magdalena Contreras" <MContrer@Skychefs.com>; "Marcia McKean"
<MMcKean@Skychefs.com>; "Mark Everson" <MEverson@Skychefs.com>; "Mark Santi"
<MSanti@Skychefs.com>; "Melissa Young" <MYoung@Skychefs.com>; "Michael
Gilles" <MGilles@Skychefs.com>; "Mike Partin" <MPartin@Skychefs.com>; "Randy
Barnard" <RBarnard@Skychefs.com>; "Richard Adelung" <RAdelung@Skychefs.com>;
"Roger Raghunath" <RRaghuna@Skychefs.com>; "Russ McCord"
<RMcCord@Skychefs.com>; "Stephanie Sanders" <SSanders@Skychefs.com>; "Steve
Barton" <SBarton@Skychefs.com>; "Steve Kershner" <SKershne@Skychefs.com>;
"Tobi Jones" <TJones@Skychefs.com>; "Vikram Goel" <VGoel@Skychefs.com>;
"William Kessler" <WKessler@Skychefs.com>; "Alfred Georges"
<AGeorges@Skychefs.com>; "Amy Wilson" <AWilson1@Skychefs.com>; "Annie
Shaffer" <AShaffer@Skychefs.com>; "Arielle Francis" <AFrancis@Skychefs.com>;

"Ben Levine" <BLevine@Skychefs.com>; "Bruce Henry" <BHenry@Skychefs.com>;
"Carol Maher" <CMaher@Skychefs.com>; "Clarence McFadden"
<CMcFadde@Skychefs.com>; "Cynthia Kuhn" <CKuhn@Skychefs.com>; "Dan Eubanks"
<DEubanks@Skychefs.com>; "Dasan Washburn" <DWashbur@Skychefs.com>; "Dave
Spaulding" <DSpauldi@Skychefs.com>; "David Couture" <DCouture@Skychefs.com>;
"Deanie Sewell" <DSewell@Skychefs.com>; "Eliza Ching" <EChing@Skychefs.com>;
"George Angadicheril" <GAngadic@Skychefs.com>; "Janice Kiraly"
<JKiraly@Skychefs.com>; "Jennifer Daniel" <JDaniel@Skychefs.com>; "Jose
Ylanan" <JYlanan@Skychefs.com>; "Joseph Knapp" <JKnapp@Skychefs.com>;
"Kristi Janes" <KJanes@Skychefs.com>; "Leandro Galaviz"
<LGalaviz@Skychefs.com>; "Leonie Chambers" <LChamber@Skychefs.com>; "Manuel
Hernandez" <MHernand@Skychefs.com>; "Mark Moyer" <MMoyer@Skychefs.com>;
"Martha Andrews" <MAndrews@Skychefs.com>; "Mary Beth Pope"
<MPope@Skychefs.com>; "Michael Mesko" <MMesko@Skychefs.com>; "Mike Murray"
<MMurray1@Skychefs.com>; "Mike Ristuccia" <MRistucc@Skychefs.com>; "Omar
Frias" <OFrias@Skychefs.com>; "Osvaldo Orellana" <OOrellan@Skychefs.com>;
"Pam Ikner" <PIkner@Skychefs.com>; "Pat Maricich" <PMaricic@Skychefs.com>;
"Rick Pike" <RPike@Skychefs.com>; "Rina Cayabyab" <RCayabya@Skychefs.com>;
"Sam Prince" <SPrince@Skychefs.com>; "Sandhya Reddy" <SReddy@Skychefs.com>;
"Sari Hughes" <SHughes@Skychefs.com>; "Shares Johnson"
<SJohnso1@Skychefs.com>; "Sue Skow" <SSkow@Skychefs.com>; "Sylvia Cervantes"
<SCervant@Skychefs.com>; "Terri Koontz" <TKoontz@Skychefs.com>; "Tom Lee"
<TLee@Skychefs.com>; "Tony Hernandez" <THernand@Skychefs.com>; "Wendy
Collins" <WCollins@Skychefs.com>; "Winston Bowdre" <WBowdre@Skychefs.com>;
"Yanghoua Vang" <YVang@Skychefs.com>; "Zoyla Rabie" <ZRabie@Skychefs.com>
Sent: Wednesday, July 18, 2001 5:55 AM
Subject: LSG Global Financial Project


> Please read attached document from Pat Tolbert.
>
> Thanks,
>
> Melaine Findlay
>
> <<Data Request.zip>>
>
> Melaine K. Findlay
> Administrative Assistant
> LSG Sky Chefs HDQ
> Phone: 817-792-2323
> Fax: 817-792-2458
> mfindlay@skychefs.com
>
>

  LSG
**Sky Chefs**

| | |
|---|---|
| **To:** | Distribution List |
| **From:** | Pat Tolbert |
| **Date:** | July 13, 2001 |
| **Subject:** | **Finance Planning Project Data Request** |

As you know, I have engaged Accenture to assist us in developing a Finance function integration and improvement plan. A key starting point for developing our plan is a clear and objective understanding of our current finance operations. Your prompt and complete responses to this data request will help us build a fact-based plan that is grounded in reality.

**Please inform Accenture of your single point of contact for this data request no later than Friday, July 20th.**

**Please direct all information, comments or concerns to Scott Mall at Accenture. 678-657-5388   scott.p.mall@accenture.com**

**Please complete and return the data request no later than Friday, July 27th.**

Thank you in advance for your efforts on this very important task.

For more information, please see the Word document entitled **Instructions.doc.**

## General Information/Definitions

- **Purpose** - The purpose of this analysis is to understand the TOTAL effort related to "end to end" finance processes at LSG SC by both finance employees and non-finance employees.
- **Finance Employees** – Employees who report officially to the finance organization.
- **Non-Finance Employees** – Employees who report to a business or a function (e.g., Human Resources) and do not report officially to the finance organization.
- **Why Both Finance *and* Non-Finance Columns are Included** – As a reminder to people filling out this form to include both finance and non-finance employees in their calculation of the TOTAL effort related "end to end" finance processes at LSG SC.
- **Why Total Columns are the Only *Required* Columns** – The purpose of this analysis is to understand the TOTAL effort related to "end to end" finance processes, not the allocation of effort between finance organization employees and non-finance organization employees.
- **Full Time Equivalent Employee** – When used in this particular context, the term "full time equivalent employee" or "FTE" simply means the TOTAL time/effort dedicated to a particular task regardless of who performs it. For example, two people working half time, or .5 FTE each, on the budgeting & forecasting process throughout the entire year equate to 1.0 FTE.
- **Using Fractions of a Full Time Equivalent Employee** – Yes, you may use fractions of a full time equivalent employee, however, limit the fractional allocation to .25 (e.g., 2.0, 2.25, 2.5, 2.75 FTEs).
- **Fully Loaded Salary Costs** – Fully loaded salary costs include not only the regular wage salary of an employee, but also estimated costs for company-provided benefits, perks, incentives, etc.

## Column Definitions

- **Column 1** – Identification numbers for the benchmarking line items.
- **Column 2** – Descriptions for the benchmarking line items.
- **Column 3** – This column is optional. Please input the number of finance organization full-time equivalent employees who perform the tasks noted.
- **Column 4** – This column is optional. Please input the number of non-finance organization full-time equivalent employees who perform the tasks noted.
- **Column 5** – This column is REQUIRED. Please input the TOTAL number of full-time equivalent employees who perform the tasks noted. If you completed Columns 3 and 4, Column 5 will total automatically.
- **Column 6** – This column is optional. Please input the salary costs corresponding to the number of finance organization full-time equivalent employees who perform the tasks noted.
- **Column 7** – This column is optional. Please input the salary costs corresponding to the number of non-finance organization full-time equivalent employees who perform the tasks noted.
- **Column 8** – This column is REQUIRED. Please input the TOTAL salary costs corresponding to the total number of full-time equivalent employees who perform the tasks noted. If you completed Columns 6 and 7, Column 8 will total automatically.

# Finance Planning Project Data Request
## Specific Instructions

## Please inform Accenture of your single point of contact for this data request no later than Friday, July 20th.

## Please complete and return this data request no later than Friday, July 27th.

## Please send only electronic copies via e-mail.

### Overview
This data request is divided into the following four sections:

I. General Questions (**Section I – General.doc**)
II. Headcount & Salary Information (**Section II – Headcount & Salary.doc** and **Finance Project Data Request.xls**)
III. Key Finance Metrics (**Finance Project Data Request.xls**)

The bolded Word and Excel documents above refer to the location of the actual data request itself. Please note that Finance Project Data Request.xls has three separate tabs for sections II, III, & IV above.

### LSG SC Single Point of Contact
Please designate a single point of contact for your data request. See the table below. This person, obviously, would not actually complete all of the data request sections. However, this person *is* responsible for the timely completion of all of the data request sections by his or her team.

| LSG Single Point of Contact | |
|---|---|
| Name | |
| Business Unit | |
| Location | |
| e-mail Address | |
| Work Phone | |

### Accenture Response Information
Please send <u>only</u> electronic responses. When responding, please send e-mails to <u>both</u> Scott and Torance (see e-mail addresses below). Please send single point of contact names to Scott and Torance by Friday, July 20th and completed data requests by Friday, July 27th. If you have any questions about the data request, please feel free to call either Scott or Torance.

| Accenture Response Information | | |
|---|---|---|
| Name | Scott Mall | Torance LeSane |
| e-mail Address | scott.p.mall@accenture.com | torance.l.lesane@accenture.com |
| Work Phone | 678-657-5388 | 678-657-7233 |
| Cell Phone | 404-915-6828 | 301-717-9739 |

# Finance Planning Project Data Request
## Section I - General Questions

**A. Reporting Currency** – Please tell us your reporting currency.

**B. Revenue** – Please provide revenue information in US dollars for both Actual Fiscal Year 2000 and Projected Fiscal Year 2001.

**C. Organization Charts** - Please provide all finance and accounting organizational charts.  Please send only electronic copies.

**D. In Process Finance Initiatives** – Please complete the below table for any "in process" fiancé organization or financial systems initiatives/projects.  Please modify the table as needed for the appropriate number of responses.

| # | Name | Brief Description | Total Projected Costs | Cost Incurred To Date | Total Projected Benefits | Start Date | Completion Date |
|---|------|-------------------|-----------------------|-----------------------|--------------------------|------------|-----------------|
| 1 | | | $ US Dollars | $ US Dollars | $ US Dollars | Month/Year | Month/Year |
| 2 | | | $ US Dollars | $ US Dollars | $ US Dollars | Month/Year | Month/Year |
| 3 | | | $ US Dollars | $ US Dollars | $ US Dollars | Month/Year | Month/Year |

**E. Outsourcing** – Please complete the below table for any finance or accounting-related outsourcing arrangements.  Please modify the table as needed for the appropriate number of responses.

| # | Business Function | Service Provided | Service Provider | Contract Time Frame |
|---|-------------------|------------------|------------------|---------------------|
| 1 | | | | From/To |
| 2 | | | | From/To |
| 3 | | | | From/To |

**F. Shared Services** – Please describe any finance or accounting-related shared services arrangements you may have.  Please describe the nature of the operation, including location, services provided, and how long the shared service center has been opened.

**G. Other Finance Costs** – Please refer to **Section II – Headcount & Salary Information** before reading this question.  In addition to fully loaded salary costs that you will identify in Sections II, please identify the other major costs associated with your finance processes and organization.

Other Major Costs (in US Dollars)
- Outsourcing - $
- Other (please specify) - $
- Other (please specify) - $

| | | Key Metric | Response |
|---|---|---|---|
| **General Accounting & Reporting** | | | |
| 1 | General Accounting | Manual and Automated Journal Entries | |
| 2 | Fixed Asset Accounting | Fixed Asset Line Items | |
| 3 | Inventory Accounting | Inventory Line Items | |
| 4 | Cost Accounting | | |
| 5 | Fin Analysis & Management Reporting | | |
| 6 | External/Consolidated Reporting | Closing Cycle in Days | |
| **Procurement through Disbursement** | | | |
| 7 | Accounts Payable | Invoices Processed Per Year | |
| **Credit through Collection** | | | |
| 8 | Credit and Collections | # of Customers | |
| 9 | Billing | Bills Issued Per Year | |
| 10 | Customer Inquiry Management | # of Inquiries Handled per Year | |
| 11 | Cash Application | Payments Processed Per Year | |
| **Financial Budgeting & Forecasting** | | | |
| 12 | Financial Budgeting & Forecasting | Duration of Annual Budget Activities | |
| **Tax** | | | |
| 13 | Tax Compliance | | |
| 14 | Tax Planning | | |
| **Treasury & Risk Management** | | | |
| 15 | Treasury | | |
| 16 | Banking & Cash Management | Banking Relationships (# and names) | |
| 17 | Insurance/Risk Management | | |
| **Internal Audit** | | | |
| 18 | Internal Audit | % of Revenue Audited Per Year | |
| **Human Resource-Related** | | | |
| 19 | Benefits Plan Accounting | | |
| 20 | Payroll | Number of Employees Supported | |
| 21 | Time & Attendance Processing | Time Cards Processed Per Year | |
| 22 | Travel & Entertainment Accounting | T&E Reports Processed Per Year | |
| **Finance Function Management** | | | |
| 23 | Finance Management | Finance Turnover % | |
| 24 | Finance Support Staff | | |

7/19/01

Accenture



LSG Catering Hong Kong Ltd.

No.8 Catering Road West
Hong Kong International Airport
Chek Lap Kok
Hong Kong

Phone : 2769 8211
Telefax : 8363 9511
Bka : HKGHHOH

20 August 2001

Mr Ho Kar Fai, Patrick
Present

Dear Mr Ho

We are pleased to confirm your secondment from LSG Catering Hong Kong Limited to work for LSG Lufthansa Service Guam, Inc. on the following specific terms and conditions:

1.    **Appointment**

You will be appointed as Catering Manager.

2.    **Date of Commencement**

October 8, 2001 (subject to the issuance of working visa). This secondment shall be for a term of 2 years.

3.    **Location**

You will be stationed in Guam.

4.    **Remuneration**

4.1    **Salary & Allowance**

As from the date of commencement of this secondment, your basic salary is to be adjusted as HK$25,000.00 per month.

4.2    **Annual Bonus**

You will be eligible to receive annual bonus equals to 1 month salary for completing one year service. If your service is less than 12 months, the bonus will be on pro-rata basis.

4.3    **Taxation**

You will be responsible for all tax incurred in relation to your secondment.

Registered Office: Unit 1704-1708 Island Place Tower, 510 King's Road, North Point, Hong Kong. Tel : 2853 6388   Fax : 2774-2874 , 2565-0022



5.    **Housing Allowance**

You will be eligible to receive a housing allowance of HK$3,160.00 per month.

6.    **Station Allowance**

As from the date of commencement of this secondment, you will receive a station allowance during your secondment in Guam of US$500.00 per month.

7.    **Accommodation/Utilities**

During the period of your secondment, the company will pay you furnished accommodation and utilities expenses up to a maximum of US$450/month and US$150/month respectively. Any tax associated with such provision of accommodation will be borne by LSG Lufthansa Service Guam, Inc..

8.    **Leave Passage**

The Company will provide you one round trip economy class air ticket between Hong Kong and Guam each year during this secondment. This leave passage cannot convert into cash in any way.

9.    **Air Passage on Appointment and Termination**

The cost of air travel in economy class for you on commencement of your appointment between Hong Kong and Guam and between Guam and Hong Kong upon expiration of this secondment will be met by the Company.

10.   **Medical & Hospitalization Benefits**

During this secondment, the Company will bear the full cost of medical expenses incurred by you within Guam subject to the attached policy and coverage.



Mr HO Kar Fai, Patrick
- Page 3 -

All other remuneration benefits, terms and condition, which currently govern your employment, will remain unchanged.

In confirmation of your acceptance of the above terms of employment, please sign both copies of this letter.

We look forward to your continued support and enthusiastic contribution towards the successful operation of the Company. Meanwhile, we would like to take this opportunity to wish you all the best in your career endeavours.

Yours sincerely
for and on behalf of
LSG Catering Hong Kong Ltd

HK Cheung
Director

Agreed and Accepted by

_____
Ho Kar Fai, Patrick
HKID: D515717(0)

**Subject: Typhoon Paka**
**Date:** Thu, 21 Jan 1999 15:47:55 +0800
**From:** AMY SUEN <AMY.SUEN@LSGSKYCHEFS.COM.HK>
**To:** "'Michelle Ramos'" <gumzf10@ite.net>
**CC:** HK CHEUNG <HKCheung@LSGSKYCHEFS.COM.HK>

Dear Michelle,

We have just received the information from our insurance company in Hong Kong that the fund has been transferred to the Royal Sunalliance in Guam on January 20, 1999. Please kindly trace at your end.

For your reference, the Claim No. of Royal Sunalliance, Guam is 0198164609 (Ref No: K5005630). Pls advise when you have received the fund.

Regards.

Amy Suen
HKG ZC3/s



**LSG Lufthansa Service**
**SKY Chefs**

# TELEFAX

51 Concorde Road,
Hong Kong International Airport,
Kowloon, Hong Kong.

Tel :  (852) 2769 8211
Fax:  (852) 2363 9511

| | |
|---|---|
| GUM ZF10Ms Michelle Ramos | H K Cheung |
| **To** | **From** |

| | |
|---|---|
| | December 24, 1997 |
| **Telefax No.** | **Date** |

This transmittal has  ð  Page(s)

**Remarks**

I would like to advise that the cover for the material damage and loss of profit insurances for Guam and Saipan has been taken out for 1998. Details of the covers are as follows:

Material Damage

| Saipan | New Flight Kitchen and Restaurant | US$4,664,100. |
| Guam | Existing Kitcehn and Restaurant | US$10,156,810 |

Loss of Profit

Saipan
Gross Profit US$4,786,200.
Payroll US$161,500.
Wages US$412,800.
Audit Fee US$100,000.

Guam
Gross Profit US$8,151,300.
Payroll US$1,612,800
Wages US$5,896,400
Audit Fee US$100,000

The total premium is US$114,013 against the expiring rate of US$122,760 (excluding the premium for holding insurance for the existing kitchen).

Meanwhile, as we may be holding the new and existing kitchens in Saipan for certain time and therefore I also hold cover for the existing kitchen for material damage at the insured sum of US$2,664,100. We will adjust the premium by the number of days that we hold cover. Therefore, please let us know the date when we have no more responsibility under the existing kitchen in Saipan.

Best regards and Merry Christmas!

H K Cheung

LSG HKG

# Michelle D. Ramos - Finance & Administration Manager

**From:** "Michelle D. Ramos - Finance & Administration Manager" <MDRamos@LSGSkyChefsGuam.com>
**To:** "CINDY LAW" <CINDYLAW@lsgskychefs.com.hk>
**Cc:** "Fritz Pandelitschka" <FPandalitschka@LSgSkyChefsGuam.com>; "Kelvin Chan" <KYChan@LSGSkyChefsGuam.com>
**Sent:** Friday, May 10, 2002 7:23 PM
**Attach:** NH Profitability Analysis.xls
**Subject:** Re: All Nippon

Dear Cindy:

For Guam, see attached.

Best regards,

Michelle

----- Original Message -----
**From:** CINDY LAW
**To:** 'Wilson Ching' ; 'Michelle Ramos' ; 'Philip Kwok (PVG)' ; 'Andreas Schubert' ; P Y SO
**Cc:** DAVID WAINMAN
**Sent:** Tuesday, May 07, 2002 9:03 PM
**Subject: All Nippon**

For FRA, GUM, LAX, HNL, IAD, JFK, LAS, SFO, BJS, SHA

Dear all,

We are going to have some discussions with NH next week and would like to know the profitability of this account on a global basis.

Could you please forward me your P & L with NH at your unit(s) by this Friday.
Should you have any concern, please let me know.
best regards
Cindy

**Cindy Law**
Manager Customer Service Asia

_____

**LSG Lufthansa Service Asia Ltd.**
1704-06 Island Place Tower,
510 King's Road,
North Point,
Hong Kong.
Phone +852 2963 6324
Fax    +852 2774 2874
E-mail: cindy.law@lsgskychefs.com.hk
************************************************************************************************************

CONFIDENTIALITY NOTICE: This transmission and the information it contains, including any attachment, is intended solely for the named addressee(s). It is confidential and may contain legally privileged information. The unauthorised use, disclosure or copying of this transmission or such information is strictly prohibited. If you are not the intended recipient, and are in possession of this transmission (or any copy) without the consent of any named addressee, please immediately notify us by reply e-mail and destroy the original transmission and its attachments without reading or saving in any manner.

Thank you.
************************************************************************************************************

5/10/02

**LSG Lufthansa Service**

# DUTY TRAVEL AUTHORISATION & EXPENSES REPORT

| Surname | First Name | Department | Unit |
|---|---|---|---|
| PEREZ | NONA | EXECUTIVE OFFICE | GUAM |

| Dates | Routing | Hotel | Purpose of Trip | Special Authorisations (Car Rental, Upgrades, etc.) |
|---|---|---|---|---|
| | | | | |

Estimated Cost HK$ **101.30**

Applicant's Signature: *Nona Perez*

Department Approval:

Executive Approval:

| Expenses in Currency of Home Office | Date | Date | Date | Date | Date | Date | Date | Account Number | Sub. Acct. No. | Total Amount |
|---|---|---|---|---|---|---|---|---|---|---|
| Airline Ticket Company Purchased | | | | | | | | 53411 | 001 | |
| Employee Purchased Tickets | | | | | | | | 53411 | 001 | |
| Hotel | | | | | | | | 53413 | 001 | |
| Breakfast | | | | | | | | 53417 | 001 | |
| Lunch | Mar 16 | | | | | | | 53417 | 001 | 21.00 |
| Dinner | | | | | | | | 53417 | 001 | |
| Ground Transportation | | | | | | | | 53415 | 001 | |
| Telephone | | | | | | | | 53423 | 001 | |
| Misc. Tips, Laundry | | | | | | | | 53423 | 001 | |
| Other | Mar 13 Mar 14 | | | | | | | | | 140.30 |
| **Total Expenses** | | | | | | | | | | |

| | | | |
|---|---|---|---|
| Signature of Employee: *Nona Perez* | Date 3/16/02 | Less Cash Advances | 11418 | 000 |
| Department Head Approval | | Less Company Purchased Ticket No. | | |
| Controlling Review | | Due to Employee | 11113 | 001 |
| Executive Approval | | Due to Company | 11113 | 001 |

Original: Accounts        Yellow: HKG 2F/S        Red: Originator

Form LSG 031/92 (HKG)

# LSG Lufthansa Service Guam, Inc.

**PROFITABILITY ANALYSIS**
NH
US DOLLARS (000'S)

| | JAN 2002 | FEB 2002 | MAR 2002 | APR 2002 | MAY 2002 | JUN 2002 | JUL 2002 | AUG 2002 | SEP 2002 | OCT 2002 | NOV 2002 | DEC 2002 | YEAR 2002 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **MEALS** | 12,389 | 13,769 | 20,198 | 6,798 | 14,922 | 15,455 | 14,212 | 16,815 | 15,190 | 13,000 | 11,778 | 14,443 | 168,969 |
| **FLIGHTS** | 43 | 49 | 69 | 43 | 71 | 69 | 70 | 71 | 69 | 70 | 69 | 71 | 784 |
| **REVENUES:** | | | | | | | | | | | | | |
| + SALES - DLH | | | | | | | | | | | | | |
| + SALES - PSI | | | | | | | | | | | | | |
| + SALES - OASTRONOMY | 96 | 105 | 151 | 74 | 142 | 144 | 137 | 153 | 142 | 130 | 122 | 139 | 1,535 |
| + OTHER SALES | | | | | | | | | | | | | |
| **= NET SALES** | 96 | 105 | 151 | 74 | 142 | 144 | 137 | 153 | 142 | 130 | 122 | 139 | 1,536 |
| + RENTAL INCOME | | | | | | | | | | | | | |
| + OTHER OPERATING INC | | | | | | | | | | | | | |
| - COST OF SALES | 18 | 19 | 28 | 14 | 28 | 27 | 25 | 28 | 26 | 24 | 23 | 28 | 284 |
| **A. = GROSS PROFIT** | 79 | 85 | 123 | 60 | 116 | 117 | 112 | 125 | 118 | 106 | 100 | 113 | 1,251 |
| **COSTS:** | | | | | | | | | | | | | |
| - PERSONNEL EXP-OP. | 31 | 33 | 41 | 27 | 37 | 37 | 36 | 38 | 36 | 35 | 34 | 35 | 420 |
|   - ADMIN | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 45 |
| - AIRPORT FEE | | | | | | | | | | | | | 26 |
| - TRAVEL INDIRECT PERS EXP | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | |
| - ADVERTISING | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| - RENTAL | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 9 |
| - MAINTENANCE | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 13 |
| - SERVICES | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 10 |
| - EDP | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 0 |
| - CONSULT, AUDIT, LEGAL FEE | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| - OTHER CURRENT EXP | 15 | 17 | 22 | 12 | 20 | 20 | 19 | 21 | 20 | 18 | 17 | 19 | 221 |
| **B. = EBIDST** | 23 | 26 | 51 | 11 | 49 | 50 | 46 | 56 | 50 | 43 | 39 | 49 | 494 |
| - DEPRECIATION | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 29 |
| **C. = EBIDST** | 20 | 24 | 49 | 9 | 47 | 48 | 44 | 53 | 47 | 40 | 36 | 47 | 465 |
| + DIVIDEND FROM 'AT EQUITY' | | | | | | | | | | | | | |
| + DIVIDEND FR OTHER PART. | | | | | | | | | | | | | |
| + INTEREST & DIVIDEND | | | | | | | | | | | | | |
| - INTEREST EXP | | | | | | | | | | | | | |
| **D. = RESULT ORD. OPERATIONS** | 20 | 24 | 49 | 9 | 47 | 48 | 44 | 53 | 47 | 40 | 36 | 47 | 465 |
| + EXTRA ORDINARY INCOME | | | | | | | | | | | | | |
| - EXTRA ORDINARY EXP | | | | | | | | | | | | | |
| **E. = PROFIT BEFORE TAX** | 20 | 24 | 49 | 9 | 47 | 48 | 44 | 53 | 47 | 40 | 36 | 47 | 465 |
| - TAXATION | 7 | 8 | 17 | 3 | 16 | 16 | 15 | 18 | 16 | 14 | 12 | 16 | 158 |
| = PROFIT AFTER TAX | 13 | 16 | 32 | 6 | 31 | 32 | 29 | 35 | 31 | 27 | 24 | 31 | 307 |
| **F. = LSG SHARE OF PROFIT BEF TAX** | 20 | 24 | 49 | 9 | 47 | 48 | 44 | 53 | 47 | 40 | 36 | 47 | 465 |
| COST OF SALES - RATIO | 18.5% | 18.5% | 18.5% | 18.5% | 18.5% | 18.5% | 18.5% | 18.5% | 18.5% | 18.5% | 18.5% | 18.5% | 18.5% |
| LABOUR COST - RATIO | 35.6% | 34.9% | 29.3% | 41.7% | 28.9% | 28.4% | 29.3% | 27.5% | 28.3% | 29.9% | 30.6% | 28.0% | 30.3% |
| OPER. PROFIT - RATIO | 23.7% | 25.0% | 34.0% | 15.2% | 34.5% | 35.0% | 33.9% | 36.4% | 35.1% | 32.9% | 31.8% | 35.3% | 32.2% |
| PROFIT BEF TAX - RATIO | 21.2% | 22.7% | 32.4% | 11.9% | 32.8% | 33.3% | 32.1% | 34.8% | 33.4% | 31.1% | 29.8% | 33.6% | 30.3% |

# Michelle D. Ramos - Finance & Administration Manager      *LSG HKG.*

**From:** "Michelle D. Ramos - Finance & Administration Manager" <MDRamos@LSGSkyChefsGuam.com>
**To:** "CINDY LAW" <CINDYLAW@lsgskychefs.com.hk>
**Cc:** "Kelvin Chan" <KYChan@LSGSkyChefsGuam.com>; "Fritz Pandelitschka"
<FPandalitschka@LSgSkyChefsGuam.com>
**Sent:** Thursday, May 09, 2002 2:52 PM
**Subject:** Fw: Global Discount

Dear Cindy:

Per discussion with Karen, following is the monthly breakdown for both GUM & SPN (US$'S):

|      | GUM'01    | GUM'02    | SPN'01    | SPN'02   |
|------|-----------|-----------|-----------|----------|
| Apr  | 78,016    | 113,238   | 82,022    | 72,259   |
| May  | 86,747    | 119,157   | 90,282    | 77,512   |
| Jun  | 86,377    | 86,178    | 77,209    | 61,977   |
| Jul  | 112,725   | 127,732   | 95,732    | 84,197   |
| Aug  | 129,501   | 157,731   | 99,432    | 102,280  |
| Sep  | 94,659    | 87,219    | 72,955    | 61,973   |
| Oct  | 110,974   | 91,176    | 88,504    | 58,738   |
| Nov  | 114,795   | 106,334   | 85,606    | 73,906   |
| Dec  | 171,474   | 118,655   | 96,670    | 87,364   |
| Jan  | 140,908   | 116,381   | 100,207   | 80,544   |
| Feb  | 107,856   | 100,989   | 66,814    | 69,054   |
| Mar  | 112,135   | 94,290    | 66,281    | 54,461   |
| TOT  | 1,346,167 | 1,319,080 | 1,021,714 | 884,265  |

If there is anything else you need, please do not hesitate to ask.

Best regards,

Michelle

------ Original Message ------
**From:** Michelle D. Ramos - Finance & Administration Manager
**To:** CINDY LAW
**Cc:** Kelvin Chan ; Fritz Pandelitschka
**Sent:** Wednesday, May 08, 2002 6:25 PM
**Subject:** Re: Global Discount

Dear Cindy:

Sorry for the delay. Per your request:

| GUM           | Month End | 2001        | 2002         |
|---------------|-----------|-------------|--------------|
| China Airlines | Dec       | US$215,062  | N/A          |
| Asiana        | Mar       | 1,346,166   | US$1,319,081 |
| All Nippon    | May       | 1,525,933   | N/A          |
| JL/JO         | Mar       | 4,756,235   | 4,211,436    |

| SPN           | Month End | 2001         | 2002       |
|---------------|-----------|--------------|------------|
| Asiana        | Mar       | US$1,021,713 | US$884,263 |
| JL/JO         | Mar       | 2,416,018    | 1,786,949  |

For All Nippon, please confirm month end of contract term. As per our records, contract term expires May 2002. If you need calendar basis revenues, its US$1,380,220.

For GUM JAL calendar basis revenues for Y2000 & Y2001 are US$4,883,499 and US$4,364,785 respectively.

For SPN JAL calendar basis revenues for Y2000 & Y2001 are US$2,490,152 and US$2,044,543 respectively.

Best regards,

5/9/02

' Michelle

----- Original Message -----
**From:** <u>CINDY LAW</u>
**To:** <u>'Michelle Ramos'</u>
**Cc:** <u>'Fritz Pandalitschka'</u>
**Sent:** Tuesday, May 07, 2002 11:31 PM
**Subject:** FW: Global Discount

Dear Michelle, could you pls urgently provide me with the monthly sales breakdown with Asiana in GUM and SPN for the year Apr2000/Mar01 and Apr2001/Mar02. Would appreciate if you can provide me with this info by tomorrow before noon time.

brgds - Cindy



**ΞΙΙ ERNST & YOUNG**

■ Ernst & Young LLP
Ernst & Young Building
Suite 201
231 Ypao Road
Tamuning, Guam 96911

■ Phone: (671) 649-3700
Fax:    (671) 649-3920
www.ey.com

## Report of Independent Auditors

The Board of Directors
LSG Catering Guam, Inc.

We have audited the accompanying consolidated balance sheets of LSG Catering Guam, Inc. (a wholly owned subsidiary of LSG Lufthansa Service USA Corporation) and subsidiary as of December 31, 2001 and 2000, and the related consolidated statements of earnings and retained earnings, and cash flows for the years then ended. These financial statements are the responsibility of the Company's management. Our responsibility is to express an opinion on these financial statements based on our audits.

We conducted our audits in accordance with auditing standards generally accepted in the United States. Those standards require that we plan and perform the audit to obtain reasonable assurance about whether the financial statements are free of material misstatement. An audit includes examining, on a test basis, evidence supporting the amounts and disclosures in the financial statements. An audit also includes assessing the accounting principles used and significant estimates made by management, as well as evaluating the overall financial statement presentation. We believe that our audits provide a reasonable basis for our opinion.

In our opinion, the financial statements referred to above present fairly, in all material respects, the consolidated financial position of LSG Catering Guam, Inc. and subsidiary at December 31, 2001 and 2000, and the consolidated results of their operations and their cash flows for the years then ended in conformity with accounting principles generally accepted in the United States.

Our audits were conducted for the purpose of forming an opinion on the consolidated financial statements taken as a whole. The accompanying consolidating balance sheet at December 31, 2001 and consolidating statement of earnings and retained earnings for the year then ended, are presented for purposes of additional analysis and are not a required part of the consolidated financial statements. Such information has been subjected to the auditing procedures applied in our audits of the consolidated financial statements and, in our opinion, is fairly stated in all material respects in relation to the consolidated financial statements taken as a whole.

*Ernst + Young LLP*

February 8, 2002

Ernst & Young LLP is a member of Ernst & Young International, Ltd.

1

Case 1:03-cv-00028    Document 33    Filed 10/17/2003    Page 75 of 168

**From:** CINDY LAW
**Sent:** Tuesday, April 30, 2002 8:17 PM
**To:** 'Veronique Levasseur'; 'Michelle Ramos'; JUANGCHAN EIMSAARD; 'Andreas Schubert'; MYANMAR - RGN ZF1; 'Leo Tomczyk'; 'Christina Peters'

**Subject:** Global Discount

Dear all,

Could you pls forward me asap the total revenue (all meals and handling excluding airport tax/port fee) of the following airlines, whichever is applicable to you :-

CA : 1999, 2000, 2001
BR : 2000, 2001
CI : 2001
OZ : 2000/2001, 2001/2002
NH : 2001
JL : 2000, 2001
KE : 1999/2000, 2000/2001

Please provide me per unit basis if you cover more than 1 unit.

Brgds - Cindy


**Cindy Law**
Manager Customer Service Asia
_____
**LSG Lufthansa Service Asia Ltd.**
1704-06 Island Place Tower,
510 King's Road,
North Point,
Hong Kong.
Phone +852 2963 6324
Fax    +852 2774 2874
E-mail: cindy.law@lsgskychefs.com.hk
***************************************************************************************************
CONFIDENTIALITY NOTICE: This transmission and the information it contains, including any attachment, is intended solely for the named addressee(s). It is confidential and may contain legally privileged information. The unauthorised use, disclosure or copying of this transmission or such information is strictly prohibited. If you are not the intended recipient, and are in possession of this transmission (or any copy) without the consent of any named addressee, please immediately notify us by reply e-mail and destroy the original transmission and its attachments without reading or saving in any manner.

5/9/02

## VII.   Business Development

- Air Nauru has indicated that catering may be transferred to Manila.
- ANA may revive the Narita route in the Year 2001.

## Michelle D. Ramos - Finance & Administration Manager

**From:** "PHILIP THOW" <PHILIP.THOW@LSGSKYCHEFS.COM.HK>
**To:** "ERIK LING" <Erik.Ling@LSGSKYCHEFS.COM.HK>; "CINDY LAW"
<CINDY.LAW@LSGSKYCHEFS.COM.HK>
**Cc:** "SHANE SMITH" <gumzf1@ite.net>; "TANYA DAMIAN"
<TBDAMIAN@LSGSKYCHEFSGUAM.COM>; "'RAMOS, MICHELLE'"
<MDRamos@LSGSKYCHEFSGUAM.COM>
**Sent:** Tuesday, May 15, 2001 10:34 AM
**Subject:** RE: CMI pricing

Dear Erik,

If we have followed the system used by CO in the USA there should not be a problem because this is what Sandra Pineau ( the person responsible for pricing) wants. If we are totally happy with the outcome we should send it to Doug explaining that we have followed the accepted model. He will not make a decision but will refer it to Sandra. I can get Pat B's support. Please keep me informed on progress.


Regards, Phil
**Philip Thow**
Executive Vice President, Asia

---
**LSG Lufthansa Service Asia Ltd.**
HKGZC
1704-6 Island Place Tower
510 King's Road
North Point
Hong Kong
Phone   +852 2963 6322
Fax     +852 2774 2874
E-mail  philip.thow@lsgskychefs.com.hk


--—Original Message--—
**From:  ERIK LING**
**Sent:**  Monday, May 14, 2001 5:46 PM
**To:**   CINDY LAW; PHILIP THOW
**Cc:**   SHANE SMITH; TANYA DAMIAN; 'RAMOS, MICHELLE'
**Subject:**    CMI pricing


Dear Cindy, dear Phil,


The CMI pricing model which is used by Sky Chefs in the U.S., has been established in Guam. It is set up in a way, that the selling price is split into food cost and labour cost and both factors are multiplied by an agreed mark-up. This mark-up factor is throughout all American units the same. Service charges are also shown separately. But still, this model does not show the various costs in such detail as the previous model which was shown to CMI.


The model is set up in a way that the total revenue remains the same under the assumption that the current meal volume is not changing. As we all know that Doug Bressler did not agree on the previous model, kindly advise on how the new pricing model shall be presented to the customer.


If you need more detailed information about the mechanism of the new model, I will be happy to present it to you.


Best regards,

Erik


**Erik Ling**
Sales Controller Asia

**LSG Lufthansa Service Hong Kong Ltd.**
HKG ZF 1/C
No. 6, Catering Road West
Hong International Airport
Chek Lap Kok, Lantau Island
Hong Kong
Phone:  +852 2767 5209
Fax:    +852 2363 9511
E-mail:erik.ling@lsgskychefs.com.hk

5/15/01

*PU Kitch*

## Michelle D. Ramos - Manager, Finance & Administration

**From:** DAVID WAINMAN [DAVID.WAINMAN@lsgskychefs.com.hk]

**Sent:** Thursday, March 13, 2003 12:42 PM

**To:** Nortz, Mike; MICHELLE D RAMOS

**Cc:** DAVID WAINMAN; HK CHEUNG

**Subject:** RE: More info needed

Mike, Can you ensure that we receve a copy of the planned presentation in advance of the meeting to ensure that we have opportunity for in-put.

---------

**From:** Michelle D. Ramos - Manager, Finance & Administration[SMTP:MDRamos@LSGSkyChefsGuam.com]
**Sent:** Thursday, March 13, 2003 9:02 AM
**To:** Nortz, Mike
**Cc:** David Wainman
**Subject:** RE: More info needed

Hi Mike:

No problem. Here's CMI's actual/forecasted revenues for the year.

| Revenues | Act/Fcst | Budget |
|---|---|---|
| YTD 02/03 | $ 888,774 | $1,002,228 |
| Y2003 | 5,938,877 | 5,893,874 |

The Y2003 CMI Revenue Budget was prepared assuming a 5% load increase over Y2002 levels offset by a 5% discount. The discount was built in to discourage CMI from pursuing a flight kitchen or going with another caterer.

The Act/Fcst revenues for CMI factor in
-the reduced passenger loads brought on by Supertyphoon Pongsana (YTD loads -19% of Budget)
-loads forecasted to increase over the year to minimize the shortfall and close the gap with Budge
-no discount
-reduction of chargeable flights to Saipan
-a 1% increase in the Gross Receipts tax applied to service charges effective 4/1/03
-reduction in service charges due to CMI's change to use of disposable casseroles.

The tourism industry continues to suffer from the aftermath of Supertyphoon Pongsana. Per the Guam Hotel and Restaurant Association, overall arrival numbers for December 02 & January 03 registered at -43% and -33% compared to December 01 & January 02.

Please note that the forecast does not reflect any effect of the potential war in Iraq or the situation in North Korea, both of which may severely

3/13/2003

impact the results.

Let me know if there is anything else you'll need.

Best regards,

Michelle

-----Original Message-----
From: Nortz, Mike [mailto:Mike.Nortz@LSGSkyChefs.com]
Sent: Thursday, March 13. 2003 3:11 AM
To: Ramos, Michelle
Subject: More info needed


Michelle,
Can you give me the YTD variance to budget for CMI revenue in Guam as well
as your reforecasted revenue. Please include any assumptions used in the
reforecast. Our meeting is next week with CMI and I'm working on the
presentation to be reviewed on Monday.

Sorry for the short notice.

Mike

3/13/2003

## Michelle D. Ramos - Manager, Finance & Administration

**From:** Michelle D. Ramos - Manager, Finance & Administration [MDRamos@LSGSkyChefsGuam.com]
**Sent:** Tuesday, January 07, 2003 9:24 AM
**To:** DAVID WAINMAN; HK CHEUNG
**Cc:** Fritz Pandalitschka
**Subject:** RE: Guam

Dear David:

I believe this is the summary of the studies you need. Study 1 and 3 should take care of your requests #1 and 2 respectively. Please note that we based these studies on Budget Y2004 (pre-typhoon conditions, reasonable markup on prices for all airlines with the exception of CMI, incorporation of a conservative Lean Manufacturing improvement factor for labor, and with the assumption of full implementation of the Union contract).

I can do this for Y2002 but it will take some time to update the studies especially with the YE close and the auditors in house to meet the tight deadline. Let me know if you would like me to proceed.

Happy New Year!

Michelle

-----Original Message-----
**From:** DAVID WAINMAN [mailto:DAVID.WAINMAN@lsgskychefs.com.hk]
**Sent:** Monday, January 06, 2003 2:20 PM
**To:** MICHELLE D RAMOS
**Subject:** Guam

Michelle I need you to summarize some information that you have previously prepared and re-send. I am looking for the top sheets only .

1. existing 2002 actual and forecast P+L , 3 columns total, CMI, others.
2. Forecast P+L at new CSC ,3 columns as per above. Note include effects of additional CMI revenue, frozen meals etc.
3. Note I do not want to factor in the temporary affects of the Typhoon .
4. please call me to discuss.

David Wainman
**Executive Vice President**
**Asia Pacific Region**

LSG Lufthansa Service Asia Ltd.
Rm 1704-6 Island Place Tower
510 King's Road
North Point
HONG KONG
Phone: +852 2963 6322
Fax:   +852 2774 2874

1/7/2003

**Subject: RE: Open Book Pricing/CMI**
   Date: Tue, 9 Jan 2001 08:27:37 +0800
  From: PHILIP THOW <PHILIP.THOW@LSGSKYCHEFS.COM.HK>
    To: SHANE SMITH <gumzf1@ite.net>
    CC: "'Michelle Ramos'" <gumzf10@ite.net>,
        ERIK LING <Erik.Ling@LSGSKYCHEFS.COM.HK>

Dear Shane,
This seems fine on the open book, please ensure they understand that the format is a concept for discussion.
On the contract it was Doug who originally told us the contract was signed. Our investigation has shown that it is still
with Laura Widing in Houston but there do not appear to be any major issues. Pat Berkelbaugh the global account
manager for CO is assisting us with this.

Regards, Phil

        -----Original Message-----
        **From:** Shane Smith [SMTP:gumzf1@ite.net]
        **Sent:** Tuesday, January 09, 2001 5:40 AM
        **To:** PHILIP THOW
        **Subject:** Re: Open Book Pricing/CMI

        Hi again Phil

        I mentioned to Doug on Sunday on the golf course that we had something to show him .
        He is out of town for the whole month returning only for a few days , then to leave again .
        He asked that we have it bound at he's offices before the 13th as he wants to take it to
        Houston with him.
        I feel between Michelle and myself we can try jump the first barrier on our own.
        If we had sent it from Hong Kong directly , i would then ask that Erik accompany the
        document as then there would be grounds for him to explain what he had done.

        Will keep you informed about developments.

        By the way ... he made it clear on Sunday that there was no signed contract . Im not sure
        who all the Texas players are but he again claimed that the contract was not signed.

        Possibly if you could look into this .

        Regards

        Shane

        PHILIP THOW wrote:

                Dear Shane,
                I am happy to send Erik down to assist you with initial discussions with Doug. The process agreed with
                CMI is that we would present them a format which would be the basis for discussion and ultimately
                development into a mutually acceptable system.

1 of 2

1/10/01 7:47 i

**Subject: RE: Open Book Pricing**
Date: Wed, 27 Dec 2000 08:52:50 +0800
From: PHILIP THOW <PHILIP.THOW@LSGSKYCHEFS.COM.HK>
To: "'Michelle D. Ramos'" <gumzf10@ite.net>
CC: SHANE SMITH <gumzf1@ite.net>, TANYA DAMIAN <gumzfs@ite.net>,
ERIK LING <Erik.Ling@LSGSKYCHEFS.COM.HK>

Dear Michelle,
I am a little confused on the OBP. My understanding from Erik was that we had now almost reached a stage whereby Shane could do an initial presentation to Doug. Can you please check. Regarding the contract I can advise that I do not have the final copy as I was awaiting some answers from Laura Widing in Houston on a couple of insurance issues. The latest I have from the USA (Pat Berkelbaugh) was that I should receive a copy shortly.

Best regards, Phil

-----Original Message-----
From: Michelle D. Ramos [SMTP:gumzf10@ite.net]
Sent: Wednesday, December 27, 2000 8:40 AM
To: Philip Thow
Cc: Shane Smith; Tanya Damien
Subject: Open Book Pricing

Dear Phil:

Doug called yesterday regarding the Open Book Pricing and the 75% CPI adjustment. He would like to know the status of the OBP and when he may receive it. He also stated that he will not entertain any adjustment in price, including adjustments in the handling charges for CPI, until he has seen it. Anyway, we would appreciate if you would send him a brief update on the OBP.

He also mentioned that the contract between LSG and Continental Airlines has been signed. If you have a copy, please send us one. With the contract signed, we can enforce the CPI adjustment for handling at least.

On our end, we have not received anything from Rev & Tax on the revised ruling request. Ernst & Young is following up.

Best regards...Michelle

1 of 1

## Michelle D. Ramos - Finance & Administration Manager

**From:** "Shane Smith" <gumzf1@ite.net>
**To:** <TBDamian@LSGSkyChefsGuam.com>; "Manager Michelle D. Ramos - Finance & Administration" <MDRamos@LSGSkyChefsGuam.com>
**Sent:** Tuesday, May 01, 2001 6:23 AM
**Subject:** Fw: CMI Pricing

----- Original Message -----
From: Allen, Harvey <HAllen@Skychefs.com>
To: 'Shane Smith' <gumzf1@ite.net>
Cc: Law,Cindy <cindy.law@lsgskychefs.com.hk>
Sent: Tuesday, May 01, 2001 12:11 AM
Subject: RE: CMI Pricing


> Shane:
>
> Don't worry about precise measurements for services - just ask the setup
> people how long it takes to set up a flight for each type aircraft - we just
> need a "ballpark" number. The most important thing is the item usage for
> your codes. This needs to be completed befor I arrive. Erik and I can
> complete the rest, assigning labor standards to menu codes.
>
> The file I sent you was just an example of what we do here for the Domestic
> system - don't think that you have to do the same thing!
>
> Once again, the item usage by code is very important!
>
> Regads,
>
> Harvey
>
> -----Original Message-----
> From: Shane Smith [ mailto:gumzf1@ite.net <mailto:gumzf1@ite.net> ]
> Sent: Sunday, April 29, 2001 6:55 PM
> To: Allen, Harvey
> Subject: Re: CMI Pricing
>
>
> Good day Allen
>
> Thanks for the files , I have sent copies to all parties concerned and will
> get back to you with questions. My God how long did it take to get it to
> this stage. There is no way in hell we can even start on such a momentous
> challenge as we have never done time studies on anything we make here.
>
> If you can live with that then welcome . In less than one week before you
> arrive , we have Golden week this week meaning we are extremely busy . I

*yields?*
*recipes?*
*per portion?*

> will wait to see if you can still make it after hearing our side . Please
> advise if you still want to come . I will fill you in on all other details
> subject to your approval .
>
> Kind regards
>
> Shane
>
> PS I would naturally pick you up , we are a little civilised here.
> ----- Original Message -----
> From: Allen, Harvey <HAllen@Skychefs.com>
> To: <gumzf1@ite.net>
> Sent: Saturday, April 28, 2001 6:07 AM
> Subject: RE: CMI Pricing
>
>
> > Greetings to all!
> >
> > Here is my itenerary:
> >
> > Arrive GUM CO flt 73 at 2000/08 May from HNL
> > Depart Gum CO flt 961 at 0630/12 May to NRT
> >
> > Could you book a hotel for me for the May 8-12?
> > Could someone meet me or give me directions on how to get to the Hotel?
> >
> > Here's what we need to get done before I arrive:
> >
> > 1. Need to identify the actual labor time for each Service on CO for
> each
> > type Aircraft to include dishwash, flight setup, liquor, bonded items,
> > beverages, etc.
> >
> > 2. Need to fill in the enclosed shaded areas of the file I have
> enclosed.
> In
> > order to do this conversion, we need to have item usage for a
> representative
> > period for ALL cycles of your menu items. I am not familiar with your
> cycle
> > periods, but we need usages for each cycle period, preferably for the
> last
> > 3-4 months. Hopefully you have a system that provides this - we have to
> have
> > this usage for the conversion.
> >
> > 3. We will have to assign labor standards in Man-minutes (MM) for each
> item
> > code (even if it is "0"). I will try to enclose a current file with
> Domestic
> > U.S. standards, so you can get a hint of what we need to do. This

*Crystal reports.*

5/3/01

requires

\> > Acrobat 4.0 to read the file, which is Zipped. I will forward it to you in

> a

\> > separate E-mail. I will Fax a list of MM for Service charges to you on

\> > Monday. Hopefully you can get started on assigning time standards to each

\> > food code.

\> >

\> > I know this sounds quite complicated, but it isn't that bad. The CO

> formula

\> > in the USA is: food cost/.78 + MM times MM rate = sell price. The service

\> > formula is similar: MM times MM rate times $1/.78$( or $1.282$ ) = service

\> > price.

\> >

\> > Please acknowledge and advise me of where I might be staying. Looking

\> > forward to meeting you - I haven't been to GUM since my Braniff days!

\> >

\> > Best regards,

\> >

\> > Harvey Allen

\> >

\> >

\> >

\> > -----Original Message-----

\> > From: CINDY LAW [ mailto:CINDY.LAW@LSGSKYCHEFS.COM.HK

> <mailto:CINDY.LAW@LSGSKYCHEFS.COM.HK> ]

\> > Sent: Thursday, April 26, 2001 5:55 AM

\> > To: 'Pat Berkelbaugh'; 'Harvey Allen'

\> > Cc: ERIK LING

\> > Subject: FW: CMI Pricing

\> >

\> >

\> >

\> > Dear Pat and Harvey. The following is for your information. Please note

\> > that Erik from HKG will be joing Harvey to Guam for the pricing

> conversion.

\> >

\> >

\> > Harvey, you can contact Tanya (Manager Customer Service) or Michelle (F &

> A

\> > Manager) if he needs any information before his visit. (please copy us in

\> > your correspondence). Please send Tanya and Erik your itinerary once

\> > available. Thanks very much for your assistance again.

\> >

\> > Best regards

\> > Cindy

5/3/01

\> >
\> > -----Original Message-----
\> > From: Michelle D. Ramos - Finance & Administration Manager
\> > [SMTP:MDRamos@LSGSkyChefsGuam.com]
\> > Sent: Thursday, 26 April 2001 1:51 PM
\> > To: CINDY LAW
\> > Cc: Shane Smith; Tanya B. Damien
\> > Subject: Re: CMI Pricing
\> >
\> > Hi Cindy!
\> >
\> > May 7-11 is fine. See below for responses to their concerns.
\> >
\> > Best regards...Michelle
\> >
\> >
\> > ----- Original Message -----
\> > From: CINDY LAW < mailto:CINDY.LAW@LSGSKYCHEFS.COM.HK
\> <mailto:CINDY.LAW@LSGSKYCHEFS.COM.HK>
\> > < mailto:CINDY.LAW@LSGSKYCHEFS.COM.HK
\> <mailto:CINDY.LAW@LSGSKYCHEFS.COM.HK> > >
\> > To: SHANE SMITH < mailto:gumzf1@ite.net <mailto:gumzf1@ite.net> <
\> mailto:gumzf1@ite.net <mailto:gumzf1@ite.net> > >
\> > Cc: TANYA DAMIAN < mailto:TBDAMIAN@LSGSKYCHEFSGUAM.COM
\> <mailto:TBDAMIAN@LSGSKYCHEFSGUAM.COM>
\> > < mailto:TBDAMIAN@LSGSKYCHEFSGUAM.COM
\> <mailto:TBDAMIAN@LSGSKYCHEFSGUAM.COM> > > ; 'Michelle Ramos' <
\> > mailto:MDRamos@LSGSKYCHEFSGUAM.COM
<mailto:MDRamos@LSGSKYCHEFSGUAM.COM>
\<
\> mailto:MDRamos@LSGSKYCHEFSGUAM.COM
<mailto:MDRamos@LSGSKYCHEFSGUAM.COM> >
\>
\> > Sent: Thursday, April 26, 2001 12:26 PM
\> > Subject: CMI Pricing
\> >
\> >
\> >
\> > Dear Shane, Harvey Allen, the Pricing Manager in Arlington, can now
\> > assist us on the CMI pricing. Erik will also be joining Harvey with his
\> > visit to Guam. Please let me know asap if they can visit during May
7-11
\> > and your reply to their concern below.
\> >
\> > Brgds- Cindy
\> >
\> >
\> > -----Original Message-----
\> > From: Berkelbaugh, Pat [SMTP:PBerkelb@Skychefs.com]
\> > Sent: Friday, 20 April 2001 9:58 PM
\> > To: Thow,Philip

> > Cc:    Law,Cindy; Johnson, Guy; Allen, Harvey; Biales, Dean
,> > Subject:    RE: GRT
> >
> > Dear Phil,
> >        Harvey has agreed to support the pricing conversion in Guam. He is
> > available 5/7/01 - 5/11/01. Backup dates are 4/30/01 - 5/4/01. I will need
> > the following info if these dates work.
> > 1. The contacts for Harvey in Guam. That would be Shane, Tanya and
> myself.
> > 2. Full support from the Guam team to have all information available to
> > Harvey when he arrives.   Access to all payable files will be made
> > available.
> > 3. The expectations from Guam and Continental Airlines on the book of
> work.
> > CMI expects same system used in USA. We have yet to find out what that
> is.
> >
> > Let me know if you need any additional information. Guy and I will
> > see you
> > Thursday in Dallas to discuss.
> >
> > Best Regards
> > Pat
> >
> >
> >
>
>
>

5/3/01

## Michelle D. Ramos - Finance & Administration Manager

**From:** "PHILIP THOW" <PHILIP.THOW@LSGSKYCHEFS.COM.HK>
**To:** "ERIK LING" <Erik.Ling@LSGSKYCHEFS.COM.HK>; "CINDY LAW" <CINDY.LAW@LSGSKYCHEFS.COM.HK>
**Cc:** "SHANE SMITH" <gumzf1@ite.net>; "TANYA DAMIAN" <TBDAMIAN@LSGSKYCHEFSGUAM.COM>; "'RAMOS, MICHELLE'" <MDRamos@LSGSKYCHEFSGUAM.COM>
**Sent:** Tuesday, May 15, 2001 10:34 AM
**Subject:** RE: CMI pricing

Dear Erik,

If we have followed the system used by CO in the USA there should not be a problem because this is what Sandra Pineau ( the person responsible for pricing) wants. If we are totally happy with the outcome we should send it to Doug explaining that we have followed the accepted model. He will not make a decision but will refer it to Sandra. I can get Pat B's support. Please keep me informed on progress.


Regards, Phil
**Philip Thow**
Executive Vice President, Asia

---

**LSG Lufthansa Service Asia Ltd.**
HKGZC
1704-6 Island Place Tower
510 King's Road
North Point
Hong Kong
Phone   +852 2963 6322
Fax      +852 2774 2874
E-mail  philip.thow@lsgskychefs.com.hk

-----Original Message-----
**From:  ERIK LING**
**Sent:**   Monday, May 14, 2001 5:46 PM
**To:**    CINDY LAW; PHILIP THOW
**Cc:**    SHANE SMITH; TANYA DAMIAN; 'RAMOS, MICHELLE'
**Subject:**    CMI pricing


Dear Cindy, dear Phil,


The CMI pricing model which is used by Sky Chefs in the U.S., has been established in Guam. It is set up in a way, that the selling price is split into food cost and labour cost and both factors are multiplied by an agreed mark-up. This mark-up factor is throughout all American units the same. Service charges are also shown separately. But still, this model does not show the various costs in such detail as the previous model which was shown to CMI.

The model is set up in a way that the total revenue remains the same under the assumption that the current meal volume is not changing. As we all know that Doug Bressler did not agree on the previous model, kindly advise on how the new pricing model shall be presented to the customer.

If you need more detailed information about the mechanism of the new model, I will be happy to present it to you.

Best regards,

5/15/01

Erik

**Erik Ling**
Sales Controller Asia

---

**LSG Lufthansa Service Hong Kong Ltd.**
HKG ZF 1/C
No. 6, Catering Road West
Hong International Airport
Chek Lap Kok, Lantau Island
Hong Kong
Phone:  +852 2767 5209
Fax:    +852 2363 9511
E-mail:erik.ling@lsgskychefs.com.hk

5/15/01


**LSG Lufthansa Service**
**SKY Chefs**

**Telefax**

**Robert Torres**
**Attorney**
To

**Michelle D. Ramos**
**Fax:** **671 646 0673**
From

**477 0001**
Telefax Number

**06/16/97**
Date

Number of pages including transmittal: **9**

Message:

Dear Robert:

Following is the share purchase agreement which LSG would like to present to Continental. The agreement was drafted in Germany so I would appreciate if you would take a look at it and advise whether there are any legal issues which have not been addressed.

We would like to present it to CMI tomorrow afternoon. Please review it and fax me your comments by the end of today. Should you have any questions or concerns, do not hesitate to call me. I'll either be in my office (646-3655) or in the Executive Office (646-5878/90). Thanks for your help

Best regards

*Michelle*

This message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone and return the original message to us at the above address via the U.S. postal service. Thank you.

## SHARE PURCHASE AND SHAREHOLDERS AGREEMENT

THIS SHARE PURCHASE AND SHAREHOLDERS AGREEMENT (this "Agreement") is entered into on the _____ day of _____ 1997, by and between Continental Micronesia, Inc., a _____ corporation ("Continental"), and LSG Catering Guam, Inc., a Guam corporation ("LSG").

## RECITALS

A.    LSG is the owner of 30,097 shares, each with a par value of $100.00 of the capital stock of LSG Lufthansa Service Guam, Inc., a Guam corporation ( the "Company"), which shares constitute approximately 99.99% of the 30,100 issued and outstanding shares of the Company's capital stock.

B.    The Company and Continental have agreed to enter into an Inflight Catering Agreement on the Closing Date (as such term is defined below) under which the company will have the exclusive right to provide inflight catering services to Continental at the Guam International Airport for a minimum period of 10 years (the "Catering Agreement").

C.    As an inducement for Continental to enter into the Catering Agreement, LSG has agreed to sell to Continental, and Continental has agreed to purchase from LSG, under the terms and conditions set forth below, 3,010 shares of the capital stock of the Company (the "Shares"), which Shares constitute 10% of the issued and outstanding shares of the Company's capital stock.

## AGREEMENT

NOW, THEREFORE, in consideration of the mutual covenants and agreements hereinafter set forth, and for other good and valuable consideration received by each of the parties to this Agreement, the receipt and sufficiency of which is hereby acknowledged, the parties agree as follows:

1.    **Purchase and Sale**.    Continental hereby agrees to purchase form LSG, and LSG hereby agrees to sell to Continental, the Shares for a purchase price of $1.00 (one dollar) per Share and an aggregate purchase price of $3,010.00 (three thousand and ten dollars) (the "Purchase Price"). As further consideration for LSG's sale to Continental of the Shares, Continental agrees to enter into the Catering Agreement.

2.  **Closing.** The closing of the purchase and sale of the Shares (the "Closing") shall take place at 10:00 am on _____ at the offices of the Company or at such other location as may be agreed by the parties. At the Closing, (a) Continental will deliver to LSG (i) the Purchase Price by bank cheque or wire transfer to an account designated by LSG and (ii) Continental's executed counterpart of the Catering Agreement, and (b) LSG will deliver to Continental (i) a certificate representing the Shares, which certificate shall be duly endorsed or assigned to Continental and (ii) LSG's executed counterpart of the Catering Agreement.

3.  **Representations and Warranties of LSG.** LSG represents and warrants to Continental as follows:

(a)  **Requisite Power and Authority.** LSG has all necessary power and authority under all applicable provisions of law to execute and deliver this Agreement, to carry out all of its provisions and to sell the Shares. All action on LSG's part required for the lawful execution, delivery and performance of this Agreement has been effectively taken. Upon its execution and delivery, this Agreement will be a valid and binding obligation of LSG, enforceable in accordance with its terms except as may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or other laws of general application affecting enforcement of creditors' rights.

(b)  **Legality.** The execution, delivery and performance of this Agreement by LSG does not and will not violate any provisions of any applicable statute, law, rule or regulation, and will not, with or without the giving of notice and/or the passage of time, violate conflict with or result in any breach of any of the terms or conditions of, or constitute a default under, any mortgage, contract, agreement or other instrument to which LSG is a party or by which it is bound or any order, judgment or decree of any court or regulatory authority.

(c)  **Ownership of Shares.** LSG is the sole record and beneficial owner of the Shares. LSG has full legal power, right and authority to sell and convey to Continental legal and beneficial title to the Shares, and LSG's sale of the Shares to Continental will transfer good and marketable title thereto, free and clear of the security interests, liens, pledges, hypothecations charges, encumbrances or restrictions of any kind or nature, except as set forth in this Agreement. The Shares are not subject to any options warrants, rights of first refusal, co-sale rights, or any other restrictions, except as set forth in this Agreement. No consent of any person or regulatory authority is required in connection with the sale of the Shares to Continental pursuant hereto.

4.  **Representations and Warranties of Continental.** Continental represents and warrants to LSG as follows:

-2-

(a) **Requisite Power and Authority**. Continental has all necessary power and authority under all applicable provisions of law to execute and deliver this Agreement and the Catering Agreement (together the "Agreements"), to carry out all of their respective provisions and to purchase the Shares. All action on Continental's part required for the lawful execution, delivery and performance of the Agreements has been effectively taken. Upon their execution and delivery, the Agreements will be valid and binding obligations of Continental, enforceable in accordance with their respective terms except as may be limited by applicable bankruptcy, insolvency, reorganization, moratorium of other laws of general application affecting enforcement of creditors' rights.

(b) **Legality**. The execution, delivery and performance of the Agreements by Continental does not and will not violate any provisions of any applicable statute, law, rule or regulation and will not, with or without the giving of notice and/or the passage of time, violate conflict with or result in any breach of any of the terms or conditions of, or constitute a default under, any mortgage, contract, agreement or other instrument to which Continental is a party or by which it is bound, or any order, judgment or decree of any court or regulatory authority.

(c) **Consents**. All consents, approvals, orders, authorizations, registrations, qualifications, declarations or filings with any person or regulatory authority required on the part of Continental in connection with the consummation of the transactions contemplated in the Agreements have been or shall have been obtained prior to and be effective as of the Closing.

(d) **Investment Representations**. Continental understands that the Shares have not been registered under any applicable federal or state securities laws. Continental also understands that the Shares are being offered and sold pursuant to exemptions from registration contained in such laws based in part upon Continental's representations. Continental hereby represents and warrants to LSG as follows:

(i) **Continental Bears Economic Risk**. Continental understands that (A) Continental must bear the economic risk of this investment indefinitely unless the Shares are registered, or an exemption from registration is available. (B) the Company has no present intention of registering the Shares, (C) Continental has no registration rights with respect to the Shares, (D) even if available, any exemption from registration may not allow Continental to transfer all or any portion of the Shares under the circumstances, in the amount or at the times that Continental might propose.

(ii) **Acquisitions for Own Account**. Continental is acquiring the Shares for its own account for investment and not with a view toward the distribution thereof.

-3-

(iii) **Continental Can Protect Its Own Interests**. By reason of the business or financial experience of Continental or its management or professional advisors, Continental has, or could be reasonably assumed to have, the capacity to evaluate the merits and risks of its investment in LSG and to protect its own interests in connection with the transactions contemplated in this Agreement.

(iv) **Access to Information**. Continental has been given access to all Company documents, records, and other information, has received all documents, records and other information which it has requested, and has had adequate opportunity to ask questions of, and receive answers from, the company's officers, employees, agents, accountants and representatives concerning the Company's business, operations, financial condition, assets, liabilities and all other matters relevant to its investment in the Shares.

5. **Conditions to the Parties' Obligations**. The obligation of each party to consummate the transactions contemplated in this agreement is subject to the satisfaction of the following conditions at the Closing:

(a) **Accuracy of Representations and Warranties**. The other party's representations and warranties set forth in Sections 3 or 4 above, as applicable, shall be true and correct on and as of the date of the Closing.

(b) **Closing Actions and Deliveries**. The actions required to be taken and the deliveries required to be made at the Closing by the other party shall have been so taken and made.

(c) **Proceedings Satisfactory**. All corporate and other proceedings in connection with the transactions contemplated by this Agreement and all documents incident to it shall be reasonably satisfactory in form and substance to such party and its counsel, and such party and its counsel shall have received all such originals or other copies of such documents as they may reasonably request from the other party.

6. **Survival or Representations and Warranties**. all representations, warranties, covenants and agreements in this Agreement and in certificates or other documents delivered pursuant to this Agreement by the parties shall survive the Closing. All such representations, warranties, covenants and agreements shall be binding upon and inure to the benefit of the successors and assigns of the parties.

7. **Restrictions of Transfer**. Continental agrees that, for so long as the Catering Agreement ( including any extension or renewal thereof ) remains in

-4-

effect, and for a period of 12 months following the termination or expiration of the Catering Agreement (the "Restriction Period"), Continental shall not effect or permit a Transfer of any of the Shares or any interest therein without the prior written consent of LSG, which consent may be withheld at LSG's sole discretion. Any purported Transfer of any of the Shares or any interest therein in violation of the foregoing restriction shall be void. For purposes of this Agreement, "Transfer" means any direct or indirect sale, gift, transfer, pledge, hypothecation, assignment, mortgage, encumbrance or other disposal, whether voluntary, involuntary or by operation of law.

8. **Purchase Option**. If, at any time during the Restriction Period, (i)the Catering Agreement is terminated for any reason or (ii) the Company becomes entitled to terminate the Catering Agreement by reason of an uncured default by Continental thereunder, then LSG shall have the option (the "Purchase Option") to purchase all of the Shares for a total amount of $3010.00 (three thousand and ten dollars) (the "Option Price"). The Purchase Option shall be exercisable by delivery of written notice (the "Purchase Notice") to Continental, notifying Continental of LSG's intent to purchase all of the Shares pursuant to this Section 8.

9. **Sale Option**. At any time during the Restriction Period, Continental shall have the option (the "Sale Option") to require LSG to purchase all of the Shares for a total amount equal to the Option Price. The Sale Option shall be exercisable by delivery of written notice (the "Sale Notice") to LSG, notifying LSG of Continental's intent to sell all of the Shares pursuant to this Section 9.

10. **Option Closing**. The closing of any purchase of the Shares by LSG under Sections 8 or 9 hereof shall be held at the principal office of the Company on the 30th day following delivery of the Purchase Notice or the Sale Notice, or at such other time and place as LSG and Continental may agree. At such closing, Continental shall deliver the certificate representing the Shares, duly endorsed for transfer and accompanied by all requisite share transfer taxes (if any). The Shares purchased by LSG at such closing shall be free and clear of any liens, claims options, charges, encumbrances or rights of others and Continental shall so represent and warrant to LSG. Continental shall also represent that it is the record and beneficial owner of the Shares. LSG shall deliver at such closing, by wire transfer or certified check, the full Option Price for the Shares. Continental and LSG shall each execute such additional documents as the other may reasonably request for the purpose of consummating the sale and purchase of the Shares and effecting the intentions of the parties hereunder.

11. **Permitted Transferees**. The transferee of any Shares permitted to be transferred hereunder during the Restriction Period shall, as a condition of such transfer, be required to agree in writing (for and on behalf of himself or itself, his or its

-5-

legal representatives and his or its transferees and assigns) to be bound by all the provisions of Sections 7 through 12 hereof as a party hereto bound to the same extent as Continental is bound by this Agreement.

12.    **Legend**.  For the duration of the Restriction Period, the parties shall cause the Company to affix and maintain on the certificate(s) evidencing the Shares the following legend (in addition to any legend affixed pursuant to applicable securities laws): "THE SHARES EVIDENCED BY THIS CERTIFICATE ARE SUBJECT TO RESTRICTIONS ON TRANSFER SET FORTH IN A STOCK PURCHASE AND SHAREHOLDERS   AGREEMENT   DATED   _____   1997   BETWEEN CONTINENTAL MICRONESIA, INC. AND LSG CATERING GUAM, INC."

13.    **Miscellaneous.**

**Notices**.  All notices which may be or are required to be given under this Agreement shall be in writing. All written notices shall be deemed given 20 days after deposit in the certified mail, postage-prepaid and return receipt requested, two business days after delivery to a receipted courier for next or second business day delivery or upon transmission if sent by facsimile and electronic confirmation of transmission is generated. All notices shall be given at the address of a party set forth below, or at such other address as either party may have substituted by written notice to the other.

-6-

(i)     If to Continental, to:

>       Continental Micronesia, Inc.
>       _____
>       _____
>
>       Tel:
>       Fax:
>       Attn:

with a copy which shall not constitute notice to:

>       _____
>       _____
>
>       Tel:
>       Fax:
>       Attn:

(ii)    If to LSG, to:

>       LSG Catering Guam, Inc.
>       _____
>       _____
>
>       Tel:
>       Fax:
>       Attn:

with a copy which shall not constitute notice to:

>       _____
>
>       Tel:
>       Fax:
>       Attn:

(b)     Assignments.  This Agreement may not be assigned by either party without the prior written consent of the other.  The provisions of this Agreement shall be binding upon and shall inure to the benefit of each of the parties hereto and their respective representatives, successors and permitted assigns.

-7-

(c) **Entire Agreement**. This Agreement merges all previous negotiations between the parties hereto and constitutes the entire agreement and understanding between the parties with respect to the subject matter of this Agreement. No amendment, modification or change of this Agreement shall be valid unless in writing and executed by parties hereto.

(d) **Captions**. Captions to and headings of the sections and subsections, paragraphs or subparagraphs of this Agreement are solely for convenience, are not a part of the Agreement, and shall not be used for the interpretation or determination of the validity of this Agreement or any provision hereof.

(e) **Governing Law**. This Agreement shall be governed and construed in accordance with the laws of Guam (excluding the conflict of law rules thereof).

IN WITNESS WHEREOF, the parties have executed this agreement as of the date first above written.

LSG CATERING GUAM, INC.

By: _____

Name: _____

Title: _____

CONTINENTAL MICRONESIA, INC.

By: _____

Name: _____

Title: _____

-8-



CONFIDENTIAL INFORMATION

DATE:        September 6, 2000

TIME:        2:00 PM – 3:45 PM

ATTENDEES:  Mr. Frank Fischer, GUM ZF 1          Ms. Joy DeGuzman, GUM ZF 20
            Ms. Michelle Ramos, GUM ZF 10        Ms. Madeline Horinouchi GUM ZF 13
            Ms. Julia Smith, GUM ZF 12P          Mr. Mar Zaldivar, GUM ZF 114
            Mr. Mar Ramos, GUM ZF 116            Mr. Charlie Paciente, GUM ZF 113
            Ms. Aileen Dilidili, GUM ZF R/Q      Mr. James Quenga, GUM ZF 115
            Mr. Celso Castillejos, GUM ZF 112    Mr. Robert Hemandez, GUM ZF 14

ABSENT:     Ms. Annette Tangye, GUM ZF 12M       Mr. Chris Urban, GUM ZF 111
            Mr. Eddie Martinez, Bakery           Mr. Kelvin Chan, GUM ZF 113

RECORDER:   Ms. Nona Pangelinan, GUM ZF/S

---

## Minutes From Last Meeting Reviewed:

Managers were requested to review the minutes of the previous meeting. Several topics were discussed and the following topics require Department Manager's attention.

## Important Information

November 22 – 24, 2000 – Mr. Cheung H.K., Mr. Phil Thow & Mr. Shane Smith will be here. All departments should be in excellent condition.
November 26, 2000 – Audit to be preformed by our Germany office: Mr. Guterman and Mr. Klunsch.
November 27, 2000 – Farewell function for GUM ZF 12M & 12P.
November 29, 2000 – Mr. Jo will be here for an inspection.
December 8, 2000 – LSG Guam Christmas Party.
December 9, 2000 – LSG Saipan Christmas Party.
December 13, 2000 – Customer Appreciation & Farewell Party for GUM ZF 1.

## Customer Service

A.  GUM ZF 111 and GUM ZF 12M to update Continental menu specifications and recipes.  We will need the recipes, costing, pricing and manpower requirements.
B.  GUM ZF RQ to prepare for Northwest upcoming inspection.
C.  Starting November 13, 2000 we will have our new Customer Service Manager on board, Ms. Tanya Damian.  GUM ZF 12P and 12M will be working with her for the first couple of weeks.

GUM ZF 1S/MM99/ADMN499

## Human Resources

A. Annual evaluations for all departments are due and GUM ZF 13 will need them ASAP.

B. GUM ZF 13 to coordinate with GUM ZF 116 a safety committee meeting to ensure that the company is following all OSHA safety regulations. OSHA has conducted an inspection. A list of discrepancies has been forward to GUM ZF1. All discrepancies need to be addressed prior to October 24, 2000. GUM ZF 116 to provide GUM ZF1 with a list of outstanding issues by October 27, 2000.

C. GUM ZF 13 and GUM ZF 10 to put a memo together to appoint a chairperson and who's -- who for the board of our safety committee. This should follow with a meeting after 1 month.

D. All managers to advise their employees who deal with customers to be first to receive uniforms which will be passed out at the next payroll session with Anita. GUM ZF 13 to finalize a list of which employees to exchange uniforms, this way we can control the distribution and stolen uniforms will not be an issue.

## Administrative

A. GUM ZF 10 will meet with Marty Woodward regarding proper procedures of all employee attendance.

## Kitchen

A. GUM ZF RQ advises that we be due for an inspection by public health and the FDA.
B. Quality First Awards for the Pacific Region Meeting

## Airport

A. Several issues to be discussed with GUM ZF 1 regarding items that are being sold at the ice cream shop for a lower price.

Case 1:03-cv-00028    Document 33    Filed 10/17/2003    Page 102 of 168

**Subject:** **Revised audit report**
**Date:** Mon, 11 Dec 2000 17:38:49 +1000
**From:** "Michelle D. Ramos" <gumzf10@ite.net>
**Organization:** LSG Sky Chefs - Guam
**To:** Frank Fischer <gumzf1@ite.net>

Mr. Fischer:

I've made some changes in red to the audit report for your review.

Michelle

| Prim Summary GUM SPN eng.doc | **Name:** Prim Summary GUM SPN eng.doc<br>**Type:** Download File (application/msword)<br>**Encoding:** base64 |
|---|---|

Case 1:03-cv-00028    Document 33    Filed 10/17/2003    Page 103 of 168



### General:

- The good leadership in the companies is reflected in the results for 1999 and 2000 (GUM: reduction of cost of goods of 4,2% 1997 through 1999; reduction of personnel costs of 3,4% while the gross profit rate was increased by 0,8% during the same period) and increased work-satisfaction and motivation especially in middle management. Also stocks were reduced (Average 98 Mar 99 to Oct 00) by approx. T$ 113 85.
- Written rules and regulations for internal procedures, i.e. duty travel etc. do not exist are in process to coordinate with new employee handbook and management information system (MAS90).

### Production / Hygiene / Tray set up:

- Recipes, consisting of the specified food costs and direct labor costs for exact calculations were not available. They are done out of food costs and a specified mark up only. Plans to implement food-costing module into management information system underway.
- Installation of trolley - lifters in tray set up to optimize work efficiency should be evaluated.
- Work - flow in pot wash could be optimized by providing an exit in the rear to avoid transporting dirty and clean item through the same exit; estimated cost $ 200 - 400. (SPN)

### Purchasing:

- A Vendors' data base including the vendors' history does not exist. Checking vendors is not documented. The new system (MAS 90) system already has the functionality but has to be actualized. (SPN)
- Stores daily issues so-called dispositions formats with the daily requirements to purchasing. The format is very small and high number of articles might lead to confusion; therefore it should be changed to letter format. (SPN)  This is an internal document simply used to notify purchasing clerk to place an order to replenish.  Recommend removing this note.
- Although it is possible to agree an early payment discounts with vendors this potential is not exhausted. Based on 2% of outgoing payments the potential for 2000 is approximately T$ 445; only T$ 16 were realized.

1

Case 1:03-cv-00028     Document 33     Filed 10/17/2003     Page 104 of 168

## Operations:

- Trolley - labels are filled out manually which is labor intensive and may lead to mistakes. Since CS has specified this procedure a different format allowing label - printing should be negotiated with CS.
- Daily log sheets are written after operation. As they are basic documents which should be prepared prior to daily operation, and all changes occurring during operation should be entered, in order to make follow up, especially for invoicing, easier. (SPN)

## Finance:

- Generally goods are received by stores including invoices, making vendors prices known to the employees of goods - receivable. In order to avoid risks that might result from knowledge, vendors should separate goods and invoices. Goods - receivables should receive a delivery note only. With the planned system update, this procedure will be checked. Recommend removing, as the use of invoices as delivery notes is a system practiced islandwide by most vendors. LSG can request vendors to use delivery notes but will have little control over its implementation.
- Food costs are calculated from monthly inventory taken and not by recipes, also waste logs are not written; therefore "actual" food costs can not be calculated.
- Regulations for duty travel should be ~~established~~ updated and re-communicated to ~~which~~ clarify reimbursable costs.
- The process of inventory taking should follow generally accepted accounting principles, always one caller, one writer. (SPN) The counting sheets, as basic documents should be signed by both employees. ~~The employees are forced to follow this procedure but management attention has to be paid to this topic again.~~ Procedures have been drafted and communicated but are not consistently applied. Management will conduct re-training and subject count sheets to stricter reviews.
- Fixed assets of the company should be assigned inventory numbers in order to allow an orderly asset - management. Plans to implement a fixed asset module to the MAS90 system are underway.
- Integration and operationalization of the modules warehousing and costing in MAS 90 should proceed to optimize the information level. It should be evaluated, whether monthly full inventory taking could be skipped after successful installation of the warehousing - module and test - check inventory taking could be implemented.
- A two years old glass washing machine in SPN dish wash has until now never been used; it should either be tried to operate it elsewhere (GUM) put it beside to create more space in the dish wash or to sell it.
- To secure orderly cash management, advance cash - vouchers should not be handed over to employee after accounting for the advance. (SPN)
- The SPN unit manager does not receive his financial data. To ~~avoid double work GUM should provide SPN with the relevant data~~ increase awareness and accountability, financial and statistical performance information should be passed down.

2

## IT:

- To increase IT - safety the following measures are recommended:
  - The system administrator's ability to enter user's workstations without their knowledge should be subpressed; an additional tool should be installed, which forces the administrator to ask for permission first to enter into the users workstations.
  - The server should be removed off the air-conditioning outlet to avoid condensing water destroy the server.
  - Back up tapes should be stored in a fireproof safe away from the server to prevent loss of data in case of fire.
  - All operating IT - programs should be listed and a check of licenses necessary should be carried out.
  - To improve the data - communication system – software should be reconciled.


## Personnel:

- It should be evaluated whether it is possible to get a parking area away from the loading docs to increase security level concerning theft (new facility).
- The employee handbook should be revised. Already in procedure.
- Arrears in the amount of approx. Mio. $ 1,3 mainly results from disputed CS - invoices and GRT not reimbursed by CS and brought forward from previous years. The GRT problem is presently negotiated with CS by the management of LSG Asia and an agreement has recently been reached on the price discrepancies. (This should be moved to the Finance section – nothing to do with Personnel issues).
- Out of discrimination cases, filed in 1998 / 1999 against the company, four cases were still in negotiation at the term of the audit. One of those cases, filed in 1998 against the former managing director for discrimination, could prove damaging for the company if brought to trial. Therefore every effort should be made to reach an amicable settlement. HKG will take care on this topic as well. There were no lawsuits filed in 1999/2000.
- Unionization will reduce the company's result, especially SPN, due to increase of wages from the recent federal minimum - level.


## Maintenance:

- To increase transparency of cost of maintenance and fuel consumption a respective spread - sheet should be introduced. (SPN)


## Customer Service:

- In general meals are priced at food - costs multiplied by a mark up factor; data for direct labor are not available. The main customer CS Micronesia, wants to change form the present system, Average Pricing, to an open calculation, which would re-

3

quire evaluation of direct labor data and might reduce the present mark up. In case of change to "open - book - pricing" with CS man - minutes should be evaluated per meal components (basis recipes). ~~and a costing / prizing system should be incorporated into the MAS 90 as soon as possible.~~ Plans to implement the MAS90 system's food-costing module can incorporate man minute calculations for a more detailed costing of menus.

FRA ZV 4 – Tuesday, 12 December 2000
gm/kx

Frank Fischer                                                Martin Gütermann
Managing Director                                        Rainer Klünsch

4

**Subject: [Fwd: GUM/SPN-Prüfung]**
**Date:** Thu, 07 Dec 2000 12:53:15 +1000
**From:** Frank Fischer <gumzf1@ite.net>
**Organization:** LSG Sky Chefs - Guam
**To:** "Michelle D. Ramos" <gumzf10@ite.net>

**Subject: GUM/SPN-Prüfung**
**Date:** Tue, 5 Dec 2000 13:20:18 +0100
**From:** FRAZV4AUD@DLH.DE
**To:** gumzf1@ite.net

Lieber Herr Fischer,

vorab noch einmal herzlichen Dank für Ihre aufmerksame Unterstützung während
unserer Prüfung in GUM und SPN. Als Anlage erhalten Sie das mit H.K.
abgestimmte Protokoll, aus dem wir nun den Endbericht erstellen werden.
Den Punkt mit "Eiern und offenen Lebensmitteln" habe ich mit Herrn Dr. Gork
geklärt; er hatte keine Probleme mit der geschilderten Situation, außer daß
das Fleisch nicht abgedeckt war. Tenor ist, daß lediglich Lebensmittel, die
nicht mehr weiterverarbeitet werden, also fertig zum Verzehr sind, nicht mit
Eiern zusammen gelagert werden dürfen. Somit ist der Punkt für micht nicht
mehr relevant.

Ihnen nun einen guten, erfolgreichen Abschluß in GUM und eine gute
Heimreise.

Herzliche Grüße

M. Gütermann                       <<Prim Summary GUM SPN eng.doc>>

| | Name: Prim Summary GUM SPN eng.doc |
|---|---|
| Prim Summary GUM SPN eng.doc | Type: Download File (application/msword) |
| | Encoding: base64 |

1 of 1

Case 1:03-cv-00028   Document 33   Filed 10/17/2003   Page 108 of 168

12/11/00 5:37



> PRELIMINARY SUMMARY OF OUR AUDIT OF LSG GUAM AND SAIPAN
> NOVEMBER, 20ᵀᴴ – NOVEMBER, 30ᵀᴴ 2000

## General:

*1999*
*2000*

The good leadership in the companies is reflected in the results (GUM: reduction of cost of goods of 4,2% 1997 through 1999; reduction of personnel costs of 3,4% while the gross profit rate was increased by 0,8% during the same period) and increases work-satisfaction and motivation especially in middle management. Also stocks were reduced (Average 98 to Oct 00) by approx. T$ 113.

- Written rules and regulations for internal procedures, i.e. duty travel etc. ~~do not exist~~ *is being updated by management as per MIS system. in accordance w/*

## Production / Hygiene / Tray set up:

- Recipes, consisting of the specified food costs and direct labor costs for exact calculations were not available. They are done out of food costs and a specified mark up only.
- Installation of trolley - lifters in tray set up to optimize work efficiency should be evaluated.
- Work - flow in pot wash could be optimized by providing an exit in the rear to avoid transporting dirty and clean item through the same exit; estimated cost $ 200 - 400. (SPN)

## Purchasing:

- A Vendors' data base including the vendors' history ~~does not exist~~. Checking vendors is not documented. The new system (MAS 90) already has the functionality but has to be actualized. (SPN)
- Stores daily issues so-called dispositions formats with the daily requirements to purchasing. The format is very small and high number of articles might lead to confusion; therefore it should be changed to letter format. (SPN)
- Although it is possible to agree an early payment discounts with vendors this potential is not exhausted. Based on 2% of outgoing payments the potential for 2000 is approximately T$ 445; only T$ 16 were realized.

*Internal Document*

## Operations:

- Trolley - labels are filled out manually which is labour intensive and may lead to mistakes. Since CS has specified this procedure a different format allowing label - printing should be negotiated with CS.
- Daily log sheets are written after operation. As they are basic documents which should be prepared prior to daily operation, and all changes occurring during opera-

tion should be entered, in order to make follow up, especially for invoicing, easier.
(SPN)

## Finance:

- Generally goods are received by stores including invoices, making vendors prices known to the employees of goods - receivable. In order to avoid risks that might result from knowledge, goods and invoices should be separated by vendors. Goods - receivables should receive a delivery note only. With the planned system update, this procedure will be checked.
- Food costs are calculated from monthly inventory taken and not by recipes, also waste logs are not written; therefore "actual" food costs can not be calculated.
- Regulations for duty travel should be established which clarify reimbursable costs.
- The process of inventory taking should follow generally accepted accounting principles, always one caller, one writer. The counting sheets, as basic documents should be signed by both employees. The employees are forced to follow this procedure but management attention has to be paid to this topic again. ( SPN ) .
- Fixed assets of the company should be assigned inventory numbers in order to allow an orderly asset - management.
- Integration and operationalization of the modules warehousing and costing in MAS 90 should proceed to optimize the information level. It should be evaluated, whether monthly full inventory taking could be skipped after successful installation of the warehousing - module and test - check inventory taking could be implemented.
- A two years old glass washing machine in SPN dish wash has until now never been used; it should either be tried to operate it elsewhere (GUM) put it beside to create more space in the dish wash or to sell it.
- To secure orderly cash management, advance cash - vouchers should not be handed over to employee after accounting for the advance. ( SPN )
- The SPN unit manager does not receive his financial data. To avoid double work GUM should provide SPN with the relevant data.

## IT:

- To increase IT - safety the following measures are recommended:
  - The system administrators ability to enter user's workstations without their knowledge should be subpressed; an additional tool should be installed, which forces the administrator to ask for permission first to enter into the users workstations.
  - The server should be removed off the air-conditioning outlet to avoid condensing water destroy the server.
  - Back up tapes should be stored in a fireproof safe away from the server to prevent loss of data in case of fire.
  - All operating IT - programs should be listed and a check of licenses necessary should be carried out.
  - To improve the data - communication system – software should be reconciled.

## Personnel:

- It should be evaluated whether it is possible to get a parking area away from the loading docs to increase security level concerning theft (new facility).
- The employee handbook should be revised. Already in procedure.
- Arreras in the amount of approx. Mio. $ 1,3 mainly results from disputed CS - invoices and GRT not reimbursed by CS and brought forward from previous years. The GRT - problem is presently negotiated with CS by the management of LSG Asia.
- Out of discrimination cases, filed in 1998 / 1999 against the company, four cases were still in negotiation at the term of the audit. One of those cases, filed in 1998 against the former managing director for discrimination, could prove damaging for the company if brought to trial. Therefore every effort should be made to reach an amicable settlement. HKG will take care on this topic as well.
- Unionization will reduce the company's result, especially SPN, due to increase of wages from the recent federal minimum - level.

*no lawsuits filed in '99 - '00.*

## Maintenance:

- To increase transparency of cost of maintenance and fuel consumption a respective spread - sheet should be introduced. (SPN)

## Customer Service:

- In general meals are priced at food - costs multiplied by a mark up factor; data for direct labour are not available. The main customer CS Micronesia, wants to change form the present system, Average Pricing, to an open calculation, which would require evaluation of direct labour data and might reduce the present mark up. In case of change to "open - book - pricing" with CS man - minutes should be evaluated per meal components (basis recipes) and a costing / prizing system should be incorporated into the MAS 90 as soon as possible.

FRA ZV 4 – Wednesday, 06 December 2000
gm/kx

Frank Fischer
Managing Director

Martin Gütermann
Rainer Klünsch

**Subject:** [Fwd: While I'm away...]
**Date:** Mon, 06 Nov 2000 12:51:59 +1000
**From:** "Michelle D. Ramos" <gumzf10@ite.net>
**Organization:** LSG Sky Chefs - Guam & Saipan
**To:** "Michelle D. Ramos" <gumzf10@ite.net>

---

**Subject: Re: While I'm away...**
**Date:** Sun, 29 Oct 2000 15:42:46 GMT
**From:** "Jesse Rivo" <jrrivo@hotmail.com>
**To:** gumzf10@ite.net

Michelle,

1) Will export JL/JO to excel to correct any extension problems for now. Will coordinate with Ben.

2) No actual meeting date set due to Kuentos is on the process of relocating their office as per Robert

3) All airlines stats updated as of september except for CS ACC & Crew, please advise due date so that I can re-arrange my priorities ~ *need for October*

4) In regards to the new server I have spoken with Cesar of IDS and I have given him our requirements/specifications.

Currently I'm still trying to update the outside catering sales, but with workstation problems popping out here and there, it's keeping me backed up. So far no problems with MAS90 since I came back. By Monday (10/30/00) I will be working on November CS Cat sheets and then the November templates.

Jesse

PS: Please send all email to jrrivo@tie.net

---

>From: "Michelle D. Ramos" <gumzf10@ite.net>
>To: Jesse Rivo <jrrivo@hotmail.com>
>Subject: While I'm away...
>Date: Fri, 27 Oct 2000 12:16:32 +1000
>
>Hey Jesse!!!
>
>While I'm in Germany...
>
>1.    Please thoroughly check the 10/00 JAL Crystal reports and make any
>necessary corrections for any discrepancies.  If you can't make the
>correction directly on crystal reports, download the report to excel and
>make the changes then.  I don't want Bob Navarro calling me to say the
>report is wrong and complain about handwritten adjustments.
>
>2.    Check with Robert on the meeting/proposal from Kuentos.
>
>3.    Update the stats.
>
>4.    IDS will be installing an accrual module for the Kronos system
>(DOS) version for now.  Gil will be in contact with
>you/Maddie/Yolly/Anita to coordinate.  He may also be contacting you

Case 1:03-cv-00028    Document 33    Filed 10/17/2003    Page 112 of 168

11/6/00 1:51

>about our needs for a new server.
>
>I'm on the e-mail if you need to get a hold of me.
>
>Thanks...Michelle
>

---

Get Your Private, Free E-mail from MSN Hotmail at http://www.hotmail.com.

Share information about yourself, create your own public profile at
http://profiles.msn.com.

**Subject: [Fwd: Saipan Outdoor Snack Bar]**
**Date:** Thu, 20 Apr 2000 09:25:52 +1000
**From:** Frank Fischer <gumzf1@ite.net>
**Organization:** LSG Sky Chefs - Guam
**To:** gumzf10@ite.net

---

**Subject: RE: Saipan Outdoor Snack Bar**
**Date:** Wed, 19 Apr 2000 14:56:00 +0800
**From:** PHILIP THOW <PHILIP.THOW@LSGSKYCHEFS.COM.HK>
**To:** FRANK FISCHER <gumzf1@ite.net>
**CC:** HK CHEUNG <HKCheung@LSGSKYCHEFS.COM.HK>,
REIN RUNGAS <REIN.RUNGAS@LSGSKYCHEFS.COM.HK>

Dear Frank,
Unfortunately I am not fully informed on all the details. I thought the outside snack bar project was one that we were now not interested in. Rein is currently out of the office but I will talk to him when he returns on the other snack bar. Have the CPA written a letter on these matters, if so can I have a copy. I think this should be part of our discussions during the Board meeting so please have everything prepared.

regards, Phil

---

**From:** Frank Fischer[SMTP:gumzf1@ite.net]
**Sent:** Wednesday, April 19, 2000 2:50 PM
**To:** Philip Thow
**Subject:** Saipan Outdoor Snack Bar

Dear Phil,

The tension is mounting from CPA to LSG regarding the saipan outdoor snack bar. How does Hong Kong want us to proceed?

Also, during Dr. Luippold's last visit, he stated that he would send Rein Rungas to assist us with a conceptual plan for the snack bar in the west concourse in the Saipan airport. CPA was informed of this information as well. What is Hong Kong's opinion on this?

Please advise...Frank

Case 1:03-cv-00028    Document 33    Filed 10/17/2003    Page 114 of 168

4/20/00 5:54 P

**Subject:** [Fwd: Authorisation]
    , **Date:** Sat, 30 Dec 2000 13:20:22 +1000
    **From:** Shane Smith <gumzfl@ite.net>
**Organization:** LSG Sky Chefs - Guam
      **To:** "Michelle D. Ramos" <gumzfl0@ite.net>

For your info . New to me

---

**Subject:** Authorisation
**Date:** Fri, 29 Dec 2000 15:23:18 +0800
**From:** MICHAEL LUK <MICHAEL.LUK@LSGSKYCHEFS.COM.HK>
    **To:** SHANE SMITH <gumzfl@ite.net>

Dear Shane,

According to the LSG Asia Authorization Level Chart, you have the authority to sign the contract as CEA approval has been obtained earlier from the EVP. Of course you are right that you should not sign the contract if the CEA is not properly approved.

Furthermore, I was appointed as Director, not Managing Director of the company. The daily management issues is still on the hands of the local management, like yourself.

Happy New Year to you and your family.

Regards,

Michael

1 of 1

12/30/00 2:42 PM



LSG Lufthansa Service
SKY Chefs

LSG Lufthansa Service Guam, Inc.

P. O. Box 6172
Tamuning, Guam 96931
Phone (671) 646-5868/69/60/78/90
Telefax Operations (671) 646-6798
Telefax Administration (671) 646-6793

## INTEROFFICE MEMORANDUM

Date:        January 15, 2000

To:          Accounting Department

From:        Michelle

RE:          **VACATION PLANNING**

<sub>Your Ref / Date</sub>
**Memo:**                    <sub>Our extension</sub>                      <sub>Our Ref / Date</sub>

Pursuant to the memo from GUM ZF 1 (copy attached), we need to start planning ahead for our vacations. I have attached a "Vacation Plan" worksheet for scheduling purposes and ask that you indicate when you plan to take leave. This is a tentative schedule subject to my approval. Changes may be made in future. Last one to fill out, please return to me.

This year, vacation will not be allowed in the beginning or end of the month as indicated by the blocked out days. You may take leave more than once over the course of the year as needed to use all 1999 vacation hours earned so long as the time chosen causes no conflict with departmental duties or other staff's vacation time. Keep in mind that the work must take priority and that I expect the workload to be completed for the previous month **before** going on leave.

Please remember that at a minimum, you must use all vacation hours earned for 1999. Any 1999 hours earned not used by end of 2000 will be forfeit. Your first payroll stub should give a close indication of how much vacation hours you have accrued as of the end of 1999 (BEG VAC). You may double check this figure with the Human Resources Department.

Thank you for your cooperation. Please don't hesitate to see me if any questions or concerns.

Michelle

Day | January | February | March | April | May | June | July | August | September | October | November | December
--- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | ---
1 |  |  |  |  |  |  |  |  |  |  |  |
2 |  |  |  |  |  |  |  |  |  |  |  |
3 |  |  |  |  |  |  |  |  |  |  |  |
4 |  |  |  |  |  |  |  |  |  |  |  |
5 |  |  |  |  |  |  |  |  |  |  |  |
6 |  |  |  |  |  |  |  |  |  |  |  |
7 |  |  |  |  |  |  |  |  |  |  |  |
8 |  |  |  |  |  |  |  |  |  |  |  |
9 |  |  |  |  |  |  | Michelle |  |  |  |  |
10 |  |  |  |  | Jesus | Michelle |  |  |  |  |
11 |  |  |  |  | Jesus | Michelle |  |  |  |  |
12 |  |  |  |  | Jesus | Michelle |  |  |  |  |
13 |  |  | Jesus |  |  | Michelle |  |  |  |  |
14 |  |  |  |  | Jesus | Michelle | Amanda |  |  |  |
15 |  |  |  | Jesus | Jesus | Michelle |  |  |  |  |
16 |  | TED |  | Jesus | Jesus |  | Gladys |  |  |  |
17 |  |  |  | Jesus |  | Michelle | Gladys |  |  |  |
18 |  |  |  | Jesus | Jesus |  | TED |  | TED |  |
19 |  |  |  | Jesus | Gladys | Michelle |  | TED | TED |  |
20 |  |  | Gladys | Jesus |  | Michelle |  | TED | TED |  |
21 |  |  |  | Jesus |  | Michelle |  |  | TED |  | Mvdy |
22 |  | TED |  | Jesus |  | HOLIDAY | Gladys |  |  | Gladys |
23 |  | TED |  | Jesus |  | Michelle |  |  |  | Gladys
24 |  | TED |  | Jesus |  | Michelle |  | Ken |  | Gladys
25 |  | Michelle | Michelle |  | MBM |  |
26 |  | TED | Michelle |  | Ken |  |
27 |  |  |  |  |  |
28 |  |  |  |  |  |
29 |  |  |  |  |  |
30 |  |  |  |  |  |
31 |  |  |  |  |  |

c:/myops/calendar/vacation
GUM ZF 10

1/15/00
1:57 PM

# INTEROFFICE MEMORANDUM



**TO:**     **All Department Heads**

**FROM:**     **GUM ZF 1**

**Date:**     **January 3, 2000**

**Subject:**     **Vacation Schedules**

Dear Managers,

In order to properly schedule-staffing requirements for vacation leave, please submit to my office a Staff Vacation Schedule for the year 2000 by January 15, 2000.

If you have any questions or need assistance with the vacation guidelines, please contact the Human Resources Manager.

Thank you for your kind cooperation.

Sincerely,

Frank Fischer
Managing Director

GUM ZF 1S/iomemo

No. 2000-1

c:/mydocs/calendar/vacation
GUM ZF-10

| Day | January | February | March | April | May | June | July | August | September | October | November | December |
|---|---|---|---|---|---|---|---|---|---|---|---|---|

(Vacation plan grid with handwritten entries; names noted include "Michelle", "HOLIDAY", and various initialed/handwritten marks.)

OK
1.7.



# INTEROFFICE MEMORANDUM

*Border / File in my office*

*Mm 8/17/1*
*FG*
*TC Jed*
*JR*
*GG*
*AM*
*TP Ash*

**TO:**      Michelle Ramos, GUM ZF 10
             Kelvin Chan, GUM ZF 113

**FROM:**    Annette Tangye, GUM ZF 12M

**DATE:**    August 15, 2000

**SUBJECT:**  CS 961 – August 1, 2000

Dear Michelle:

I confirmed with Mr. Chan and Cindy Law that the Handling fee begins with the Stripping of the aircraft. As our current Handling Fee structure consists of the Stripping and Loading of an aircraft, Cindy indicates that we would not be able to charge the aircraft stripping provided to the aircraft after the cancellation of the flight due to mechanical difficulties. The complete Handling Charges would then be assessed at the time the aircraft is returned to service. However, if our billing structure allows for Extra Trip Fees for Highloaders then these charges would apply under these circumstances.

If we were to charge the Partial Handling Fees, we would then be required to charge another Partial Handling Fee at the time the aircraft was returned to service. This scenario would undoubtedly cause unnecessary confusion during the billing process and at the time of billing reconciliation and should not be considered as a viable billing structure at this time.

While we should look at scenarios such as CS 961 on a case by case basis, Mr. Chan, please inform your staff that for Continental flights the billing documentation should reflect billing directions as indicated above.

Please let me know if you should have any questions regarding this matter.

Sincerely,

Annette Tangye
Customer Service

GUM ZF 12M/iomemo

**Subject: Saipan Kiosk**
**Date:** Fri, 07 Jul 2000 09:53:49 +1000
**From:** "Michelle D. Ramos" <gumzf10@ite.net>
**Organization:** LSG Sky Chefs - Guam
**To:** GUM ZF Customer Service <gumzfs@ite.net>, Robert Hernandez <gumzf14@ite.net>
**CC:** Frank Fischer <gumzf1@ite.net>,
Philip Thow <PHILIP.THOW@LSGSKYCHEFS.COM.HK>,
Rene Willen <lsgspn@gtepacifica.net>

Julia/Robert:

Per my discussion with Phil and Rein yesterday:

1.    Make the necessary arrangements with Bob Cruz for the purchase of the free-standing hot dog equipment for $1800.

2.    We will receive a sketch from Rein/Gillian today for the counter/stand.  Make arrangements to purchase the materials needed to construct it and arrange with GUM maintenance to complete by Monday, Tuesday at latest.

3.    Ship counter/stand and free-standing hot dog equipment to Saipan.

4.    Make arrangements with Chieng Tan of GPPC to bring the power supply to the site, $2895.

Rene/Lea - start planning your manpower and addressing any operational issues (i.e. cash registers, change fund, safeguarding assets, etc.)

Let's do our best to get the temporary stand operational by July 17.

Thanks...Michelle

Case 1:03-cv-00028   Document 33   Filed 10/17/2003   Page 121 of 168

7/7/00 7:44 P


**LSG Sky Chefs**

# INTEROFFICE MEMORANDUM

**Date:** July 4, 2000

P.O. Box 6172
Tamuning, Guam 96931
Phone: (671) 646-5868 / 69 / 60 / 78 / 90
Telefax Operation: (671) 646-6798
Telefax Administration: (671) 646-6793

**To:** GUM ZF
GUM ZF 112    GUM ZF 12P    GUM ZF 12M
GUM ZF 113    GUM ZF 115

**From:** GUM ZF 10

**RE:** COMMUNICATIONS REVIEW

Memo:

After the incident with dry ice, please ensure your staff is advised of the proper protocol with airline customers. Requests for supplies or inventories should be handled by the dining service departments of all airlines. LSG cannot afford to be held accountable for requisitions from out stations.

Furthermore, to avoid a repeat, communications of this nature and sensitivity should be reviewed and authorized by an immediate supervisor. If you give the order to prepare a message, you should also review the message before it goes out to make sure the content and tone is as it should be and that only the intended recipients are addressed. If you are the preparer of the message, please have a colleague review it for the same. Please take the necessary action to implement the review process immediately.

Thank you for your cooperation.

*Michelle Brown*

GUM ZF 10

Nona,
please distribute.
thx
per.

**LSG Lufthansa Service**
**SKY Chefs**

*Michelle's COPY*

# LEGAL NOTICE
## ATTENTION

The U.S. Department of Justice, Drug Enforcement Administration (DEA), Washington, DC, gives notice that the properties listed below were seized for violation of Title 21 United States Code (U.S.C.) Section 881. Owner(s) or lienor(s) may file petitions for remissions or mitigation of forfeiture pursuant to 19 U.S.C. § 1618, and the regulations implementing these customs laws, 21 Code Federal Regulations (C.F.R.) Sections 1316.71-1316.81 & 28 C.F.R. § 9.1-9.0 with the DEA, Office of Domestic Operations, Asset Forfeiture Section, Caller #91017, Arlington, VA 22202. Persons desiring to place the matter in U.S. District Court to contest the probable cause for seizure must file with Domestic Operations, Asset Forfeiture Section, a claim & bond or approved sureties, in the amount specified payable to the U.S. Department of Justice on/or before the date indicated. A sworn affidavit of indigency may be filed in lieu of the cost bond. Otherwise, the property will be administratively forfeited pursuant to 19 U.S.C. § 1609 and will be disposed of according to law. Under certain circumstances, involving seizures based upon the possession of personal use quantities of a controlled substance or seizures of conveyances (vehicles, vessels or aircraft), expedited release procedures are available under the Anti-Drug Abuse Act of 1988. See 21 C.F.R. § 1316.80-1316.99. The names of persons or businesses appearing in this notice are listed because they were in possession of the listed properties at the time the assets were seized by the DEA. Those persons or businesses are not necessarily criminal defendants or suspects, nor does the appearance of their names in this notice necessarily mean that they are the target of DEA investigations or other activities.

FIRST NOTICE
LAST DATE TO FILE
JULY 09, 2000
PLACE SEIZED, SEIZED FROM,
DATE SEIZED, BOND AMOUNT

DISTRICT OF GUAM
98-DEA-341556, $206,000.00 U.S. Currency, Pagat Mangilao, GU, Madlangbayan Jr, Pablo V, 10/16/97, $5,000
98-DEA-341561, (2) Rolex Watches & (1) Gold Bracelet, VL, $12,600.00, Pagat Mangilao, GU, Madlangbayan Jr, Pablo V, 10/16/97, $1,260
98-DEA-343255, 1934 Series $500 Bill, SRN #B00165436A, Pagat Mangilao, GU, Madlangbayan Jr, Pablo V, 10/16/97, $250
99-DEA-358262, $1,050.00 U.S. Currency, Agana, GU, Eay, Roy E, 12/17/98, $250
99-DEA-360037, $23,150.00 U.S. Currency, Dededo, GU, Mora, Roland, 02/04/99, $2,315
99-DEA-360041, $1,500.00 U.S. Currency, Dededo, GU, Mora, Roland, 02/04/99, $250
99-DEA-360043, $6,810.00 U.S. Currency, Dededo, GU, Crisologo, Don, 02/04/99, $681

[The property listed above is NOT for sale. The DEA DOES NOT sell forfeited property and the DEA DOES NOT have information on property for sale.]

*fil : 1/0 Memo*

*jda 9/14/00*

**Subject: Weekend purchases**
**Date:** Sun, 18 Jun 2000 11:42:08 +1000
**From:** "Michelle D. Ramos" <gumzfl0@ite.net>
**Organization:** LSG Sky Chefs - Guam
**To:** Robert Hernandez <gumzfl4@ite.net>

Robert:

(1) Charlie informed me this morning that he again had to go out to purchase items for both the Hot and Cold kitchen. I thought everything was secured on Saturday while we were here. One of the items on the list was again 12 cases of chicken thighs. Please find out what happened.

(2) Also, check with George on how the new procedure on the manual purchase orders are going. I have yet to see the listing of the weekend purchases.

Thanks...Michelle

① Per Chris, supervisors did not check Chiller 1.
   - Chris will have a word w/ them
Also, 2 vendors did not deliver on Saturday.
   - RH wasn't informed even though he was in office till 4:30 pm.

② Reviewed procedure w/ George + Robert again

**Subject: Re: NW Menu Pricing for Saipan.**
**Date:** Thu, 15 Jun 2000 14:17:48 +1000
**From:** "Michelle D. Ramos" <gumzf10@ite.net>
**Organization:** LSG Sky Chefs - Guam
**To:** LSG Sky Chefs - Customer Service <gumzfs@ite.net>

Annette/Julia:

When doing the pricing for any Saipan customer, please do not forget to build in the 12% catering fee. This was the decision of the board. Call me if any questions.

Michelle

LSG Sky Chefs - Customer Service wrote:

> Dear Rene:
>
> Long time no talk to, hope everything is going well there.
>
> Good news for your unit, NW will begin catering out of Saipan in August.
>
> I have attached the priliminary pricing as per NW's specifications.
> Could you please review the specs and confirm the availability of the
> suggested items. Also, there are some recipes that Chris Urban broke
> down for pricing purposes could you please review the Spicy Chicken,
> Marinated Tomatos and Penne Pasta to confirm that these are the recipes
> and weight that you would use.
>
> We will need some assistance from you on some prices, could you please
> tell me the Saipan price for rye bread, baguettes 90 gm, Chris also has
> Herb Mix for the Spicy Chicken, it would be very helpful if you could
> confirm the brand and the price that you would use for this recipe.
> When Ness and I tried to confirm pricing it came to $0.72 for 15 gms.
>
> During your review you will see that there is $0.05 applied to each of
> the NW Supply items. Mr. Fischer has applied a handling fee to NW's
> Guam menus and I have just carried this concept over to Saipan. The
> customer does not see these costs, they are incorporated in to the final
> menu pricing (such as the sandwich might be .10 higher to absorb some of
> this cost).
>
> Please let me know your thoughts so that we can finalize this by early
> next week.
>
> Thank you and Best Regards,
>
> Annette
>
> ------------------------------------------------------------------------
>              Name: specs.xls
>    specs.xls   Type: Download File (application/msexcel)
>          Encoding: base64

Case 1:03-cv-00028   Document 33   Filed 10/17/2003   Page 125 of 168

*Revised*

## INTEROFFICE MEMO

*6/14/m*

DATE:        November 27, 1998

TO:          GUM ZF 1          GUM ZF 11          GUM ZF 12
             GUM ZF 20         Ben Gapuz          Jesse Rivo

FROM:        GUM ZF 10

MEMO:

A safe has been installed in the Dispatch Office for the safekeeping of all cash/check payments made towards all Party Service/Outside Catering orders.

The combination to the safe is as follows:

| Turn | Pass | Go To |
|------|------|-------|
| Left | 2 Once | 2 |
| Right | 25 Twice | 25 |
| Left | 72 Once | 72 |
| Right until stops | | |

Please ensure that the combination is stored in a secured area and that this information is limited to only those persons named above.

Thank you for your cooperation.

*Michelle [signature]*

GUM ZF 10

*Rev / Jesse
make sure safe is
cleaned every morning.
(m-F).*


**LSG**
**Sky Chefs**

# REVISED INTEROFFICE MEMORANDUM

Date:        June 13, 2000

To:          GUM ZF          GUM ZF 14        GUM ZF 20
             GUM ZF 111      GUM ZF 112       GUM ZF 113
             GUM ZF 114      GUM ZF 115

From:        GUM ZF 10

RE:          INVENTORY OBSERVATION

Memo:

As mentioned during the management meeting, the following persons are responsible for the physical inventory count at the designated areas at month end:

| | | |
|---|---|---|
| James Quengq | GUM ZF 115 | Main Warehouse<br>Receiving<br>Kitchen (Veg/Produce)<br>Chiller #s 1 & 2 |
| Chris Urban | GUM ZF 111 | Deep Freezers<br>Chiller #s 3 & 7<br>Laundry/Storage Room |
| Eddie Martinez | | Chiller # 4<br>Bakery |
| Celso Castillejos | GUM ZF 112 | Equipment |
| Mar Zaldivar | GUM ZF 114 | Sanitation |
| Joy DeGuzman | GUM ZF 20 | Airport |

The physical count is to be conducted at month end. For Airport, the count is to be done on the 1rst of the following month.

Should month end fall on a Saturday, the physical shall be done Saturday. If month end falls on Sunday, the physical will be taken on Saturday. As for Airport, the count will be conducted on the 1rst of the following month regardless. Please make the necessary arrangements to ensure minimal receiving, deliveries and transfers are conducted during the count.

The final inventory count sheets must be signed (every page) by the respective manager in charge and forwarded to Michelle/Ben in accounting by the end of the 2nd business day after the count. This will allow sufficient time for Accounting to make the final adjustments and for GUM ZF to review.

Thank you for your cooperation. If any questions regarding the above, please do not hesitate to call me.

GUM ZF 10



## INTEROFFICE MEMORANDUM

Date:       June 12, 2000

To:         GUM ZF          GUM ZF 14        GUM ZF 20
            GUM ZF 111      GUM ZF 112       GUM ZF 113
            GUM ZF 114      GUM ZF 115

From:       GUM ZF 10

RE:         INVENTORY OBSERVATION

Memo:

As mentioned during the management meeting, the following persons are responsible for the physical inventory count at the designated areas at month end:

| | | |
|---|---|---|
| James Quengq | GUM ZF 115 | Main Warehouse<br>Receiving<br>Kitchen (Veg/Produce)<br>Chiller #s 1 & 2 |
| Chris Urban | GUM ZF 111 | Deep Freezers<br>Chiller #s 3 & 7<br>Laundry Store |
| Eddie Martinez | | Chiller # 4 , Laundry Bakery . |
| Celso Castillejos | GUM ZF 112 | Equipment |
| Mar Zaldivar | GUM ZF 114 | Sanitation |
| Joy DeGuzman | GUM ZF 20 | Airport |

The physical count is to be conducted at month end. For Airport, the count is to be done on the 1rst of the following month.

Should month end fall on a Saturday, the physical shall be done Saturday. If month end falls on Sunday, the physical will be taken on Saturday. As for Airport, the count will be conducted on the 1rst of the following month regardless. Please make the necessary arrangements to ensure minimal receiving, deliveries and transfers are conducted during the count.

The final inventory count sheets must be signed (every page) by the respective manager in charge and forwarded to Michelle/Ben in accounting by the end of the 2nd business day after the count. This will allow sufficient time for Accounting to make the final adjustments and for GUM ZF to review.

Thank you for your cooperation. If any questions regarding the above, please do not hesitate to call me.

GUM ZF 10



**INTEROFFICE MEMORANDUM**

Date:     June 12, 2000

To:       GUM ZF          GUM ZF 14       GUM ZF 20
          GUM ZF 111      GUM ZF 112      GUM ZF 113
          GUM ZF 114      GUM ZF 115

From:     GUM ZF 10

RE:       INVENTORY OBSERVATION

Memo:

As mentioned during the management meeting, the following persons are responsible for the physical inventory count at the designated areas at month end:

| | | |
|---|---|---|
| James Quengq | GUM ZF 115 | Main Warehouse<br>Receiving<br>Kitchen (Veg/Produce)<br>Chiller #s 1 & 2 |
| Chris Urban | GUM ZF 111 | Deep Freezers<br>Chiller #s 3 & 7<br>Laundry |
| Eddie Martinez | | Chiller # 4 |
| Celso Castillejos | GUM ZF 112 | Equipment |
| Mar Zaldivar | GUM ZF 114 | Sanitation |
| Joy DeGuzman | GUM ZF 20 | Airport |

The physical count is to be conducted at month end. For Airport, the count is to be done on the 1rst of the following month.

Should month end fall on a Saturday, the physical shall be done Saturday. If month end falls on Sunday, the physical will be taken on Saturday. As for Airport, the count will be conducted on the 1rst of the following month regardless. Please make the necessary arrangements to ensure minimal receiving, deliveries and transfers are conducted during the count.

The final inventory count sheets must be signed (every page) by the respective manager in charge and forwarded to Michelle/Ben in accounting by the end of the 2nd business day after the count. This will allow sufficient time for Accounting to make the final adjustments and for GUM ZF to review.

Thank you for your cooperation. If any questions regarding the above, please do not hesitate to call me.

GUM ZF 10

**Subject: 6/17 cake sale - Fernandez**
**Date:** Sun, 18 Jun 2000 11:39:18 +1000
**From:** "Michelle D. Ramos" <gumzf10@ite.net>
**Organization:** LSG Sky Chefs - Guam
**To:** GUM ZF Customer Service <gumzfs@ite.net>

Annette/Nona:

Charlie tells me that a customer came to pick up a cake on Saturday but
that Bakery did not prepare it due to "No job order". Customer was
Victor Fernandez.

Please check what happened.

Thanks...Michelle

- Customer ordered / paid in full. Subsequently customer's aunt called + cancelled order. Nona advised kitchen to cancel. Customer called after + requested to be put back on. Nona forgot to resubmit job order.

- Advised Annette + Nona to come up w/ system to prevent future miscommunication.

6/19/00

**Subject: Marketing Report**
**Date:** Thu, 22 Jun 2000 12:20:27 +1000
**From:** "Michelle D. Ramos" <gumzf10@ite.net>
**Organization:** LSG Sky Chefs - Guam
**To:** GUM ZF Customer Service <gumzfs@ite.net>

Annette:

I've filled out the 5/00 sales in the marketing report and have also
attached a copy of the last comments sent to Hong Kong for your
reference.

Michelle

| | |
|---|---|
| 2000MKTGREP.xls | **Name:** 2000MKTGREP.xls<br>**Type:** Download File (application/msexcel)<br>**Encoding:** base64 |

| | |
|---|---|
| Cmmts.xls | **Name:** Cmmts.xls<br>**Type:** Download File (application/msexcel)<br>**Encoding:** base64 |

Case 1:03-cv-00028    Document 33    Filed 10/17/2003    Page 131 of 168

6/22/00 12:21 PM

**ECOLAB**®

By the Way,
Re: Workers Comp question
Bsw- Emp does not get
for therapy session
from workers comp.
Must apply to sick-
leave - if no hours available
then apply vac. leave -

June 23, 2000

To:     Michelle Ramos

From:  Lori Villarde

Re:     Memo dated 6/21/00, SIDA Recurrent Training

I have tentatively scheduled Anita and Josie to alternately attend the SIDA Recurrent Training. I will also attend one day at the earliest convenience.

With regards to Operations Dept., I suggest that everyone in Dept. 200 consisting of Duty Officers, and Shift Managers to attend this training. The training session is at the most an hour and a half; from 9:00am to 10:30am, on Tuesdays and Thursdays for the next four weeks. I can give them the information of the scheduled training dates and they can decide on which days to attend. After that, then they can meet with their staff on their regular work schedule so that we don't have to ask them to come in on their days off.

It is definitely important for the Shift Managers/Duty Officers to attend, and be well versed with the newly implemented regulations being enforced by GIAA. With their knowledge, they should we say be able to answer any / all questions from their downline employee's.

Joy DeGuzman should attend to represent the Airport facility and pass information to her staff when she has her next meeting.

All other concerned department heads should attend one of the scheduled dates.

Please advise if this is okay with you?

**Subject: [Fwd: 5/00 Overdue Receivables]**
**Date:** Tue, 30 May 2000 11:07:51 +1000
**From:** "Michelle D. Ramos" <gumzf10@ite.net>
**Organization:** LSG Sky Chefs - Guam
**To:** GUM ZF Customer Service <gumzfs@ite.net>
**CC:** Frank Fischer <gumzf1@ite.net>

Julia/Annette:

Please follow up on overdue payments as indicated on attached reports.

Thanks...Michelle

---

**Subject: 5/00 Overdue Receivables**
**Date:** Tue, 30 May 2000 11:05:49 +1000
**From:** "Michelle D. Ramos" <gumzf10@ite.net>
**Organization:** LSG Sky Chefs - Guam
**To:** Erik Ling <erik.ling@lsgskychefs.com.hk>

Dear Erik:

Attached, please find the overdue receivables reports for 5/2000.
Please do not hesitate to contact me if any questions or concerns.

Best regards...Michelle

---

| | |
|---|---|
| GUM0500.xls | **Name:** GUM0500.xls<br>**Type:** Download File (application/msexcel)<br>**Encoding:** base64 |

| | |
|---|---|
| SPN0500.xls | **Name:** SPN0500.xls<br>**Type:** Download File (application/msexcel)<br>**Encoding:** base64 |

Case 1:03-cv-00028    Document 33    Filed 10/17/2003    Page 133 of 168

# MANDARIN AIRLINES

PLACE PHOTO HERE

| | |
|---|---|
| **EFF. DATE:** | 1 MAY 2000 |
| **CYCLE:** | ALL |
| **SECTOR:** | SPN-TPE |
| **CLASS:** | ECONOMY CLASS |
| **DESCRIPTION:** | LH/DH VEGETARIAN SPECIAL MEAL |
| **ROTATION:** | |

<u>SALAD</u>
| | |
|---|---|
| **GARDEN SALAD** | **1 PTN** |
| ENDIVE FRISEE | 10 GM |
| CELLE LETTUCE | 10 GM |
| MATO WEDGE | 15 GM |
| DRESSING, VINAIGRETTE | 1 PC |

<u>STARCH</u>
| | |
|---|---|
| **BEAN THREAD NOODLE SALAD (COLD)** | **1 PTN** |
| BEAN THREAD NOODLES CW | 40 GM |
| CARROTS, JULIENNED | 8 GM |
| SPRING ONION | 2 GM |
| LEMON JUICE | 1 GM |
| GINGER SOY SAUCE | 2 GM |
| TOMATO HALF SLICE | 12 GM |

<u>ENTRÉE – ASIAN STYLE</u>
| | |
|---|---|
| **MIXED VEGETABLE W/CURRY SAUCE** | **1 PTN** |
| BAMBOO SHOOTS, SLICED | 10 GM |
| SNOW PEAS | 20 GM |
| CARROTS, SLICED | 20 GM |
| MUSHROOM, SLICED | 10 GM |
| CURRY SAUCE | 30 GM |
| PAKCHOY, SAUTEED | 40 GM |
| STEAMED RICE | 100 GM |

<u>DESSERT</u>
| | |
|---|---|
| **SEASONAL FRESH FRUIT** | **1 PTN** |
| HONEYDEW | 20 GM |
| CANTALOUPE | 20 GM |
| PINEAPPLE | 20 GM |

<u>EQUIPMENT</u>
| | |
|---|---|
| 2/3 TRAY | 1 EA |
| CASSEROLE DISH | 1 EA |
| SALAD BOWL | 3 EA |
| COFFEE CUP | 1 EA |
| TRAY GLASS | 1 EA |
| DISPOSABLE CHOPSTICK (AE STOCK) [TSU] | 1 EA |
| CUTLERY PLASTIC BAG (LSG STOCK) | 1 EA |
| DINNER KNIFE | 1 EA |
| DINNER FORK | 2 EA |
| COFFEE SPOON | 1 EA |
| PEPPER PTN (AE STOCK) | 1 EA |
| SALT PTN (AE STOCK) | 1 EA |
| TOOTHPICK (AE STOCK) | 1 EA |
| PAPER NAPKIN (AE STOCK) | 1 EA |
| DISPOSABLE OSHIBORI (BULK) | 1 EA |

Case 1:03-cv-00028     Document 33     Filed 10/17/2003     Page 134 of 168

**Subject: Overdue Receivables of May 2000**
  **Date:** Fri, 26 May 2000 13:56:26 +0800
  **From:** CATERING ADMIN <CATERING.ADMIN@lsgskychefs.com.hk>
    **To:** EDDY YUNG <EDDY.YUNG@lsgskychefs.com.hk>,
          HAZEL FUNG <HAZEL.FUNG@lsgskychefs.com.hk>,
          PORNNEE KANTIPAKORN <PORNNEE.K@SIAMFLIGHT.COM>,
          "MICHELLE RAMOS'" <gumzf10@ite.net>

Dear colleges,

Due to the fact that I will be on a business trip next week, I would like to finish the Overdue Receivables Report already by Tuesday, May 30. Please send your information already on May 30 around noon time.

The update will be due on June 6, 2000. Thank you for your support.

Best regards,

Erik

PS: Please send it to my personal email-address. I need to use current one only today.

Case 1:03-cv-00028    Document 33    Filed 10/17/2003    Page 135 of 168

5/26/00 6:47

# STATEMENT OF OPERATIONS
## FOR AIRCRAFT & COMMERCIAL CATERING
## FOR THE 3 PERIODS ENDED MARCH 31, 2000

|  | PERIOD TO DATE | | YEAR TO DATE | |
|---|---|---|---|---|
|  | ACTUAL | PERCENT | ACTUAL | PERCENT |
| PERATING EXPENSES | (Continued) | | | |
| CLEANING EXPENSE | $4,094.95 | 1.1 % | 10,133.37 | .9 |
| LAUNDRY EXPENSE | 25.70 | .0 | 105.60 | .0 |
| OFFICE SUPPLIES | 160.00 | .0 | 436.30 | .0 |
| PRINTING/FORMS | 620.10 | .2 | 1,876.24 | .2 |
| WORKING SUPPLIES | 968.16 | .2 | 1,884.47 | .2 |
| ADVERTISEMENT & PROMOTIONS | .00 | .0 | 1,065.60 | .1 |
| SELLING EXPENSE | 284.73 | .1 | 421.73 | .0 |
| ENTERTAINMENT | 871.21 | .2 | 871.21 | .1 |
| EMPLOYEE PARTY | 700.00 | .2 | 2,100.00 | .2 |
| STAFF MEALS | 961.40 | .2 | 2,532.20 | .2 |
| BUSINESS TRAVEL | 2,004.55 | .5 | 4,300.16 | .4 |
| COMMUNICATION | 603.35 | .2 | 1,879.33 | .2 |
| CELLULAR COMMUNICATION | 102.98 | .0 | 293.75 | .0 |
| POSTAGE | 177.45 | .0 | 508.95 | .0 |
| EQUIPMENT LEASE | 53.14 | .0 | 106.28 | .0 |
| DUES & SUBSCRIPTIONS | 135.34 | .0 | 406.02 | .0 |
| GROSS RECEIPTS TAX | 21,407.14 | 5.5 | 65,572.05 | 5.5 |
| LICENSES & PERMITS | 300.00 | .1 | 1,135.00 | .1 |
| OTHER TAXES | .00 | .0 | (.02) | .0 |
| INSURANCE | 5,704.98 | 1.5 | 21,907.42 | 1.8 |
| MEDICAL EXPENSES | 125.00 | .0 | 296.16 | .0 |
| MISCELLANEOUS EXPENSE | 69.62 | .0 | 465.50 | .0 |
| DEPRECIATION EXPENSE | 18,816.23 | 4.8 | 56,448.65 | 4.8 |
| TOTAL OPERATING EXPENSES | 166,926.02 | 43.0 | 528,939.94 | 44.5 |
| NET INCOME FROM OPERATIONS | 118,885.80 | 30.6 | 368,493.93 | 31.0 |
| OTHER INCOME & EXPENSE | | | | |
| INTEREST INCOME | 31,416.38 | 8.1 | 87,405.50 | 7.4 |
| OTHER INCOME/EXPENSE | 136.51 | .0 | (354.25) | .0 |
| CORPORATE INCOME TAX | (16,540.00) | (4.3) | (50,100.00) | (4.2) |
| TOTAL OTHER INCOME & EXPENSE | 15,012.89 | 3.9 | 36,951.25 | 3.1 |
| EARNINGS BEFORE INCOME TAX | 133,898.69 | 34.5 | 405,445.18 | 34.1 |
| NET INCOME (LOSS) | $133,898.69 | 34.5 % | 405,445.18 | 34.1 |

**Subject: Marketing Report**
, **Date:** Mon, 24 Apr 2000 18:07:33 +1000
**From:** "Michelle D. Ramos" <gumzf10@ite.net>
**Organization:** LSG Sky Chefs - Guam
**To:** GUM ZF Customer Service <gumzfs@ite.net>

Annette:

Please find the updated marketing report for 03/2000. I've also
included my comments to explain the variances.

Michelle

| MKTGREP2000.xls | **Name:** MKTGREP2000.xls<br>**Type:** Download File (application/msexcel)<br>**Encoding:** base64 |
|---|---|

| Cmmts.xls | **Name:** Cmmts.xls<br>**Type:** Download File (application/msexcel)<br>**Encoding:** base64 |
|---|---|

1 of 1

**Subject: CO Contract**
**Date:** Mon, 24 Apr 2000 17:12:27 +1000
**From:** "Michelle D. Ramos" <gumzfl0@ite.net>
**Organization:** LSG Sky Chefs - Guam
**To:** Frank Fischer <gumzfl@ite.net>
**CC:** GUM ZF Customer Service <gumzfs@ite.net>

Mr. Fischer/Annette:

I reviewed the one page of the proposed 4 year contract with
Continental.   It appears to guarantee a global discount based on total
revenues "worldwide", to include Guam.   However, I did not see the
annual price adjustments afforded for Guam.

I believe it would benefit Guam to be included so long as:

    *     Guam is allowed annual price increases based on CPIU for labor
and food
    *     CMI agrees to pay the 4% GRT.

We cannot afford to extend any global discount otherwise.

I find it a little disturbing that Continental plans no inclusion of
Saipan and that the CNMI BGRT has not been reimbursed to date.

    Michelle



**LSG**
**Sky Chefs**

# INTEROFFICE MEMORANDUM

Date:       March 27, 2000

To:         GUM ZF 1          GUM ZF 14          GUM ZF 111
            GUM ZF 115

From:       GUM ZF 10

RE:         INVENTORY MANAGEMENT TRAINING

Memo:

Inventory Management training is scheduled for Tuesday, March 28, 2000 at 9:00 am at the offices of Deloitte & Touche.  Their office is located in Tamuning, next to Denny's/Guam Dry Cleaners, along Marine Drive.

Participants from Accounting, Purchasing, Production and Warehousing are expected.  I strongly encourage the respective department heads to attend along with a designated member of your staff.

We plan to go live with implementation at month end with the Inventory Observation. It is imperative that each department understand the role each plays in the maintenance of the system and is able to utilize it accordingly.

I will see each of you at D&T Tuesday morning.  Thank you for your cooperation.

GUM ZF 10

**Subject: Network Ready**
**Date:** Sun, 05 Mar 2000 16:59:37 +1000
**From:** "Jesse R. Rivo" <jrrivo@ite.net>
**To:** gumzfs@ite.net
**CC:** "Michelle D. Ramos" <gumzf10@ite.net>, Robert Hernandez <gumzf14@ite.net>

Annette,

FYI, I won't be in this Monday (03/06/00), just want to let you know that Ness's CPU is Network ready. If she need's it, it's on top of the counter behind the copier. I'll finalize all setup's when I come back on Tuesday. Should there be any problems, you can page me at 476-1761.

Jesse

Case 1:03-cv-00028    Document 33    Filed 10/17/2003    Page 140 of 168

*Routing to:*
*Michelle Ramos*
*Robert Hernandez*


**Sky Chefs**

## INTER-OFFICE MEMORANDUM

TO          :    All Department Heads

FROM        :    Lorraine D. Villarde    *Lou Villarde*
                 Human Resources Manager

SUBJECT :    Vacation  Leave : Off-Island Trip

DATE        :    February 11, 2000

-----------------------------------------------------------------------------------------------

Please be advised that I will be off-island from February 14, 2000 to March 13, 2000.

During my absence, Ms. Josie Cruz and Mrs. Anita Scharff will continue assuming their normal responsibilities and maintaining of all human resources office operations.

All Human Resources matters requiring immediate attention of approvals will be directed to Mrs. Michelle Ramos and Mr. Frank Fischer.

Your cooperation in this matter is greatly appreciated.

Thank you and see you when I return back from my vacation.


cc:  File
     Distribution

*Michelle's copy*

The following projects which will be on going or will be on deadline in a few days for both Anita and Josie are as follows:

**Josie:**

(1) Medicare report- Deadline Feb. 11th.

(2) Follow through with Operations staff on their completed DOT Exam and make sure copies of all DOT Certificates are turned in to H.R. for employee's files. All DOT Exams should be done by March 7th. All copies of DOT Certificates MUST be turned in to H.R. logged and filed in employees file.

(3) Communicate with Michelle on any/all approvals needed for Human Resources matters or issues to be handled before Mr. Fischer is informed for final disposition.

(4) Will be assisting Marty Woodward whenever she is in H.R. Office for LSG matters.

(5) Will be responsible for expediting any/all requested instructions from Mr. Fischer or Michelle regarding all H.R. matters on a timely manner.

(6) Will be responsible for requesting any final checks from Accounting for any terminated employees and making sure that they are processed on a timely manner as required.

(7) Will communicate with Rene on any updated status for the contract employees documents.

(8) Responsible for health certificate memo for March expirations and follow through if they are being renewed. Will log and file those renewed health certificates turned in.

(9) Responsible for all AOA badge renewals. Full processings.

**Anita:**

** See listing of daily responsiblilities.

*Michelle's copy*

# HUMAN RESOURCES DIVIDED DAILY RESPONSIBILITIES:

## JOSIE:

1.) Verification of Employment Documents

2.) Verify and immediately process any "AOA Badges" expiring.

3.) Assist Anita with filing of any documents that are on pending.

4.) Responsible for Health Certificates:
   - Logging of all renewed Health Certificates turned in by the employee.
   - Making sure that before filing original certificates:
     - ^ Must make a 60% reduced copy to be posted on bulletin board.
     - ^ Original copies must be processed through LORI first for update input on roster file.
     - ^ Once original Health Certificate is returned with a "COMPLETED" stamp it must be filed in employee file immediately.
   - Must make sure memorandum of Health Certificate expiring the upcoming month is posted at least three months in advance on bulletin board.
   - Keep copy of Health Certificate memorandum in Health Certificate folder for record updates and referrals.
   - If any employee shows that they have not updated their Health Certificate it would be our responsibility to inform the Department Head that the employee is to be sent home and must renew their Health Certificate and when they do renew, they must present it to H.R. before they are allowed to return back to work duty.

5.) Responsible for preparing employee's Birthday Cards on a monthly or two months basis depending on monthly work load.
   - ^ Birthday Cards are to be forwarded to Managing Director for signature.
   - ^ After receiving signed cards from M/D, cards are then distributed to the Department Managers/Supervisors for distribution to their staff.
   - ^ As for Department Managers birthday cards, they must be re-routed to the Managing Director at least three to four days prior to that Department Manger/s birth-date for M/D to handle.

6.) Responsible for all newly hired employees documents; for processing and orientation, and issuance of uniforms.

7.) Responsible for scheduling appointments for all Operation personnel for DOT exams with Harmon Doctor's Clinic.

➢ When scheduling of appointments are confirmed, notification of appointments must be communicated to Department Manager/Supervisor or individual concerned. Letters for DOT exams must be distributed to concerned individuals.

➢ Notification of such appointments must be informed to Accounts Payable Clerk in Accounting Office in writing. If necessary prepare a listing of "Employees" requiring the DOT exam, "Dept.", "Date of examination, "Clinic / Doctor" for examination and "Cost" of examination.

➢ Make sure we have a copy of "DOT Certificate" in employees file and "Documentation of Results for the examinations" in H.R. Mgr. Office File.

8. Responsible for all Worker's Compensation Documents. Processing, filing, follow-up for any and all necessary pending cases. Responsible for all communications necessary between Insurance Company, Employee, Department Manager and Human Resources Manager.

9. Assisting of Human Resources Manager in any additional projects assigned in a short-time frame.

10. Occasionally will have the responsibility of doing outside errands, post-office to check mail, etc.

11. Must communicate with Human Resources Manager and Human Resources Clerk on daily basis regarding Company or Human Resources issues, inclusive of update information for follow up operations.

# HUMAN RESOURCES DIVIDED DAILY RESPONSIBILITIES:

## ANITA:

1.) Responsible for all Vacation and Sick Leave processing as forms are turned in to Human Resources for processing by employee or respective dept. mgr. or supervisor.

2.) Responsible for logging of Vacation, Sick, FMLA or Leave w/o pay in employee daily roster and then filing.

3.) Responsible for all input and processing data's in Ceridan system.

4.) Responsible for processing, logging and filing of Travel Benefits.

5.) Responsible for processing of FMLA after communication and approval is done by Human Resources Manager.

6.) Responsible for all exiting employee's file and processing of clearances before last check is issued to employee/s leaving the company.
   - Make sure to inform Dept. Mgr./ Supervisor of Status Change Form to be done and forwarded to H.R. as soon as possible to process.
   - If a termination as been approved and Status Change Form is complete last pay check must be requested in Accounting with a copy of last print out of employee attached with the "Status Change Form". Don't forget before forwarding anything up to Accounting. we must have a copy of all documents; **Completed Status Change Form** with Mgr's. signatures., Print out from payroll clerk, any and all information's needed to process last check such as, balance of vacation hours, regular hours, deduction of medical/dental insurance if any applicable, etc. **Note: anyone else issuing the last pay check must make a copy of last paycheck and have employee sign the bottom of "status change form". File all documents immediately after all exiting process is completed.

7.) Responsible for processing of enrollments, changes, or cancellations of medical and/or dental.

8.) Responsible for keeping up with filing of documents on a pending hold.

9.) Must communicate with Human Resources Manager and Assistant on a daily basis regarding Company or Human Resources issues, inclusive of update on daily work assignments.

10.) Occasionally will have the responsibility of doing outside errands, post-office to check mail, etc.

**Subject: Marketing Report**
- **Date:** Fri, 21 Jan 2000 16:55:14 +1000
- **From:** "Michelle D. Ramos" <gumzf10@ite.net>
- **Organization:** LSG Sky Chefs - Guam
- **To:** GUM ZF Customer Service <gumzfs@ite.net>

Annette...Per your request, updated marketing report attached...Michelle

| Mktgrep.xls | **Name:** Mktgrep.xls<br>**Type:** Download File (application/msexcel)<br>**Encoding:** base64 |
|---|---|



LSG Lufthansa Service
SKY Chefs

# *INTER-OFFICE MEMO*

**TO:**   All Department Heads/Supervisors

**FROM:** GUM ZF 115, James Quenga

**DATE:** December 28, 1999

**SUBJECT:** Physical Inventory

<u>Absolutely No Requistions will be issued on Friday, December 31ˢᵗ, 1999.</u>

Please secure all necessary needs which related to my department before the inventory.

Thank you for your prompt cooperation.

*JQuenga* 29 Dec 99



**Inter Office Memo**

| To | Mr. Reinhold Jakobi (HKGZF1) | cc | Mr. Philip Thow (HKGZC1) |
|---|---|---|---|
| | Mr. Fritz Pandalitschka (HKGZC/P) | | Mr. H. K. Cheung (HKGZC3) |
| | Mr. Heribert Gaksch (BKKZF1) | | |
| | Mr. Roland Müller (YGNZF1) | | |
| | Mr. Ken Lam (SIAZF1/HKGZF31) | | |
| | Mr. So Ping Yiu (BJSZF1/HKGZF32) | | |
| | Mr. Wilson Lee (SHAZF1/HKGZF33) | | |
| | Mr. Kelvin Chan (HKGZF34) | | |
| | Mr. Frank Fischer (GUMZF1) | | |
| | Mr.Walter Kern (Gastroprimo HKG) | | |
| | All Staff in Regional Office | | |

| From | Dr. Hans-Peter Luippold | Initial | HKGZC | Date | 1-Sep-99 | ☎ | 2963 6330 |
|---|---|---|---|---|---|---|---|

**Subject** | Mr. CHEUNG Hing-Kai

As you are aware that the position of the second Executive Vice-President in the region of Asia has been vacant for almost a year. I am proud to announce that Mr. Cheung Hing-kai (H.K.), after taking up the position of Deputy Managing Director since November 1998, is promoted as Executive Vice-President – Asia with effect from September 1, 1999.

In respect of Mr. Cheung's promotion, please be informed that the position code for Executive Vice-President – Asia will be defined as below:-

| Dr. Hans-Peter Luippold | Executive Vice-President – Asia | (HKGZC) |
| Mr. H. K. Cheung | Executive Vice-President – Asia | (HKGZB) |

Kindly convey this message to your staff. Meanwhile, please join me to extend our very best wishes for his promotion and your continuous support to him is highly expected as well.

Congratulation!

For and on behalf of
LSG Lufthansa Service Asia Ltd.

Dr. Hans-Peter Luippold
Executive Vice-President - Asia

Case 1:03-cv-00028    Document 33    Filed 10/17/2003    Page 148 of 168


**LSG**
**Sky Chefs**

## INTEROFFICE MEMORANDUM

Date:        October 29, 1999

To:          GUM ZF 1        GUM ZF RQ        GUM ZF 11
             GUM ZF 11       GUM ZF 12        GUM ZF 13
             GUM ZF 14       GUM ZF 20        GUM ZF 111
             GUM ZF 112      GUM ZF 113       GUM ZF 114
             GUM ZF 115      GUM ZF 116       SPN ZF 1

From:        GUM ZF 1

RE:          Y2K AUDIT

Memo:

LSG HKG will be performing a Y2K Audit on Guam and Saipan. The team is expected to arrive the 2nd week of November.

While they are on island, they will not only evaluate the Y2K compliance status of all informational and operational systems but also determine your preparedness and knowledge of the Y2K Contingency Plan ("CP").

Attached, please find the first draft of the CP. Any comments should be forwarded to me by November 3 for incorporation to the plan. We can then have a final draft by November 4th for distribution. Please ensure that your designated staff person(s) are aware of their roles and responsibilities at year end.

The millenium change has long been considered a global problem. It is to our advantage to plan ahead, anticipate the difficulties which may arise and develop an emergency plan. Your cooperation and input in the finalization of LSG's Contingency Plan would be most appreciated. Thank you for your cooperation.

GUM ZF 10

| Department | | Department Head | | Authorization | | | | |
|---|---|---|---|---|---|---|---|---|
| | | GUM ZF 1 - Frank Fischer | | GUM ZF 1 | | | | |
| **Process** Malfunction (please list process by ranking, the most critical at top) | **Detail Work Around Procedures** (please state assumptions if any) | **Action Date** | **Validity of work around** | **Extra Resources and Estimated Cost** | **Impact** (Outside Service Partner, Business Partner, Related Department, Performance, Efficiency) | **Person in Charge** | **Corrective Action and Person in Charge** |
| **GENERAL** | | | | | | | |
| 1 Power supply interruption | 1.1 Preventive Maintenance and testing of all on-site generators. | 1/12/99 | | | | GUM ZF 116 | |
| | 1.2 Fill all diesel tanks to maximum capacity | 20/12/99 | | | | GUM ZF 14/ 116 | |
| | 1.3 Two (2) maintenance staff on hand during Year 2000 transition | 31/12/99 | | | | GUM ZF 116/RDR | |
| 2 Water supply interruption | 2.1 Fill water tank to capacity | 20/12/99 | | | | GUM ZF 116 | |
| | 2.2 Backup supply of bottled water | 20/12/99 | | | | GUM ZF 14 | |
| | 2.3 Containers to be filled with water | 30/12/99 | | | | GUM ZF 14/114 | |
| | 2.4 Short term lease for portable toilets | 30/12/99 | | | | GUM ZF 14/114 | |
| 3 Propane Gas supply | 3.1 Refill gas tanks to maximum capacity | 28/12/99 | | | | GUM ZF 116 | |
| 4 | 4.1 | | | | | | |

Case 1:03-cv-00028   Document 33   Filed 10/17/2003   Page 150 of 168

| Department | Department Head | Authorization |
|---|---|---|
| ACCOUNTING | GUM ZF 10 - Michelle D. Ramos | GUM ZF 1 |

| Process Malfunction (please list process by ranking, the most critical at top) | Detail Work Around Procedures (please state assumptions if any) | Action Data | Validity of work around | Extra Resources and Estimated Cost | Impact (Outside Service Partner, Business Partner, Related Department, Performance, Efficiency) | Person in Charge MDR/FG/ | Corrective Action and Person in Charge |
|---|---|---|---|---|---|---|---|
| 1 Server Down | 1.1 Hard copy printout of all ledgers & sub-ledgers. | 30/12/99 | | | | TC | |
| | 1.2 Full system backup | 31/12/99 | | | | JRR | |
| | 1.3 System testing. | 2/1/00 | | | | JRR | |
| | 1.4 Restore from backup. | | 2/1/00 | Computerland, $1000 Deloitte & Touche, $1000 | | JRR | |
| 2 | 2.1 | | | | | | |
| 3 | 3.1 | | | | | | |
| 4 | 4.1 | | | | | | |

Case 1:03-cv-00028    Document 33    Filed 10/17/2003    Page 151 of 168

| Department | Department Head | | | | | Authorization | | |
|---|---|---|---|---|---|---|---|---|
| PURCHASING | GUM ZF 14 - Robert Hernandez | | | | | GUM ZF 1 | | |
| Process Malfunction *(please add assumptions if any) (please list process by ranking, the most critical at top)* | Detail Work Around Procedures *(please add assumptions if any)* | Action Date | Validity of work around | Extra Resources and Estimated Cost | Impact *(Outside Service Partner, Business Partner, Related Department, Performance, efficiency)* | Person in Charge | Corrective Action and Person in Charge |
| 1 Shipping/Supplier delays | 1.1 Evaluate consumption for January & order accordingly | 10/10/99 | | | | GUM ZF 14 | |
| | 1.2 Ensure adequate supplies on hand or are scheduled for delivery by end of month. | 1/12/99 | | | | GUM ZF 111 GUM ZF 115 | |
| 2 Computer related malfunction | 2.1 Hard copy printout of all cost trend analysis worksheets and any other files | 30/12/99 | | | | | |
| | 2.2 Full system backup | 30/12/99 | | | | | |
| | 2.3 Restore from backup if necessary | 2/1/00 | | | | | |
| 3 | 3.1 | | | | | GUM ZF 14 | |
| 4 | 4.1 | | | | | | |

| Department | | Department Head | | | | | Authorization | | |
|---|---|---|---|---|---|---|---|---|---|
| **HUMAN RESOURCES** | | Lorraine Villarde - GUM ZF 13 | | | | | GUM ZF 1 | | |
| Process Malfunction *(please list process by ranking, the most critical at top)* | Detail Work Around Procedures *(please state assumptions if any)* | Action Date | Validity of work around | Extra Resources and Estimated Cost | Impact *(Outside Service Partner, Business Partner, Related Department, Performance, Efficiency)* | | Person In Charge | Corrective Action and Person in Charge | |
| 1 Computer-related malfunction | 1.1 Hard copy printouts of all relevant files. | 30/12/99 | | | | | GUM ZF 13 | | |
| | 1.2 Full system backup. | 30/12/99 | | | | | | | |
| | 1.3 Restore from backup if necessary. | 2/1/00 | | | | | | | |
| 2 Kronos clock malfunction | 2.1 Inter-office memorandum instructing all department heads to keep accurate daily attendance records at year end. | 12/27/99 | | | | | | | |
| 3 | 3.1 | | | | | | | GUM ZF 13 | |
| 4 | 4.1 | | | | | | | | |

Case 1:03-cv-00028    Document 33    Filed 10/17/2003    Page 153 of 168

**LSG SKY CHEFS**
LSG Lufthansa Service Guam, Inc.

Y2K CONTINGENCY PLAN
Cust Service

| Department | Department Head | | Authorization | |
|---|---|---|---|---|
| CUSTOMER SERVICE | GUM ZF 12 | | GUM ZF 1 | |

| Process Malfunction (please list process by ranking, the most critical at top) | Detail Work Around Procedures (please state assumptions if any) | Action ... | Validity of work around | Extra Resources and Estimated Cost | Impact (outside Service Partner, Business Partner, Related Department, Performance, Efficiency) | Person in Charge | Corrective Action and Person in Charge |
|---|---|---|---|---|---|---|---|
| 1 Computer related malfunction | 1.1 Hard copy printouts of all relevant files <br> 1.2 Full system backup. <br> 1.3 Restore from backup if necessary. | | | | | GUM ZF 12 | |
| 2 | 2.1 | | | | | | |
| 3 | 3.1 | | | | | | |
| 4 | 4.1 | | | | | | |

a \y2KConPlanGUM\Cust Service
:GUM ZF 10

Case 1:03-cv-00028    Document 33    Filed 10/17/2003    Page 154 of 168

| Department | Department Head GUM ZF 11 - Klaus Ohl | | Authorization GUM ZF 1 | | | | |
|---|---|---|---|---|---|---|---|
| **OPERATIONS** | | | | | | | |
| **Process Malfunction** (please list process by ranking, the most critical at top) | **Detail Work Around Procedures** (please state assumptions if any) | **Action Date** | **Validity of work around** | **Extra Resources and Estimated Cost** | **Impact** (Outside Service Partner, Brothers Partner, Related Department, Performance, Efficiency) | **Person in Charge** | **Corrective Action and Person in Charge** |
| 1 Phone system interruption | 1.1 Initiate short term lease of mobile radios. | 15/12/99 | | | | GUM ZF 14/ GUM ZF 113 | |
| | 1.2 Assign manpower to man airline ops office with portable radios. | 31/12/99 | | | | GUM ZF 113 | |
| 2 SITA/Sonic Sys interruption | 2.1 Assign manpower to man airline ops office with portable radios | 31/12/99 | | | | GUM ZF 113 | |
| 3 Power system interruption | 3.1 Purchase batter or gas operated lamps for Ops/Equip/Kitchen | 31/10/99 | | | | GUM ZF 14/ GUM ZF 113 | |
| 4 Cutlery Machine inabled | 4.1 Prepare backup stock of cutlery | 15/12/99 | | | | GUM ZF 112 | |
| | 4.2 Backup supply of disposable cutleries | 30/11/99 | | | | GUM ZF 14/112 | |
| 5 Dishwasher inabled | 5.1 Will go manual | 1/1/00 | | | | GUM ZF 114 | |
| 6 Trash disposal service interruption | 6.1 Rent additional open-top containers | 28/12/99 | | | | GUM ZF 14/114 | |

Case 1:03-cv-00028   Document 33   Filed 10/17/2003   Page 155 of 168

| Department WAREHOUSE<br>Process: Malfunction (please list process by ranking the most critical at top) | Department Head<br>GUM ZF 115 - James Quenga<br>Detail Work Around Procedures (please state assumptions if any) | Authorization<br>GUM ZF 1<br>Action Date | Validity of work around | Extra Resources and Estimated Cost | Impact (Outside Service Partner, Business Partner, Related Department, Performance, Efficiency) | Person in Charge | Corrective Action and Person in Charge |
|---|---|---|---|---|---|---|---|
| 1 Freezer malfunction | 1.1 Initiate short term lease for a refrigerated container. | | | | | GUM ZF 14<br>GUM ZF 115 | |
| 2 | 2.1 | 15/12/99 | | | | | |
| 3 | 3.1 | | | | | | |
| 4 | 4.1 | | | | | | |

Case 1:03-cv-00028     Document 33     Filed 10/17/2003     Page 156 of 168

| Department KITCHEN | Department Head GUM ZF 111 - Christian Urban | | | Authorization GUM ZF 1 | | | |
|---|---|---|---|---|---|---|---|
| Process Malfunction (please list process by ranking the most critical at top) | Detail Work Around Procedures (please state assumptions if any) | Action Date | Validity of work around | Extra Resources and Estimated Cost | Impact (Outside Service Partner, Business Partner, Related Department, Performance, Efficiency) | Person in Charge | Corrective Action and Person in Charge |
| 1 Utilities shutdown | 1.1 Produce backup supply of meals for all airlines. | 28/12/99 | | | | GUM ZF 111 | |
| 2 No supply of fresh produce/veg's | 2.1 Backup supply of fruits & vegetables<br>2.2 Backup supply of canned goods<br>2.3 Coordinate with Customer Service to advise customers of replacements if any. | 15/12/99<br>15/12/99<br>27/12/99 | | | | GUM ZF 14/111<br>GUM ZF 14/111<br>GUM ZF 12/111 | |
| 3 | 3.1 | | | | | | |
| 4 | 4.1 | | | | | | |

Case 1:03-cv-00028    Document 33    Filed 10/17/2003    Page 157 of 168

iSG HLG.

**From:** "MICHAEL LUK" <MICHAEL.LUK@LSGSKYCHEFS.COM.HK>
**To:** "KELLY LAU" <KELLY.LAU@LSGSKYCHEFS.COM.HK>; "STEPHEN YAU"
<STEPHEN.YAU@LSGSKYCHEFS.COM.HK>; "EDDY YUNG"
<EDDY.YUNG@LSGSKYCHEFS.COM.HK>; "GASTROPRIMO - KENNY LAW"
<KENNY.LAW@LSGSKYCHEFS.COM.HK>; "MICHELLE D RAMOS"
<MDRamos@LSGSkyChefsGuam.com>; "PORNNEE KANTIPAKORN"
<PORNNEE.K@SIAMFLIGHT.COM>; "MYANMAR" <myanmar.lsg@mptmail.net.mm>; "ANUP
KUMAR SAHU" <anup.s@lsgindia.com>; "MARK NORTHMORE" <marknz@pl.net>
**Cc:** "MAGGIE CHAN" <MAGGIE.CHAN@LSGSKYCHEFS.COM.HK>
**Sent:** Monday, January 21, 2002 4:42 PM
**Subject:** Update - Global Reporting & Planning Project

Dear all,

Here are some updates concerning the Global Reporting Project. We need to wait until we obtain the approval from LH for starting the project. However I still urge you to secure your team on reporting/closing first (Phase I) in this month.

Regards,

Michael Luk
Project Leader - Asia Pacific Region

-----Original Message-----
From: Spaulding, Dave [SMTP:DSpauldi@Skychefs.com]
Sent: Friday, January 18, 2002 6:19 AM
To: Accenture - Mall, Scott; Accenture - Orlowicz, Michael; LSGSC - HK Cheung; LSGSC - Max Padberg; Manley, Jonathan; Mata, Athena; Smith, Kate; Tolbert, Pat; Ward-Lee, Leah

Cc: Eubanks, Dan; Kuster, Cindy; Brown, David; Kerber, Kevin; Georges, Alfred; 'LSGSC - Maggie Chan'; 'LSGSC - Michael Luk'; 'LSGSC - Peter Eisele'; 'LSGSC - Glaum, Mathias'; Zeh, Roland; 'Navigator - Craig Kee'; 'Accenture - Scott Mall'

Subject: Quick Update - Global Reporting & Planning Project

Project Steering Team: When we had our conference call in mid December, the original plan was to start the project after the New Year on January 7. We were delayed from starting then due to several factors as follows:

* We chose to break up the project into three distinct pieces: The Web Infrastructure, Reporting and Planning. Approval for the Web Infrastructure had already been given and we are proceeding with that. Separating Reporting and Planning took some time.
* We looked revised the project plan to do it more efficiently and cost effectively.
* Due to the cost of each of the two projects (Reporting and Planning), approval by Lufthansa was required, which we did not fully understand until early January. Pat received a thorough briefing on the approval process just this week and the required forms.

Based upon the approval process, the following is some key dates:
* January 23 - submittal of preliminary package to LH finance. LH finance will review and provide feedback.
* January 24 - submittal of final package to LH finance
* January 25 - Presentation to the Investment Committee
* February 5 - Presentation to the Executive Committee

Our expectation, therefore, is to receive word of approval on the 5th or 6th of February at which time we will send out the announcement of the project to the company Leadership.

1/29/02

During the process of reworking the project plan and breaking it into two distinct projects, we came to the conclusion that doing the projects in phases vs. doing together in parallel, would significantly lower risk. Consequently, once we have approval, we will proceed with the first phase - Reporting. That will be followed by Planning.

I have copied in the key Project Team Leaders so they have the same information.

David Spaulding
Project Leader - Financial Systems
Email: mailto:dspauldi@skychefs.com
817-792-5541
817-792-2458 Fax



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
Honolulu Local Office

300 Ala Moana Boulevard, Room 7-127
Honolulu, HI 96850-0051
(808) 541-3120
TTY (808) 541-3131
FAX (808) 541-3390

## PLEASE PRINT OR WRITE LEGIBLY

## Questionnaire

I understand this document is not a charge. This information is provided to EEOC for informational purposes only to help me decide whether to file a charge. PLEASE CHECK THE FOLLOWING TO INDICATE YOU UNDERSTAND THE ABOVE. ( ✓ )

*If you base your charge on your disability, please complete page 6.*

1. *Please fill in the following information:*
   a. Your full name: *NONA A. PEREZ*
   b. Your address: *P.O. BOX 8374*
      City/State: *TAMUNING, GUAM*
      Zip Code: *96931*
   c. Your daytime phone number: *(671) 721-3718*
      Your evening phone number: *(671) 637-6459*
   d. Your social security number: *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*
   e. Your date of birth: *7-29-1971*
   f. Your sex: *Female*
   g. Your race: *Filipina*
   h. Your national origin: *PACIFIC ISLANDER*
   i. Your skin color: *BROWN*
   j. Person who can always contact you
      Name: *MS. WOODWARD*
      Address: *P.O. BOX 11669*
      City/State: *YIGO, GUAM*
      Zip code: *96929*
      Phone number: *(671) 687-8836*

2. *Please give the following information about the employer:*

   a. Company name: *USG SKY CHEFS*

   b. Describe company business: *CATERING*

Questionnaire - Page 1 of 6

c.    Address where you worked:
          Street:          _GUERRERO STREET_
          City/State:      _HARMON INDUSTRIAL PARK_
          Zip code:        _____
          Phone number: (_671_) _646_ - _5890_
          County:          _GUAM_

d.    Corporate address to mail charge to:
          Corporate name: _LSG SKY CHEFS_
          Name/Title of person to receive charge (personnel/HR director/CEO):
          Name _FRITZ PANDALITSCHKA_
          Title _GENERAL MANAGER_
          Street/P.O. Box: _P.O. BOX_
          City/State: _____
          Zip code: _____
          Phone number: (_____) _____

d.    Name and title of immediate supervisor: _AMANDA SANCHEZ,_
      _MANAGER OF BUSINESS DEVELOPMENT_

e.    Approximate number of employees working for the whole company. Circle
      one.

      1-14        15-100        (101-200)        201-500        More than 500

i.    Date of hire: _11-5-1999_
j.    Last or current job title at company: _OUTSIDE CATERING REP/ADMIN CLERK_
k.    Last or current unit/department in company: _CUSTOMER SERVICE_
i.    Last or current rate of pay at company: _$9.39 per hour_

3.    *Identify the employment event(s) that caused you to contact the EEOC. (e.g.
      hiring, layoff, promotion, accommodation, discipline, harassment, sexual
      harassment, etc.)*

      SEE ATTACHMENT

      Date event occurred: _STARTED IN DECEMBER; SOME ON-GOING_

      *Note: This information will be used by the EEOC to determine jurisdiction. Generally,
      charges must be filed within 300 days of the underlined date of notification of an alleged act of
      discrimination.*

4. *What was the employer's stated reason for taking this action?*

NO STATEMENTS WERE MADE OR ANNOUNCED.
COMPlAINTS TO HUMAN RESOURCES WERE
IGNORED AND UNANSWERED. HR MANAGER QUIT
AFTER ONly 2 MONTHS.

5. *What makes you think this event is discriminatory?*

SEE ATTACHMENT

6. *List the persons in your unit/department who were <u>treated better</u> than yourself with respect to this event. State their name, job title, race, age, color, national origin, sex and disability, if known.*

ROSEMARIE ABAT - ADMIN. ClERK - FilipiNA

7. *List the persons in your unit/department who were <u>treated the same</u> as you with respect to this event. State their name, job title, race, age, color, national origin, sex and disability, if known.*

YolANDA GUEVERRA - ADMIN. ClERK - Filipina - FEMAlE
GLADYS GARCIA - ADMIN. ClERK - FilipiNA - FEMAlE
~~TA ARYA CHAN - ADMIN. ClERK Filipina FEMAlE~~
WilMA NuluD - ADMIN ClERK - FilipiNA - FEMAlE

8. *List the name and job title, race, skin color, sex and approximate age of the employers' representatives who recommended and approved the decision which resulted in the discriminatory event.*

FRITZ PANDAliTschKA, GENERAL MANAGER
GERMAN, WHiTE, MAlE — 59 YRS.

9. *Have you complained to your employer about this matter? If yes, explain the situation. When did you complain, to whom and what was the result? Please attach copies of supporting documentation.*

ALL OF US (iNCludiNG LADiES iN 9 7 ABOVE)
TOOK THE pROblEM TO HUMAN RESOURCES.
THE MANAGER SAID HE WOuld LOOK iNTO
iT BuT THERE WASN'T MuCH HE COUld do
WHEN THE GENERAL MANAGER MAKES uP
HIS MiND. THE UNION GRIEVED THE HOLIDAY
PAY ISSUE AND WE HAVE HEARD he is pAYiNG
THEM. We ARE NOT RepRESENTED bY THE
UNiON.

10.    *If you are complaining about <u>harassment</u> or <u>sexual harassment</u> please attach a brief chronology of events (e.g. two or three pages). Include dates of each incident, a description of what happened and harasser's name and job title. For each incident, provide witness names, if any. Also state when you complained, name and job title of person(s) to whom you complained and action take in response to your complaints. Attach any supporting documentation.*

SEE ATTACHMENT

11.    *Have you filed a charge regarding this matter with the Hawaii Civil Rights Commission or any another agency? If yes, provide the agency name and date filed.*

No — But will be sending copy to Dept. of Labor.

12.    *Write a paragraph about your employment situation and explain what happened and why you feel the incident is discriminatory. Be thorough. This information is very important for our evaluation of your situation.*

SEE ATTACHMENT

Case 1:03-cv-00028    Document 33    Filed 10/17/2003    Page 164 of 168

13. Please state what your performance was like (in other words, tell us whether you were performing below standards, at standard or above standard) and how you can prove this is true (performance evaluations, awards, etc.).

MY PERSONNEL FILE IS CLEAN WITH NO
STEPS OF DISCIPLINE ON RECORD,

14. What are your expectations in filing this charge? What do you want to happen (e.g. reinstatement, policy change, promotion, back pay, etc.)?

SEE ATTACHMENT

15. Are you interested in mediation? Please circle one of the following:

Yes           No

16. Were you ever asked to sign an agreement that required that all disputes between you and your employer be resolved solely through binding arbitration? Circle one.

Yes          No 

* If yes, attach a copy of the agreement. If you do not have a copy, briefly describe the terms of the agreement as you understood them and indicate when it was presented to you.

17. Have you ever been asked to sign a general release in which you released all claims against your employer in exchange for money or other benefits? Circle one.

Yes          No 

* If yes, attach a copy of the release. If you do not have a copy, briefly describe the terms of the release as you understand them and indicate when it was presented to you.

18. Does anyone represent you in this matter (e.g. union, attorney, etc.)? If yes, please provide their name, title, address and phone number.

NO

19. Provide any other information that you have available (e.g. witness names with their telephone numbers, any other supporting documentation). Be sure to state what each person witnessed.

AMANDA SANCHEZ  — 888-1559
ALL LADIES IN QT 7.
OFFICE PHONE CONTACT IS 646-3655
I CAN PROVIDE HOME NUMBERS
IF NEEDED.

Questionnaire - Page 5 of 6

# ATTACHMENT – NONA A. PEREZ

## Question Number 3:

In September or October – Ms Abat made a trip to Japan with the General Manager to visit a Japan Airline facility. Ms. Abat is a clerk and it seems practical that the Manager of Customer Service would have accompanied him rather than a clerk. At no other time in the history can anyone remember when a clerk was allowed to take a business trip much less one alone with the General Manager. After that trip, the favored treatment of Ms. Abat began to show.

November – No overtime allowed for clerk level employees except for Ms. Abat.

December - All clerk level employees had work hours reduced without any notice of a downsizing except for Ms. Abat.

December – Holiday pay reduced without notice or consistency between clerk level employees except for Ms. Abat who received full holiday pay.

On Going Practice – Ms. Abat is the only clerk level employee that is not held to the 30-minute lunch rule. Ms. Abat brags about her ability to get whatever she wants without limitations or rules that are put on other people.

Ms. Abat was given use of a company vehicle over a weekend when no one else is allowed to use the company vehicle for any reason. She was told to keep it quiet and come and go to work when there were not many people around by the General Manager, Mr. Pandalitschka.

## Question Number 5:

All of the clerk level position should be treated equally when it comes to how our wages are paid, what benefits are provided, and any exceptions from company rules and policies. We believe that the personal relationship Ms. Abat has or had with the General Manager has influenced her receiving favored treatment over other clerk level employees.

## Question Number 10:

I was not personally sexually harassed however; I was forced to work in an environment where I witnessed the favored treatment of Ms. Abat and personally suffered along with the rest of the clerks from her receiving favored treatment. The General Manager would yell me at for things that he excused her such as lunch breaks, use of the company refrigerator, refusal of use of the company vehicle, company discounted cake orders and other hostile type behavior, which clearly indicated he does not like me.

## Question Number 12:

In December 2002 Kathy Quan (also an admin clerk) advised me that she had spoken to Mr. Pandalitschka regarding our hours being reduced with no notice. While she was telling me about the meeting, he (Mr. Pandalitschka) briskly entered my office and without acknowledging me at all, told Ms. Quan to make sure she tells me immediately about my hours being reduced to 6.5 from 8. I tried to ask him a question and he brushed me aside without a response. Later I found out that the clerks had different hours reduced and that Ms. Abat did not have her hours reduced at all. In fact, she was reporting and receiving pay for a very large amount of overtime every pay period.

I brought ice bags to place in the office freezer due to the storm and I had no power. I had about 10 small bags to freeze so I could take them home and place them in a cooler to keep food cool. The General Manager saw the freezer packs and began yelling around the office. I immediately explained they were mine and why I had placed them there. He had assumed that another large bag of food items was mine as well. He ordered me to remove everything. I advised him that the bag of food belonged to Mr. Chan (a personal friend of the General Manager and Ms. Abat's boss). When I said that, he it was okay to leave everything there including my freezer packs but that would be the last time. However, Mr. Chan was allowed to leave his food items for several days. I overheard Mr. Pandalitschka, Mr. Chan and Ms. Abat laughing about the incident and the different kinds of food items Mr. Chan had in the bag.

I had ordered a cake to be placed on a flight for a personal friend through an LSG employee discount cake purchase. The flights were canceled due to the storm and the cake was never prepared. I submitted a refund request and overhead Mr. Pandalitshka (my office is next to his) saying he did not believe me and would not approve a refund.

I questioned things such as Ms. Abat being taken on a business trip alone with the General Manager. I questioned why she was allowed to use the company vehicle when there was a strict policy published that no one used the automobile except the designated persons (not any clerks). I questioned why she was allowed exceptions to the rules. She responded to me that she could get me long lunch hours if I wanted them as all she had to do was ask and they would never refuse her. She bragged about her favored treatment which led to strong rumors of a current or past romantic relationship with the General Manager. This was rumor was encouraged by the manager of purchasing, Robert Hernandez who told me that Ms. Abat hated him because he had mentioned to a close personal friend of Ms. Abat's that she sleeps with the General Manager so she can do whatever she pleases and also not have her hours reduced plus keep her overtime payments.

I believe Mr. Pandalitschka hostile attitude toward me for the past couple of months is due to being told that I was questioning these items. I reported it to the Manager of Finance and Human Resources, Ms. Michelle Ramos who tried to get the issues resolved but ran into problem with Mr. Pandalitschka dismissing all of it.

## Question Number 14:

This company has been charged with other EEO violations and there should be a re-training of management, especially the General Manager on proper treatment of employee and the importance of not favoring certain employees.

If the company must have a reduction in staffing and/or hours, then a proper announcement be made and the reductions applied fairly among the classifications of employees. If there is a good business reason for differences in application, then those differences should be properly communicated.

I want to receive the proper pay for the hours I have lost including the shortage in holiday pay.

I want a guarantee of no retaliation for filing this compliant.