**TORRES LIMTIACO CRUZ & SISON, PLLC**
173 Aspinall Ave., Suite 206A
Hagåtña, Guam 96910
Telephone: 671-477-0000
Facsimile: 671-477-0001
Email: mail@torreslaw.com

**Attorneys for Defendants**

FILED
DISTRICT COURT OF GUAM

NOV 20 2003 *nba*

MARY L. M. MORAN
CLERK OF COURT

(35)

# UNITED STATES DISTRICT COURT
## DISTRICT OF GUAM

MICHELLE D. RAMOS, RICARDO G.
"GINO" PEREZ and NONA A. PEREZ,

      Plaintiffs,

      vs.

LSG LUFTHANSA SERVICE HOLDING
AG; LSG LUFTHANSA SERVICE (LSG)
GUAM, INC.; LSG CATERING GUAM,
INC.; LSG LUFTHANSA SERVICE USA
CORPORATION; LSG LUFTHANSA
SERVICE (LSG) ASIA, LTD.; LSG
LUFTHANSA SERVICE (LSG) SAIPAN,
INC.; LSG CATERING SAIPAN, INC.;
LSG SKY CHEFS; HYUNG K. CHEUNG;
FRITZ PANDALITSCHKA; KELVIN
CHAN; and DOES 1 through 20,

      Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Civil Case No. 03-00028

**DEFENDANTS' MOTION FOR
RECONSIDERATION AND
MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT
THEREOF**

Defendants LSG Lufthansa Service Holding, AG, LSG Lufthansa Service USA, LSG Lufthansa

Service Asia, Ltd., LSG Lufthansa Service Saipan, Inc., LSG Catering Saipan, Inc., and H.K. Cheung,

(collectively "Moving Defendants"), by and through their attorneys, submit the following Motion for

Reconsideration. In support of their Motion, Moving Defendants state as follows:

## ORIGINAL

# PROCEDURAL BACKGROUND

Moving Defendants submit this Motion pursuant to Federal Rule of Civil Procedure 59(e) ("Rule 59(e)") and Local Rule of the District Court of Guam 7.1(i) ("Local Rule 7.1(i)") to correct an inaccurate factual assumption that formed the basis of the Court's November 18, 2003 Order ("Order"), which denied Moving Defendants' Motion to Dismiss for Lack of Personal Jurisdiction.

On October 1, 2003, Moving Defendants filed their first pleading in this matter: a Motion to Dismiss that raised several bases for dismissal, including lack of personal jurisdiction pursuant to Rule 12(b)(2). Moving Defendants <u>did not file and have not filed</u> an Answer in this matter. That same day, October 1, 2003, Defendants LSG Service Guam and LSG Catering Guam ("Non-Moving Defendants") joined in Moving Defendants' Motion to Dismiss in several respects,[1] but also filed an Answer <u>only on behalf of the Non-Moving Defendants</u>. *See* Answer to Complaint by Defendants LSG Lufthansa Service Guam, Inc. and LSG Catering Guam, Inc. filed October 1, 2003, attached hereto as Exhibit A.

Notwithstanding the fact that the Moving Defendants had not filed an Answer, the Order stated: "However, in the same day Defendants filed the Motion [to Dismiss], Defendants also filed their Answer but failed to raise a Rule 12(b)(2) defense therein." Order at 7. Thus, the Order concluded, "Defendants have waived the defense of lack of personal jurisdiction." *Id.*

# ARGUMENT

The purpose of motions for reconsideration is to "to correct manifest errors of law or fact or to present newly discovered evidence." *Ausano v. Safeway Stores, Inc.*, 1994 WL 225064, at *2 (N.D.

---

1 The Non-Moving Defendants did not join in the Motion to Dismiss's attack on personal jurisdiction or Plaintiffs' failure to name certain parties in their EEOC Charges.

Cal. Apr. 28, 1994) (granting motion for reconsideration where factual basis for denying motion to dismiss changed), attached hereto as Exhibit B. Likewise, under Local Rule 7.1(i), the grounds for motions to reconsider are limited to, among others, "a manifest showing of a failure to consider material facts presented to the Court before such decision." Local Rule 7.1(i)(3).

Under these applicable legal standards, Defendants have made a manifest showing of the Order's failure to consider material facts presented to the Court before the Order issued. In particular, as of October 1, 2003 (up through the date of this Motion), Moving Defendants' only pleading has been the Motion to Dismiss; contrary to the Order, they have not filed an Answer. As the Order's mistaken assumption that Moving Defendants had filed an answer was the sole basis for denying their Motion to Dismiss for lack of personal jurisdiction, Moving Defendants respectfully submit that a decision on whether this Court has personal jurisdiction over them is still ripe.

Moving Defendants outlined for the Court the applicable legal principles for deciding the question of personal jurisdiction, and supplied the Court with declarations supporting a finding of no personal jurisdiction,. Moving Defendants explained in their Motion to Dismiss that they had no "minimum contacts" with Guam, as none did business in or with Guam, or had any other direct connection to Guam. Plaintiffs acknowledged these facts in their response, but asserted an "alter ego" theory (submitting approximately 100 pages of unauthenticated documents) as a basis for personal jurisdiction. In their Reply, Moving Defendants explained how, even assuming the meaning of the documents Plaintiffs ascribed them, none of the alleged activities with respect to the Non-Moving (and Guam-based) Defendants was a basis for asserting personal jurisdiction, as none demonstrated any Moving Defendant's day-to-day involvement in the management of a Guam-based entity; rather, the Ninth Circuit had clearly rejected the same assertions in factually similar contexts. *See Doe v. Unocal*, 248 F.3d 915, 927-30 (9th Cir. 2001) (and the cases cited therein). The Reply demonstrated why

3

Plaintiffs' response to the personal jurisdictional issue was meritless and also pointed out that Plaintiffs failed even to attempt to address why personal jurisdiction existed over Defendant Cheung. Accordingly, the Motion to Dismiss for lack of personal jurisdiction should have been granted.

Accordingly, Moving Defendants respectfully request that the Court grant their Motion for Reconsideration and dismiss this action against them for lack of personal jurisdiction.

Respectfully submitted,

TORRES LIMTIACO CRUZ & SISON, PLLC,

By: _____
DONNA M. CRUZ,
A duly licensed employee.

U:\Master Client Files\LSG\Ramos, Perez & Perez vs. LSG CV 03-00028\Pleadings\Motion to dismiss\Ramos - Revised Motion to Dismiss (2)2.DOC

4

1 | **TORRES LIMTIACO CRUZ & SISON, PLLC**
173 Aspinall Ave., Suite 206A
2 | Hagåtña, Guam 96910
Telephone: 671-477-0000
3 | Facsimile: 671-477-0001
Email: mail@torreslaw.com
4 |
5 | **Attorneys for Defendants**

RECEIVED
Law Office
SANDRA D. LYNCH, P.C.
Date 10/1/03
Time 3:49
By MB

FILED
DISTRICT COURT OF GUAM
OCT 01 2003
MARY L. M. MORAN
CLERK OF COURT

6
7

8 | **UNITED STATES DISTRICT COURT**
9 | **DISTRICT OF GUAM**

10 | MICHELLE D. RAMOS, RICARDO G.          )    Civil Case No. 03-00028
11 | "GINO" PEREZ and NONA A. PEREZ,        )
                                          )
12 |        Plaintiffs,              )
                                          )
13 |                                        )
14 |      vs.                             )
                                          )
15 | LSG LUFTHANSA SERVICE HOLDING        )
     AG; LSG LUFTHANSA SERVICE (LSG)     )
16 | GUAM, INC.; LSG CATERING GUAM,       )    **ANSWER TO COMPLAINT BY**
     INC.; LSG LUFTHANSA SERVICE USA     )    **DEFENDANTS LSG LUFTHANSA**
17 | CORPORATION; LSG LUFTHANSA           )    **SERVICE GUAM, INC. and LSG**
     SERVICE (LSG) ASIA, LTD.; LSG       )    **CATERING GUAM, INC.**
18 | LUFTHANSA SERVICE (LSG) SAIPAN,      )
     INC.; LSG CATERING SAIPAN, INC.;    )
19 | LSG SKY CHEFS; HYUNG K. CHEUNG;      )
20 | FRITZ PANDALITSCHKA; KELVIN          )
     CHAN; and DOES 1 through 20,         )
21 |                                        )
22 |        Defendants.              )
     _____      )
23
24
25

26 | # Exhibit "A"
27
28

1

Defendants Lufthansa LSG Service Guam, Inc. ("LSG Service Guam") and LSG Catering Guam, Inc.("LSG Catering Guam") (collectively "Defendants[1]"), by and through their attorneys, submit the following Answer to Plaintiffs' Complaint under 42 U.S.C. § 2000e et seq. ("Complaint").

1.     This is a suit in equity pursuant to Title VII of the Civil Rights Act of 1964, 42 USC §2000e et. seq., as amended;

**ANSWER:**     Defendants admit that the Complaint purports to be a suit in equity under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq, as amended.

2.     This Court has jurisdiction pursuant to 42 USC §2000e and 5(f) and 28 USC §1343(4), to secure the protection of and to redress deprivations of rights, and to provide relief against racial, religious, national origin, and sex discrimination in employment;

**ANSWER:**     Defendants admit that the Court has subject matter jurisdiction over the purported claims against them in the Complaint.

3.     The conditions precedent to jurisdiction under 42 USC. 2000 e-5(f)(3) have been met since each Plaintiff filed charges of employment discrimination with the Equal Employment Opportunity Commission within 180 days of the commission of the unfair employment practice and the EEOC issued a Right to Sue notification which was received less than 90 days prior to the filing of this complaint;

---

[1] Defendants LSG Lufthansa Service AG, LSG Lufthansa Service USA, Corporation, LSG Lufthansa Service Asia, Ltd., LSG Lufthansa Service Saipan, Inc., LSG Catering Saipan, Inc., Hing K. Cheung, Friedrich Pandalitschka, and Kelvin Chan have filed Motions to Dismiss on a variety of bases in lieu of an Answer.

2

**ANSWER:** Defendants admit that Plaintiffs Ricardo Perez ("R. Perez") and Michelle Ramos ("Ramos") filed charges with the Equal Employment Opportunity Commission ("EEOC") and that the EEOC has issued each of them Right to Sue Notifications. Defendants deny all remaining allegations in paragraph 3.

PARTIES

4. Plaintiff, Michelle D. Ramos is a citizen of the United states and a Pacific Island resident in Guam;

**ANSWER:** Defendants admit the allegations in paragraph 4.

5. Plaintiff, Ricardo G. "Gino" Perez, is a citizen of the United states and a Pacific Island resident in Guam;

**ANSWER:** Defendants admit the allegations in paragraph 5.

6. Plaintiff, Nona A. Perez, is a citizen of the United states and a Pacific Island resident in Guam;

**ANSWER:** Defendants admit the allegations in paragraph 6.

7. Defendant LSG Lufthansa Service [LSG] is, upon information and belief a foreign Holding Company with its principal place of business in Germany;

**ANSWER:** Defendants admit the LSG Lufthansa Service AG is a foreign company with its principal place of business in Germany. Defendants deny all remaining allegations in paragraph 7.

3

8. Defendant LSG Lufthansa Service [LSG] Guam, Inc. is, upon information and belief a corporation licensed to do business in Guam and incorporated under the laws of Guam;

**ANSWER:** Defendants admit LSG Lufthansa Service Guam, Inc. is a corporation incorporated under the laws of Guam. Defendants deny the remaining allegations in paragraph 8.

9. Defendant LSG Lufthansa Service [LSG] Guam, Inc. is, upon information and belief owned and operated by LSG Catering Guam, Inc., a corporation licensed to do business in Guam and incorporated under the laws of Guam;

**ANSWER:** Defendants admit LSG Catering Guam, Inc. is a corporation licensed to do business in Guam and incorporated under the laws of Guam. Defendants deny all remaining allegations in paragraph 9.

10. Defendant LSG Catering Guam, Inc. is, upon information and belief owned and operated by LSG Lufthansa Service USA Corporation, a corporation licensed to do business in the United States and incorporated under the laws of the United States;

**ANSWER:** Defendants admit that LSG Lufthansa Service USA is licensed to do business in and organized under the laws of the United States and that it owns LSG Catering Guam, Inc. Defendants deny all remaining allegations in paragraph 10.

11. Defendant LSG Lufthansa Service [LSG] Asia, Ltd. is upon information and belief the regional headquarters for LSG Guam. LSG Catering Guam, LSG Lufthansa Service Saipan and LSG Catering Saipan, and has its principal place of business in Hong Kong;

**ANSWER:** Defendants admit that LSG Lufthansa Service Asia, Ltd. has its principal place of business in Hong Kong. Defendants deny all remaining allegations in paragraph 11.

4

12. Defendant LSG Asia upon information and belief also operates and or owns and controls LSG Catering Saipan and LSG Lufthansa Service Saipan, corporations licensed to do business in the Commonwealth of Northern Marianas Islands [CNMI];

**ANSWER:** Defendants admit that LSG Lufthansa Service Asia, Ltd. owns LSG Catering Saipan, Inc. and that LSG Lufthansa Service Saipan, Inc. is licensed to do business in the Commonwealth of Northern Marianas Island. Defendants deny all remaining allegations in paragraph 12.

13. Based on their geographic location in the Pacific region, LSG Guam and LSG Guam Catering report to LSG Asia;

**ANSWER:** Defendants deny the allegations in paragraph 13.

14. All LSG Defendants [collectively referred to herein as "LSG"] are upon information and belief owned, operated, controlled, and alter-egos of LSG Lufthansa Service Holding Company of Germany;

**ANSWER:** Defendants admit that LSG Lufthansa Service Holding Company AG owns, directly or indirectly, each of the other corporate entities named as defendants in the Complaint. Defendants deny all remaining allegations in paragraph 14.

15. LSG Guam, LSG Catering Guam and LSG Asia are also known as "LSG Sky Chefs," a wholly owned subsidiary or affiliate of LSG Lufthansa Service Holding Company of Germany;

**ANSWER:** Defendants admit that LSG Lufthansa Service Guam, Inc., LSG Catering Guam, Inc. and LSG Lufthansa Service Asia, Ltd. sometimes employ the trade name "LSG Sky Chefs." Defendants deny the remaining allegations in paragraph 15.

5

16.     Defendants LSG Sky Chefs have upon information and belief their primary offices in the state of Texas;

**ANSWER:**     Defendants deny the allegations in paragraph 16.

17.     Upon information and belief, Operational headquarters for LSG worldwide [all LSG Defendants] is in Dallas, Texas, with management headquarters in Germany;

**ANSWER:**     Defendants deny the allegations in paragraph 17.

18.     Defendants Hyung K. Cheung is or was the Executive Vice President of Administration and Finance, which includes the Human Resources departments [HR] for the Pacific Asia region for Defendants LSG, at all relevant times;

ANSWER:     Defendants admit that Hing Kai Cheung is the Executive Vice President of Administration and Finance for LSG Lufthansa Service Asia, Ltd. Defendants deny the remaining allegations in paragraph 18.

19.     Upon information and belief, Defendant Fritz Pandalitschka is or was the General Manager and/or Director of Operations for Defendant LSG on Guam and Saipan at all relevant times;

**ANSWER:**     Defendants admit that Friedrich Pandalitschka is the Director of Operations for Defendant LSG Lufthansa Service Guam, Inc. and LSG Lufthansa Service Saipan, Inc. since approximately 2002. Defendants deny all remaining allegations in paragraph 19.

20.     Defendant Kelvin Chan is a Chinese national who is or was employed by Defendants LSG Guam and Saipan, as manager of Customer Service department directly reporting to Defendant Pandalitschka;

6

ANSWER:    Defendants admits that Kelvin Chan is a Chinese national and the manager of Customer Service for LSG Lufthansa Catering Guam, Inc. since approximately 2002 and reports to Pandalitschka. Defendants deny all remaining allegations in paragraph 20.

21.    Does 1 through 20 are unidentified directors, managers, administrators, agents or assigns of Defendants LSG collectively, who participated in, condoned, authorized, agreed, directed, or had notice of and failed to take action to stop the unlawful employment practices alleged by Plaintiffs; and Plaintiffs will amend their complaint as their identities are discovered;

**ANSWER:**    Defendants deny the allegations in paragraph 21.

22.    Plaintiff Michelle D. Ramos was the Finance and Administration Manager for Defendant LSG in Guam and Saipan at relevant times;

**ANSWER:**    Defendants admit that Michelle D. Ramos was the manager of finance and administration for Defendant LSG Lufthansa Service Guam, Inc. and LSG Lufthansa Service Saipan, Inc. since approximately 1998 to March 2003.    Defendants deny all remaining allegation in paragraph 22.

23.    Plaintiff Michelle D. Ramos was promoted to Deputy General Manager in 1999;

**ANSWER:**    Defendants deny the allegations in paragraph 23.

24.    Plaintiff Michelle D. Ramos held the title of Corporate Vice President and Treasurer during the years 2000-2001;

**ANSWER:**    Defendants admit the allegations in paragraph 24.

7

25.     Plaintiff Michelle D. Ramos served as a member of the LSG Board of Directors during the year 2001;

**ANSWER:**     Defendants admit that Ramos served as a member of Defendants' Board of Directors for the year 2001. Defendants deny all remaining allegations in paragraph 25.

26.     Plaintiff Ricardo G. "Gino" Perez was the Production Manager for Defendants LSG in Guam and Saipan at all relevant times;

**ANSWER:**     Defendants admit that Ricardo Perez was Production Manager for Defendants LSG Lufthansa Service Guam, Inc. until approximately February 2003. Defendants deny all remaining allegations in paragraph 26.

27.     Plaintiff Nona A Perez was employed as an hourly employee in the Customer Service department of Defendant LSG Guam at all relevant times;

**ANSWER:**     Defendants admit that Nona Perez is employed as an hourly employee in the customer service department of LSG Lufthansa Service Guam, Inc. since approximately 1999. Defendants deny all remaining allegations in paragraph 27.

### ALLEGATIONS

28.     During the course of their employment, Plaintiffs came under the supervision of Defendants Cheung, Pandalitschka and Chan in different capacities;

**ANSWER:**     Defendants admit that R. Perez and Ramos  came under the supervision of Pandalitschka and that N. Perez came under the supervision of  Pandalitschka and Chan. Defendants deny all remaining allegations in paragraph 28.

8

29. During the course of Defendant Cheung, Pandalitschka and Chan's supervision o
Plaintiffs, Defendants disparately treated Plaintiffs and subjected them to differential terms a
conditions of employment because of their race and national origin as Pacific Islanders;

**ANSWER:** Defendants deny the allegations in paragraph 29.

30. The differential terms and conditions of employment of Defendants Cheun
Pandalitschka and Chan included harassment, excessive criticism and disparate treatment n
experienced by white and Asians similarly situated;

**ANSWER:** Defendants deny the allegations in paragraph 30.

31. Defendants Cheung, Pandalitschka and Chan and LSG Defendants have exhibited
patterns and practices of discrimination toward Pacific Islanders;

**ANSWER:** Defendants deny the allegations in paragraph 31.

32. Defendants Cheung, Pandalitschka and Chan subjected Plaintiffs to discrimination to
the terms of their employment and retaliation for their complaints regarding such discrimination;

**ANSWER:** Defendants deny the allegations in paragraph 32.

33. Defendants LSG and each of them herein named condoned, accepted, or otherwise
authorized, either implicitly or explicitly, the actions of discrimination, retaliation, disparate
treatment, harassment and other unlawful employment practices to which Plaintiffs were subjected in
their employment;

**ANSWER:** Defendants deny the allegations in paragraph 33.

9

34. The actions by Defendants LSG, Cheung, Pandalitschka and Chan affected the rights of Plaintiffs by depriving Plaintiffs or equal employment opportunities because of racial and ethnic discrimination;

**ANSWER:** Defendants deny the allegations in paragraph 34.

## COUNT 1

35. Plaintiff Richard G. "Gino" Perez has experience in industrial catering and as a result was actively recruited by Defendants LSG to move into airline catering in Guam while Plaintiff Gino Perez was employed in California;

**ANSWER:** Defendants admit that Defendants LSG Lufthansa Service Guam, Inc. recruited R. Perez to become its employee in Guam. Defendants are without sufficient information to form a belief as to the truth or falsity of the allegation that R. Perez "has experience in industrial catering." Defendants deny all remaining allegations in paragraph 35.

36. As part of the promises and inducements made to Plaintiff Gino Perez by defendants LSG, he was promised (a) he would be Production Manager for Catering Services for Guam and Saipan; (b) he would supervise Operations and Productions department as part of his duties; and (c) he would receive training in airline catering and other specific areas of responsibilities;

**ANSWER:** Defendants admit that part of R. Perez's assigned responsibilities as an employee of LSG Lufthansa Service Guam, Inc. was to hold the title of Production Manager and to supervise the production department and that he would be assigned other duties and receive training as needed. Defendants deny all remaining allegations in paragraph 36.

10

37. Defendant LSG enticed and induced Plaintiff Gino Perez to accept employment with LSG based on the representations described above, with greater responsibilities and additional formal training to follow his acceptance of said employment;

**ANSWER:** Defendants deny the allegations in paragraph 37.

38. In reliance on Defendant LSGs' representations, Plaintiff Gino Perez moved to Maui, Hawaii from San Francisco, California in anticipation of his employment with LSG Guam;

**ANSWER:** Defendants deny the allegations in paragraph 38.

39. Plaintiff Gino Perez incurred substantial expenses for his move to Hawaii, including the transshipment of a vehicle, in reliance on the representations made by Defendants LSG and the opportunities offered to him by LSG;

**ANSWER:** Defendants deny the allegations in paragraph 39.

40. Defendant LSG employed Plaintiff Gino Perez as promised, as Production Manager in LSG Guam reporting to the General Manager Pandalitschka;

**ANSWER:** Defendants admit LSG Lufthansa Service Guam, Inc. employed Perez as Production Manager in Guam reporting to Pandalitschka. Defendants deny all remaining allegations in paragraph 40.

41. As part of the scope of Plaintiff Gino Perez's duties and responsibilities, he was to supervise and oversee the Operations Department, a department answerable to the Production manager on the LSG operational chart;

**ANSWER:** Defendants deny the allegations in paragraph 41.

11

42.     As part of the organizational structure represented to Plaintiff Gino Perez, he was be responsible for the production and Operation Departments;

**ANSWER:**     Defendants deny the allegations in paragraph 42.

43.     Once Plaintiff Gino Perez began assuming his responsibilities as Production Manag for Defendants LSG, Plaintiff began to complain regarding areas of problems he found in th Operations Department over which he was to have supervisory responsibility;

**ANSWER:**     Defendants deny the allegations in paragraph 43.

44.     Once Plaintiff Perez began complaining to Defendant Pandalitschka regarding the Operations Department, Defendant Pandalitschka re-assigned the Operations Department to another employee, Kelvin Chan, a Chinese national who was the manager of the Customer Service department, and with whom Pandalitschka was personal friends;

**ANSWER:**     Defendants deny the allegations in paragraph 44.

45.     Chan refused to offer training to Plaintiff Perez, instead taking over the Operations department, and thereby further depriving Plaintiff Gino Perez of the scope of his employment agreement;

**ANSWER:**     Defendants deny the allegations in paragraph 45.

46.     Once Chan was assigned to Operations, he furthered the pattern and practice of harassment of Plaintiff Gino Perez and effectuated further reductions in Perez's responsibilities;

**ANSWER:**     Defendants deny the allegations in paragraph 46.

12

47. As a result of Plaintiff Perez's complaints to Defendants Pandalitschka, Plaint Perez was informed that he would have no responsibility over Operations until he received trainii which defendant Pandalitschka arbitrarily refused to provide, thereby treating Plaintiff Per differently than other employees similarly situated, and differently than Chan;

**ANSWER:** Defendants deny the allegations in paragraph 47.

48. As further result of the removal of Plaintiff Perez's responsibility over the Operation Department, Plaintiff Perez was denied approximately $10,000 of his promised salary package eacl year until such time as his alleged training by Pandalitschka was complete;

**ANSWER:** Defendants deny the allegations in paragraph 48.

49. The actions by Defendant Pandalitschka and Chan were approved, condoned, and authorized by Defendants LSG and Cheung;

**ANSWER:** Defendants deny the allegations in paragraph 49.

50. At all times relevant, Plaintiff Perez performed his duties and carried out the obligations of his employment fully;

**ANSWER:** Defendants deny the allegations in paragraph 50.

51. The actions by Defendant against Plaintiff Perez violated the employment agreement between LSG and Perez and denied him the benefits to which he was entitled;

**ANSWER:** Defendants deny the allegations in paragraph 51.

13

52.     The actions by Defendants against Plaintiff Perez were retaliatory in nature, and discriminatory as they were applied only to Plaintiff Perez, a Pacific Islander;

**ANSWER:**     Defendants deny the allegations in paragraph 52.

53.     In further retaliation and discrimination against Plaintiff Perez, Plaintiff Perez was excluded from Production meetings, excluded from daily operational information critical to the successful execution of his duties, and then criticized for his failures and harassed by Defendant Pandalitschka;

**ANSWER:**     Defendants deny the allegations in paragraph 53.

54.     The Defendants, by their actions in excluding Plaintiffs Perez from daily operational information and other areas of responsibility, created a hostile work environment for Plaintiff Perez;

**ANSWER:**     Defendants deny the allegations in paragraph 54.

55.     As a result of the harassment, discrimination, and retaliation by Defendants, Plaintiff Gino Perez complained on at least two occasions to this Human Resources liaison, Plaintiff Michelle Ramos, who brought the complaint to the attention of Defendant Cheung in LSG's Human Resources offices in Hong Kong, but Defendants Cheung and LSG took no action and ignored the complaints;

**ANSWER:**     Defendants deny the allegations in paragraph 55.

56.     As a result of continuing harassment, discrimination and retaliation by Defendants, Plaintiff Gino Perez complained to the new Human Resources representative, Phyllis Li;

**ANSWER:**     Defendants deny the allegations in paragraph 56.

14

57.     In response to this complaints, and in retaliation for Plaintiff's complaints
harassment and discrimination, Plaintiff Perez was wrongfully and unlawfully terminated from h
employment;

**ANSWER:**     Defendants admit that R. Perez's employment was terminated.  Defendants deny a
remaining allegations in paragraph 57.

58.     As a direct result of the Defendant's unlawful actions, discrimination, harassment
differential and disparate treatment, Plaintiff Gino Perez suffered emotional harm, suffering, menta
anguish, loss of enjoyment, and other non-pecuniary losses in amounts to be proved at trial;

**ANSWER:**     Defendants deny the allegations in paragraph 58.

59.     As a direct result of the Defendants' unlawful actions, discrimination, harassment,
differential and disparate treatment, Plaintiff Gino Perez lost income and future prospects of income,
incurred expenses and costs, and will incur future expenses and costs, including attorneys fees, in
amounts to be proved at trial;

**ANSWER:**     Defendants deny the allegations in paragraph 59.

**COUNT 2**

60.     Plaintiff Michelle D. Ramos has hired in 1996 as Chief Accountant for LSG Guam
and promoted in 1998 to Manager of Finance and Administration and to Deputy General Manager for
LSG Guam and Saipan in 1999;

15

**ANSWER:** Defendants admit that Michelle D. Ramos has hired in 1996 as Chief Accountant fo

LSG Lufthansa Service Guam, Inc. and promoted in 1998 to Manager of Finance and Administration

for LSG Lufthansa Service Guam, Inc. and LSG Lufthansa Service Saipan, Inc. Defendants deny al

remaining allegations in paragraph 60.

61. Inherent in Plaintiff Ramos's responsibilities were the supervision of finance,

accounting, MIS, purchasing, inventory, legal matters, banking and Human Resources, negotiating

and monitoring insurance contracts and vendors, facilitating Human Resources issues, customer

service and all areas managed and supervised by the General Manager;

**ANSWER:** Defendants deny the allegations in paragraph 61.

62. From the inception of Plaintiff Ramos' promotions, the General Manager for

Defendants LSG promised she would receive equal benefits for the position of Administration and

Finance Manager and Deputy General Mangers as received by male and non-Pacific islander deputy

general managers;

**ANSWER:** Defendants deny the allegations in paragraph 62.

63. From 1998 to 2003, Plaintiff Ramos; was denied equal pay benefits including travel

cards, medical insurance, housing allowances, company vehicles, and other benefits paid to male and

non-Pacific islander deputy general managers, production managers, and operations managers;

**ANSWER:** Defendants deny the allegations in paragraph 63.

16

64.     From May 2002 Defendant Pandalitschka began a practice of excluding Plaintiff Ramos from her areas of responsibility, including excluding her from meetings, telling other managers and employees not to inform her of critical issues and to avoid speaking with her;

**ANSWER:**     Defendants deny the allegations in paragraph 64.

65.     From May 2002, Defendant Pandalitschka harassed and discriminated against Plaintiff Ramos by deleting responsibilities from Plaintiff Ramos, precluding her from contacting vendors, airport administrators, customers, managers, employees, airline agents, and all others with whom she was required to deal on a daily basis in order to successfully carry out her duties and responsibilities;

**ANSWER:**     Defendants deny the allegations in paragraph 65.

66.     In July 2002, Defendant Chan, a personal friend of Defendant Pandalitschka, received a promotion, a salary increase, and the benefits package which was still being denied to Plaintiff Ramos.  Chan was then removed from the organizational structure which required that he report to Plaintiff Ramos;

**ANSWER:**     Defendants deny the allegations in paragraph 66.

67.     Defendant Pandalitschka harassed and discriminated against Plaintiff Ramos, and treated her differently than other non-Pacific islanders by disparaging her to the public and private entities with which she worked;

**ANSWER:**     Defendants deny the allegations in paragraph 67.

17

68. Plaintiff Ramos reported the discrimination and harassment by Defendant Pandalitschka to Defendant Cheung as representative of Defendants LSG several times during 2002 but Defendants LSG and Cheung took no action;

**ANSWER:** Defendants deny the allegations in paragraph 68.

69. Prior to August 2002, Plaintiff Ramos served as the Human Resources officer for Guam and Saipan, since Defendants did not employ a local HR manager; but in August, 2002 LSG recruited a local HR manager, Jose Manzon, who was to report to Plaintiff Ramos. Instead, Defendant Pandalitschka told Manzon not to speak with Ramos, thereby denying her the ability to carry out her duties and responsibilities and creating a hostile work environment;

**ANSWER:** Defendants admit that in August, 2002 LSG Lufthansa Service Guam, Inc. recruited a local HR manager, Jose Manzon. Defendants deny all remaining allegations in paragraph 69.

70. Plaintiff Ramos, in her supervisory capacity over HR, and in her capacity as Deputy General Manager, complained to Defendant Cheung regarding the alleged discrimination and retaliation by Defendant Pandalitschka against herself and Plaintiff Gino Perez on many occasions, with no results;

**ANSWER:** Defendants deny the allegations in paragraph 70.

71. Instead of addressing Plaintiff Ramos's concerns or allowing her to carry out her duties and responsibilities to HR and LSG in general, Defendant Cheung and LSG brought in Phyllis Li, a Chinese national, who was newly hired and made Vice President of HR for Pacific Asia in November 2002. Cheung gave Li regional authority over HR, with Pandalitschka having local

18

authority over HR, which resulted in further preclusion of Plaintiff Ramos from information and duties inherent in her position;

**ANSWER:**    Defendants deny the allegations in paragraph 71.

72.    In January, 2002, Cheung sent Phyllis Li to "evaluate the complaints" made by Plaintiffs Ramos and Gino Perez;

**ANSWER:**    Defendants admit that Phyllis Li visited Defendants' offices in Guam in approximately January 2002.  Defendants deny the remaining allegations in paragraph 72.

73.    Instead of assigning Li as an investigator, however, and involving Plaintiff Ramos in the discussion of Plaintiff Gino Perez's complaints, Plaintiff Ramos was excluded from the investigation;

**ANSWER:**    Defendants deny the allegations in paragraph 73.

74.    Shortly after LI came to Guam, Plaintiff Gino Perez asked for Li's assistance again. Instead of resolution, Plaintiff Gino Perez was given a letter of termination;

**ANSWER:**    Defendants deny the allegations in paragraph 74.

75.    Plaintiff Ramos promptly complained to Defendant Cheung regarding the termination letter, as it was wrongful and retaliatory;

**ANSWER:**    Defendants deny the allegations in paragraph 75.

76.    Defendants LSG had promised that Defendant Pandalitschka would provide training to Plaintiff Ramos so that she could assume to position of General Manager in December 2002;

**ANSWER:**    Defendants deny the allegations in paragraph 76.

19

77.     Instead of training Plaintiff Ramos as promised, as a further result of Plainti;
Ramos's complaints about the wrongful treatment of Plaintiff Gino Perez, Defendant Pandalitschk
further isolated Plaintiff Ramos from her assigned responsibilities, including isolating her fron
information and employees, as a result of which Pandalitschka's contract was extended beyon
December 2002 and Plaintiff Ramos was denied her former scope of authority and responsibility;

**ANSWER:**     Defendants deny the allegations in paragraph 77.

78.     Instead of investigating her complaints, Plaintiff Ramos was retaliated against by
Defendants, when her scope of authority was reduced, her public and private contacts were told not
to speak with her, and her position in the organization was no longer recognized by Defendants;

**ANSWER:**     Defendants deny the allegations in paragraph 78.

79.     As a direct result of the continuing harassment, discrimination and hostile work
environment created by Defendants, and in retaliation for her complaints of discrimination and
disparate treatment throughout 2002, Plaintiff Ramos was constructively terminated on March 31,
2003 when it was agreed she would submit her resignation;

**ANSWER:**     Defendants deny the allegations in paragraph 79.

80.     The actions by Defendants Cheung, Pandalitschka and Chan were approved,
condoned, or authorized by Defendants LSG;

**ANSWER:**     Defendants deny the allegations in paragraph 80.

20

81.    At all times relevant, Plaintiff Ramos performed her duties and carried out th obligations of her employment fully;

**ANSWER:**    Defendants deny the allegations in paragraph 81.

82.    The actions by Defendants against Plaintiff Ramos violated the employmen agreement between LSG and Ramos and denied her the benefits to which she was entitled;

**ANSWER:**    Defendants deny the allegations in paragraph 82.

83.    The actions by Defendants against Plaintiff Ramos were retaliatory in nature, and discriminatory as they were applied only to Plaintiff Ramos, a Pacific Islander;

**ANSWER:**    Defendants deny the allegations in paragraph 83.

84.    The actions by Defendants form a continue patterns and practice of discrimination in employment for those of Pacific Island origin by Defendants;

**ANSWER:**    Defendants deny the allegations in paragraph 84.

85.    As a direct result of the Defendants' unlawful actions, discrimination, harassment, differential and disparate treatment, Plaintiff Ramos suffered emotional harm, suffering, mental anguish, loss of enjoinment, and other non-pecuniary losses in amounts to be proved at trial;

**ANSWER:**    Defendants deny the allegations in paragraph 85.

86.    As a direct result of the Defendants' unlawful actions, discrimination, harassment, differential and disparate treatment, Plaintiff Ramos lost income and benefits and future prospects of income and benefits, incurred expenses and costs, and will incur future expenses and costs, including attorneys fees, in amounts to be proved at trial;

ANSWER:    Defendants deny the allegations in paragraph 86.

21

## COUNT 3

87.     Plaintiff Nona Perez began her employment with LSG Guam in approximately 199
as an Administrative clerk in Customer service with an hourly wage;

**ANSWER:**     Defendants admit Nona Perez was hired as a Secretary/Receptionist in Novembe
1999 with an hourly wage.  Defendants deny the remaining allegations in paragraph 87.

88.     Beginning in 2002, Customer service employees, including Plaintiff Nona Perez
began receiving 25 hours per week, vice (sic) 40 hours, and were denied overtime, in what was
alleged to be cost-cutting measures by Defendants LSG;

**ANSWER:**     Defendants deny the allegations in paragraph 88.

89.     Plaintiff Nona Perez was under the direct supervision of Defendant Pandalitschka;

**ANSWER:**     Defendants admit that N. Perez was under the supervision of Pandalitschka.
Defendants deny all remaining allegations in paragraph 89.

90.     Beginning on or about February 2002, Defendants Pandalitschka and Chan began
treating Plaintiff Nona Perez disparately, and discriminated against her by denying her equal working
hours and overtime and other benefits provided to a selected female employee, Ms. Rosemarie Abat,
who has significantly less seniority than Plaintiff Nona Perez;

**ANSWER:**     Defendants deny the allegations in paragraph 90.

91.     Beginning on or about February, 2002, Defendant Pandalitschka created a hostile working environment by allowing, authorizing, and instructing Ms. Abat to take extended lunch hours, work overtime, prepare and work her own schedule, use a company car, use a company cellular phone, maintain possession of the company's digital camera, and travel with Pandalitschka on company business as well as on company dinners;

**ANSWER:**     Defendants deny the allegations in paragraph 91.

92.     In July, 2002 Defendant Pandalitschka and Chan harassed and discriminated against Plaintiff Nona Perez by publicly reprimanding her for use of the office freezer, while allowing Kelvin Chan to use the freezer in the same manner as had been denied Plaintiff Nona Perez. This discriminatory and disparate treatment was then highlighted by the fact that Chan shared his freezer goods with Pandalitschka and Abat;

**ANSWER:**     Defendants deny the allegations in paragraph 92.

93.     In December 2002, all other clerk level employees, including Plaintiff Nona Perez, were again subjected to reduced work hours without notice, except Ms. Abat, and this practice continues to date;

**ANSWER:**     Defendants deny the allegations in paragraph 93.

94.     In December, 2002, all other clerk level employees, including Plaintiff Nona Perez, were given reduced holiday pay without notice, except Ms. Abat, who received full holiday pay;

**ANSWER:**     Defendants deny the allegations in paragraph 94.

23

95.     Ms. Abat has worked only two years in the Customer Service department, and do not have the skill, experience or knowledge to carry out her assigned duties;

**ANSWER:**     Defendants deny the allegations in paragraph 95.

96.     In February, 2003, Defendant Pandalitschka publicly humiliated Plaintiff Nona Pere in front of the Army National Guard Commander, for whom LSG was contracting for sever hundred meals for Guardsmen working after the typhoon, when the Commander came in to mak payment on the account. Defendant Pandalitschka's public criticism of Plaintiff Nona Pere constituted discrimination and exhibited the pattern and practice of discrimination and disparat treatment by Defendants toward Plaintiffs;

**ANSWER:**     Defendants deny the allegations in paragraph 96.

97.     Plaintiff Nona Perez complained to her immediate supervisor regarding the disparaging comments, and public criticism by Defendant Pandalitschka, but no action was taken by management;

**ANSWER:**     Defendants deny the allegations in paragraph 97.

98.     In June, 2003, Defendant Pandalitschka gave Plaintiff Nona Perez oversight of the Airport concession, including oversight of four staff persons, a position formerly held by the Airport Manager. To date, Plaintiff Nona Perez has not been compensated not give a salary adjustment or promotion to the position, but has been ordered to assume the responsibilities of said position by Defendant Pandalitschka. Her position is still that of an hourly employee, and her position still listed as "catering consultant;"

24

**ANSWER:** Defendants admit that Plaintiff's title is catering consultant. Defendants deny remaining allegations in paragraph 98.

99. Defendant Pandalitschka and Chan harassed and discriminated against Plaintiff Nor Perez, and treated her differently than other female employees by disparaging her and openl favoring Ms. Abat with pay and other employment benefits to which she is not entitled;

**ANSWER:** Defendants deny the allegations in paragraph 99.

100. As a result of the harassment and discrimination by Defendants Pandalitschka an Chan, Plaintiff Nona Perez complained but Defendants LSG took no action and ignored he complaints;

**ANSWER:** Defendants deny the allegations in paragraph 100.

101. The actions by Defendants Pandalitschka and Chan were approved, condoned, or authorized by Defendants LSG;

**ANSWER:** Defendants deny the allegations in paragraph 101.

102. At all times relevant, Plaintiff Nona Perez performed her duties and carried out the obligations of the employment fully;

**ANSWER:** Defendants deny the allegations in paragraph 102.

103. The actions of disparate treatment, harassment and discrimination by Defendants against Plaintiff Nona Perez violated her employment rights and her right to equal treatment under the law and denied her the benefits to which she was entitled;

**ANSWER:** Defendants deny the allegations in paragraph 103.

25

104.    The actions by Defendants and each of them against Plaintiff Nona Perez exhibit continuing pattern and practice of discrimination against particular persons of Pacific Island origin;

**ANSWER:**    Defendants deny the allegations in paragraph 104.

105.    As a direct result of the Defendants' unlawful actions, discrimination, harassment differential and disparate treatment, Plaintiff Nona Perez suffered emotional harm, suffering, menta anguish, loss of enjoyment, and other non-pecuniary losses in amounts to be proved at trial;

**ANSWER:**    Defendants deny the allegations in paragraph 105.

106.    As a direct result of the Defendants' unlawful actions, discrimination, harassment, differential and disparate treatment, Plaintiff Nona Perez lost income and benefits and future prospects of income and benefits, incurred expenses and costs, and will incur future expenses and costs, including attorneys fees, in amounts to be proved at trial;

**ANSWER:**    Defendants deny the allegations in paragraph 106.

WHEREFORE,  Defendants LSG Lufthansa Service Guam, Inc. and LSG Catering Guam, Inc. respectfully request that judgment be entered against Plaintiffs on all of their claims.

## AFFIRMATIVE DEFENSES

1.    Plaintiffs failed to state any claims upon which relief may be granted;

2.    Plaintiffs failed to take reasonable measures to mitigate any asserted damages;

3.    Any claims relating to allegedly discriminatory acts that did not occur within the applicable time period prior to the commencement of this action are time barred under the applicable statutes of limitations;

26

4. Defendants exercised reasonable care to prevent and correct promptly discriminatory acts or harassing behavior, and Plaintiffs has unreasonably failed to take advantage any preventive or corrective opportunities provided by Defendants.

5. Any claims relating to allegedly discriminatory acts that were not the subject of properly filed and sworn administrative complaint are barred for Plaintiffs' failure to exhau administrative remedies as required by law.

6. Plaintiffs' claims are barred by the equitable doctrine of laches;

7. Plaintiffs claims must be denied because of Plaintiffs misjoinder of claims an misjoinder of parties;

8. Plaintiffs are barred for enacting any cause of action against Defendants because Plaintiffs have unclean hands;

9. Defendants are not responsible for any loss or damages, if any, that Plaintiffs suffered where Plaintiffs' own actions or inactions caused or were contributing factors to such loss or damages;

10. All of Defendants' actions were taken for legitimate, non-discriminatory, and non-retaliatory reasons; and

11. All of Defendants' employment decisions would have been the same regardless of any alleged discriminatory motive.

27

## PRAYER

WHEREFORE, Defendants request that:

1.     Plaintiff take nothing by reason of said Complaint;

2.     The Complaint be dismissed with prejudice;

3.     Defendants be awarded costs and attorneys fee; and

4.     For such other and further relief as the Court deems just and proper.


Dated this 1st day of October, 2003.


                                        Respectfully submitted,

                                        TORRES LIMTIACO CRUZ & SISON, PLLC


                        By:     _____
                                        DONNA M. CRUZ,
                                        a duly licensed employee.


U:\Master Client Files\LSG\Ramos, Perez & Perez vs. LSG CV 03-00028\Pleadings\Motion to dismiss\Answer to Complaint.DOC

28

1994 WL 225064
(Cite as: 1994 WL 225064 (N.D.Cal.))

**H**
Only the Westlaw citation is currently available.

United States District Court, N.D. California.

Kathy L. AUSANO, Plaintiff,
v.
SAFEWAY STORES, INC., and Sharon Chun,
Defendants.
Kathy L. AUSANO, Plaintiff,
v.
UNITED FOOD AND COMMERCIAL
WORKERS UNION LOCAL 648, AFL-CIO
Defendant.

No. C-91-2522-DLJ.

April 28, 1994.

ORDER

JENSEN, District Judge.

*1 On December 29, 1993 the Court heard defendant United Food and Commercial Workers Union Local 648, AFL-CIO's motion for reconsideration. Edward Suman appeared for the plaintiff. Cindy O'Hara appeared for defendant Union. Having considered the papers submitted, the arguments of counsel, the applicable law, and the entire record herein, the Court orders as follows:

BACKGROUND

Plaintiff Kathy Ausano filed suit against her former employer Safeway Stores in California Superior Court on July 8, 1991. Plaintiff asserted various causes of action related to her termination from employment with Safeway. The case was removed to this Court based on federal question jurisdiction on August 9, 1991. Plaintiff than filed a complaint in this Court against defendant United Food and Commercial Workers Union Local 648, AFL-CIO ("Union") for breach of fair representation. [FN1]

On March 11, 1992, the Court declined to rule on defendant Union's motion to dismiss. The Court noted that "counsel for Safeway and the Union represented that they would stipulate to proceed to arbitration regarding plaintiff's underlying grievance. Accordingly, the Court declines to rule on the above referenced motions at the present time." Order of March 11, 1992. In a subsequent August 26, 1992 Order the Court concerned itself with the possibility that the Union's actions could result in the waiver of plaintiff's right to arbitration, a decision on the arbitrability of plaintiff's grievance having not yet been issued. The Court denied defendant's motion to dismiss explaining that "[i]f, in fact, the Union waived plaintiff's right, such an act can give rise to a breach of the duty of fair representation. See Dutrisac v. Caterpillar Tractor Co., 749 F.2d 1270 (9th Cir.1983)."

However, on December 21, 1992 Arbitrator Barbara Chvany held that plaintiff's grievance was arbitrable, and ordered Safeway and defendant Union to proceed to arbitration. On March 19 and March 22, 1993 a hearing was held on the merits of plaintiff's grievance. On August 31, 1993 Arbitrator Chvany ruled that plaintiff's termination from Safeway was for just cause and plaintiff's grievance was denied. On October 13, 1993, pursuant to a stipulation between plaintiff and Safeway, the Court ordered the case against Safeway dismissed.

Defendant Union now moves for reconsideration of this Court's Order and requests dismissal of the complaint against the Union.

DISCUSSION

As the Court's previous Order was premised on the possibility that plaintiff would be denied arbitration due to inaction by defendant Union, the Court now reconsiders the motion to dismiss given that such an arbitration has taken place. Initially, the Court reviews the applicable legal standards.

*1. Legal Standard for Reconsideration*

The Federal Rule of Civil Procedure 60(b) governs the reconsideration of final orders. That rule permits a district court to relieve a party from a final order or judgment on grounds of:
*2 (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b), (3) fraud ... of an adverse party, ... or (6) any other reason justifying relief from the operation of the judgment. The motion shall

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

**Exhibit "B"**

be made within a reasonable time, and for reasons (1), (2), and (3), not more than one year after the judgment, order, or proceeding was entered or taken. Fed.R.Civ.P. 60(b).

Motions to reconsider are committed to the discretion of the trial court. *Combs v. Nick Garin Trucking,* 825 F.2d 437, 441 (D.C.Cir.1987). Generally, the underlying purpose behind a motion for reconsideration is "to correct manifest errors of law or fact or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki,* 779 F.2d 906, 909 (3rd Cir.1985), *cert. denied,* 476 U.S. 1171 (1986). To succeed in a motion to reconsider, a party must set forth facts or law of a strongly convincing nature to induce the Court to reverse its prior decision. *See, e.g., Kern-Tulare Water District v. City of Bakersfield,* 634 F.Supp. 656, 665 (E.D.Cal.1986), *aff'd in part and rev'd in part on other grounds,* 828 F.2d 514 (9th Cir.1987).

### 2. *Standard for Motion to Dismiss for Failure to State A Claim*

Defendant seeks to have the claim dismissed for failure to state a claim. The primary objective of the legal system is to obtain a determination on the merits rather than a dismissal based on pleadings. Accordingly, motions to dismiss for failure to state a claim, pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6), are generally viewed with disfavor. The Supreme Court has held that a complaint should not be dismissed unless it appears "beyond doubt" that plaintiff can prove no set of facts in support of the claim which would entitle him or her to relief. *Conley v. Gibson,* 78 S.Ct. 99, 102 (1957). Thus, the question presented by a motion to dismiss is not whether plaintiff will prevail in the action, but whether plaintiff is entitled to offer evidence in support of his or her claim. *Scheuer v. Rhodes,* 94 S.Ct. 1683, 1686 (1974).

### 3. *Whether the Actual Arbitration of Plaintiff's Grievance Constitutes New Facts Which Justify Dismissal*

A union may breach its duty of fair representation when its conduct towards a member of the collective bargaining unit is arbitrary, discriminatory or in bad faith. *Vaca v. Snipes,* 87 S.Ct. 903, 916 (1967). As a general matter, the Court notes that the Ninth Circuit has held that "it is for the union, not the courts, to decide whether and

in what manner a particular grievance should be pursued." *Peterson v. Kennedy,* 771 F.2d 1244, 1254 (9th Cir.1985). The Ninth Circuit has also held that union delay in processing a grievance does not constitute breach of fair representation unless the union's inaction "completely extinguishes" the employee's right to pursue a claim. *Id.; See also Eichelberger v. NLRB,* 765 F.2d 851, 855 (9th Cir.1985) (construing *Dutriasic* "as requiring that union negligence be the solitary and indivisible cause of the complete extinguishment of an employee's grievance rights.")

\*3 The Court's previous Order denying defendant's motion to dismiss was premised on the possibility that the Union had waived plaintiff's right to arbitration. The Court's Order of August 26, 1992 stated:

A cause of action is properly dismissed pursuant to Rule 12(b)(6) if the claim fails to state a claim upon which relief can be granted. For purposes of deciding the motion, the Court must assume that plaintiff's allegations are true and must draw all reasonable inferences in plaintiff's favor. *Usher v. City of Los Angeles,* 828 F.2d 556, 561 (9th Cir.1987).

Plaintiff alleges that the Union arbitrarily and unfairly waived her right to proceed to arbitration. Safeway has taken the position that plaintiff's right to arbitration has been waived. If, in fact, the Union waived plaintiff's right, such an act can give rise to a breach of the duty of fair representation.

A decision in this matter, however, was subsequently rendered which found the grievance to be arbitrable. Further, a hearing on the issue was conducted and a decision issued. Arbitration Decision of August 31, 1992. In this case, the arbitrator has found that there was a "full opportunity to examine and cross-examine witnesses, and to present relevant exhibits." O'Hara Declaration, Exhibit A, pp. 1-2. Plaintiff does not dispute that the Union obtained Safeway's agreement to arbitrate the grievance, or that representation was provided for a full hearing on the merits of the grievance. Accordingly, the Court's rationale for denying the motion to dismiss is no longer present.

Plaintiff's Opposition to this motion is not clearly organized, but is arranged under five subheadings that state: (1) "The complaint should not be

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

1994 WL 225064
**(Cite as: 1994 WL 225064 (N.D.Cal.))**

dismissed unless it appears beyond doubt that plaintiff can prove no set of facts that would entitle her to relief"; (2) "The plaintiff was not required to exhaust any remedy administered by the union due to futility"; (3) "The union was required to exercise special care in handling a discharge case"; (4) "Bad faith is not an essential element of any claim of unfair representation"; and (5) "Plaintiff's claim was handled in an arbitrary and perfunctory manner." Plaintiff's Opposition to Motion to Reconsider at i. None of these contentions is compelling. The Court does not impose the flawed standards plaintiff complains of, nor does the Court reach the exhaustion question warned of by plaintiff. Plaintiff does not respond to a central premise of the motion to dismiss: that any potential damage to plaintiff was present only if an arbitration hearing was denied. Any other damages are purely speculative and do not offer a basis to deny the motion to dismiss. Accordingly, this motion to reconsider is GRANTED and plaintiff's complaint against defendant United Food and Commercial Workers Union Local 648, AFL-CIO, is DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.

> FN1. As several previous Orders have described the factual and procedural history of this case, the Court repeats in this Order only those developments that have immediate relevance to the matter at issue here.

1994 WL 225064, 1994 WL 225064 (N.D.Cal.)

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works