[OFF]ICE OF SANDRA D. LYNCH, P.C.
[...]yr Street, Suite 3
[Pa]cificana Building
Hagatna, Guam 96910
Telephone: (671) 472-8889
Fax: (671) 472-8890

Attorney for Plaintiffs

FILED
DISTRICT COURT OF GUAM
APR 12 2004
MARY L. M. MORAN
CLERK OF COURT
67

# UNITED STATES DISTRICT COURT
# DISTRICT OF GUAM

MICHELLE D. RAMOS, et al.,

Plaintiffs,

vs.

LSG LUFTHANSA SERVICE HOLDING AG, et al.,

Defendants.

Civil Case No. 03-00028

**DECLARATION OF COUNSEL IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR ATTORNEYS FEES**

I, Sandra D. Lynch, hereby Declare as follows:

1. I have been Plaintiffs' counsel in this matter since its inception, from the initial filing of the Plaintiffs' claims with the EEOC through the present date;

2. In November, 2003, Mr. Robert Torres, then lead defense counsel, and I discussed the Scheduling Order for this case, and discussed his Motion to Dismiss. He and I agreed on a date for the hearing on said Motion. We also scheduled depositions for two of my clients, for January 14 and 15.

3. On January 5, I received a message that Mr. Torres's office had called regarding the above case. On that same day, I called his office and was told that no one was available. I called back two days later. I left a message for any of the three defense attorneys. No call came. On January 8, I spoke with Mr. Torres and we took off the depositions which had been scheduled for January 14 and 15. Mr. Torres had been appointed to the Guam Supreme Court bench. He indicated that attorneys in his office would continue to handle the case and

1  that depositions would be scheduled after documents could be exchanged. He indicated that
2  we would discuss the deposition of Plaintiff Michelle Ramos at a later time since she lives
3  in Hawaii.

4. I called Mr. Torres's office in late January, after he had taken the bench, and left a message for either Ms. Cruz or Ms. Limtiaco to return my call. No one called me.

5. In the first week of February, I called Mr. Torres's office and left another message for either Ms. Cruz or Ms. Limtiaco. I received no return phone call.

6. On February 17, 2004, I sent a letter to defense counsel, intending to elicit discussions for the deposition of a corporate representative from LSG. Based on my previous interactions with Mr. Torres, I expected that defense counsel would discuss with me the depositions to mutually agree to a date and time based on our respective schedules. To my surprise, I received a letter on February 18, which stated that no such discussions would take place, that my request to schedule such a deposition was vague, and did not comply with the Rules of Procedure. I called defense counsel's office but was told that both Ms. Cruz and Ms. Limtiaco were out of the office.

7. I directed my secretary to prepare a Notice of Deposition, based on Ms. Limtiaco's February 18 letter, but it was mistakenly dated for February 23, not the 24 as it should have been. The Guam Bar was holding CLE seminars on February 23, and I had paid for the course and planned to attend. I attended Superior Court hearings most of February 20, and worked well past 7:00 p.m. in my office.

8. On Monday, February 23, I was so ill that I was unable to go to work or attend the CLE conference. I called my office, and told my secretary that I was ill. She did not notice that the deposition had been inadvertently scheduled for that day. I spoke with her again later in the morning because a 10:00 hearing in Superior Court had been canceled. She had apparently reviewed the documents which had come in from Friday, and realized that an error had been made. I therefore emailed Mr. Torres's office via the email address listed in

-2-

|     |     |
| --- | --- |
| 1   | the Guam Bar Association directory, and informed the defense counsel that I was ill and |
| 2   | would have to cancel the deposition. My secretary was to try to contact them as well. I |
| 3   | called, but Ms. Cruz and Ms. Limtiaco were "unavailable." I left a message. |
| 4   | 9. At approximately 1:15 p.m. on February 23, my receptionist called me at home to tell me that |
| 5   | two attorneys were there. My secretary had informed the attorneys that the date on the |
| 6   | Notice was wrong, that it should have been for the next day. I then spoke with Ms. Limtiaco |
| 7   | who indicated she was in the office for the deposition. I explained that a mistake in the date |
| 8   | had been made, that I could not come in because I was ill, and I asked her if we could |
| 9   | continue the deposition until the next day. Ms. Limtiaco emphatically said, "No!" We then |
| 10  | both started talking at the same time, and she said something about "objecting." I told her |
| 11  | that in that case I would waive the deposition for that day, and that I would have to rely on |
| 12  | the information I had already received, that "it would have to be enough." I asked my staff |
| 13  | to provide to Ms. Limtiaco copies of any documents we had received for further disclosures |
| 14  | while she was there. Copies were retrieved at Fast Copy, then delivered to her office. Ms. |
| 15  | Limtiaco left documents with my secretary, indicating they were "LSG's disclosures." No |
| 16  | documents had been received from LSG prior to that date. |
| 17  | 10. I was able to return to work later the next day, and found a letter from Ms. Limtiaco. In her |
| 18  | letter, she made several statements which were inaccurate. I called her office, but was told |
| 19  | that she was not available. I received no return call. I was in my office part of the week, as |
| 20  | I continued to be ill. |
| 21  | 11. I filed the second case against LSG the following week. I contacted defense counsel to ask |
| 22  | if the office would accept service of the complaint as they had in the first case. I was |
| 23  | informed by letter that service for "non-Guam" defendants would not be accepted. |
| 24  | 12. Defense counsel sent a letter demanding the return of "all LSG documents" in my clients' |
| 25  | possession be turned over to them. I wrote back and indicated that I did not believe that any |
| 26  | of my clients had stolen LSG documents, but that Plaintiffs would execute a Confidentiality |
| 27  |     |
| 28  | -3- |

| | |
|---|---|
| 1 | Agreement regarding documents. Defense counsel then filed a Motion, but did not contact |
| 2 | me to discuss a hearing date. |
| 3  13. | Shortly thereafter, Defendants filed a Motion for Attorneys fees, but again did not discuss |
| 4 | a hearing date for the same. |
| 5  14. | Since February 12, when I learned that I have a serious medical condition requiring off island |
| 6 | treatment, I have been out of my office a great deal of the time. However, I have continued |
| 7 | to move along my cases. I respond to other attorneys' phone calls when I receive a message |
| 8 | from them, and I return many messages via email from home. |
| 9  15. | Once I learned that I needed to take my daughter off island for medical treatment at the same |
| 10 | time as I went, I called defense counsel and proposed a stipulation. Based on the Motions |
| 11 | filed in this case, I requested from defense counsel a Stipulation which would accomplish |
| 12 | several things. First, I asked that the two cases against LSG be consolidated by agreement |
| 13 | rather than by Motion; second, I asked that any hearings in these Motions pending before the |
| 14 | Court be continued to allow for my initial medical evaluations off island from April 2 to 16; |
| 15 | and third, I asked for professional courtesy in extending additional time for response to |
| 16 | Motions based on my continuing ill health. |
| 17  16. | When I called defense counsel's office on March 30, I was able to speak with attorney Donna |
| 18 | Cruz. She informed me that she had no authority to enter into any Stipulations without the |
| 19 | approval of Ms. Limtiaco, but she indicated she knew of my impending medical leave. I sent |
| 20 | over proposed Stipulations, but received no response. I therefore filed a Motion asking the |
| 21 | Court to grant the requests. This Declaration was prepared in Hawaii where I am currently |
| 22 | undergoing evaluations for my condition. |
| 23  17. | Since late December, 2003, I have received verbal and documentary evidence from former |
| 24 | and current employees and contractors of LSG, that provide financial, administrative, and |
| 25 | other control indicia between all corporate defendants. A key witness, a former chief |
| 26 | accountant who has firsthand knowledge of the $1.2 million in management fees paid by |
| 27 | |
| 28 | -4- |

| | |
|---|---|
| 1 | Guam LSG and Saipan to LSG Asia and USA annually, is off island for medical treatment. |
| 2 | A key witness to union negotiations for Guam and Saipan which had to be approved by |
| 3 | Germany and were signed by LSG USA is in the mainland U.S. and will testify. Others who |
| 4 | fear reprisals from LSG will testify as to the corporate control exercised by LSG entities |
| 5 | outside of Guam, under the protection of the Court and the EEOC. And, while it is true that |
| 6 | formal discovery has not taken place, valuable and voluminous information has been |
| 7 | gathered by Plaintiffs in the past three months regarding the nature of the relationships |
| 8 | between the international and Guam LSG entities. |

18. The error in the deposition date set for the corporate representative was inadvertently typed to reflect the 23rd instead of the 24th of February. A simple letter or phone call from defense counsel would have cleared up that error. Rather than argue with Ms. Limtiaco about it any further, I simply chose to forego the deposition. To my knowledge, she was in my office less than 20 minutes.

Dated this 10th day of April, 2004.

_____
Sandra D. Lynch, Esq.
Attorney for Plaintiffs