LIMTIACO CRUZ & SISON, PLLC
Alicia A. Limtiaco, Esq.
Donna M. Cruz, Esq.
MVP Business Center
777 Route 4, Suite 11B
Sinajana, Guam 96910
Telephone: (671) 477-0000
Facsimile: (671) 477-0001

SIDLEY AUSTIN BROWN & WOOD LLP
Peter I. Ostroff (SBN 045718)
Max C. Fischer (SBN 226003)
555 West Fifth Street, Suite 4000
Los Angeles, California 90013-1010
Telephone: (213) 896-6000
Facsimile: (213) 896-6600

Attorneys for LSG Lufthansa Service Guam, Inc.
and LSG Catering Guam, Inc.

UNITED STATES DISTRICT COURT

DISTRICT OF GUAM

| | |
|---|---|
| MICHELLE D. RAMOS, et al. | CIVIL CASE NO. 03-00028 |
| Plaintiffs, | |
| vs. | SUPPLEMENTAL MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION |
| LSG LUFTHANSA SERVICE GUAM, INC., et al. | |
| Defendants. | |

LSG LUFTHANSA SERVICE HOLDING AG; LSG LUFTHANSA SERVICE USA; LSG LUFTHANSA SERVICE ASIA, LTD.; LSG LUFTHANSA SERVICE SAIPAN, INC; and LSG CATERING SAIPAN, INC. by and through their counsel, hereby submit the following Supplemental Memorandum of Law in Further Support of Defendants' Motion to Dismiss for Lack of Personal Jurisdiction.

ORIGINAL

## INTRODUCTION

Defendants LSG LUFTHANSA SERVICE HOLDING AG; LSG LUFTHANSA SERVICE USA; LSG LUFTHANSA SERVICE ASIA, LTD.; LSG LUFTHANSA SERVICE SAIPAN, INC; and LSG CATERING SAIPAN, INC. ("Non-Guam Defendants") moved to dismiss Plaintiffs' Complaint because, among other reasons, it provided the Court no basis for personal jurisdiction over them. In their opening memorandum, they explained that none of them bore any relationship to Guam, held no property on Guam, transacted no business on Guam, and took no action directed at Guam that bore any relationship to this lawsuit. *See* Defs' Mot. to Dismiss (filed Oct. 1, 2003) at 4-8.

In response, Plaintiffs attached over 100 pages of unauthenticated and unintelligible documents, claiming they demonstrated that the Non-Guam entities were the "alter egos" of the Guam-based defendants, but nonetheless pleaded with the Court to provide them with the opportunity to bolster their jurisdictional case with additional discovery. The Court found that Plaintiffs had made an insufficient record but allowed them sixty days in which to complete additional discovery. *See* Order Dec. 24, 2003.

In that span of 60 days, <u>Plaintiffs took no discovery whatsoever.</u>[1] Thus, when the Court's deadline for filing supplemental (and contemporaneous) briefs arrived on April 1, 2004, Plaintiffs had done little, if anything during that time to develop the record before the Court. As Defendants argued in their Supplemental Brief filed on April 1, 2004, Plaintiffs' failure to adduce (or even attempt to adduce) any information from Defendants during the sixty-day discovery period speaks volumes about the merit of any additional arguments they now press. Plaintiffs simply have no evidence to support

---

[1] In fact, Plaintiffs' last-minute, aborted attempts to schedule (then cancel) depositions are the subject of Defendants' pending Motion for Attorney's Fees pursuant to FRCP 30(b) and FRCP 30(g) for Failure to Appear at Deposition filed on March 24, 2004.

their attempt to exert personal jurisdiction over corporations for whom they did not work, have no connection to Guam, and bear no relationship whatsoever to this lawsuit.

On April 2, 2004, Plaintiffs filed, not a substantive response to the Court's December 24, 2003 Order, but rather a motion for extension of time for thirty days to provide additional support for its opposition to the motion to dismiss. The Court granted Plaintiffs' request and provided them the "additional thirty days" they requested. Thirty days from the April 1, 2004 supplemental brief filing deadline as per the Court's December 24, 2003 Order, would have been on or about Monday, May 3, 2004. Notwithstanding the Court's extension, Plaintiffs filed a "Declaration in Support of Jurisdiction over International Defendants" ("Declaration") on May 10, 2004, approximately <u>thirty-nine days</u> after the April 1, 2004 deadline.

The Declaration does little more than spray irrelevant, slanderous, and baseless allegations across its 24 rambling (and misnumbered) paragraphs. It is simply a transparent and desperate attempt to stave off the inevitable and just result: dismissal of the Non-Guam entities – who bear no relation to Plaintiffs claims whatsoever – from this lawsuit for a lack of personal jurisdiction. Implicitly acknowledging the lack of any merit to their latest filing, <u>Plaintiffs did not file a Memorandum of Law</u>, or otherwise raise any <u>legal</u> arguments, to meet their burden of proving personal jurisdiction is proper in this case.

As discussed in more detail below, Plaintiffs' Declaration is insufficient on its face in light of the evidentiary deficiencies that pervade it. Moreover, even if these deficiencies were overlooked, it still fails to present any reason to stray from the well-established principles and holding of *Doe v. Unocal Corp.* 248 F.3d 915, 927 (9th Cir. 2001) and numerous other authorities holding that a parent-

subsidiary relationship precisely like the one between the Non-Guam Entities and the Guam entities does not provide a basis for asserting personal jurisdiction over the parent.

**ARGUMENT**

**I.     PLAINTIFFS' DECLARATION IS UNTIMELY AND SHOULD BE DISREGARDED.**

Plaintiffs' original deadline for filing supplemental briefs on the issue of personal jurisdiction was April 1, 2004. *See* Mem. Op. (12/24/03). When that date arrived, Plaintiffs asked for an additional thirty days, which would have provided them until approximately May 3, 2004 in which to submit supplemental briefs. *See* Pls' Mot. for Add'l Time (filed 4/2/04). May 3, 2004 came and went. Finally, on May 10, 2004, Plaintiffs filed – not a memorandum of law – but the Declaration.

Local Rule 7.1(f) ("Failure to File Required Papers") provides that a party's failure to file papers, "including any memoranda," "will not be considered and such tardiness may be deemed by the Court as consent to the granting or denial of the motion, as the case may be." In this case, Plaintiffs stalled the resolution of Defendants' Motion to Dismiss for over four months with their plea for additional discovery. After receiving the opportunity to take discovery, they declined to do so. Lastly, after pleading with the Court for an additional thirty days to file supplemental briefs, they still failed to comply with the Court's deadlines. They should be deemed to have exhausted the patience of the Court and all other parties. Their Declaration should be disregarded, and Defendants' Motion to Dismiss should be granted.

**II.    PLAINTIFFS' DECLARATION SHOULD BE DISREGARDED AS IT DOES NOT COMPLY WITH THE FEDERAL RULES OF EVIDENCE.**

Even assuming Plaintiffs' Declaration is timely, as discussed more fully in Defendants' contemporaneously-filed Evidentiary Objections to Declaration in Support of Jurisdiction over International Defendants, the Declaration suffers from a fatal disregard of the Federal Rules of

4

Evidence, and ultimately presents the Court with a rambling hodge-podge of foundationless, hearsay, conjecture, or otherwise inadmissible assertions.

### A. Ramos lacks Foundation for Numerous Factual Assertions and Opinions in the Declaration.

The rules governing the admissibility of evidence contained in lay witness declarations, such as Plaintiffs', is well-established. Such evidence must be based on "personal knowledge of the matter." Fed. R. Evid. 602. Moreover, "opinions or inferences" by such witnesses are

> limited to those opinions or inferences which are
>
> (a) rationally based on the perception of the witness,
>
> (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and
>
> (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Fed. R. Evid. 701.

Under these principles, courts routinely reject attempts by parties to proffer baseless assertions not rooted in the witness' own perception of events. *See, e.g., Visser v. Packer Eng'g Assocs.*, 924 F.2d 655, 659-60 (7th Cir. 1991). Thus, information obtained merely through the reports of others is not considered within "personal perception" and should be disregarded. *TLT-Babcock, Inc. v. Emerson Elec. Co.*, 33 F.3d 397-400 (4th Cir. 1994). Consequently, statements made based on speculation, "belief," or "personal awareness" are flatly insufficient. *See Lopez-Carrasquillo v. Rubianes*, 230 F.3d 409, 414 (1st Cir. 2000). Similarly, it is impermissible for a declaration to proffer base conclusions – particularly legal conclusion – without true factual support. *See Burlington Coat Factory Warehouse Corp. v. Esprit de Corp.*, 769 F.2d 919, 922-23 (2d Cir. 1985).

Ramos opines on numerous matters in the Declaration. Though she concedes she was the Director of Finance for LSG Guam throughout her tenure, she nonetheless opines on the entire interlocking corporate structure of LSG, its affiliates, and subsidiaries. *See* Decl. ¶ 1. This is patently improper. *See Visser, supra.*

Taking a stab at legal argument, Ramos further opines on the "'Control via Ownership question'" in paragraphs 3-9. Once again, Ramos offers opinions on the entire structure and restructure of LSG, as well as the "driving force" behind what she asserts were certain corporate "missions." *See, e.g.,* Decl. ¶ 8. Vague and baseless assertions further pervade pages 7-17, as Ramos opines on the entire business operations of LSG Guam and LSG Saipan, notwithstanding her limited functions in the areas of human resources and finance.

As Ramos fails to provide even a modicum of explanation as to why or how she "knows" these facts, each lacks foundation or, alternatively, is improper lay witness testimony and should be disregarded.

**B. The Declaration clearly relies on inadmissible and unauthenticated hearsay.**

In addition, evidence must conform to the well-established rules governing hearsay and privilege. Naked proffer of statements or information given by third-persons (not the declarant) are wholly inadmissible unless an exception exists. *See* Fed. R. Evid. 801-03

Particularly glaring examples are her assertions concerning statements or opinions by LSG Guam's accountants, Ernst & Young concerning a management fee. *See* Decl. ¶¶ 10-14. Likewise, her slanderous and gratuitous mention of various alleged affairs and favoritism is clearly based on inadmissible hearsay statements or, worse yet, complete conjecture.

Such hearsay should be completely disregarded as well.2

### C. The Declaration attempts to malign Defendants with irrelevant and slanderous allegations, which should be disregarded as well.

Federal Rule of Civil Procedure 403 admits only evidence that is relevant to a matter at issue. The present declaration strays far from the topic of personal jurisdiction and into the arena of personal attack and slander. Ramos' allegations of affairs, prior complaints of sexual discrimination (against a manager she curiously claims was the first to acknowledge her "hard work and dedication" (Decl. at 15)), and favoritsm simply have no place in a document that is supposed to address issues of personal jurisdiction based on an alter ego theory. Without a thread of relevance, these allegations are simply superfluous, and intentionally salacious distractions that the Court should disregard in their entirety as well.

### II. ASSUMING ARGUENDO THAT THE DECLARATION IS ADMISSIBLE, IT DOES NOT ESTABLISH A BASIS FOR PERSONAL JURISDICTION OVER THE NON-GUAM ENTITIES.

Even assuming *arguendo* that the Declaration is admissible, it is simply unavailing to Plaintiffs' burden to establish the propriety of personal jurisdiction over Defendants. Though ignored by Plaintiffs in their materials, the Ninth Circuit's decision in *Doe v. Unocal Corp*, 248 F.3d 915, 927 (9th Cir. 2001), prohibits the exercise of personal jurisdiction in parent-subsidiary relationships such as the one between the Non-Guam and Guam-based entities.

*Doe* places the burden squarely on Plaintiffs to demonstrate, first and foremost, that the Non-Guam entities control the "day-to-day" operations of the Guam-based entities. *See* 248 F.3d at 930. Various other activities, such as (1) parental approval required for leases, major capital expenditures, and the sale of the subsidiaries assets; (2) approval of subsidiary's capital budget; (3) blurring of

---

2 The Federal Rules of Civil Procedure indicate a strong preference to disregard documents that raise an "impertinent

separateness in annual report; (4) overlap in board of directors; (5) provision of all financing to subsidiary; and (6) closely supervising a subsidiary's pricing decisions, are not sufficient to exercise personal jurisdiction over a parent corporation. *See Doe*, 248 F.3d at 927-28. In particular, "A parent corporation may be directly involved in financing and macro-management of its subsidiaries, however, without exposing itself to a charge that each subsidiary is merely its alter ego." *Id.* at 927.

*Doe* emanates from earlier Ninth Circuit decisions with similar holdings. For example, in *Kramer v. British Leyland, Ltd.*, 628 F.2d 1175, 1177-78 (9th Cir. 1980), the court rejected the exercise of personal jurisdiction of a parent based upon its relationship with its US subsidiary. In particular, *Kramer* held irrelevant the fact that the parent

> had general executive responsibility for the operation of [the subsidiary], and reviewed and approved its major policy decisions. . . . Executives [of the parent] work closely with executives [of the subsidiary] on pricing of vehicles for the United States market and sometimes travel to the United States for talks on pricing. . . . [The parent] approved the [subsidiary's] proposal for consolidating distribution of [the subsidiary's product] inside the United States.

Notably, the *Kramer* court held:

> These facts are insufficient to make [the subsidiary] an "alter ego" or "agent" of [the parent] so as to make [the parent] subject to jurisdiction solely through [the subsidiary'] presence in the United States. . . . None of the [parent companies] controls the internal affairs of [the subsidiary] or <u>determines how it operates on a daily basis.</u>

*Id.* at 177. Similar since *Doe*, other panels have reached similar conclusions. The court in *Harris Rutsky & Company v. Bell & Clements, Ltd.*, 328 F.3d 1122, 1135 (9th Cir. 2003), held that the mere fact that "companies are run by the same senior officers and directors" does not make them alter egos or agents of the other for purposes of personal jurisdiction.

---

or scandalous matter." See Fed. R. Civ. Pro. 12(f).

Courts from other circuits bolster these holdings. The Fifth Circuit held in *Dalton v. R&W Marine*, 897 F.2d 1359, 1363 (5th Cir. 1990), that the fact that the subsidiaries "funnel their revenues into centralized bank accounts and file a consolidated federal tax return" to be "outweighed" by the fact that the parent "makes its subsidiaries responsible for daily operations including all personnel decisions, and allows each subsidiary to keep its records and accounts in separate books and file its own state tax returns." *Id.* Thus, personal jurisdiction over the subsidiaries did not require personal jurisdiction over the parent. *See also Frito-Lay, Inc. v. Proctor & Gamble Co.*, 364 F. Supp. 243, 248-49 (N.D. Tex. 1973) (review of subsidiary's general business policies and important actions by parent did not warrant exercise of personal jurisdiction over parent where subsidiary managed its day-to-day operations).

In a case very similar to the issues raised in the present one, the court in *In Re Hillsborough Holdings Corp.*, 166 BR 461 (M.D. Fla. 1994), refused to exercise personal jurisdiction over a parent based solely on its relationship to its subsidiary. In particular, the court noted that (1) the parent had a cash management system by which it managed the revenues generated by its subsidiary (2) the parent assessed fees to its subsidiaries for various services rendered or expenses born by the parent; (3) the parent had a "line-of-business" reporting structure whereby the subsidiary's managers reported to their counterparts with the parent; and (4) the parent required the subsidiary to seek its approval for capital expenditures, acquisitions, or sale of capital assets. *Id.* at 471-73. The court found that each of these facts, standing alone or in aggregate, did not warrant the exercise of personal jurisdiction over the parent, as each represented a common practice between many parents and subsidiaries that had been well-accepted by US courts. *Id.* (citing cases).

Ramos' Declaration, much like the party asserting jurisdiction in *Hillsborough*, fails to point to any fact indicating that any entity – other than LSG Guam and LSG Saipan – controlled the day-to-day

9

operations of those companies. Instead, the Declaration offers little more than various categorical and vague assertions regarding LSG USA's, and Asia's alleged involvement in the affairs of the Guam-based entities, each of which the Ninth Circuit and other courts have soundly rejected as a basis to assert personal jurisdiction over a parent company.

For example, Ramos discusses the reporting relationship of each "kitchen" to its regional manager. Even assuming the accuracy of Ramos' assertions, such reporting relationships are common practice among large corporate families and, in any event, do not render a parent subject to personal jurisdiction based on the presence of its subsidiary. *See Hillsborough, supra* (reporting relationship did not warrant exercise of personal jurisdiction over parent).3 Likewise, mere oversight of a subsidiary's operations is simply insufficient to establish personal jurisdiction over the parent. *See Doe, supra* (parent's mere macro-management of subsidiary insufficient to warrant personal jurisdiction over parent); *Kramer, supra* (fact that parent oversaw operations and approved various pricing decision insufficient); *Frito-Lay, supra*, (same).

Ramos' Declaration also points to a "management agreement' by which the Guam-based entities received services from the non-Guam-based entities in exchange for a management fee. Once again, such an arrangement does not confer personal jurisdiction over the parent. *Accord Hillsboro, supra* (discussing "corporate assessment" by which subsidiary paid fee to parent for various services and holding such assessment did not warrant exercise of personal jurisdiction over the parent); *see also Pulte Home Corp., Inc. v. Ply Gem Indus.*. 804 F. Supp. 1471 (M.D. Fla. 1992) (same).

---

3 Notably, Ramos refers frequently generically to such entities as "LSG Asia." As described in the Davy Declaration, attached hereto, HK Cheung and David Wainman, both members of the Guam-based entities' board of directors, also served in a corporate capacity for LSG Asia. *See* Davy Decl. ¶ 3. Thus, Ramos fails to specify whether and to what extent Cheung and Wainman may have been acting in their capacity as directors of Guam-based entities in approving or reviewing various acts she alleges in the Declaration. In any event, the mere fact that the Guam-based entities and non-Guam-based entities share directors is inconsequential. *See Harris Rutsky Co., supra* (holding that subsidiary's sharing directors with parent insufficient to exercise personal jurisdiction over parent).

10

Plaintiffs also spend numerous pages alleging the ways in which the Guam-based entities were required to report certain results to non-Guam-based entities, seek authorization for certain hiring decisions, and maintain standardization in the areas of hygiene and information technology. None of this evidence, however, touches upon the question of whether the non-Guam-based entities controlled the "day-to-day" operations of the Guam-based entities. For example, Ramos asserts that any purchase over HK$50,000 required LSG Asia's approval. *See* Decl. at 11. This is simply parental approval of a "major capital expenditure," found insufficient by *Doe*. Ramos also cites LSG Asia's participation in LSG Guam and Saipan's budget process. Decl. at 16. Once again, under *Doe*, this activity is insufficient to exert personal jurisdiction over the parent.4

This is simply a far cry from a showing that any Non-Guam entity control the day-to-day operations of the Guam-based entities – particularly in light of the fact that Plaintiffs alleged in the complaint that they, themselves, held such responsibility. *See* Compl. ¶¶ 41, 60, 61 (describing areas of responsibility for Ricardo Perez and Michelle Ramos).

To the complete contrary, the Declaration of Neil Davy establishes that the Guam-based entities enjoy significant freedom to conduct their day-to-day business operations. Davy, as general manager, exercises complete discretion and decision-making authority on virtually all aspects of the business operations, including customer service, hiring and firing, negotiations with vendors and customers, developing a budget, overseeing local accounting, preparation of income tax returns, and other management functions. Davy Decl. ¶¶ 2-6. In addition, the Guam-based entities maintain boards of

---

4 The Declaration, itself, also indicates on its face that the non-Guam entities did not exert day-to-day control over the Guam-based entities. Ramos, herself, describes, at most, "monthly" reporting (Decl. at 7, par. 9(A) [sic]), the involvement of the Non-Guam entities in the hiring of – only – senior managers or executives for the Guam-based entities (Decl. at 8). In addition, Ramos explains that, "Purchasing was handled locally with [LSG Guam's General Manager Reinhard] Guth handling the vendor negotiation." *Id.* at 11. Ramos, herself, "prepared the LSG Guam and Saipan budgets and started attending the Board of Directors meetings in Hong Kong." *Id.* at 16.

11

directors that approve important decisions. Davy Decl. ¶ 7. Nothing in Ramos' Declaration contradicts this. Rather, her Declaration avoids the topic of day-to-day operations altogether.

Accordingly, even if the Declaration is given any weight, it falls far short of demonstrating the type of "day-to-day" control that the Ninth Circuit requires before allowing a court to exercise personal jurisdiction over a parent based solely on the subsidiary's contacts. Consistent with *Doe, Kramer, Rutsky*, and the numerous other decisions discussed above, Plaintiffs have simply failed to meet their burden to prove that the non-Guam-based entities control the "day-to-day" operations of the Guam-based entities so as to warrant an exercise of personal jurisdiction.

## CONCLUSION

Based on the foregoing, Plaintiffs have not met their burden of proof to demonstrate the existence of personal jurisdiction over the non-Guam-based entities. Accordingly, Defendants' Motion to Dismiss for Lack of Personal Jurisdiction should be granted.

Dated: May 20, 2004                     LIMTIACO CRUZ & SISON, PLLC


By: _____
ALICIA A. LIMTIACO,
Counsel For Defendants LSG Lufthansa Service Guam, Inc. and LSG Catering Guam, Inc.


By: _____
DONNA M. CRUZ,
Counsel For Defendants LSG Lufthansa Service Guam, Inc. and LSG Catering Guam, Inc.