**THE LAW OFFICE OF SANDRA D. LYNCH, P.C.**
Travel Pacificana Building, Suite 3
207 Martyr Street
Hagåtña, Guam 96910
Telephone:    (671) 472-8889/565-7730
Facsimile:    (671) 472-8890

*Attorney for Plaintiffs*

**FILED**
DISTRICT COURT OF GUAM

**MAY 2 4 2004**

MARY L. M. MORAN
CLERK OF COURT

*(81)*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF GUAM

| | |
|---|---|
| MICHELLE D. RAMOS, et al., ) | Case No. 03-00028 |
| Plaintiffs ) | |
| vs. ) | PLAINTIFFS' |
| ) | SUPPLEMENTAL |
| LSG LUFTHANSA SERVICE HOLDING AG, ) | OPPOSITION TO |
| et al., ) | MOTION TO DISMISS |
| ) | FOR LACK OF |
| Defendants. ) | JURISDICTION |

Come now the Plaintiffs, and herein submit the following documents in further opposition to the Defendants' Motion to Dismiss for lack of Jurisdiction over the "non-Guam" defendants. As indicated in the Declaration of Plaintiff Michelle Ramos, certain events during her employment caused her to deal with LSG Holding AG, Germany, LSG USA and, LSG Asia. In fact, as she stated, from her personal corporate knowledge, she was often constrained by the corporate requirements to obtain approval for expenditures and training from the parent company, LSG Holding, in Germany, and many areas required approval from Hong Kong, the offices of LSG Asia. For example,

1.    Exhibit A: 8/96 organizational chart showing that Guam and Saipan LSG entities are subsidiaries of LSG Lufthansa Service USA Corporation, but report to LSG Lufthansa Service Asia,

ORIGINAL

1  Ltd.;

2      2.      Exhibit B: June 21, 2001 memo from LSG Holding AG, Germany, to HK Cheung in

3  Hong Kong, discussing the union negotiations for Guam and Saipan. The memo indicates that LSG

4  Holding AG was to handle the politically sensitive union negotiations for Guam and Saipan;

5      3.      Exhibit C: Audit letters from Ernst & Young for the years 2002, 2001, 2000, and 1999

6  indicating that "The Company has still not obtained a written agreement to support its management

7  agreement with LSG Lufthansa Service USA Corporation." Also, the auditors wrote, "During 1997,

8  the Company entered into a management agreement with LSG Lufthansa Service USA Corporation."

9  No written agreement was obtained to verify the nature of these transactions. Similar to the

10 recommendation we made on the past agreement with LSG Catering Hong Kong, the written

11 agreement should specify the scope of the services to be provided and the terms concerning the

12 amounts received and/or paid to LSG Lufthansa Service USA Corporation."

13     4.      In Exhibit C, at page P0170, the auditors wrote, "***The total capital of the Company***

14 ***remained at December 31, 1999 $1,000 which is not commensurate with the volume of its current***

15 ***operating activities***. You may want to consider increasing the Company's capital to an adequate

16 level to avoid possible adverse legal or tax implications in the future...The amount due to the Parent

17 company could be construed as equity under the Internal Revenue Code and Treasury Regulations.

18 Under these circumstances, subsequent repayment to Parent could be considered dividend

19 distributions, thereby possibly triggering a taxable event."

20     5.      In January, 1999, the auditors wrote an even more detailed explanation, when they

21 said, "As of December 31, 1998, the Company [LSG Catering Guam, Inc. and subsidiary] has total

22 liabilities to LSG Lufthansa Service USA Corporations [the Parent] of approximately $2,667,000.00

23 whereas the capital of the Company is only $1,000.00. The amount due to Parent could be construed

24 as equity under the Internal Revenue Code and Treasury Regulations. Under these circumstances,

25 subsequent repayment to Parent could be considered dividend distributions, thereby possibly

26

27

28                                  Page 2

1 triggering a taxable event. To avoid the aforementioned adverse tax implications, the ***capital of the***
2 ***Company should be increased to an adequate level and formal loan documents should be drawn***
3 ***up with terms and conditions clearly set forth.***" [Doc. # P0202]

4    6.    Exhibit D: Document P 0238 indicates that LSG Frankfurt had to approve the directors
5 of LSG Catering Guam, Inc. and LSG Catering Saipan, Inc., LSG Lufthansa Service Guam, Inc. and
6 LSG Lufthansa Service Saipan, Inc. This does not indicate local control, but that the parent company
7 remains active in the daily operations of the businesses on Guam, which is handled by the Board of
8 Directors appointed and approved by Germany.

9    7.    Exhibit E: Documents P 0246 and 0247 indicate that the directors of LSG Lufthansa
10 Service USA, Inc. were required to approve the expenditure of funds of $220,000.00 for a
11 Maintenance and Administration Office Extension for LSG Lufthansa Service Guam, Inc., its
12 subsidiary. Therefore, although the Guam office has a budget, it is not permitted to expend certain
13 amounts without approval, as indicated by Ms. Ramos.

14    8.    Exhibit F: Document # P0174 shows that even the budget for Guam must be approved
15 by LSG Holding.

16    9.    Exhibit G: Document # P0127 shows that during a board meeting, Ms. Ramos noted
17 that the agenda for the Guam Board of Directors must be sent to Hong Kong one week before the
18 meeting.

19    10.    Exhibit H: Documents P0048 and P0058 show that contrary to the assertions of
20 Defendants, Ms. Ramos held positions in the company which evidenced a trust in her abilities as
21 Finance Manager.

22    11.    Exhibit I: Documents P0104 through P0107 prove that Ms. Ramos has personal
23 knowledge of the unlawful employment practices at LSG during her tenure as Finance Manager. The
24 court can take judicial notice of a pleading filed in this Court, under Case No. 00-00039 against LSG
25 Guam.

26
27
28                                    Page 3

1    Since an essential element of control is evidenced by financial control, and the evidence
2  shows that LSG Holding and LSG USA virtually hold the LSG Guam and Saipan companies hostage
3  regarding their income and expenditures, the local companies are clearly mere alter egos of the
4  parent companies. The management fee is exhorbitant, upwards of $1 million each year. Defendants
5  try to paint a picture of services, yet according to the auditors, there is no formal agreement as to
6  what services are provided. Moreover, despite that moneys are paid to the parent companies, there
7  are apparently few documents which track the funds, in terms of loans, terms and conditions of the
8  payments, and other indicia which would indicate a legitimate business expense or payment.

9    The fact that the local manager of one of the subsidiaries is involved in negotiations does not
10  obviate the fact that he has no authority to bind the company in the union negotiations, as is clear
11  from the directive of the parent company representative that he conduct the negotiations. Certainly,
12  the parent company cannot risk its union contract worldwide by allowing renegade negotiations to
13  occur in the out of the way islands of Guam and Saipan.

14    It is clear from the vehemence from the Defendants that they will submit false statements in
15  order to convince the court to dismiss the international entities. It is also clear from the Declaration
16  of a former Finance Manager, officer and director, Ms. Ramos, that the companies are financially
17  and inordinately controlled by the international entities, and have little daily control over their
18  operations, including union negotiations, capital improvements, budgets, and training, to name a few.
19  It is also clear that the "management" fees paid are mere fronts for draining the Guam and Saipan
20  entities of any noticeable profits, since those profits must be paid to LSG USA without any clear
21  directive as to what they are for.

22    The Plaintiffs respectfully request that the Court deny the Motion to Dismiss the international
23  entities since they are involved in the daily, monthly, and yearly operations of LSG Guam and LSG
24  Saipan, and therefore have satisfied more than the minimum contacts with these jurisdictions in order
25  for the Court to maintain jurisdiction.

26

27

28                                    Page 4

1    Finally, defendants complain that Plaintiffs have unduly delayed this case. Yet, it is

2   defendants who refuse to agree to a Scheduling Order. And, it is Defendant who have submitted a

3   pleading purporting to "Object" to a declaration based on Plaintiff's personal knowledge, and to

4   submit their second "Supplemental Response" only 5 days before the scheduled hearing in this

5   matter.

6    Respectfully submitted this 24th day of May, 2004.

9

_____

Sandra D. Lynch, Esq.
Attorney for Plaintiffs

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Plaintiffs' Supplemental Opposition to Defendant's Motion to Dismiss was sent to Defendants' counsel at 777 Route 4, MVP Business Center, suite 11B, at their fax number on the 24th day of May, 2004.

_____
Sandra D. Lynch, Esq.

1
2 **EXHIBIT A**
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28 Page 7

# Rundschreiben  03/96

## 1.  Strukturorganisation

Beiliegend erhalten Sie das Gesamtorganigramm der LSG in deutscher
und englischer Ausfertigung per 1. August 1996.

FRA ZA 01/19. August 1996

Hartmut Meyer

**Anlagen**

# Organization Chart
# LSG Lufthansa Service Group



ZV

LSG Lufthansa S

Woelki

**FRA ZV 01** — Corporate Strategy — Bleckmann
**FRA ZV 03** — Press Relations — N.N.
**FRA ZA 01** — Organization/Legal Affairs — Meyer (J.P.)

**FRA ZV 04** — Subsidiaries Relations — Mrs. Wagener
**FRA ZA 03** — Training/Education — N.N.

**FRA ZV 2** — Marketing/Customer Service — Svensson
**FRA ZV 4** — Audit — Ames
**FRA ZA 2** — Corporate Personnel Administration — Mrs. Cremer

**FRA ZV 6** — Controlling — Bauer
**FRA ZV 6** — Business Development — Wohlfeil

---

**DFW ZF** — LSG Lufthansa Service USA Corporation — Woelki | Bauer | Röthig

**HKG ZF** — LSG Lufthansa Service Asia Ltd. — Beer | N.N.

**FRA ZF** — LSG Lufthansa Service Europa/Afrika GmbH — Röthig | Bauer

**FRA ZB    FRA ZC** — LSG Lufthansa Service Deutschland GmbH — Bültmann | Heyer

**LSG**

### HKG ZF branches

**HKG ZF/T** — Special Task — Glasmacher
**HKG ZF/Q** — Quality Assurance — Mrs. Hui

**HKG ZF/P** — Project CHEK LAP KOK — Coleridge

**HKG ZF 01** — Marketing/Customer Service — Thaw
**HKG ZF 04** — Administration/Controlling — Dickhuth

**HKG ZF 07** — Personnel Management — Mrs. Wong
**HKG ZF 08** — Company Secretary — Cheung

**HKG ZF 03** — Technical Service — N.N.

### FRA ZB branches

**FRA ZB 01** — Work Safety — Mrs. Lammel

**FRA ZB 2** — Personnel and Social Management — Oehlen
**FRA ZB 6** — Accounting — N.N.
**FRA ZC 7** — Controlling — Labitzke

**FRA ZB 3** — Training and Eduction — Ohletz
**FRA ZB 8** — Purchasing — Greßbach
**FRA ZC 9** — Customer Service Germany — Härtig

**FRA ZB 4** — Organization and Systems — Meyer
**FRA ZB 9** — DP-Systems — Kaufmann

**FRA ZB 5** — Customs Affairs — Antong

### Units row 1

**HKG ZF 1** — Unit Hongkong — Pandelitschka
**HKG ZF 2** — General Catering Hongkong — Kwan
**HKG ZF 4** — General Catering China — N.N.
**BKK ZF 1\*\*** — Unit Bangkok — Gakuch

**TXL ZF** — LSG Lufthansa Service Nordost GmbH — Mücke

**BRE ZF 1** — Unit Bremen — Mrs. Kreß
**CGN ZF 1** — Unit Cologne — Utz

### Units row 2

**SPN ZF 1** — Unit Saipan — Rainer
**GUM ZF 1\*** — Unit Guam — Gent
**SIA ZF 1\*\*** — Unit Xian — Lam
**BJS ZF 1\*\*** — Unit Beijing — L. Zhang

**TXL ZF 1** — Unit Tegel — Mücke (J.P.)
**LEJ ZF 1** — Unit Leipzig — Frenzel

**FRA ZD** — Flight Service "Lufthansa Group", Unit Frankfurt — Nagel
**FRA ZE** — Flight Service International Unit Frankfurt — Hemmer

### Units row 3

**SHA ZF 1\*\*** — Unit Shanghai — Lee
**TAO ZF 1\*\*** — Unit Qingdao — Qiu
**TNA ZF 1\*\*** — Unit Jinan — J. Zhang
**SWA ZF 1\*\*** — Unit Shantou — Gong

**SXF ZF 1** — Unit Schönefeld — Hurtiens
**DRS ZF 1** — Unit Dresden — Frenzel (J.P.)

**HAJ ZF 1** — Unit Hanover — Fischer
**MUC ZF 1** — Unit Munich — Holmann

**STR ZF 1** — Unit Stuttgart
**QSH ZF 1** — Restaurand Outlet Seeheim

**...vice Holding AG**

| ...hig | Bamberger |

---

| FRA ZA 02 |
| Personnel Management International |
| Mrs. Löber |

| FRA ZI 01 |
| Corporate Affairs |
| N.N. |

| FRA ZI 02 |
| Informatics/ EDP |
| Kaufmann (i.P.) |

| FRA ZA 04 |
| Contracted Purchasing |
| Grehbach (i.P.) |

| FRA ZI 1 |
| Inflight Service |
| Wagner |

| FRA ZI 2 |
| Finance |
| ZI (i.P.) |

---

| FRA ZF/Q |
| ...giene Institute GmbH |
| Dr. Gork |

| FRA ZF/H |
| LSG-Food & Nonfood Handel GmbH |
| Fink | G. Schmidt |

| FRA ZF/G |
| LSG-Airport Gastronomie-gesellschaft mbH |
| Senff | Karwath |

| XZY ZF |
| LSG-Sky Food GmbH |
| Kindler |

| FRA ZF/C |
| LSG-Catering Logistik GmbH |
| T. Schmidt |

| ...A ZC 8 |
| ...nical ...rtment |
| ...or |

| Quality Assurance |
| Mrs. Grimm |

| FRA ZF/H1 |
| Product-management |
| Högg |

| FRA ZF/H2 |
| Administration/ Controlling |
| Mrs. Brauh |

| FRA ZF/G1 |
| Restaurant Outlets Frankfurt |
| Nins |

| CGN ZF/G |
| Restaurant Outlets Cologne |
| Köhler |

| Administration/ Personnel |
| Boor |

| Production |
| W. Meyer |

| FRA ZF/H3 |
| Lufthansa Party Service |
| Eckert |

| FRA ZF/H4 |
| Rebat Department |
| Buddinski |

| TXL ZF/G |
| Restaurant Outlets Berlin |
| Kaßer |

| BRE ZF/G |
| Restaurant Outlets Bremen |
| Mrs. Riebe |

| Technical Service |
| Henkel |



| DUS ZF 1 |
| Unit Düsseldorf |
| Schell |

| HAM ZF 1 |
| Unit Hamburg |
| Thiesen |

| NUE ZF 1 |
| Unit Nuremberg |
| Domani |

**LSG Lufthansa Service SKY Chefs**

Publisher
FRA ZA 01

LSG Lufthansa Service Group

Date
1.8.1996

# EXHIBIT B

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

HK

----------

From:  FRAZA0SEK@DLH.DE[SMTP:FRAZA0SEK@DLH.DE]
Sent:  Thursday, 21 June 2001 15:37
To:  HKCheung@lsgskychefs.com.hk
Cc:  philip.thow@lsgskychefs.com.hk; ssmith@lsgskychefsguam.com;
mwoodward@netpci.com; SIGRID.CREMER@DLH.DE
Importance:  High

Dear HK

Thank you very much for your e-mail.

There is no doubt that without approval of LSG Asia a collective bargaining
agreement for the units Guam und Saipan with H.E.R.E. International Union cannot be concluded.

I would like to take the opportunity to make some explanations concerning
the different areas of responsibility of LSG Holding, LSG Asia and the local

management.

Collective bargaining for the unit is principally being effected by the
local management. In this case however the local management has at first to co-ordinate the negotiation strategy with the competent persons in the region as well as with LSG Holding. Representatives of the regional management and LSG Holding will only take part in the negotiations, if the situation itself requires their respective participation.

However there is one particularity in the collective bargaing for the units
Guam and Saipan. On one hand it is the first time that a collective bargaining agreement is agreed upon. It is not the case that negotiations are made on an existing collective bargaining agreement. On the other hand there is the "political" particularity that HERE International Union during the negotiations with Sky Chefs as regards the Master Agreement for 15,000 employees has brought on the negotiation table the Guam/Saipan issue. As a consequence thereof an agreement with the President of H.E.R.E. International Union has been concluded in Washington on November 30, 2001 setting forth provisions concerning the issues mentioned therein. As this matter was of worldwide strategically importance, I was asked by the Executive Board of LSG Holding to take care of the collective bargaining on Guam and Saipan taking into consideration this very specific political circumstances. Therefore Sigrid Cremer and myself are involved in the negotiations for the units Guam and Saipan.

As mentioned in your mail, the restructuring of the LSG group after the Sky
Chefs integration will most likely lead to changes in the management for the

region Asia changes. Needless to say that the persons taking over responsibility for the Asian region, have to be involved in the decision

making of the collective bargaining agreements for Guam and Saipan as soon
as possible.

Due to the circumstance that last time we have been able to postpone
the
collective bargaining by 6 1/2 months, I think there is now no possibility
that we can again postpone the negotiations, being scheduled for the last
week of the month of August. Please consider that all the travel
arrangements have been made and the respective persons, who are involved in
the negotiation have blocked the whole week in August for these
negotiations.

Taking into consideration the circumstance that we will provide the
union
with a draft agreement before the negotiations will be initiated, I propose
that we will meet on August 13, 2000, 09.00 a.m. taking into account your
availability as well as the availability of the other parties involved. We
will then have the whole day and the morning of August 14 at our disposal in

order to discuss the draft being prepared by Marty as well as to discuss the

further strategy for the negotiations.

I would like to ask you to co-ordinate this date with Marty, Shane
and the
other persons, which shall also participate according to your opinion.
Afterwards please inform me, whether August 13, 2001 is convenient for all
participants.

I will send copy of the Sky Chefs Collective Agreement to Marty in
the
course of this week.

Ernst-Martin Hoffmann-Keining
Senior Vice President Labor Law

LSG Lufthansa Service Holding AG
FRA ZA 5
Am Holzweg 26
D-65830 Kriftel

phone:  +49 (0) 61 92-9 74-9 50
fax:    +49 (0) 61 92-9 74-9 59
e-mail:   Ernst-Martin.Hoffmann-Keining@dlh.de

## Michelle D. Ramos - Finance & Administration Manager

**From:** "Michelle D. Ramos - Finance & Administration Manager"
**To:** "HK CHEUNG" <HKCheung@lsgskychefs.com.hk>
**Cc:** "Shane Smith" <gumzf1@ite.net>
**Sent:** Tuesday, July 03, 2001 6:13 PM
**Subject:** Re:

Dear HK:

Marty has confirmed her attendance for 8/13-14. At this point, both Shane's calendar and mine are clear for those days. Shane returns from vacation on 7/7. I will check with him then if he has any objections but at this point, just count us in.

Best regards....Michelle

----- Original Message -----
**From:** HK CHEUNG
**To:** 'Michelle Ramos'
**Sent:** Friday, June 29, 2001 12:44 PM
**Subject:** FW:

Dear Michelle,

Pls confirm by return Shane, Marty and your attendance to the meeting.
regards,
HK

..........
**From:** ERNST-MARTIN.HOFFMANN-KEINING@DLH.DE[SMTP:ERNST-MARTIN.HOFFMANN-KEINING@DLH.DE]
**Sent:** Thursday, 28 June 2001 22:33
**To:** HKCheung@lsgskychefs.com.hk
**Subject:** AW:

Dear HK

What is the status of the meeting planned at August 13, 2001 in HKG. Please be so kind and provide me with a brief information.

Best regards

Ernst-Martin

-----Ursprüngliche Nachricht-----
Von: HK CHEUNG [mailto:HKCheung@lsgskychefs.com.hk]
Gesendet am: Donnerstag, 21. Juni 2001 11:33
An: 'FRAZA0SEK@DLH.DE' <mailto:'FRAZA0SEK@DLH.DE'>
Betreff: RE:


Dear Martin,
Thanks for the email.
I will let you know the date once I receive all confimration.
regards,

7/19/01

# EXHIBIT C

**ERNST & YOUNG**

■ Ernst & Young LLP
Ernst & Young Building
Suite 201
231 Ypao Road
Tamuning, Guam 96913

■ Phone: (671) 649-3700
Fax:    (671) 649-3920
www.ey.com

February 8, 2002

The Board of Directors
LSG Catering Guam, Inc. and Subsidiary
P.O. Box 6712
Tamuning, Guam 96931

Dear Sirs:

In planning and performing our audit of the consolidated financial statements of LSG Catering Guam, Inc. and Subsidiary for the year ended December 31, 2001, we considered its internal control to determine our auditing procedures for the purpose of expressing our opinion on the consolidated financial statements and not to provide assurance on the internal control. Our consideration of the internal control would not necessarily disclose all matters in the internal control that might be material weaknesses under standards established by the American Institute of Certified Public Accountants. A material weakness is a condition in which the design or operation of one or more of the specific internal control components does not reduce to a relatively low level the risk that errors or fraud in amounts that would be material in relation to the consolidated financial statements being audited may occur and not be detected within a timely period by employees in the normal course of performing their assigned functions. We noted no matters involving the internal control and its operation that we consider to be material weaknesses as defined above. However, the following matters came to our attention that we believe merit your consideration:

## Goodwill and Other Intangible Assets

In June 2001, the Financial Accounting Standards Board issued Statements of Financial Accounting Standard No. 142, "Goodwill and Other Intangible Assets", effective for fiscal years beginning after December 15, 2001. Under the new rules, goodwill will no longer be amortized but will be subject to annual impairment tests in accordance with the Statements.

The Company must apply the new rules on accounting for goodwill beginning in the first quarter of 2002. Application of the non-amortization provisions of the Statement is expected to result in an increase in net income of $2,565 in 2002. During 2002, the Company must perform the first of the required impairment tests of goodwill as of January 1, 2002 and determine what the effect of these tests will be on the earnings and financial position of the Company.

Additionally, similar to our comments in prior years:

## Management Agreement

The Company has still not obtained a written agreement to support its management agreement with LSG Lufthansa Service USA Corporation. The Company should obtain a written agreement which specifies the services to be provided and the terms concerning the amounts received and/or paid to LSG Lufthansa Service USA Corporation.

## Accumulated Earnings Tax

The Company may be exposed to the accumulated earnings penalty tax. Please be advised that a corporation can accumulate up to $250,000 of undistributed earnings and profits (tax basis retained earnings available for dividends) without being penalized by the taxing authority. As of December 31, 2001, the Company has retained earnings of approximately $13,081,000. However, the accumulated earnings penalty tax is imposed on corporation's earnings which were accumulated for the purpose of avoiding income tax at the shareholder level. A corporation that has a reasonable business need for accumulating earnings above $250,000 will not be subject to the penalty tax.

In order to avoid this penalty tax, we recommend that the Company document in writing, preferably in corporate minutes, the specific plans to utilize the retained earnings for proper and reasonable business purposes. It is recommended for the Company to continue distributing dividends in every fiscal year to its shareholders to avoid adverse tax implications in the case of a tax audit by the Government of Guam.

************************************

This letter is intended solely for the information and use of the board of directors, management, and others within the organization.

At this time we would like to thank Mrs. Michelle Ramos and the entire accounting staff for their cooperation extended to us during the course of our audit. We would be pleased to discuss the above matters or to respond to any questions, at your convenience.

*Ernst & Young LLP*

P0031



**⊒Ⅱ ERNST & YOUNG**

■ **Ernst & Young LLP**
Ernst & Young Building
Suite 201
231 Ypao Road
Tamuning, Guam 96911

■ Phone: (671) 649-3700
Fax:   (671) 649-3920
www.ey.com

January 25, 2001

The Board of Directors
LSG Catering Guam, Inc. and Subsidiary
P.O. Box 6712
Tamuning, Guam 96931

Dear Sirs:

In planning and performing our audit of the consolidated financial statements of LSG Catering Guam, Inc. and Subsidiary for the year ended December 31, 2000, we considered its internal control to determine our auditing procedures for the purpose of expressing our opinion on the consolidated financial statements and not to provide assurance on internal control. Our consideration of internal control would not necessarily disclose all matters in internal control that might be material weaknesses under standards established by the American Institute of Certified Public Accountants. A material weakness is a condition in which the design or operation of one or more of the specific internal control components does not reduce to a relatively low level the risk that errors or fraud in amounts that would be material in relation to the consolidated financial statements being audited may occur and not be detected within a timely period by employees in the normal course of performing their assigned functions. We noted no matters involving internal control and its operation that we consider to be material weaknesses as defined above. However, the following matters came to our attention that we believe merit your consideration:

## Management Agreement

During 1997, the Company entered into a management agreement with LSG Lufthansa Service USA Corporation. No written agreement was obtained to verify the nature of these transactions. Similar to the recommendation we made on the past agreement with LSG Catering Hong Kong, the written agreement should specify the scope of the services to be provided and the terms concerning the amounts received and/or paid to LSG Lufthansa Service USA Corporation.

## Accumulated Earnings Tax

Similar to the recommendation we made in the past, the Company may be exposed to the accumulated earnings penalty tax. Please be advised that a corporation can accumulate up to $250,000 of undistributed earnings and profits (tax basis retained earnings available for dividends) without being penalized by the taxing authority. As of December 31, 2000, the Company has unappropriated retained earnings of approximately $10,254,000. However, the accumulated earnings penalty tax is imposed on corporation's earnings which were accumulated for the purpose of avoiding income tax at the shareholder level. A corporation that has a reasonable business need for accumulating earnings above $250,000 will not be subject to the penalty tax.

Ernst & Young LLP is a member of Ernst & Young International, Ltd.

P0060

## Accumulated Earning Tax, Continued.

In order to avoid this penalty tax, we recommend that the Company document in writing, preferably in corporate minutes, the specific plans to utilize the retained earnings for proper and reasonable business purposes. It is recommended for the Company to continue distributing dividends in every fiscal year to its shareholders to avoid adverse tax implications in the case of a tax audit by the Government of Guam.

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

This letter is intended solely for the information and use of the board of directors, management, and others within the organization.

At this time we would like to thank Mrs. Michelle Ramos and the entire accounting staff for their cooperation extended to us during the course of our audit. We would be pleased to discuss the above matters or to respond to any questions, at your convenience.

*Ernst & Young LLP*

P0060-a

January 25, 2000

The Board of Directors
LSG Catering Guam, Inc. and Subsidiary
P.O. Box 6712
Tamuning, Guam 96931

Dear Sirs:

In planning and performing our audit of the consolidated financial statements of LSG Catering Guam, Inc. and Subsidiary for the year ended December 31, 1999, we considered its internal control to determine our auditing procedures for the purpose of expressing our opinion on the consolidated financial statements and not to provide assurance on the internal control. Our consideration of the internal control would not necessarily disclose all matters in the internal control that might be material weaknesses under standards established by the American Institute of Certified Public Accountants. A material weakness is a condition in which the design or operation of one or more of the specific internal control components does not reduce to a relatively low level the risk that errors or fraud in amounts that would be material in relation to the consolidated financial statements being audited may occur and not be detected within a timely period by employees in the normal course of performing their assigned functions. We noted no matters involving the internal control and its operation that we consider to be material weaknesses as defined above. However, the following matters came to our attention that we believe merit your consideration:

## Management Agreement

During 1997, the Company entered into a management agreement with LSG Lufthansa Service USA Corporation. No written agreement was obtained to verify the nature of these transactions. Similar to the recommendation we made on the past agreement with LSG Catering Hong Kong, the written agreement should specify the scope of the services to be provided and the terms concerning the amounts received and/or paid to LSG Lufthansa Service USA Corporation.

## Thin Capitalization — how much to invuu

The total capital of the Company remained at December 31, 1999 $1,000 which is not commensurate with the volume of its current operating activities. You may want to consider increasing the Company's capital to an adequate level to avoid possible adverse legal or tax implications in the future. The amount due to Parent could be construed as equity under the Internal Revenue Code and Treasury Regulations. Under these circumstances, subsequent repayment to Parent could be considered dividend distributions, thereby possibly triggering a taxable event.

## Accumulated Earnings Tax — *prie line for distribution*

Similar to the recommendation we made in the past, the Company may be exposed to the accumulated earnings penalty tax. Please be advised that a corporation can accumulate up to $250,000 of undistributed earnings and profits (tax basis retained earnings available for dividends) without being penalized by the taxing authority. As of December 31, 1999, the Company has unappropriated retained earnings of approximately $10,450,000. However, the accumulated earnings penalty tax is imposed on corporation's earnings which were accumulated for the purpose of avoiding income tax at the shareholder level. A corporation that has a reasonable business need for accumulating earnings above $250,000 will not be subject to the penalty tax.

In order to avoid this penalty tax, we recommend that the Company document in writing, preferably in corporate minutes, the specific plans to utilize the retained earnings for proper and reasonable business purposes. It is recommended for the Company to continue distributing dividends to its shareholders to avoid adverse tax implications in the case of a tax audit by the Government of Guam.

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

This letter is intended solely for the information and use of the board of directors, management, and others within the organization.

At this time we would like to thank Mrs. Michelle Ramos and the entire accounting staff for their cooperation extended to us during the course of our audit. We would be pleased to discuss the above matters or to respond to any questions, at your convenience.

P01701

January 26, 1999

**DRAFT**

Subject to Change

The Board of Directors
LSG Catering Guam, Inc. and Subsidiary
P.O. Box 6712
Tamuning, Guam 96931

Dear Sirs:

In planning and performing our audit of the consolidated financial statements of LSG Catering Guam, Inc. and Subsidiary for the year ended December 31, 1998, we considered its internal control to determine our auditing procedures for the purpose of expressing our opinion on the consolidated financial statements and not to provide assurance on the internal control. Our consideration of the internal control would not necessarily disclose all matters in the internal control that might be material weaknesses under standards established by the American Institute of Certified Public Accountants. A material weakness is a condition in which the design or operation of one or more of the specific internal control components does not reduce to a relatively low level the risk that errors or fraud in amounts that would be material in relation to the consolidated financial statements being audited may occur and not be detected within a timely period by employees in the normal course of performing their assigned functions. We noted no matters involving the internal control and its operation that we consider to be material weaknesses as defined above. However, the following matters came to our attention that we believe merit your consideration:

## Management Agreement

During 1997, the Company entered into a management agreement with LSG Lufthansa Service USA Corporation. No written agreement was obtained to verify the nature of these transactions. Similar to the recommendation we made on the past agreement with LSG Catering Hong Kong, the written agreement should specify the scope of the services to be provided and the terms concerning the amounts received and/or paid to LSG Lufthansa Service USA Corporation.

## Thin Capitalization

As of December 31, 1998, the Company has total liabilities to LSG Lufthansa Service USA Corporation (the Parent) of approximately $2,667,000 whereas the capital of the Company is only $1,000. The amount due to Parent could be construed as equity under the Internal Revenue Code and Treasury Regulations. Under these circumstances, subsequent repayment to Parent could be considered dividend distributions, thereby possibly triggering a taxable event.

To avoid the aforementioned adverse tax implications, the capital of the Company should be increased to an adequate level and formal loan documents should be drawn up with terms and conditions clearly set forth.

P0202



**ΞΞ ERNST & YOUNG LLP**

■ Ypao Business Center
Suite 201
231 Ypao Road
Tamuning, Guam 96911

■ Phone: 671 649 3700
Fax:     671 649 3920

January 26, 1999

The Board of Directors
LSG Catering Guam, Inc. and Subsidiary
P.O. Box 6712
Tamuning, Guam 96931

Dear Sirs:

In planning and performing our audit of the consolidated financial statements of LSG Catering Guam, Inc. and Subsidiary for the year ended December 31, 1998, we considered its internal control to determine our auditing procedures for the purpose of expressing our opinion on the consolidated financial statements and not to provide assurance on the internal control. Our consideration of the internal control would not necessarily disclose all matters in the internal control that might be material weaknesses under standards established by the American Institute of Certified Public Accountants. A material weakness is a condition in which the design or operation of one or more of the specific internal control components does not reduce to a relatively low level the risk that errors or fraud in amounts that would be material in relation to the consolidated financial statements being audited may occur and not be detected within a timely period by employees in the normal course of performing their assigned functions. We noted no matters involving the internal control and its operation that we consider to be material weaknesses as defined above. However, the following matters came to our attention that we believe merit your consideration:

Management Agreement

During 1997, the Company entered into a management agreement with LSG Lufthansa Service USA Corporation. No written agreement was obtained to verify the nature of these transactions. Similar to the recommendation we made on the past agreement with LSG Catering Hong Kong, the written agreement should specify the scope of the services to be provided and the terms concerning the amounts received and/or paid to LSG Lufthansa Service USA Corporation.

Thin Capitalization

As of December 31, 1998, the Company has total liabilities to LSG Lufthansa Service USA Corporation (the Parent) of approximately $2,667,000 whereas the capital of the Company is only $1,000. The amount due to Parent could be construed as equity under the Internal Revenue Code and Treasury Regulations. Under these circumstances, subsequent repayment to Parent could be considered dividend distributions, thereby possibly triggering a taxable event.

To avoid the aforementioned adverse tax implications, the capital of the Company should be increased to an adequate level and formal loan documents should be drawn up with terms and conditions clearly set forth.

Ernst & Young LLP is a member of Ernst & Young International, Ltd.

Case 1:03-cv-00028     Document 85     Filed 05/24/2004     Page 45 of 84     P0.213

Accumulated Earnings Tax

Similar to the recommendation we made in the past, the Company may be exposed to the accumulated earnings penalty tax. Please be advised that a corporation can accumulate up to $250,000 of undistributed earnings and profits (tax basis retained earnings available for dividends) without being penalized by the taxing authority. As of December 31, 1998, the Company has unappropriated retained earnings of approximately $10,500,000. However, the accumulated earnings penalty tax is imposed on corporation's earnings which were accumulated for the purpose of avoiding income tax at the shareholder level. A corporation that has a reasonable business need for accumulating earnings above $250,000 will not be subject to the penalty tax.

In order to avoid this penalty tax, we recommend that the Company document in writing, preferably in corporate minutes, the specific plans to utilize the retained earnings for proper and reasonable business purposes. It is recommended for the Company to distribute dividends to its shareholders to avoid adverse tax implications in the case of a tax audit by the Government of Guam.

Impact of Year 2000

Our responsibility as your auditors is to plan and perform the audit to obtain reasonable assurance about whether the consolidated financial statements are free of material misstatement. As such, our audit of the Company's consolidated financial statements is not designed to determine the Company's readiness for the Year 2000. Further, we have no responsibility with regard to the Company's efforts to make its systems, or any other systems, such as those of vendors, service providers, or any other third parties Year 2000 ready, or to provide assurance on whether the Company has addressed or will be able to address all affected systems on a timely basis.

Casualty and Business Interruption Insurance

The Company possesses a substantial amount of plant, property, and equipment, which are utilized in its daily meal production and operations. The Company from time to time may want to review the adequacy of its insurance coverage, not only for the cost recovery in the event of a major disaster/catastrophe, but also for the loss of revenue during the recovery period. We therefore suggest the Company also evaluate the cost and benefits of obtaining such business interruption insurance.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

This letter is intended solely for the information and use of the board of directors, management, and others within the organization.

At this time we would like to thank Mrs. Michelle Ramos and the entire accounting staff for their cooperation extended to us during the course of our audit. We would be pleased to discuss the above matters or to respond to any questions, at your convenience.

*Ernst + Young LLP*

# EXHIBIT D

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TELEFAX



Unit 1704-06 Island Place Tower
510 King's Road
North Point
Hong Kong
Tel   :   (852) 2963-6326
Fax   :   (852) 2565-0022

Our Ref: HKG ZC3/980577F

**Ms Michelle Ramos**
**GUM ZF10**

To

H K Cheung

HKG ZC3

From

671-646-2369

Telefax No.

September 21, 1998

Date

This transmittal has   **1**   Page(s) including this cover sheet

Re:   **Change of Directors**

Dear Michelle,

Please be informed that LSG Frankfurt has approved the appointment of Mr Phil Thow as directors of LSG Catering Guam, Inc, LSG Catering Saipan, Inc, LSG Lufthansa Service Guam, Inc. and LSG Lufthansa Service Saipan, Inc.  Kindly effect the change accordingly.

The original resignation letters and share transfer forms have been given to Mr Guth during his last visit to Hong Kong in August, 1998.

Best regards.

H K Cheung
Company Secretary

HK/as

# EXHIBIT E

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## LSG Lufthansa Service USA Inc.
### (the „Company")

### Written Resolution of the Directors of the company

Each of the undersigned, being all of the existing directors of LSG Lufthansa Service USA, Inc., by execution hereof consent to the action set forth herein and waive any notice or right to such notice.

**WHEREAS** a subsidiary of the Company, LSG Lufthansa Service Guam, Inc. (the „Subsidiary"), has proposed to build a Maintenance and Administration Office Extension with a budget of USD 220,000 (net of any insurance compensation) to accommodate the maintenance department (which original building was damaged by typhoon)and other administrative departments (which are currently located at other premises rented by the Subsidiary)

**WHEREAS** the immediate holding company of the Subsidiary, LSG Catering Guam Inc., has approved such investment.

**RESOLVED THAT** the building of the Maintenance and Administration Office Extension by the Subsidiary with a budget of USD 220,000 be and is hereby approved

This unanimous consent may be executed by the telefacsimile ( fax ) in a number of counterparts, and each fax or counterpart shall be deemed to be original consent, but all such faxes and counterparts together shall constitute one (I) consent.

Dated this 24th day of M   1998.

_____          _____
Helmut Woelki                                           Günter Röthig

_____
Rainer Bauer

PO246

**LSG Lufthansa Service USA Inc.**
**(the „Company")**

## Written Resolution of the Directors of the company

Each of the undersigned, being all of the existing directors of LSG Lufthansa Service USA, Inc., by execution hereof consent to the action set forth herein and waive any notice or right to such notice

**WHEREAS** a subsidiary of the Company, LSG Lufthansa Service Guam, Inc. (the „Subsidiary"), has proposed to build a Maintenance and Administration Office Extension with a budget of USD 220,000 (net of any insurance compensation) to accommodate the maintenance department (which original building was damaged by typhoon)and other administrative departments (which are currently located at other premises rented by the Subsidiary).

**WHEREAS** the immediate holding company of the Subsidiary, LSG Catering Guam Inc. has approved such investment.

**RESOLVED THAT** the building of the Maintenance and Administration Office extension by the Subsidiary with a budget of USD 220,000 be and is hereby approved.

This unanimous consent may be executed by the telefacsimile („fax") and number of counterparts, and each fax or counterpart shall be deemed original consent, but all such faxes and counterparts together shall constitute one (1) consent.

Dated this 24th day of May, 1998.

_____               _____
Helmut Woelki                          Günter Rothig

_____
Rainer Bauer

P0247

# EXHIBIT F

Page 12

 **LSG Holding**

# Besprechungsnotiz

| Datum 09.10.98 | Tel. 06192 974-150 | Fax 06192 974-155 | Seite 1 von 1 |
|---|---|---|---|

| | |
|---|---|
| **Verteiler** | Alle Teilnehmer |

| | | | |
|---|---|---|---|
| **Von** | FRA ZV 5 | **Diktatzeichen** | bj - tc |

| | |
|---|---|
| **Thema** | LSG Lufthansa Service Guam - WP 2000 / MFP 2001-2004 |

| | |
|---|---|
| **Ort und Datum der Besprechung** | Konferenzraum 6.OG in Kriftel Monday, 12.09.1998, 9:00 o'clock |

**Teilnehmer**

| | |
|---|---|
| ZV | ZV / A |
| ZI | ZI / A |
| ZA | |
| ZV 01 | |
| ZV 5 | |
| ZV 6 | |

**Bemerkungen**

**Ort und Datum der nächsten Besprechung**

| Lfd. Nr. | Gegenstand | Zuständig | Termin |
|---|---|---|---|
| 1 | In general the presented budget is accepted. The implementation of the Total Cycle Time program should generate additional income stream which enables the company to improve their result for 2000 more significantly than reported.<br><br>In case the rented storage space still exists the Members of the Board would like to be informed if this is still necessary. | | |

# EXHIBIT G

I.   **Ratification** — *of* .

Minutes of the last organizational meeting held on March 18, 1999 by the Board of Directors of LSG Lufthansa Service Guam, Inc. are hereby validated.

- Board Meeting 5/2/00
    - Phil — voted chairman.
    - Frank -
      H. K.
      Michelle.

- Board papers. - agenda must be sent
    to Hong Kong.
    - Papers must be submitted 1 week before.

LSG Lufthansa Service Guam, Inc.                    **Page 2**
02 May 2000

a:\lsggumbod\050200ag.doc

P0127

1

2 **EXHIBIT H**

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Page 14

## APPOINTMENT OF MICHELLE RAMOS AS RETIREMENT PLAN ADMINISTRATOR AND TRUSTEE

The appointment of Michelle Ramos as the Administrator and Trustee for the Corporation's 401K Retirement Plan was then considered and discussed. On motion duly made, seconded, and unanimously carried, it was

> VOTED: That Michelle Ramos is hereby appointed as Administrator and Trustee for the Corporation's 401K Retirement Plan, such appointment to take effect upon her acceptance.

## REMOVAL OF SHANE SMITH AS BANK SIGNATORY

The removal of Shane Smith as an authorized signatory on the Corporation's bank accounts was then discussed. On motion duly made, seconded, and unanimously carried, it was

> VOTED: That Shane Smith hereby removed as an authorized bank signatory for the Corporation's bank accounts, and that Michelle Ramos is hereby authorized to execute a new corporate resolution of authority in the form and manner required by the Corporation's banks specifying the title of officers and number or combination required to endorse and accept checks, drafts, notes, and other paper payable to or by the Corporation.

All action taken is hereby consented to, ratified and confirmed.

IN WITNESS WHEREOF, the parties hereto have subscribed their names on the day and year first above written.

_____
SHANE SMITH

_____
PHILIP THOW

_____
H.K. CHEUNG

−3−

P0048

The Board of Directors
LSG Lufthansa Service Guam, Inc. (the "Corporation")


RE:     Appointment of Director


Dear Sirs,

I, Michelle Ramos, do hereby consent to my appointment as a Director of the Corporation
effective as the date hereof.

Date: August 19, 2001


Sincerely,

MICHELLE RAMOS

# EXHIBIT I

Page 15



WILLIAM R. TAMAYO - #084965 (CA)
JONATHAN T. PECK - #12303 (VA)
EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION
San Francisco District Office
901 Market Street, Suite 500
San Francisco, California 94103
Telephone: (415) 356-5084
Fax:         (415) 356-5046

DAPHNE E. BARBEE-WOOTEN #2911 (HI)
Honolulu Local Office
300 Ala Moana Blvd Room 7127
Honolulu, HI 96850
Telephone: (808) 541-3121
Fax:        (808) 541-3390
Attorneys for Plaintiff

**FILED**
DISTRICT COURT OF GUAM

SEP 1 8 2000

MARY L.M. MORAN
CLERK OF COURT

# UNITED STATES DISTRICT COURT

## DISTRICT OF GUAM

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | CIVIL ACTION NO. **00 - 00039** |
| Plaintiff, | COMPLAINT |
| v. | |
| LSG LUFTHANSA SERVICE GUAM INC. | |
| Defendant. | |

## NATURE OF ACTION

This is an action under the Age Discrimination in Employment Act to correct unlawful employment practices on the basis of age, and to provide appropriate relief to Shirley Saico and Mabell Doneza and similarly situated employees who were adversely affected by such practices. As alleged below, defendant, LSG Lufthansa Service Guam Inc., discriminated against Ms. Saico and Ms. Doneza and other similarly situated employees on the basis of age by transferring them from the concession department to the sanitation department.

**COMPLAINT**

P0104

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345. This action is authorized and instituted pursuant to Section 7(b) of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 626 (b) (ADEA), which incorporates by reference Sections 16 (c) and 17 of the Fair Labor Standards Act of 1938 (FLSA) , as amended, 29 U.S.C. §§ 216(c) and 217.

2. The employment practices alleged to be unlawful were and are being committed within the jurisdiction of the United States District Court for the District of Guam.

## PARTIES

3. Plaintiff, the Equal Employment Opportunity Commission (EEOC), is the agency of the United States of America charged with the administration, interpretation, and enforcement of ADEA and is expressly authorized to bring this action by Section 7(b) of the ADEA, 29 U.S.C. § 626(b), as amended by Section 2 of the reorganization Plan No. 1 of 1978, 92 Stat. 3781, and by Public Law 98-532 (1984), 98 Stat. 2705.

4. At all relevant times, Defendant LSG Lufthansa Service Guam, Inc., (Employer) has continuously been doing business in Guam, and has continuously had at least twenty employees.

5. At all relevant times, Defendant Employer has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 11(b), (g) and (h) of the ADEA, 29 U.S.C. §§ 630 (b) (g) and (h).

## CONCILIATION

6. Prior to institution of this lawsuit, the Commission's representatives attempted to eliminate the unlawful employment practices alleged below and to effect voluntary compliance with the ADEA through informal methods of conciliation, conference and persuasion within the meaning of Section 7(b) of the ADEA, 29 U.S.C. § 626(b).

**COMPLAINT**

2

D0104-a

## STATEMENT OF CLAIMS

7. Since at least March 25, 1998 Defendant Employer engaged in unlawful practices at its Guam facility in violation of 29 U.S.C. § 623 (a)(1) and (2). These practices include transferring Ms. Saico (age 59), Ms. Doneza (age 57) and other similarly situated class members over 40 years old, from concession attendant positions to sanitation positions because of their age.

8. The effect of the practices complained of above has been to deprive Ms. Saico, Ms. Doneza and similarly situated class members of equal employment opportunities and otherwise adversely affect their status as an employee because of age.

9. The unlawful employment practices complained of above were and are willful within the meaning of Section 7(b) of the ADEA, 29 U.S.C. § 626 (b).

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that this Court:

A.     Grant a permanent injunction enjoining Defendant Employer, its officers, successors, assigns, and all persons in active concert or participation with it from engaging in transferring employees from concession attendant positions to sanitation positions and any other employment practice which discriminates on the basis of age against individuals 40 years of age and older.

B.     Order Defendant Employer to institute and carry out policies, practices, and programs which provide equal employment opportunities for individuals 40 years of age and older, and which eradicate the effects of its past and present unlawful employment practices.

C.     Grant a judgment requiring Defendant Employer to pay appropriate back wages in an amount to be determined at trial, an equal sum as liquidated damages, and prejudgment interest to individuals whose wages are being unlawfully withheld as a result of the acts complained of above, including but not limited to Ms. Saico and Ms. Doneza and other individuals over 40 years old who were transferred from concession

**COMPLAINT**

3

1  to sanitation positions.

2      F.  Order  Defendant Employer to make whole all individuals

3  adversely affected by the unlawful practices described above, by providing the

4  affirmative relief necessary to eradicate the effects of its unlawful practices.

5      G.  Grant such further relief as the Court deems necessary and proper.

6      H.  Award the Commission its costs in this action.

7                              Respectfully submitted,

8                              C. GREGORY STEWART
                               General Counsel
9                              EQUAL EMPLOYMENT OPPORTUNITY
                               COMMISSION
10                             1801 L Street, N.W.
                               Washington, DC 20507
11  Dated: _9/12/00_

12                             WILLIAM R. TAMAYO
                               Regional Attorney
13  Dated: _9/13/00_

14                             JONATHAN T. PECK
                               Supervisory Trial Attorney
15  Dated: 9 - 14 - 00

16                             DAPHNE BARBEE-WOOTEN
                               Trial Attorney
17
                               EQUAL EMPLOYMENT OPPORTUNITY
18                             COMMISSION
                               San Francisco District Office
19                             901 Market Street, Suite 500
                               San Francisco, CA  94103-1735
20                              Honolulu Local Office
                               300 Ala Moana Blvd Room 7127
21                             Honolulu, HI 96850

22

23

24

25

26

27

28

COMPLAINT                        4

# United States District Court

RECEIVED
U.S. ATTORNEY'S OFFICE
DISTRICT OF GUAM
'00 SEP 20 PM 4:00

_____ DISTRICT OF ___Guam___

United States Equal Employment
Opportunity Commission,

        V.<sup></sup>Plaintiff,

LSG  Lufthansa Service Guam Inc.,

        Defendant.

## SUMMONS IN A CIVIL CASE

CASE NUMBER: **00-00039**

TO: (Name and address of defendant)

LSG Lufthansa Service Inc.
P.O. Box 6172
Tamuning, GU  96931

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

Daphne Barbee-Wooten, Trial Attorney
U.S. E.E. O.C.
P.O. Box 50082
300 Ala Moana Blvd. #7127
Honolulu, HI  96850

an answer to the complaint which is herewith served upon you, within ___20___ days after
service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken
against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a
reasonable period of time after service.

Mary L. M. Moran

_____
CLERK

_Rosita F. San Nicolas_
(BY) DEPUTY CLERK

SEP 19 2000

_____
DATE