# UNITED STATES DISTRICT COURT
## TERRITORY OF GUAM

| | |
|---|---|
| MICHELLE D. RAMOS, RICARDO G. "GINO" PEREZ, and NONA A. PEREZ,<br><br>Plaintiffs,<br><br>v.<br><br>LSG LUFTHANSA SERVICE HOLDING, AG, et al.,<br><br>Defendants. | Civil Case No. 03-00028<br><br>**ORDER** |

Before this court is defendants' motion to dismiss (#11, 78). Plaintiffs have responded (#30, 81) and defendants' have replied (#83). Pursuant to Federal Rule of Civil Procedure 12(b)(2), defendants LSG Lufthansa Service Holding, AG, LSG Lufthansa Service USA Corporation, LSG Lufthansa Service Asia, Ltd., LSG Lufthansa Service Saipan, Inc., LSG Catering Saipan Inc., and Hyung K. Cheng (collectively "defendants") request that they be dismissed from this suit because this court lacks personal jurisdiction over them. After review of the record and the applicable law, the motion will be granted.

## I. Factual Background

Plaintiffs commenced this action July 29, 2003. In the complaint, plaintiffs allege violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as amended. Claims against the defendants include race discrimination, sex discrimination, hostile work environment, retaliation,

1

Case 1:03-cv-00028   Document 119   Filed 02/07/2005   Page 1 of 8

and unlawful practices.

Plaintiffs allege the following: At all times relevant, plaintiffs Ricardo G. "Gino" Perez ("Gino"), Michelle D. Ramos ("Ramos"), and Nona A. Perez ("Nona") were employed by defendant LSG Lufthansa Service Guam, Inc. ("LSG Service Guam"). (Compl. ¶¶ 22, 26 & 27. Gino and Ramos also worked for defendant LSG Lufthansa Service Saipan, Inc. ("LSG Service Saipan"). (*Id.* at ¶¶ 22 & 26.) Defendant LSG Lufthansa Service Holding, AG ("LSG Service Holding") is a foreign holding company with its principal place of business in Germany, (*id.* ¶ 7), which owns, operates, and controls each of the other corporate entities named as defendants in the complaint, (*id.* ¶ 14). All other corporate defendants are "alter-egos" of LSG Service Holding. (*Id.* ¶ 14.) Defendant LSG Lufthansa Service USA Corporation ("LSG Service USA") is a corporation licensed to do business in and incorporated under the laws of the United States, which owns and operates defendant LSG Catering Guam, Inc. ("LSG Service Catering Guam"). (*Id.* ¶ 10.) Defendant LSG Lufthansa Service Asia, Ltd. ("LSG Service Asia") has its principal place of business in Hong Kong, and is the regional headquarters for LSG Service Guam, LSG Catering Guam, LSG Service Saipan, and LSG Catering Saipan, Inc. ("LSG Catering Saipan"). (*Id.* ¶ 11.) LSG Service Asia also operates and/or owns and controls defendants LSG Catering Saipan and LSG Service Saipan. (*Id.* ¶ 12.) Further, LSG Service Guam and LSG Catering Guam report to LSG Service Asia. (*Id.* ¶ 13.) Defendant LSG Service Saipan is a corporation licensed to do business in the Commonwealth of the Northern Mariana Islands. (*Id.*) LSG Service Guam, LSG Catering Guam, and LSG Service Asia are also known as "LSG Sky Chefs," a wholly owned subsidiary or affiliate of LSG Service Holding, (*id.* ¶ 15), with its primary offices in Texas, (*id.* ¶ 16). The operational headquarters for all corporate defendants is in Dallas, Texas, with management headquarters in Germany. (*Id.* ¶ 17.)

Defendant Hyung K. Cheung[1] ("Cheung") is or was the Executive Vice-President of Administration and Finance, which includes the Human Resources departments for the defendants' Pacific Asia region. (Compl. ¶ 18.) Defendant Fritz Pandalitschka ("Pandalitschka") is or was the

---

[1] Defendants refer to this particular defendant as "Hing Kai Cheung." (*See, e.g.* Mot. Dismiss at 3.)

General Manager and/or Director of Operations for defendants LSG Service Guam and LSG Service Saipan. (*Id.* ¶ 19.) Defendant Kelvin Chan ("Chan") is or was employed by defendants LSG Service Guam and LSG Service Saipan as manager of the Customer Service department, directly reporting to Pandalitschka. (*Id.* ¶ 20.)

Plaintiffs further allege that defendants Cheung, Pandalitschka, and Chan subjected plaintiffs to harassment, disparate treatment (Compl. ¶ 30), and discrimination based on their race or national origin, (*id.* ¶ 29), and retaliated against plaintiffs for complaining about the discrimination (*id.* ¶ 32). Plaintiffs claim that each of the corporate LSG defendants condoned, accepted, or otherwise authorized these acts of discrimination, retaliation, disparate treatment, harassment, and other unlawful employment practices (*Id.* ¶ 33).

As noted, on July 29, 2003, plaintiffs filed a complaint. On October 1, 2003, defendants LSG Service Guam and LSG Catering Guam filed an answer, and all other defendants filed a motion to dismiss for lack of personal jurisdiction. Plaintiffs filed an opposition to the motion on October 17, 2003, to which movants filed a reply herein on October 24, 2003.

The court issued its order on November 18, 2003 granting in part and denying in part the motion to dismiss. The court denied the defendants' motion to dismiss for lack of personal jurisdiction over the defendants, holding that the personal jurisdiction defense was waived because it was not asserted in the answer. On November 20, 2003, defendants filed a motion for reconsideration of that order.

The court granted the motion for reconsideration on December 24, 2003. The court held that because the answer was filed only by the LSG Service Guam and LSG Catering Guam that the remaining defendants had not waived the defense of personal jurisdiction. The court found that the evidence submitted was insufficient in determining whether personal jurisdiction existed over the defendants, but because factual disputes existed regarding defendants' relations to LSG Service Guam and LSG Catering Guam, the court deferred the ruling on the motion to dismiss and granted the plaintiffs sixty days to conduct discovery on the relationship. The court gave the parties until April 1, 2004 to file any supplemental briefs.

On April 9, 2004, the court granted the plaintiffs' request for an extension of time. The court

3

granted the plaintiff thirty days to respond to any motions currently pending before the court and to submit a supplemental brief regarding personal jurisdiction. On May 10, 2004, plaintiffs filed a Declaration of Plaintiff in Support of Jurisdiction Over International Defendants. (#75). On May 20, 2004, defendants filed a Supplemental Memorandum of Law in Support of Defendants' Motion to Dismiss. (#78). Plaintiffs filed a Supplemental Opposition (#81) and defendants' replied (#83).

## II. <u>Analysis</u>

When the defense of lack of personal jurisdiction is raised, the plaintiff carries the burden of proving that jurisdiction over the defendant is proper. *See Modesto City Schs. v. Riso Kagaku Corp.*, 157 F.Supp. 2d 1128, 1131 (E.D. Cal. 2001). To withstand a motion to dismiss under Fed.R.Civ.P. 12(b)(2), the plaintiff need only make a prima facie showing of personal jurisdiction, which he may do through the pleadings, affidavits, or discovery materials. *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1119 (9th Cir. 2002). In determining whether the plaintiff has met this burden, we accept as true any uncontroverted allegations in his complaint and will decide in his favor any conflicts of facts that arise between the parties. *Id.*; *AT&T Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996).

To establish that personal jurisdiction over defendants is proper, plaintiff must meet two requirements. First, there must be a statute that gives the court authority to exercise jurisdiction. *Data Disc, Inc. v. Systems Tech. Assoc., Inc.*, 557 F.2d 1280, 1286 (9th Cir. 1977). Second, the exercise of jurisdiction must meet constitutional standards, defined as "certain minimal contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* at 1286-87, *citing Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Federal courts must also look at the forum's long-arm statute to determine whether personal jurisdiction may be obtained. Fed. R. Civ. P. 4(k)(1)(A). Because Guam's long-arm statute permits the exercise of personal jurisdiction to the full extent allowed under the Constitution, *see* 7 Guam Code Ann. § 14109 (2003), the Court need only decide whether personal jurisdiction over defendants passes constitutional muster.

The constitutional requirements for personal jurisdiction over a defendant can be met either through general or specific jurisdiction. *Reebok Int'l, Ltd. v. McLaughlin*, 49 F.3d 1387, 1391 (9th

4

Cir. 1995). If the defendant's activities and contacts with the forum state are substantial, continuous, or systematic, a court will have general jurisdiction over the defendant, even if the cause of action is unrelated to defendant's forum activities. *Id.*; *Data Disc*, 557 F.2d at 1287. Specific jurisdiction is determined by an analysis of the "nature and quality of the defendant's contacts [with the forum state] in relation to the cause of action." *Data Disc*, 557 F.2d at 1287. The Ninth Circuit requires the following three-prong approach for assessing specific jurisdiction: (1) the nonresident defendant must purposefully avail himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must arise out of or result from the defendant's forum-related activities; and (3) the exercise of jurisdiction must be reasonable. *Id.*

Plaintiffs do not claim that defendants' direct contacts with the Territory of Guam justify the court's exercise of either general or specific jurisdiction over defendants. (*See* (#30) at 9-10).[2] Rather, plaintiffs contend that the contacts of the Guam-based defendants should be imputed to the other defendants through alter-ego and agency theories (*see* (#30), *see also* Compl. ¶ 14 (stating that

---

[2]Through the submitted documents, Plaintiffs purport to establish the following:

[T]he "non-Guam Defendants" [*sic*] negotiations and control over collective bargaining agreements is controlled by LSG Holding AG in Germany...; LSG Holding AG in Germany controls the LSG advertising logo for Guam and the Asia offices...; LSG Holding AG must approve any new investments for Guam and the Asia offices, and Hong Kong controls much of the budget items otherwise for Guam...; the Guam/Saipan General Manager's contract was prepared and negotiated in Germany...; pricing for all airline customers for LSG worldwide is required to be consistent, therefore controlled by the parent corporation...; LSG's resident GM in Guam and Saipan reviews and approves correspondence to Hong Kong and Germany from local department managers...; Germany directs the manner in which "special reports to the board" were styled according to the foreign memo of April 14, 1999...; LSG, USA, which owns LSG Catering Guam, Inc. controls the audits and approves payments to affiliates per the consolidated balance sheet...; capital expenditures and budgets are reviewed and approved by LSG Holding AG, in Texas...; the title given to the Guam manager was directed by Germany...; contract negotiations between Northwest airlines and the LSG subsidiaries, including Guam, are consistent throughout the corporation and subsidiaries.... The other Exhibits contain references to meetings for Germany, Asia/Pacific, USA, consistent hardware for communications of budgetary and financial information beteen Guam, Germany, and other offices, marketing directives controlled by LSG Holding AG and USA, and other indicia that show forum related contacts and activities by defendants.

all corporate LSG defendants are "alter-egos" of parent LSG Service Holding)).[3]

The mere existence of a parent-subsidiary relationship is not sufficient to confer personal jurisdiction over the parent based on the subsidiary's forum contacts. *Doe, I v. Unocal Corp.*, 248 F.3d 915, 925 (9th Cir. 2001). Further, "a parent corporation may be directly involved in the activities of its subsidiaries without incurring liability so long as that involvement is 'consistent with the parent's investor status[.]' " *Id.* at 926 (quoting *United States v. Bestfoods*, 524 U.S. 51, 72 (1998)). Appropriate parental involvement includes the monitoring of the subsidiary's performance, supervision of the subsidiary's finance and capital budget decisions, and the articulation of general policies and procedures. *See id.*; *In re Phenylpropanolamine (PPA) Products Liability Litigation*, 344 F.Supp.2d 686, 691 (W.D. Wash. 2003). However, if the alleged parent and subsidiary are not really separate entities, or if one entity acts as an agent of the other, the subsidiary's contacts may be

---

[3] Plaintiffs rely on the following evidence to support their claim:

(1) An organizational chart showing the Guam and Saipan LSG entities are subsidiaries of LSG Lufthansa USA Corporation, but report to LSG Lufthansa Service Asia, Ltd.

(2) An email from LSG Holding AG, Germany to Cheugh in Hong Kong discussing the union negotiations for Guam and Saipan. The memo indicates that LSG Holding AG was to handle politically sensitive union negotiations.

(3) Audit letters from Ernst & Young for years 1999-2002 for LSG Catering Guam.

(4) Documents stating that LSG Frankfurt had to approve the directors of LSG Catering Guam and LSG Catering Saipan, LSG Lufthansa Service Guam and LSG Lufthansa Service Saipan.

(5) Documents that the directors of LSG Lufthansa Service USA were required to approve expenditures of $220,000 for a Maintenance and Administration Office Extension for LSG Lufthansa Service Guam.

(6) A document showing that the budget of Guam must be approved by LSG Holding.

(7) Documents showing that the agendas for the Guam Board of Directors must be sent to Hong Kong one week before the meeting.

imputed to the parent. *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 424 (9th Cir.1977). "An alter ego or agency relationship is typified by parental control of the subsidiary's internal affairs or daily operations." *Unocal Corp.*, 248 F.3d at 926.

An alter ego relationship between different corporations exists if the plaintiff makes a prima facie showing (1) that there is such unity of interest and ownership that the separate personalities of the corporations no longer exist and (2) that failure to disregard their separate identities would result in fraud or injustice. *American Tel. & Tel. Co. v. Compagnie Bruxelles Lambert* 94 F.3d 586, 591 (9th Cir. 1996) (internal citations omitted). The agency test is satisfied by a showing that the subsidiary functions as the parent corporation's representative in that it performs services that are "sufficiently important to the foreign corporation that if it did not have a representative to perform them, the corporations own officials would undertake to perform substantially similar services." *Unocal Corp.*, 248 F.3d at 928.

The circumstances relied upon to establish domination by the defendants over the Guam-defendants reflect no more than a normal parent-subsidiary relationship. Defendants involvement in union negotiations, approval of directors, and approval of the budget and major expenditures reflects nothing more than a normal parent-subsidiary relationship. *See Kramer Motors, Inc. v. British Leyland, Ltd.*, 628 F.2d 1175, 1177 (9th Cir.1980) (no alter ego relationship despite that the parent guaranteed loans for the subsidiary, reviewed and approved the subsidiary's major decisions, placed several of its own directors on the subsidiary's board, and was closely involved in the subsidiary's pricing decisions). Plaintiffs have failed to make a prima facie showing that defendants control either the internal affairs or the daily operations of the Guam-defendants. Plaintiffs have failed to show that separate personalities of the corporations no longer exist or that disregarding the separate identities would result in fraud or injustice.

//
//
//
//
//

7

## III. Conclusion

Accordingly, **IT IS ORDERED** that defendants' motion to dismiss for lack of personal jurisdiction (#11) be **GRANTED** as to all moving defendants. Let judgment be entered accordingly.

DATED: This 7TH day of February, 2004.

_____
UNITED STATES DISTRICT JUDGE

Notice is hereby given that this document was entered on the docket on 2/7/05. No separate notice of entry on the docket will be issued by this Court.

Mary L. M. Moran
Clerk, District Court of Guam

By: _____ 2/7/05
Deputy Clerk       Date